**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 6:04-CR-00115-JHP-SPS |
| | ) | |
| KENNETH EUGENE BARRETT, | ) | |
| | ) | |
| *Defendant.* | ) | |

---

**EXHIBIT 61**

---

# ON DEMAND COURT RECORDS

## CASE DETAIL

| County: | Sequoyah - **County Last Updated: 03/13/2009 08:00** |
|---|---|
| Case: | CF-97-00086 <br> STATE OF OKLAHOMA vs. BARRETT, KENNETH EUGENE |
| Date Filed: | 03/24/1997 |
| Amount Owed: | $0.00 (as of 03/13/2009 08:00) |

## OFFENSE

UNLAWFUL DELIVERY OF CONTROLLED DRUG

| Parties | |
|---|---|
| Defendant | BARRETT, KENNETH EUGENE - VIAN OK |
| Attorney | ECHOLS, JOHN DAVID - TULSA OK |
| DA | DISTRICT ATTORNEY OF SEQ. CO - SALLISAW OK |
| Officer | BLOUNT, LARRY - SALLISAW OK |
| Judge | PAYTON, JEFF |
| Agency | SALLISAW POLICE DEPT. - SALLISAW OK |

| Case Entries | | |
|---|---|---|
| **Date:** | **Case Entries** | **Amount** |
| 03/24/1997 | PRE COMPUTER | |
| 08/04/1997 | FILE IS READY FOR INSPECTION | |
| 08/27/1997 | CM: DMS DEF. APPEARS W/ATTY ROGERS, STATE REP. BY BARNES, CASE SET THIS DATE FOR PREL; WITNESSES SWORN, TESTIMONY HEARD, DEF. BOUND OVER FOR TRIAL, DCA SET FOR OCT 9, AT 1:30 P.M. BEFORE JCG. 27-84 | |
| 10/09/1997 | CM: JCG STATE APPEARS BY S BARNES, DEF WITH ATTY B. ROGERS. DEF ENTERS PLEA NOT GUILTY. SET FOR NEXT JURY DOCKET. 27-148 | |
| 10/16/1997 | TRANSCRIPT OF PROCEEDINGS PRELIMINARY HEARING HAD ON THE 27TH DAY OF AUGUST 1997 BEFORE JUDGE SPROUSE-1 ORIGINAL | |
| 06/12/1998 | LETTER FROM EASTERN STATE HOSPITAL (FILED IN WRONG CASE SHOULD BE FILED IN CF-98-86 ST VS. PAUL E. WARFORD) | |
| 09/02/1998 | LETTER FROM DA TO ATTY K.BARRETT | |
| 09/02/1998 | MOTION TO PRODUCE | |
| 09/03/1998 | SUBPOENA ISSUED BACK TO DA | |
| 09/08/1998 | MOTION FOR EX PARTE HEARING | |
| 09/11/1998 | MOTION TO WITHDRAW | |
| 09/14/1998 | ORDER FOR HEARING 9/24 AT 9AM. | |
| 12/14/1998 | APP FOR COURT APPT ATTY | $40.00 |
| 01/19/1999 | SUBP'S ISSUED-5 ST | |
| 01/27/1999 | CM: AJH; DEFENDANT FAILED TO APPEAR FOR JURY TRIAL. BENCH WARRANT. 29-17 | |
| 01/28/1999 | B/W ISSUED | $20.00 |

| | |
|---|---|
| 09/27/1999 | BW FILED |
| 02/24/2000 | SUBPOENA'S ISSUED (5) ST |
| 02/25/2000 | LETTER FROM DA TO ATTY |
| 03/01/2000 | ENTRY OF APPEARANCE -ECHOLS |
| 03/01/2000 | OBJECTION TO 22 O.S. |
| 03/06/2000 | MOTION TO CONTINUE TRIAL SETTING |
| 09/18/2000 | ORDER FOR HEARING, JURY TRIAL |
| 04/29/2004 | NOTICE OF APPOINTMENT OF SPECIAL VOLUNTEER ASSISTANT DISTRICT ATTORNEY |
| 05/17/2004 | ENTRY OF APPEARANCE |
| 05/24/2004 | MOTION FOR ORDER PROHIBITING THE APPEARANCE OF PURPORTED SPECIAL PROSECUTORD AND OR SPECIAL ASSISTANT DISTRICT ATTORNEY |
| 06/24/2004 | MOTION FOR OARDER PROHIBITING THE APPEARANCE OF PURPORTE SPECIAL PROSECUTORS AND OR SPECIAL ASSISTANT DISTRICT ATTORNEY |
| 02/03/2005 | COURT MINUTE-ORDER |
| 02/14/2005 | ENTRY OF APPEARANCE |
| 02/14/2005 | ENTRY OF APPEARANCE |
| 02/22/2007 | CM: JP DISMISSED AS MOOT. 39-112 |
| 03/16/2007 | DISMISSING COSTS    $-20.00 |
| | (Entry with fee only)    $-5.00 |
| **Total:** | **$40.00** |

| Date: | Time: | Calendar Events: |
|---|---|---|
| 01/28/1999 | | Date Action: ISSUE BENCH WARRANT FAIL TO APPEAR Completed : 09/27/1999 |
| 02/03/2005 | 11:00A | Date Action: DISPOSITION DOCKET |
| 08/18/2005 | 11:00A | Date Action: DISPOSITION DOCKET |
| 08/10/2006 | 1:30P | Date Action: DISPOSITION DOCKET |
| 02/22/2007 | 1:30P | Date Action: PAYTON HEARING CRIMINAL |
| 02/22/2007 | | Date Action: ST DISMISSED/SETTLED |

| Date: | Receipts: | Amount: |
|---|---|---|
| 12/14/1998 | R1-011914 BARRETT, KENNETH EUGENE | $40.00 |

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | **Case No. 6:04-CR-00115-JHP-SPS** |
| | ) | |
| **KENNETH EUGENE BARRETT,** | ) | |
| | ) | |
| *Defendant.* | ) | |

---

**EXHIBIT 62**

---

286

# CRIMINAL APPEARANCE DOCKET

SEQUOYAH COUNTY, OKLAHOMA

The News Dispatch Printing & Audit Co., Shawnee, Okla.

| No. | STYLE OF CASE | NATURE OF ACTION | ATTORNEYS |
|---|---|---|---|
| 3005 | STATE OF OKLAHOMA vs Tom Dotson | Disposing of Mortgaged Property | Ed. J. Armstrong |

| DATE 1938 | FILINGS, PROCEEDINGS AND RETURNS | CLERK'S COSTS PLAINTIFF | CLERK'S COSTS DEFENDANT | SHERIFF'S COSTS | MISCEL-LANEOUS | CREDITS | DISBURSE-MENTS |
|---|---|---|---|---|---|---|---|
| Sept. 8 | Docket Fee | 2 00 | | | | | |
| " " | To File Transcript | 10 | | | 18 95 | | |
| " " | To file & record Bond | 1 10 | | | | | |
| " " | To file & record Information | 1 10 | | | | | |
| Oct. 27 | case continued for the term - Book 2 page 341 | | | | | | |
| 11-21-41 | case Dismissed B.2. P. 362 | | | | | | |

KEB503071

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | **Case No. 6:04-CR-00115-JHP-SPS** |
| | ) | |
| **KENNETH EUGENE BARRETT,** | ) | |
| | ) | |
| *Defendant.* | ) | |

_____

**EXHIBIT 63**

_____

CRIMINAL APPEARANCE DOCKET
SEQUOYAH COUNTY, OKLAHOMA

The News-Dispatch Printing & Audit Co., Shawnee, Okla.

