**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **KENNETH EUGENE BARRETT,** | ) |
| | ) |
| *Movant,* | ) |
| | ) |
| **v.** | ) |
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| *Respondent.* | ) |

---

**EXHIBIT 1**

---

## DECLARATION OF LEONARD POST

I, Leonard Post, a person over eighteen (18) and competent to testify, mindful of the penalties of perjury, declare as follows:

1. I am a licensed investigator retained by the Federal Defenders Office of the Eastern District of California to assist in a postconviction investigation on behalf of Kenneth Eugene Barrett, a person convicted of capital murder in the Eastern District of Oklahoma and currently under sentences of death and life without possibility of parole.

2. On May 2, 2015, I interviewed Juan Beal a person over the age of eighteen (18) and competent to testify at his home in Del City, Oklahoma.

3. The following is a true and correct accounting of the statements made to me on that date by Juan Beal.

Mr. Beal had known David "Rocky" Eales since Rocky was a police officer in Mid City, OK, while Mr. Beal was so employed in Del City, adjoining communities on the outskirts of Oklahoma City. They were friends.

Mr. Beal retired from the DEA and the Pittsburg sheriff's dept. in 2003 after a serious vehicular accident. He drove the special truck that was equipped with Biohazard equipment for searches of suspected drug labs. He then worked for the Dist. 27 Drug Task Force ["DTF"] from 2007-2012.

1

Mr. Beal says Frank Lloyd has animosity toward Mr. Beal because he got Lloyd fired when Brian Kuester beat Jerry Moore in the District 27 District Attorney's election. Under Moore, Frank Lloyd had had the power that the first assistant district attorney should have had, and he abused it. When Lloyd complained to Moore that the first assistant was demanding monthly audits, the audits were terminated. When Mr. Beal took charge after Lloyd was let go, Mr. Beal instituted audits. Mr. Beal believes Monk Sanders is a cousin of Frank Lloyd. According to Mr. Beal, Lloyd walked on a razor blade between legal and illegal conduct.

Mr. Beal advised that if Clint Johnson told him the sun was out that he would have to look out the window to see for himself because he did not trust him at all. Lloyd and Johnson are the only people in law enforcement he knew of who met with their CI's individually without a second officer present. They had their own CI's and met them separately. Lloyd and Larry Lane are very close and neither is honest.

Karen Simms was the Drug Task Force secretary and knows a lot. She still works for the D.A.'s office in Sallisaw. Simms has control of the C.I. packets, which are kept on the third floor of the courthouse in one of three unused offices that were once part of the county jail that was located there.

Lloyd has two secret rooms in his house, one upstairs in his bedroom with an escape route, and one in which he stores old DTF files and reports.

According to Mr. Beal, District Attorney Diane Barker-Harrold thrived on publicity. There was glory in kicking down doors. There was "no glory" in announcing themselves and saying "Ken Barrett come out." She was all about glory.

Mr. Beal was notified of the raid on Kenneth Barrett's place probably the day before. His DEA team was supposed to be there to conduct the search of the premises after Ken Barrett was arrested. It had been scheduled for 6 A.M. Mr. Beal got a call from Lloyd at 10 PM saying it was moved up to midnight. Mr. Beal told him he could not get the truck and team together by that time. Lloyd said they would go ahead with it anyway, that they had to do it "tonight." The next call he got was a call from Lloyd saying Rocky had been killed and Barrett shot. Mr. Beal had had a gut feeling that a nighttime raid made the risk higher. He would "not have done it at midnight, period." The call came from Lloyd because Beal was the liaison between the DTF and the DEA.

Upon arriving at the crime scene, Beal was kept outside the crime scene tape. He recalls crying and waiting to go in. OSBI had to get a new search warrant

3

to conduct a search for the homicide investigation.  Once they were done, Diane

Barker-Harrold asked "us to conduct the search."

When officers conducting a search find an address book (or a cell phone),

they call it the "Golden Fleece;" because it will often give the names of suppliers

and buyers. There should be a copy of the address book found in the search

incident to the warrant in the case file, circa 1999. According to Mr. Beal, there is

a DEA file, approximately six to eight inches thick.

Mr. Beal could not recall why he requested the address book from the

evidence room. He was positive he would not have requested it had he not been

asked to – that he would not risk "[messing] up the evidence." Mr. Beal had no

independent recollection of finding the straw that showed a residue of

methamphetamine.

When asked how we could find out if the address book had been removed

prior to his removing it, Mr. Beal advised that non-drug evidence is stored in a

locked repository in the basement in McAlister. He said he would have needed to

sign a log to get it.  He said he also gets a receipt when he signs something out and

the copy goes in the Barrett non-drug evidence file. The case # would begin MG,

followed by the year and the case file #.  All the receipts should be together.  Mr.

Beal described the DEA files on cases as follows:

4

DEA 6 – is a case report

DEA 7 – drug evidence report

DEA 7-A non-drug evidence report

The DEA 7 reports may not include who found a specific piece of evidence, but the DEA 6 would.

Mr. Beal repeated that he would "not have done it on his own," *i.e.,* that he would not have signed out the address book unless there was a specific request. Typically he would have slit open the envelope and later put it back in the slit bag and put that bag in a new one.

According to Mr. Beal, the prosecutor Michael Littlefield and Clint Johnson were very close and neither was trustworthy. Though Mr. Beal was excluded from the courtroom when the state trials were in session, he was around most days as he always had business with the Drug Task Force. Mr. Beal got the state prosecutors whatever they needed in the Barrett case, mostly evidence.

At the conclusion of the second trial, OHP people were coming to Mr. Beal more than before to get the federal prosecutors to take the case and charge it as a capital offense, so Mr. Beal "poured gasoline on the fire." He sent the United States Attorney for the Eastern District of Oklahoma, Sheldon Sperling, an e-mail from neither Beal's official nor his home computers. Beal would not say what

computer it was from, but he did say that he did not want to leave any trail behind. He did not save a copy. He tried to "shove" Sperling into taking the case. Darren Lane was assigned to investigate whether to prosecute the case federally. They didn't assign Beal because he was a federal officer and was intimately involved in the state case.

Right after the shooting, OHP investigators asked to interview the C.I. for the Barrett search and arrest warrants. Johnson, Lloyd and Diane Barker-Harrold refused. That refusal angered everyone in OHP and in law enforcement and they not only did not support Diane' in her re-election bid, but they worked against her.

4. I have no reason to believe that Agent Beal, if called to testify, would not testify as set forth above.

I declare under penalty of perjury that this six-page declaration is true and correct.

Executed by me this 24th day of June, 2015 in New York County, New York.

Leonard Post

NYS Investigator's License #110001455413

6