| No. | STYLE OF CASE | NATURE OF ACTION | ATTORNEYS |
|---|---|---|---|
| 2763 | STATE OF OKLAHOMA vs Tom Dotson & Hooley Dotson | Man-slaughter 1st degree | J. Fred Green |

| DATE 1933 | FILINGS, PROCEEDINGS AND RETURNS | CLERK'S COSTS PLAINTIFF | CLERK'S COSTS DEFENDANT | SHERIFF'S COSTS | MISCEL-LANEOUS | CREDITS | DISBURSE-MENTS |
|---|---|---|---|---|---|---|---|
| Dec 8 | Docket fee | 3 00 | | | | | |
| " " | To file transcript | 10 | | | | | |
| " " | " " record Information | 1 10 | | | | | |
| Feb. 22 | Issue alias Warrant Hooley Dotson | 50 | | | | | |
| " 28 | " file Warrant & enter sheriff's ret. | 20 | | 9 00 | | | |
| Mar. 26 | " " Motion to set aside plea of Guilty — | 10 | | | | | |
| " " | " " & record appearance Bond — | 1 10 | | | | | |

KEB503068

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| **v.** | )    **Case No. 6:04-CR-00115-JHP-SPS** |
| | ) |
| **KENNETH EUGENE BARRETT,** | ) |
| | ) |
| *Defendant.* | ) |

---

**EXHIBIT 64**

---

## John David Echols                                    Attorney at Law

SUBMITTED *EX PARTE* AND UNDER SEAL

*VíA HAND DELIVERY TO THE CLERK*                    Monday, February 28, 2005

Honorable James H. Payne
Chief Judge
Eastern District of Oklahoma
101 N. 5th Street
Muskogee, OK  74401

In Re:  US v. Barrett
        EDOK Case No. CR-04-115-P

Your Honor:

Thank you for your letter of February 22, 2005. For mutual convenience, I am responding to your inquires in the order in which they appear in your letter.

1.      Savings due to prior representation.

The budget which I submitted was based in part on materials which I received from Federal Death Penalty Resource Counsel, and from review of materials on the FDPRC website, capdefnet.org. These materials indicate that the time I "budgeted" for attorneys is in line with the time and fees expended in other federal capital prosecutions.[1]

In my view, the principal advantage from my prior representation of Mr. Barrett is not that I can represent him more cheaply, but that I can represent him more effectively. Having said that, I do believe that another attorney without my case-specific experience would need to expend a great deal of additional time and effort absorbing the unique history of the case as it played out in state court.

I found it very difficult to predict the time, particularly to break it down into categories as I was ordered to do. It may well be that my estimates are overly pessimistic. However, from my perspective, I believe that the proposed budget for attorney time does take into account the fact that I am not starting from zero, and that a great deal of the work already performed can serve as a foundation for further efforts. I also know that whatever the budgeted amounts, the Court will have an opportunity to review the actual time expended prior to approval.[2]

2.      Fair compensation.

The Oklahoma Indigent Defense System pays contract "lead" counsel in a capital case $60 per "out of court" hour, and $80 per "in court" hour. The contracts also specify that the maximum payment for lead counsel is $20,000, although this amount can be exceeded if the

---

[1]     In addition, in my experience it is generally more expensive in time and effort to move a case quickly on all fronts, than to allow the case to proceed in a more linear way.

[2]     The entries for Mr. Hilfiger were based on projections he provided. As noted in our Sixth and Seventh *Ex Parte* motions, I broke the attorney budget out from the experts budget so that consideration of attorney fees would not delay presentation of the experts portion to the Circuit Court of Appeals.

---

**Bank of America Bldg., Suite 2112**                    **Voice: 918.299.3802**
**P.O. Box 701196**                                      **Fax:  918.299.9765**
**Tulsa, OK  74170-1196**                                **defender@pianosa.com**

KEB013596

Honorable James H. Payne
February 28, 2005
Page 2 of 6

OIDS Board of Directors makes a finding, as it did in Mr. Barrett's case, that a given case is an exceptional one.

I received approximately $72,229.00 for the first state court trial, although the bulk of this was not paid until the summer of 2003 because OIDS was literally out of money. I do not have available a complete breakdown of the "in court" vs. "out of court" hours for the first $29,214.00 of this sum, but for the balance of $43,015.00, the breakdown was 455.25 out of court hours and 196.25 in court hours. From January 1, 2003, through sentencing in the second trial, I billed and received $59,105.00, representing 720.75 out of court hours and 198.25 in court hours.

In both trials, I bore the expenses of my own secretary, and staying in Sallisaw. I also believe that the time which I recorded and submitted to OIDS was at least 20% low, particularly through the first trial.

In the first trial, OIDS hired or provided the following to assist me:[3]

- an outside investigator, Jim Allison. Mr. Allison was paid approximately $10,000. However, he became seriously ill before the first trial and was not able to participate fully, and OIDS agreed to assign two of its "in house" investigators, Steve Leedy and Jack Stringer to assist me as the case developed to trial.

- an outside mitigation investigator, Roseanne Schaye. Ms. Schaye received approximately $20,000 for her services, but she abruptly resigned prior to the first trial because she was not given an additional unlimited budget authorization. She then refused to submit a summary of her findings and/or tasks remaining unless OIDS paid her an additional $4 or $5,000 fee. Steve Leedy, listed above, retrieved the documents she had accumulated and assumed her responsibilities.

- a SWAT team tactics expert, Monroe Earl Simpson. Mr. Simpson received approximately $5,000 for his services. He was available to testify, but we elected not to present any defense witnesses. I was also very disappointed in the quality of his work, and did not request the use his services for the second trial.

- a psychologist, Faust Bianco. Mr. Bianco charged $150 per hour for testing and evaluating Mr. Barrett. I believe his compensation was under $4,000 for the first case. Mr. Bianco and Ms. Schaye disagreed completely concerning Mr. Barrett's mental well being. OIDS in house psychologist Kathy Lafortune, who is also an attorney, was then involved in the case and was prepared to testify in any second stage proceeding.

- a forensics expert, Ron Singer. Mr. Singer was retained with a $5,000 budget, but because the case took so long to bring to trial, he was compelled to withdraw before he devoted any specific time to the case. OIDS then provided the use of two of its in house

---

[3] I do not have available the hourly billing records for the outside experts, but I believe these estimates based on my recollection are reasonably accurate. The OIDS in house employees are salaried and did not submit time records through me. Also, this reflects only the OIDS staff members who were specifically assigned significant duties for the defense. Throughout the two trials, many other OIDS lawyers and employees consulted with us whenever we requested.

Bank of America Bldg., Suite 2112
P.O. Box 701196
Tulsa, OK 74170-1196

Voice: 918.299.3802
Fax:  918.299.9765
defender@pianosa.com

KEB013597

Honorable James H. Payne
February 28, 2005
Page 3 of 6

forensics experts, Laura Schile for scientific issues, and Lisa Cooper for issues relating to weapons, trajectory analysis and the like. Ms. Cooper sat with me at counsel table throughout both trials.

- a jury consultant, Ernest Harper. Mr. Harper was an in house OIDS employee who specialized in the use of a computer database as an aid to jury selection. Mr. Harper worked with us for approximately two weeks, and returned to other duties after *voir dire*.

In the second trial, and at our specific request, OIDS agreed to assign the same "in house" personnel to the case.[4] In addition, OIDS contracted with Ed Hueske, in place of Mr. Singer, and Jeannie Russell, in place of Mr. Bianco. Mr. Hueske was paid approximately $4,000 for forensic testing and consultation, and he was present and ready to testify concerning weapons related issues if needed. Ms. Russell tested Mr. Barrett, consulted with me, and was prepared to testify in a second stage proceeding. She worked principally with my second chair, Jack Gordon, Jr.. I do not have a clear recollection of her total billings, but I believe they were less than $5,000.

3.    Legal research.

You are correct that we reviewed many similar legal issues in the state court trials. However, I believe that the dynamics of the state court cases differ considerably from this federal case. Judge Garrett preferred to discuss anticipated legal issues informally with the prosecution and defense. For example, in discussing issues relating to jury selection and search and seizure, he would "telegraph" his anticipated ruling based on his understanding of the law. Knowing his position in advance, on issues for which he indicated he would rule against us, we concentrated on being certain that a proper record was made to preserve the issue for any prospective appeal. While this required significant preparation, it was not what I would term "thoroughly" researched.

This was true in relation to death penalty issues as well. His position was known, based upon our discussions and his own experience in capital trials. Moreover, Judge Garrett had ruled that, in the event of a first stage verdict of guilty as charged, there would be at least a two week delay before the beginning of any second stage proceeding.[5] We deferred finalizing our position on these issues until and unless that became necessary. For example, although we prepared drafts, we never presented finalized second stage proposed instructions to Judge Garrett in either trial.

In just the past week, the FDPRC counsel have provided me with two resent opinions from other federal district courts which total almost 300 pages in length. Both opinions, *U.S. v. Sampson*[6] and *U.S. v. Johnson*,[7] emphasize the limited amount of clear precedent concerning

---

[4]    Steve Leedy, Jack Stringer, Kathy Lafortune, Laura Schile, and Lisa Cooper. By the time of the second trial, Mr. Harper was no longer with OIDS, and he was replaced in the jury selection role by another OIDS employee, Angie Cole.

[5]    This hiatus between first and second stages is, in my opinion, a sound concept, even if second stage legal issues are resolved prior to the first stage.

[6]    District Judge Mark L. Wolf, USDC Massachusetts, Cr. No. 01-10384-MLW, issued August 26, 2004.

[7]    Chief Judge Mark W. Bennett, USDC Northern District of Iowa, No. CR 01-3046-MWB, issued on February 18, 2005.

---

Bank of America Bldg., Suite 2112
P.O. Box 701196
Tulsa, OK 74170-1196

Voice: 918.299.3802
Fax:  918.299.9765
defender@pianosa.com

KEB013598

Honorable James H. Payne
February 28, 2005
Page 4 of 6

federal death penalty law, and the subtle distinctions between §848 provisions and the balance of federal death penalty law. We will be in large part "writing the book as we go," and in my view this is a more demanding task than locating and following [or objecting to] clear precedent. Add in possible *Apprendi*, *Blakely* and *Booker* issues, and I believe we will need to do far more than merely "update" the previous research.

4.    The use of an investigator.

When I first approached the budgeting issue, I basically thought as you have suggested. However, by the time of my first conference with Magistrate Shreder, I had begun to realize that we are not receiving the same level of cooperation from the United States Attorneys Office that we did from the state court prosecutors.[8] I also became increasingly aware that the government hopes to hang the "drug king pin" label on Mr. Barrett even though the search after his arrest revealed little other than a modest amount of precursors and trace amounts of methamphetamine.

Judge Garrett indicated early on that he considered drug abuse testimony to be troubling because of its potential for prejudicial impact. While drugs were referred to frequently, the only "druggie" whom the state called to testify, was Steven Carl Smith, who got no further than a hearing outside the presence of the jury, in which he admitted that he had committed perjury during that very hearing. Judge Garrett ordered him arrested for perjury and the state then withdrew its notice of intention to call him.[9]

The drug culture in southeastern Oklahoma is both elusive and ingrained. Throughout both state court trials we received rumors of all sorts concerning organized criminal activities and political corruption. Those rumors continue, and a thorough fact investigation could conceivably turn up evidence that Mr. Barrett was targeted not for drug activities, but in retaliation for his having angered local criminal interests.

In my opinion, we will need to be more informed generally about the drug evidence. As soon as we succeed in learning the identity of the government's intended witnesses, we will need to be thoroughly informed about those individuals and their relationship to organized criminal activities and law enforcement agencies.

With respect to the relative costs of fact investigators vs. mitigation investigators [with fact investigators less expensive], I based my opinion on my prior experiences along with anecdotal information from other attorneys. When I sought mitigation services before the first trial, most of the recognized mitigation specialists received fees in the $100 to $150 per hour range. Ms. Schaye was a "beginner" with little experience, but a good resume. She agreed to work for OIDS for $70 per hour, but as I indicated above, she was just beginning in the business and agreed to a lower than usual rate.

---

[8]    The state court prosecutors made all of their witnesses and evidence available to us at our request. In contrast, the government has refused virtually every informal discovery request, and has simply refused to reply to our request that they be responsible for summoning the law enforcement witnesses to hearings or trial.

[9]    In a typical miscarriage of justice, Mr. Smith plead guilty and was placed on an illegal suspended sentence with the concurrence of the prosecutors and the Drug Task Force. This for a man who had admitted committing perjury in a capital case!

---

**Bank of America Bldg., Suite 2112**
**P.O. Box 701196**
**Tulsa, OK 74170-1196**

**Voice: 918.299.3802**
**Fax: 918.299.9765**
**defender@pianosa.com**

KEB013599

Honorable James H. Payne
February 28, 2005
Page 5 of 6

I also note that Inquisitor, Inc., the agency which I have requested, charges only $75 per hour, which is lower than I anticipated, but still higher than the rate of $50 per hour requested for Mr. Eberle. There is still a differential, but it is smaller than I anticipated.

5.      The existence of a clear plan for the defense.

I believe that my previous comments address this issue for the most part. Also, while I do think that we have a clear idea of the foundation of Mr. Barrett's first and second stage defenses, I continue to disagree that this knowledge allows me to predict, "how much time [I] plan to spend each week on this case and exactly what task each attorney will be assigned in preparation for this federal case."

I also note that in both trials, the state court prosecutors endeavored to present a complete picture to the juries. They basically called all available witnesses. I do not expect the government to simply retry the case that has twice failed to convince a jury that Mr. Barrett intended to kill anyone. They will, in my opinion try a bare bones case that barely, if at all, touches on the statutory elements. It will therefore fall to us to give the jury the complete truth, a task which will take more time and effort than relying on cross-examination.

6.      Ex-parte proceedings.

With respect to particular experts who will be either interacting with the government [such as receiving evidence for independent testing] or certainly testifying at trial, I agree that disclosure of the name of that person *after they have been approved* will not damage Mr. Barrett. However, the disclosure of the justification advanced for each individual expert would necessarily disclose privileged attorney client information. Moreover, I think that if an expert of one sort or the other is approved, and the name and general purpose of the expert is revealed to the government, then the Court could entertain any government objection before the requested funds have been entirely expended.[10]

Generally, exposing Mr. Barrett's attorneys' plans and strategies infringes on his Sixth Amendment rights, and could irreparably harm his defense. I believe also that this is the reason the government has not objected to *ex parte* proceedings concerning the funding of his defense.

7.      Finally, I would like to respectfully express something of my own views about this process.

I am frankly concerned that Mr. Barrett cannot wait much longer to engage the requested experts if we are to be expected to meet the Court's present schedule. Recognizing your responsibility to protect the public purse, it may be that we are simply attempting to meet a schedule which is unrealistic.[11]

---

[10]    With respect to psychological or physiological experts, even the identity of the approved expert should not be revealed until we determine to give notice under Rule 12.2.

[11]    I won't expand upon this point here, because the government is not privy to this correspondence. However, Mr. Littlefield has expressed similar concerns, particularly concerning the transcript of the second trial.

**Bank of America Bldg., Suite 2112**
**P.O. Box 701196**
**Tulsa, OK  74170-1196**

**Voice:  918.299.3802**
**Fax:  918.299.9765**
**defender@pianosa.com**

KEB013600

Honorable James H. Payne
February 28, 2005
Page 6 of 6

I am also concerned that Your Honor may view these budgets and budgeted amounts as being set in stone, or a ceiling above which Mr. Barrett's defense should or may not go. This cuts both ways, and it may be that I have subconsciously over estimated some items out of concern that Your Honor will not take kindly to "upward departures." Then again, I have also been instructed that I am to make this case my "highest priority," which I am endeavoring to do.

I was literally sickened when informed by a reporter that the September 23, 2004, Complaint had been filed on the day the statue of limitations ran for drug offenses. From our perspective, this case should never have been filed, and zero dollars should have been needed for this defense. Nevertheless, there is a small constituency to which the government responds that insists on a third trial, and then possibly a fourth or even a fifth if this one doesn't turn out as they wish. Based on what we know now, our sincere efforts to convince the government not to file [Petite Policy] and not to seek the death penalty [Authorization by the Justice Department] amounted to a fool's errand. We anticipate that the government will continue to present one public face to the Court and the defense, while seeking every fair *and unfair* advantage.

I appreciate the opportunity to respond to your concerns. My strong preference would be that we continue to communicate our concerns to one another, and that, on Mr. Barrett's behalf, we be granted the flexibility to alter and amend our plan as the case progresses to trial.

Sincerely,

John David Echols

JDE:am
cc: Roger Hilfiger

**Bank of America Bldg., Suite 2112**
**P.O. Box 701196**
**Tulsa, OK  74170-1196**

**Voice:  918.299.3802**
**Fax:   918.299.9765**
**defender@pianosa.com**

KEB013601

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | **Case No. 6:04-CR-00115-JHP-SPS** |
| | ) | |
| **KENNETH EUGENE BARRETT,** | ) | |
| | ) | |
| *Defendant.* | ) | |

**EXHIBIT 65**



# UNITED  STATES  DISTRICT   COURT
EASTERN AND NORTHERN DISTRICTS OF OKLAHOMA

February  22, 2005

Chambers  of
JAMES  HARDY  PAYNE
Chief  Judge
Eastern  District  of Oklahoma

!OI  N.  5th  Street,  Muskogee,  OK  74401
P.O.  Box  2459,  Muskogee,  OK  74402
(918)  684-7940  (phone)
(918)  684-7941  (fax)

Mr.  John  David  Echols
Attorney  at Law
P.O.  Box  701196
Tulsa,  OK  74170-1196

Re:    *United  States  of America*  v. *Kenneth  Eugene  Barrett*
Case  No.  CR-04-115-P

Dear  Mr.  Echols:

I have  reviewed  a copy of the eight  ex parte  budget  requests  you have  submitted  in the above referenced   case. After  reviewing  your  preliminary   litigation  budget,  I have  several  questions  I would  like you  to address  prior to any action  being  taken  in this  matter.

First,  while  I recognize  this  is a death  penalty  case,  the total  number  of hours  you  estimate  will  be expended is more  than  four  times  the number  of hours  billed  in the most complex  criminal  case that  has  come  before this court  to date.  Because  you have  defended  Mr.  Barrett  in two  earlier  state  prosecutions   based  on the underlying   facts of this indictment,   it was  my understanding   from both you and the Public  Defender  there would  be a substantial   savings  in the amount  of time  that  would  be required   for you to represent   the defendant.  Specifically,   what, if any, savings  do you  foresee  because  of the previous   trials?  Further,  how are those  savings  reflected  in the proposed   budget  now  before  the court?

Second,  the statute  requires  that  I establish  the amount  of compensation   necessary  to provide  "fair compensation."   In order to determine  the amount  of compensation   that would  be fair in this particular  case, I am requesting  that you advise  me of the amounts  paid  for you to represent  Mr. Barrett  in each of the two previous  state trials,  including  the number  of hours  that was billed  to the Oklahoma  Indigent  Defense  System for each of those  trials.  Additionally,   I would  like to know  the amounts  paid  for experts  and investigators in each of the state  trials  and how  many  hours  work  was required  by each expert  and investigator?

Third,  the number  of hours  you have  requested  for legal  research  on items  such as search  and seizure,  jury selection,  and the death  penalty  appear  to be issues  that undoubtedly  would  have  been researched  thoroughly prior  to the state  court  trials.  Can you explain  why you would  need  to do anything  other  than  update  your previous  research?  From  what I understand  of this case,  the facts  are the same.  The only  difference  is the federal  criminal  statute  which  your  client  is now  charged  with  violating.  Why  do you need  anything  other than  updating  your  previous  research?

KEB010540

Mr. John David Echols
February 22, 2005
Page Two

Fourth, other than service of subpoenas, for what purpose do you anticipate using an investigator? Can you not use the documents which you obtained through the state court investigators? Also, you have indicated a fact investigator will charge less than a mitigation investigator. In addition, please explain why you anticipate a higher per hourly rate for the mitigation investigator vs. the fact investigator.

It appears the Magistrate Judge has, on at least two occasions, advised you that your budget request should be specific enough for this court to determine what legal services you intend to provide. While Judge White entered an order, prior to my assignment of this case, authorizing all motions and pleadings to be filed ex parte and under seal, this court is prepared to modify that order if counsel does not disclose sufficient information to justify the budget submitted. See 18 US.c. ~ 3006A(d)(4)(D). To the extent you have dealt with what I believe to be the essential facts of this case in two state prosecutions, I assume you have developed a detailed strategy for the defense (e.g., how much time you plan to spend each week on this case and exactly what task each attorney will be assigned in preparation for this federal case).

Finally, regarding your Sixth Motion for Funding of Expert, 21 US.C. ~ 848(q)(9) provides "[n]o ex parte proceeding, communication, or request may be considered pursuant to this section unless a proper showing is made concerning the need for confidentiality." As I understand the history of this matter, you have litigated the central facts of this case in two state court proceedings, using many of the experts you are now requesting authority to engage. What, if anything, is unique about the federal case that would prevent disclosure of your intent to rehire the same individuals (e.g., would such revelation divulge attorney/client privilege or work product)? See 18 US.C. _ (d)(4)(D). It appears this information might actually help resolve this case more expeditiously by allowing the government an earlier opportunity to object to the admissibility and perhaps allowing the court to rule on the admissibility issues prior to expenditure offunds for experts which might not be allowed to testify at trial.

I request you give this inquiry your earliest possible attention.

Sincerely,

James H. Payne

cc:    Mr. Roger Hilfiger
       Attorney at Law
       P.O. Box 791
       Muskogee, OK 74402

KEB010541

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | **Case No. 6:04-CR-00115-JHP-SPS** |
| | ) | |
| **KENNETH EUGENE BARRETT,** | ) | |
| | ) | |
| *Defendant.* | ) | |

**EXHIBIT 66**



INVESTIGATIVE SERVICES

364 SOUTH FRONT STREET
MEMPHIS, TN 38103
PHONE (901) 526-6576
FAX (901) 523-9281

September 24, 2008

Mr. Tivon Schardl
Asst. Federal Defender
Office of the Federal Defender
Eastern District of California
801 I Street, 3rd Floor
Sacramento, CA  95814

Re:  *United States vs. Kenneth Eugene Barrett*
CR 04-115-JHP

Dear Mr. Schardl:

After our conversation this past Friday and receipt of your letter dated September 18, 2008, we have checked our records and have no record that we ever conducted any investigative work on behalf of Kenneth Barrett. I have spoken with Glori Shettles, one of our mitigation specialists, and she recalls receiving a telephone call from an Assistant Federal Defender in Oklahoma informing her that the Assistant Federal Defender was going to recommend Ms. Shettles' services to John Echols. I also recall having a brief conversation with Mr. Echols where he also expressed a desire to use our services; however, we heard nothing further from him.

I am sorry, but at this point we have no records in our office regarding Kenneth Barrett. If I can be of further service, please do not hesitate to contact me.

Sincerely,

Ronald L. Lax

RLL:nb

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | **Case No. 6:04-CR-00115-JHP-SPS** |
| | ) | |
| **KENNETH EUGENE BARRETT,** | ) | |
| | ) | |
| *Defendant.* | ) | |

---

**EXHIBIT 67**

---

## DECLARATION OF JULIA O'CONNELL

I, Julia O'Connell, declare the following:

I am currently the Federal Defender for the Northern and Eastern Districts of Oklahoma. I am licensed to practice law in the State of Oklahoma, the various federal district courts in Oklahoma, and the United States Court of Appeals for the Tenth Circuit.

I am familiar with issues surrounding the appointment of counsel for Kenneth Eugene Barrett in his federal capital trial in the Eastern District of Oklahoma. At the time Mr. Barrett was charged, I was an Assistant Federal Defender. Paul Brunton was the Federal Defender for the Northern and Eastern Districts. When Mr. Barrett was initially charged, we received notice that the Court intended to appoint our office to represent him. Mr. Brunton and I met with Judge Payne regarding Mr. Barrett's representation, because we did not feel our office could effectively represent Mr. Barrett, due to the fact that our office was very small and we were already appointed in another death penalty case that we were preparing for trial. *United States v. Edward Leon Fields,* No. CR-03-73-RAW. The *Fields* case was taxing our office resources and I was the only trial lawyer in the office with death penalty trial experience. We explained to Judge Payne that we did not feel it was feasible for our office to effectively represent Mr. Barrett because I was already representing Mr. Fields in his pending capital case.

Mr. Brunton and I asked that John Echols– who represented Mr. Barrett throughout his state court prosecution and had already effectively tried the case (twice)–

1

and Rob Nigh of Tulsa-- who had federal death penalty experience in the Timothy

McVeigh case-- be appointed to represent Mr. Barrett.  Both Mr. Echols and Mr. Nigh are

highly qualified capital attorneys.  Based on discussions Mr. Brunton and I had with these

two lawyers, we knew they were willing to represent Mr. Barrett. We asked Mr. Echols

and Mr. Nigh if they would accept appointment in the Barrett case because we knew that

the government would likely seek the death penalty against Mr. Barrett, and we knew our

office could not accept the case because of the other pending capital case.  Thus, we

wanted to get commitments from well-qualified lawyers who were willing to be

appointed for Barrett's federal capital trial, so that we could assist the Court by

recommending attorneys we felt the judge could rely on to try the case effectively as an

alternative to the Federal Public Defender.

Judge Payne initially indicated that he wanted our office appointed, but Mr.

Brunton told him that I was the only attorney in the office with capital trial experience

and that I could not effectively handle two capital trials scheduled so closely to one

another.  This led to a discussion of the statutory requirement to appoint "learned

counsel" as first chair.  Judge Payne or his staff had evidently researched the issue, and

the Judge explained that he felt "learned counsel" was not defined in the materials he had

reviewed.  Judge Payne further explained that it seemed that the federal death penalty

cases that were being filed in Oklahoma were being prosecuted in the Eastern District,

and he expressed the idea that if counsel from the Eastern District were appointed, that

2

lawyer or lawyers could then take other death penalty cases filed in the Eastern District in the future.

My recollection is that Judge Payne did not appoint Mr. Nigh to represent Mr. Barrett. Instead, he appointed John Echols and Roger Hilfiger, the former United States Attorney for the Eastern District, as Mr. Barrett's lawyers. Mr. Echols eventually withdrew from the case. Judge Payne elevated Roger Hilfiger to first chair and appointed Bret Smith second chair. To my knowledge, Mr. Smith had no capital experience.

On June 21, 2005, I forwarded copies of orders the district court had issued in *United States v. Fell*, No. 2:01-CR-12-01 from the District of Vermont regarding fact-specific voir dire in capital cases to Mr. Hilfiger. I sent these orders to him hoping it would impress upon him the importance of mitigation in a capital case, because I suspected that the Barrett trial attorneys were not fully versed on how to investigate and utilize mitigation evidence. At the time I sent the e-mail, neither of the Barrett attorneys had consulted with me regarding the case.

Mr. Hilfiger called my office on June 30, 2005. I was away from the office , so he left me a voice message, asking if my mitigation specialist was going to be in Muskogee in the future and whether she would be willing to meet with him to discuss mitigation. Although I do not remember the exact wording of his message, I remember that it alarmed me. I got the distinct impression that Mr. Hilfiger did not know what was expected from a defense lawyer during the punishment phase of a federal capital trial.

3

The message led me to believe Mr. Hilfiger thought "mitigation" merely entailed a short meeting with my mitigation specialist (who was in no way involved in or familiar with his client's case) within a few weeks of commencement of trial. I suspected that Mr. Hilfiger did not understand the nature, value or extent of adequate, effective death penalty mitigation. I was taken aback by Mr. Hilfiger's inquiry, because Mr. Barrett's trial was imminent, and there was not sufficient time to do an adequate mitigation investigation. At a minimum, in my opinion, it would take a mitigation investigator or investigators at least six months to conduct an adequate penalty phase investigation.

I responded by e-mail on July 3, 2005, when I returned to the office and received his message. My e-mails to Mr. Hilfiger are attached to this declaration. In my July 3 e-mail response to Mr. Hilfiger, I gave him contact information for Dick Burr, one of the federal capital resource attorneys. I gave him Mr. Burr's contact information because I knew Mr. Burr to be an extremely competent lawyer in the area of death penalty cases, and knew that he was willing to help every lawyer who sought his assistance. I do not know whether Mr. Hilfiger ever contacted Mr. Burr or any other capital resource counsel regarding a mitigation specialist. In any event, as mentioned above, since Mr. Barrett's trial was to commence shortly, there was no time for an adequate second stage investigation if it hadn't been substantially completed on June 30, even if Mr. Hilfiger had been able to secure the services of a mitigation investigator or investigators at that late date.

4

I declare under penalty of perjury that the foregoing declaration is true and correct.

Executed by me this 28 day of February , 2009, in

Tulsa County, Oklahoma.

Julia O'Connell

5

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | **Case No. 6:04-CR-00115-JHP-SPS** |
| | ) | |
| **KENNETH EUGENE BARRETT,** | ) | |
| | ) | |
| *Defendant.* | ) | |

---

**EXHIBIT 68**

---

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

UNITED STATES OF AMERICA,                )
                                         )
        *Plaintiff,*                       )
                                         )
v.                                       )    Case No. CR-00-21-$\cancel{B}$ S
                                         )
THOMAS DOSS GANN,                        )
RALPH DOUGLAS GANN,                      )
KAREN JEAN REAL and                      )
IRENE MARIE GANN also known              )
as Irene Baker,                          )
                                         )
        *Defendants.*                     )

FILED
EASTERN U.S. DISTRICT COURT
DISTRICT OF OKLAHOMA
06 MAR -1 PM 3: 08
WILLIAM B. GUTHRIE. CLERK
BY_____
DEPUTY CLERK

## MOTION FOR REDUCTION OF SENTENCE
## FOR DEFENDANT KAREN JEAN REAL
## PURSUANT TO RULE 35

COMES NOW the plaintiff, the United States of America, by and through Sheldon J.

Sperling, United States Attorney for the Eastern District of Oklahoma, and D. Michael

Littlefield, Assistant United States Attorney for the Eastern District of Oklahoma, and moves this

Honorable Court for a reduction of the sentence of Karen Jean Real pursuant to Rule 35(b),

Federal Rules of Criminal Procedure, for the following reasons:

Rule 35(b)(2) states, in pertinent part, upon the government's motion:

> made more than one year after sentencing, the court may reduce the
> sentence if the defendant's substantial assistance involved (C)
> information, the usefulness of which could not reasonably have
> been anticipated by the defendant until more than one year after
> sentencing and which was promptly provided to the government
> after its usefulness was reasonably apparent to the defendant.

Karen Real testified on behalf of the government in the case of *United States v. Kenneth Eugene Barrett*, and her testimony, in the estimation of the undersigned, constituted substantial assistance warranting a reduction of sentence.

The government filed a complaint alleging capital murder against Kenneth Eugene Barrett in September 2004. In preparation for the Indictment, the undersigned caused Karen Jean Real to be writted to the Eastern District of Oklahoma from the Federal Correctional Institution in which she was incarcerated. The undersigned was aware that Ms. Real had common associations with Barrett. It was hoped that Ms. Real had information that would be of assistance in the prosecution of Kenneth Eugene Barrett and that she would be willing to provide that information. Upon Ms. Real's return to the Eastern District of Oklahoma, the undersigned met with her and learned that Ms. Real had, in fact, associated directly with Mr. Barrett for a substantial period of time during the calendar years of 1997 and 1998. Ms. Real was willing to speak truthfully and freely about information relating to Barrett, his drug dealing activities, and his involvement with firearms. Ms. Real spoke freely, openly, and in the opinion of the undersigned, truthfully. The undersigned advised Ms. Real that there was the possibility that she would be utilized as a witness in the ultimate trial against Kenneth Eugene Barrett. She expressed a willingness to testify without hesitation or reluctance.

One of the strategies utilized by the government in the Barrett prosecution was to establish Barrett's substantial drug distribution activities as well as his extensive involvement with firearms and his willingness to utilize those firearms in the advancement of his drug distribution activities, including the utilization of those firearms against law enforcement officials. Ms. Real testified regarding Mr. Barrett's providing her with methamphetamine as well

2

as his commercial methamphetamine business operations of which she was aware. Ms. Real further testified freely at his trial regarding the firearms that Barrett had in his residence. Her testimony revealed that Barrett always carried firearms with him in relation to his drug distribution activities. Ms. Real further testified that any time a vehicle with which Barrett was unfamiliar would approach his residence, he would retrieve a firearm.

Ms. Real met on more than one occasion in preparation for trial testimony with the undersigned. During those pretrial meetings, Ms. Real was fully cooperative, answering all questions to the best of her ability, and suggesting areas about which she might be able to testify which could potentially be beneficial to the government. Especially impressive to the undersigned, Ms. Real freely advised when she was unaware of information in response to specific questions asked of her. While Ms. Real spoke freely about matters of which she was familiar and aware, it was clear that Ms. Real restricted herself to only those items about which she absolutely certain. She never "guessed" in an effort to enhance her testimony, even though it might enure to her benefit. Ms. Real was uncertain as to the exact dates of her involvement with Barrett and her observations of his commercial drug operations. She limited the time frames about which she was able to testify to periods of which she was certain, even though she knew there was the possibility that the Court could rule those time periods to be too remote to allow her testimony even though such would limit her ability to assist the government to her personal disadvantage. The undersigned has no doubt that Ms. Real's testimony was truthful and was limited to subject matters about which she was certain.

While Ms. Real's testimony was delayed for a substantial period of time, Ms. Real presented the information at the earliest possible opportunity for her to assist the government.

3

The government first presented this matter to a grand jury in November 2004. Ms. Real, at approximately that time, was first approached by the government regarding the knowledge she had involving Kenneth Eugene Barrett. At that time, Ms. Real spoke freely and continued to do so during the duration of her assistance to the government.

While ultimately multiple civilian witnesses spoke of Barrett's drug dealing activities, his use of firearms, and his threats to law enforcement, Ms. Real was the first to do so. Her willingness to provide truthful testimony regarding Barrett's activities made it easier for the subsequent witnesses to come forward . She was the first and cooperated willingly and courageously. Her assistance was substantial and created an environment in which others could cooperate as well. She is clearly deserving of a reduction in her sentence in consideration of her efforts.

Respectfully submitted,

SHELDON J. SPERLING
United States Attorney

D. MICHAEL LITTLEFIELD, OBA # 5461
Assistant United States Attorney
1200 West Okmulgee
Muskogee, OK 74401
(918) 684-5100

## CERTIFICATE OF MAILING

I hereby certify that on this 1st day of March, 2006, a true and correct copy of the foregoing was mailed, with proper postage fully prepaid thereon, to: Michael Abel, Attorney for Karen Real, One West Third Street, Suite 1225, Tulsa, OK 74103-3532.

DML:ljh

4

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

UNITED STATES OF AMERICA,              )
                                       )
          Plaintiff,                   )
                                       )
v.                                     )     No. CR-00-21-FHS
                                       )
KAREN JEAN REAL,                       )
                                       )
          Defendant.                   )

<u>**ORDER**</u>

The government has moved the court pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure for an order reducing the sentence of incarceration previously imposed upon Defendant for the following convictions: (1) conspiracy to manufacture, possess with intent to distribute and distribute methamphetamine in violation of 21 U.S.C. § 846 (Count One), (2) maintaining a place for the purpose of manufacturing, distributing and using methamphetamine in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2 (Count Three), and (3) possessing a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c) (Count Five). Having considered the government's motion, the court concludes a reduction of Defendant's sentence of incarceration is warranted under the facts and circumstances as outlined in the government's motion.

Defendant was originally sentenced to a term of 108 months of incarceration on Count One, a concurrent term of 60 months of incarceration on Count Three, and a consecutive term of 60 months of incarceration on Count Five. The total sentence imposed was 168 months (fourteen years) of incarceration. Defendant has been in federal custody since March 2000 - some six years into her fourteen-year sentence. The government's motion under Rule 35 is

1

based upon Defendant's cooperation and testimony during the investigation and subsequent trial of Kenneth Barrett. During the course of the prosecution of Kenneth Barrett, Defendant provided the government with significant information about Kenneth Barrett – information relevant to his drug dealing activities and his involvement with firearms. In the court's opinion, substantial assistance was provided by Defendant in the government's successful federal court prosecution of Kenneth Barrett. Under these circumstances, the court finds Defendant is entitled to some sentencing relief for her substantial assistance provided to the federal authorities.

Turning to the extent of the reduction, the court finds that after having considered the factors enumerated under the policy statement of United States Sentencing Guideline § 5K1.1, a reduction in Defendant's sentence to time served on each of the three counts of conviction is warranted. Consequently, it is ordered that Defendant's sentence be reduced to time served on each of Counts One, Three, and Five, and that Defendant be released from custody forthwith. The original terms of supervised release imposed in this case shall remain in effect.

**IT IS SO ORDERED** this 25th day of April, 2006.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma

2

AO 245C (Rev. 12/03) Amended Judgment in a Criminal Case    Case 6:00-cr-00021-FHS    Document 160    Filed in USDC ED/OK on 05/11/2006    Page 1 of 6 (NOTE: Identify Changes with Asterisks(*))
Sheet 1

# UNITED STATES DISTRICT COURT

Eastern _____    District of _____ Oklahoma

| UNITED STATES OF AMERICA | AMENDED JUDGMENT IN A CRIMINAL CASE |
|---|---|

**V.**

KAREN JEAN REAL

Case Number:    CR-00-00021-003-S

USM Number:    03760-063

**FILED**

**MAY 1 1 2006**

**Date of Original Judgment:** February 27, 2001
(Or Date of Last Amended Judgment)

Michael A. Abel
Defendant's Attorney

WILLIAM B. GUTHRIE
Clerk, U.S. District Court

By: _____
Deputy Clerk

## Reason for Amendment:

☐ Correction of Sentence on Remand (18 U.S.C. 3742(f)(1) and (2))

■ Reduction of Sentence for Changed Circumstances (Fed. R. Crim. P. 35(b))

☐ Correction of Sentence by Sentencing Court (Fed. R. Crim. P. 35(a))

☐ Correction of Sentence for Clerical Mistake (Fed. R. Crim. P. 36)

☐ Modification of Supervision Conditions (18 U.S.C. §§ 3563(c) or 3583(e))

☐ Modification of Imposed Term of Imprisonment for Extraordinary and Compelling Reasons (18 U.S.C. § 3582(c)(1))

☐ Modification of Imposed Term of Imprisonment for Retroactive Amendment(s) to the Sentencing Guidelines (18 U.S.C. § 3582(c)(2))

☐ Direct Motion to District Court Pursuant ☐ 28 U.S.C. § 2255 or ☐ 18 U.S.C. § 3559(c)(7)

☐ Modification of Restitution Order (18 U.S.C. § 3664)

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

■ was found guilty on count(s)    1, 3, and 5 of the Superceding Indictment.
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21:846 | Conspiracy to Manufacture, Possess w/ Intent to Distribute, and Distribution of Methamphetamine. | March 2, 2000 | 1 |
| 21:856(a)(1) & 18:2 | Maintaining a Place for the Purpose of Manufacturing, Distributing and Using Methamphetamine. | March 2000 | 3 |
| 18:924(c) & 2 | Possession of a Firearm During and in Relation to a Drug Trafficking Offense. | January 12, 1999 | 5 |

The defendant is sentenced as provided in pages 2 ____ through 6 ____ of this judgment. The sentence is imposed pursuant to the provisions of 18 U.S.C. § 3553(a).

☐ The defendant has been found not guilty on count(s) _____

■ Count(s)   6 and 7 of the Superseding Indictment    ☐ is   ■ are   dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

April 25, 2006
Date of Imposition of Judgment

_____
Signature of Judge

FRANK H. SEAY, U.S. DISTRICT JUDGE
Name and Title of Judge

EOD:   5/11/06
Date

AO 245B (Rev. 12/03) Amended Judgment in a Criminal Case     Filed in USDC ED/OK on 05/11/2006     Page 2 of 6
Sheet 2 — Imprisonment     (NOTE: Identify Changes with Asterisks (*))

Judgment — Page __2__ of __6__

DEFENDANT:        KAREN JEAN REAL
CASE NUMBER:   CR-00-00021-003-S

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of :
* Time Served on each of Counts One, Three and Five, and that the defendant be released from custody forthwith.

☐ The court makes the following recommendations to the Bureau of Prisons:

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

  ☐ at _____ ☐ a.m. ☐ p.m. on _____ .

  ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

  ☐ before 2 p.m. on _____ .

  ☐ as notified by the United States Marshal.

  ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

a _____ with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245C (Rev. 12/03) Amended Judgment in a Criminal Case
Sheet 3 — Supervised Release                                                    (NOTE: Identify Changes with Asterisks (*))

Judgment—Page ___3___ of ___6___

DEFENDANT:       KAREN JEAN REAL
CASE NUMBER:     CR-00-00021-003-S

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of
5 years on each of Counts One and Three, and a term of 3 years on Count Five.  Said terms of supervised release shall run concurrently.

        The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not unlawfully possess a controlled substance.  The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐  The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse.  (Check, if applicable.)

■  The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.  (Check, if applicable.)

☐  The defendant shall cooperate in the collection of DNA as directed by the probation officer.  (Check, if applicable.)

☐  The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer.  (Check, if applicable.)

☐  The defendant shall participate in an approved program for domestic violence.  (Check, if applicable.)

        If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

        The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)   the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall support his or her dependents and meet other family responsibilities;

5)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)   the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)  the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)  the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

13)  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record, personal history, or characteristics and shall permit the probation officer to make such notifications and confirm the defendant's compliance with such notification requirement; and

14)  the defendant shall submit to urinalysis testing as directed by the probation officer.

AO 245C    (Rev. 12/03) Amended Judgment in a Criminal Case
         Sheet 3C — Supervised Release                                    (NOTE: Identify Changes with Asterisks (*))

Judgment—Page ___4___ of ___6___

DEFENDANT:        KAREN JEAN REAL
CASE NUMBER:      CR-00-00021-003-S

## SPECIAL CONDITIONS OF SUPERVISION

(1)     The defendant shall participate in a program approved by the United States Probation Office for the treatment of narcotic addiction, drug dependency, or alcohol dependency, which will include testing to determine if she has reverted to the use of drugs or alcohol. If it is determined by the Probation Officer that the defendant is in need of a residential drug/alcohol treatment program, the defendant shall participate in such treatment as directed by the Probation Officer and remain in the treatment facility until discharged.

AO 245C    (Rev. 12/03) Amended Judgment in a Criminal Case
         Sheet 3C — Supervised Release

Judgment—Page ___4___ of ___6___

AO 245C  (Rev. 12/03) Amended Judgment in a Criminal Case
　　　Sheet 5 — Criminal Monetary Penalties                                                    (NOTE: Identify Changes with Asterisks (*))

Judgment — Page ___5___ of ____6____

DEFENDANT:　　　　KAREN JEAN REAL
CASE NUMBER:　　　CR-00-00021-003-S

## CRIMINAL MONETARY PENALTIES

The defendant must pay the following total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | __Assessment__ | __Fine__ | __Restitution__ |
|---|---|---|---|
| **TOTALS** | $ 300.00 | $ | $ |

☐　The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case* (AO 245C) will be
　　entered after such determination.

☐　The defendant shall make restitution (including community restitution) to the following payees in the amount listed below.

　　If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise
　　in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid
　　before the United States is paid.

| __Name of Payee__ | __Total Loss*__ | __Restitution Ordered__ | __Priority or Percentage__ |
|---|---|---|---|
| | | | |

| **TOTALS** | $ _____ | $ _____ | |
|---|---|---|---|

☐　Restitution amount ordered pursuant to plea agreement  $ _____

☐　The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the
　　fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject
　　to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐　The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

　　☐　the interest requirement is waived for　　☐ fine　　☐ restitution.

　　☐　the interest requirement for the　　☐ fine　　☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or
after September 13, 1994, but before April 23, 1996.

AO 245C    (Rev. 12/03) Amended Judgment in a Criminal Case
               Sheet 6 — Schedule of Payments                                                       (NOTE: Identify Changes with Asterisks (*))

Judgment — Page ___6___ of ___6___

DEFENDANT:          KAREN JEAN REAL
CASE NUMBER:        CR-00-00021-003-S

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

A   ☐   Lump sum payment of $ _____ due immediately, balance due

        ☐   not later than _____ , or
        ☐   in accordance with   ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

B   ■   Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ■ F below); or

C   ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
        _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D   ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
        _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
        term of supervision; or

E   ☐   Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
        imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F   ■   Special instructions regarding the payment of criminal monetary penalties:

        A special assessment of $100 on each of Counts One, Three and Five, for a total of $300, is due immediately and shall be made
        payable to the U.S. Court Clerk for the Eastern District of Oklahoma, P.O. Box 607, Muskogee, OK 74402.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due
during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons'
Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Joint and Several Amount, and
    corresponding payee, if appropriate.

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☐   The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
(5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF OKLAHOMA**

UNITED STATES OF AMERICA,    )
                      )
           *Plaintiff,*   )
                      )
v.                     )     **Case No. 6:04-CR-00115-JHP-SPS**
                      )
KENNETH EUGENE BARRETT,   )
                      )
         *Defendant.*  )

---

**EXHIBIT 69**

---

Artery clearing breakthrough from Nobel Prize Winner. Drops high blood pressure by as much as 60 points. **Bottom Line**

Sat, Feb 28 2009

# TAHLEQUAH DAILY PRESS Online NEWS

Currently
**27**
H: 31 L: 19
Click for more weather

travelocity
Choose from over

**Resources**

Print this story

E-mail this story

Post to del.icio.us

Discuss this story

**Ads by Google**

Oklahoma Teacher Jobs

Rug Cleaning Oklahoma

Florist Enid Oklahoma

Flowers Moore Oklahoma

Published July 27, 2007 09:45 am - MUSKOGEE – Sheldon J. Sperling, U.S. attorney for the Eastern District of Oklahoma, Thursday today that the U.S. Court of Appeals, Tenth Circuit, has unanimously affirmed the conviction and death sentence of Kenneth Eugene Barrett, 47, Sallisaw.

## Barrett death sentence upheld

**Press staff reports**

MUSKOGEE – Sheldon J. Sperling, U.S. attorney for the Eastern District of Oklahoma, Thursday today that the U.S. Court of Appeals, Tenth Circuit, has unanimously affirmed the conviction and death sentence of Kenneth Eugene Barrett, 47, Sallisaw.

"Barrett was sentenced on Nov. 18, 2005, to death for intentionally killing a state law enforcement officer engaged in the performance of his duty," Sperling said in a press release.

Barrett was also sentenced to life imprisonment without possibility of release for both using or carrying a firearm during and in relationship to a drug trafficking crime with death resulting and using or carrying a firearm during and in relationship to a federal crime of violence, with death resulting.

"Out of a dark, murderous tragedy, we see today a bright ray of judicial light," said Sperling. "The appellate road is long and challenging. We will continue the battle to uphold courageous jury and judicial decisions in this epic case.

"I am so thankful for a discerning judge, jury, and appellate panel. It's clearly affirmed. There is no open season on law enforcement in the Eastern District of Oklahoma."

Sperling said he is grateful to Mike Littlefield for his work as chief prosecutor in the case; and to Sequoyah County Sheriff Johnny Philpot, who was instrumental in identifying key witnesses who could prove Barrett acted with premeditation.

"The Oklahoma State Bureau of Investigation, Drug Enforcement Administration, Bureau of Alcohol, Tobacco, Firearms, and Explosives, The Sequoyah County Sheriff's Office, and other agents and investigators worked together to investigate this case and see justice done so far," said Sperling.

Barrett was sentenced in 2005 for killing Oklahoma Highway Patrol Trooper David "Rocky" Eales, 49, by shooting him in the arm and chest outside Barrett's home. Eales and other law enforcement officials were conducting a raid on Barrett's home near Vian when the shooting occurred.

Barrett's lawyers have argued Barrett was defending his home and son against people he could not see in the dark; and that to prove the suspect intentionally killed a law enforcement officer, prosecutors had to prove Barrett knew the person he was shooting was a law enforcement officer, according to briefs filed in Barrett's original appeal.

Prosecutors argued that several witnesses testified Barrett "expected law enforcement officers to come upon his premises and that he intended to kill as many of them as he could rather than allowing himself to be taken into custody."

Barrett's first state trial ended in a hung jury; and during his second state trial, jurors found Barrett guilty of manslaughter in the death of Eales and felony assault and battery with a firearm for wounding another trooper.

**I need affordable auto insurance.**
My age is:
- 16-19 years old
- 20-24 years old
- 25-29 years old
- 30-34 years old
- 35-39 years old
- 40-49 years old
- 50+ years old

Go »

I have had my driver's license for:
- 1-5 years
- 11-15 years
- 21-25 years
- 6-10 years
- 16-20 years

RateMarketplace

BARDELL & BARDELL Insurance Agency
Tahlequah, OK  918-456-6129  Click here for more info
Serving All of Oklahoma

monster
Coast to Coast. Around the Corner
Find your perfect car
Select A Make    Search

**Find a business:**
Business name or type...
Hyperlocal
**Location:**
Tahlequah, OK
SEARCH
Maps, Menus, Store hours, Coupons, and more...

**Popular business directory searches**

**Premium Jobs**

**Help Wanted:**
Oaks Mission- Now accepting Applications for High School Secretary. Position open until filled. Send resumes to: Wyma...>MORE

**Help Wanted:**
Restaurant Of The Cherokees now taking applications for full and part time help. No Phone Calls Please!...>MORE

**Help Wanted:**
The Salvation Army Heart O' Hills Camp and Conference Center is hiring for the summer season. We have part-time kitchen ...>MORE

**Help Wanted:**
Wanted: Front Office Medical Help plus cleaning. Call 458-9888...>MORE

**Help Wanted:**
Part-time Caregiver needed. $8.00 hour. (918)456-6290...>MORE

**Help Wanted:**
CNA/ CHHA immediate openings in Tahlequah Area. Call 351-8652...>MORE

**Help Wanted:**
The City of Tahlequah is accepting applications for a Part-time Computer Tech in the Managerial Department. Application...>MORE

See all ads

**Premium cars**

**SELL YOUR AUTO HERE**
CONTACT BRENDA OR HANNAH TO PLACE YOUR AUTO FOR SALE HERE! 918-456-8833 extension 10 or 11...>MORE

**Used Car For Sale:**
1998 Pontiac Sunfire, standard shift, good condition, good mileage. $2500 OBO 456-2707...>MORE

See all ads

**Premium Homes**

**House For Rent:**

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | **Case No. 6:04-CR-00115-JHP-SPS** |
| | ) | |
| **KENNETH EUGENE BARRETT,** | ) | |
| | ) | |
| *Defendant.* | ) | |

---

**EXHIBIT 70**

---

*By Wanda Freeman*

TIMES RECORD • <u>WFREEMAN@SWTIMES.COM</u>

One of two Oklahoma residents sentenced Wednesday for federal drug offenses received a sentence break because she cooperated in another case, the prosecutor announced.

Brandie Zane Price, 28, and Leslie Barnard Johnson, 40, both of Muldrow, were sentenced in connection with a methamphetamine possession case prosecuted in U.S. District Court for the Eastern District of Oklahoma in Muskogee.

Each pleaded guilty in April to one count of possession of more than 500 grams of a mixture or substance containing a detectable quantity of methamphetamine with intent to distribute.

The offenses took place between May 2006 and February 2007 in Sequoyah County. The Sequoyah County Sheriff's Office, the Fort Smith Police Department, the Cherokee Nation Marshal Service and the federal Bureau of Alcohol Tobacco, Firearms and Explosives investigated the case.

The offense is punishable by 10 years to life in prison and/or a fine of up to $4 million, plus at least five years of supervised release to follow the prison term, according to plea agreements on record with the court.

Price was sentenced to 60 months in prison plus 36 months of supervised release and ordered to pay a $100 special assessment.

Johnson was sentenced to 70 months in prison plus 36 months of supervised release and ordered to pay $100 special assessment.

Price's sentence was "significantly impacted" by her testimony in the government's case against Kenneth Eugene Barrett, U.S. Attorney Sheldon J. Sperling stated in a news release.

"In this case, the court's sentence reaffirmed a very important principle. Truthful cooperation with law enforcement officers should be encouraged and rewarded," Sperling commented.

Barrett was sentenced to death in December 2005 for the September 1999 killing of Oklahoma State Trooper David "Rocky" Eales during a raid on his rural McKey home. The 10th U.S. Circuit Court of Appeals affirmed his conviction and sentence July 25.