**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **KENNETH EUGENE BARRETT,** | ) |
| | ) |
| *Movant,* | ) |
| | ) |
| **v.** | ) |
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| *Respondent.* | ) |

**EXHIBIT 3f**

ORIGINAL

IN THE DISTRICT COURT OF SEQUOYAH COUNTY

STATE OF OKLAHOMA

SEQUOYAH COUNTY, OKLAHOMA
FILED
IN DISTRICT COURT

OCT 1 6 1997

BERNELL EDWARDS, COURT CLERK
BY _____ DEPUTY

STATE OF OKLAHOMA,                )
                                  )
                    Plaintiff,    )
                                  )
      vs.                         )    Case No. CF-97-86
                                  )
KENNETH EUGENE BARRETT,           )
                                  )
                    Defendant.    )

TRANSCRIPT OF PROCEEDINGS

PRELIMINARY HEARING

HAD ON THE

27th DAY OF AUGUST, 1997

IN SALLISAW, OKLAHOMA

BEFORE THE

HONORABLE DENNIS M. SPROUSE, SPECIAL JUDGE

REPORTED BY:

ARIC D. PTOMEY, CSR
Official Court Reporter
P.O. Box 1
Stratford, CA 93266
(209) 947-9035

DISTRICT COURT OF OKLAHOMA---OFFICIAL TRANSCRIPT

A-P-P-E-A-R-A-N-C-E-S

FOR THE PLAINTIFF:          MR. S. STEPHEN BARNES
                           Assistant District Attorney
                           Sequoyah County Courthouse
                           120 E. Chickasaw
                           Sallisaw, OK 74955


FOR THE DEFENDANT:         BILL ED ROGERS
                           Attorney at Law
                           Sallisaw, Oklahoma 74955


THE HONORABLE JUDGE:       DENNIS M. SPROUSE


THE COURT REPORTER:        ARIC D. PTOMEY, CSR

                    W I T N E S S E S

KEVIN OTTWELL testsifies:                          PAGE

     Direct Examination by Mr. Barnes.......      5
     Cross Examination by Mr. Rogers........     13


                    E X H I B I T S

STATE'S EXHIBITS

NO. 1 - Criminalist Examination Report -          4

NO. 2 - Report of Investigation -                11


                DISTRICT COURT OF OKLAHOMA---OFFICIAL TRANSCRIPT

P R O C E E D I N G S

AUGUST 27, 1997.

THE COURT:  Record reflect court is in session in the State of Oklahoma versus Kenneth Eugene Barrett of the case is CF-97-86.  State having filed application -- excuse me, Information, Unlawful Delivery of a Controlled Drug.

Mr. Steve Barnes is representing the State. Mr. Bill Ed Rogers is representing the defendant, who is appearing in person.

State, how do you announce?

MR. BARNES:  State is ready, Your Honor.

THE COURT:  Mr. Rogers, how does the defendant announce?

MR. ROGERS:  Defendant is present and ready, Your Honor.

THE COURT:  All right.  Who do you anticipate calling as witnesses in this case?

MR. BARNES:  Agent Kevin Ottwell.

MR. ROGERS:  Your Honor, I issued a subpoena Monday, I think, for Frank Lloyd.  Is he here?

MR. BARNES:  He's in the courthouse.

THE COURT:  Frank Lloyd.  Okay.  Did he get endorsed later?

DISTRICT COURT OF OKLAHOMA---OFFICIAL TRANSCRIPT

4

MR. ROGERS:  No.

MR. BARNES:  He's not on the list at all.

THE COURT:  Okay.  All right.  Then we're ready to proceed then.

Agent Ottwell, if you will go ahead and come on up.  I will swear you in.  Raise your right hand.

KEVIN OTTWELL,

was thereupon produced as a witness on behalf of the State and, having been first duly sworn on oath, was examined and testified as follows:

(Whereupon, State's Exhibit No. 1 was previously marked for identification.)

MR. BARNES:  Judge, at this time the State of Oklahoma would move to introduce into evident State's Exhibit Number 1, a certified copy of a criminal examination report in this case.  That being submitted to Title 22 section 751.

THE COURT:  Okay.  And has Mr. Rogers, did you receive that five days prior to today's date?

MR. ROGERS:  Yes, sir.  And we have no objections to -- I don't know exactly the day that we received it, but we don't have any objections to the

DISTRICT COURT OF OKLAHOMA---OFFICIAL TRANSCRIPT

admission.

THE COURT: All right. For the purposes of the Preliminary, the court will allow it to be admitted.

And are you ready to proceed?

MR. BARNES: Thank, Your Honor.

DIRECT EXAMINATION

BY MR. BARNES:

Q      Sir, would you state your name for the record, and spell your last name?

A      My name is Kevin Ottwell, O-t-t-w-e-l-l.

Q      Where are you employed, sir?

A      I'm employed at the Oklahoma Bureau of Narcotics and Dangerous Drugs as an agent.

Q      And how long have you been so employed?

A      Approximately, seven years in that capacity.

Q      Okay.  What are your duties and responsibilities as an agent with the Oklahoma Bureau of Narcotics?

A      My duties are to enforce Title 63 of the Oklahoma Statutes as it pertains to street drugs, non-prescription pharmaceutical drugs.

Q      Do you work in an undercover capacity on some occasions?

A      On some occasions, yes, I do.

Q      Were you working for the OBN on the 9th day of

December, 1996?

A    Yes, I was.

Q    And were you working in an undercover capacity on that day?

A    Yes, I was.

Q    Would you tell the court where you were and what you did?

A    On that particular day I had traveled from Tulsa to Sallisaw, Oklahoma, and I met with Detectives -- Sallisaw Police Detective Larry Blount and D.A. Investigator, Frank Lloyd, who had made arrangements for me to meet a cooperative individual.

Q    Okay.  And after you met this individual did you continue to work or operate in a covert operation?

A    I did.

Q    Where did you go.  Explain to the court what steps that you took in your investigation?

A    I spoke with the cooperating individual and, of course, Detective Blount, who explained to me that this cooperating individual could take me to an individual in Sequoyah County by the name of Kenny Barrett.

MR. ROGERS:  Your Honor, I object on the basis of him relating what Officer Blount told him on the basis of hearsay.

MR. BARNES:  Judge, it's not being admitted

for the truth of the matter asserted, but only to explain the steps that this officer took and why he took them.

THE COURT:  All right.  I'm going to overrule the objection, only in the matter that it will be admit for that reason.  It does not go to prove any of the elements.  And if you're attempting to do that, I will sustain these objections.  So long as you understand I am not considering them for truth of the matter.

MR. BARNES:  Yes, I understand.

MR. ROGERS:  Your Honor, can I say something in that connection?  I mean, I take it he's got -- well, maybe I should wait.  But his testimony is probably going to be that he's never met this individual and he -- I mean, they're laying the ground work that he is a known drug dealer by confidential informant.  And he's testifying as to hearsay, is what I'm getting at.

This officer here, says he traveled from Tulsa to Sallisaw and met with a cooperative individual which is going to give him the basis to go out and attempt to make a buy from this defendant.

That's the nature of my objection on the hearsay.  Because even though it doesn't go to the truth of it, like I said, he's got to have that information before I would be entitled to go out and -- I mean, I'm really anticipating what the rest of the testimony is

going to be.

THE COURT:  Well, let's hold it in abeyance then and see, and you can ask that to be stricken if that's the way it turns out.

MR. ROGERS:  That will be fine.

THE COURT:  You may proceed with your questioning.

Q       (By Mr. Barnes)  Agent, where did you and this cooperative individual go in Sequoyah County?

A       We traveled to what I knew to be the McKey Community.  -It was west and north of the town of Sallisaw in Sequoyah County.

Q       Did you go to a house?  Or where did you go?

A       You -- Counselor, we went to a tract of land in the area that I described north and west of Sallisaw, to a single-story wood frame cabin, a very small cabin I describe it.  That's the only thing I can describe it as.  Which I was told where I could fine the defendant.

Q       Okay.  When you got there did someone come out of that residence that you just described?

A       Yes, he did.

Q       Okay.  The person that came out of that residence, do you see them in the courtroom today?

A       Yes, I do.

Q       Would you tell the court where they are seated and

what they're wearing?

A    Yes.  He's sitting next to the defense counsel. He's wearing a striped shirt.  He has reddish tint brown hair, mustache, pair of blue jeans.

MR. BARNES:  Your Honor, I would like the record to reflect that the witness has properly identified the defendant, Kenneth Eugene Barrett.

THE COURT:  For purposes of Preliminary.

Q    (By Mr. Barnes)  Did you have a conversation or did you hear a conversation that was being had with Mr. Barrett?

A    Yes.  Some of it, yes.

Q    Okay.  What was the -- without getting into what the other people said, but relating to the court what Mr. Barrett was saying, would you tell the court what the gist of the conversation was that you overheard?

A    Yes.  That we were there to purchase some methamphetamine.  The defendant told us to come back in a half an hour.

Q    And did you leave the residence at that time?

A    Yes, I did.

Q    And did you come back some time later?

A    Yes.

Q    What happened after you returned do this residence?

A    Myself and the cooperating individual got out of the

vehicle.  We went to the door.  We were admitted into the residence by the defendant.  As you went in the front door we went to a room on the -- as you face the cabin, it would be on your left -- excuse me, on your right.

The defendant obtained some -- what was at that time what I thought to be methamphetamine.

Q    Could you tell the court with a -- describe it for the court?

A    An off-white powdery substance.

Q    Where did he obtain it from?

A    I don't recall, counselor, where he obtained it from.  But it was divided up on top of a dresser.

Q    Who divided it?

A    The defendant? And I provided a cellophane wrapper off of a cigarette pack which the substance was placed into.  And then I paid the defendant $25 in cash.

Q    And where did you get the cash from?

A    Well, the cash was funds from the Oklahoma Bureau of Narcotics for the purchase of undercover buys.

Q    And do you recall what denominations that you paid him?

A    No, counselor.  I really don't.

Q    Did you prepare a report in this matter?

A    Yes, I did.

Q    Would your report help you refresh your memory as to

how you paid him?

A    Very often -- very often we list the amounts and the serial numbers, yes.

Q    I'm going to show you what has been --

I will mark it, Judge.

(Whereupon, Plaintiff's Exhibit No. 2 was marked for identification.)

Q    (By Mr. Barnes)  I'm going to show you what's been marked as State's Exhibit No. 2 for identification purposes only, and ask you if you can identify that document for me, please?

A    Yes.  I can identify this.

Q    What is that document, sir?

A    This is my report that I would prepare concerning that possible violation for your office to consider for charges.

Q    Okay.  And after having reviewed that report does that help to refresh your memory as to what denominations that you paid for the off-white powdery substance?

A    Yes.  It's clearly stated here what denominations.

Q    Okay.  Does that help to refresh your memory, Agent Ottwell?

A    Uh-huh.

Q    Now, can you tell the court what denominations that you paid, Mr. Barrett?

A    A twenty dollar bill and a five dollar bill.

Q    What did you do with the white powdery substance that you received from Mr. Barrett?

A    Immediately thereafter I placed into my pocket.  We left the residence.  We returned to the Sallisaw Police Department where then I conducted a field test on a portion of the substance.

Q    And have you been -- well, don't need to get into that.  Did you submit the -- what did you do with the remaining part of the substance?

A    I secured it in an envelope and upon returning to Tulsa, Oklahoma, that same day, secured it under seal in the evidence.

Q    All right.  Did it remain there or was it subsequently mailed somewhere else?

A    It remained there in my custody until I mailed it to the OSBI Laboratory in Tahlequah for analysis.

Q    Okay.  And how did you mail that?

A    It is always mailed certified mail.

Q    Okay.  Now, you described this house that you went to and I just want to clarify this, Agent Ottwell.  You described it as a one-story dwelling -- what appeared to be a one-story dwelling?

DISTRICT COURT OF OKLAHOMA---OFFICIAL TRANSCRIPT

A       From what I could see it was, yes.

Q       Do you know if there may have been a spiral stairwell that led up into another portion of the residence?

A       If there was, counselor, I'm not aware of it.

Q       Did you go all the way through the house?

A       No.

Q       How far into the house did you go.  Right inside the front door into a room immediately to the right.

Q       And you went no further than that?

A       That's correct.

Q       And the person that delivered this off-white powdery substance, is that the same individual that you previously identified in court today?

A       It is.

                    MR. BARNES:  No further questions.

                    MR. ROGERS:  Can I see that State's Exhibit 2?


                         CROSS EXAMINATION

BY MR. ROGERS:

Q       Agent Ottwell, immediately after you said that you handed the paper and you paid him the $25, what happened then?

A       Myself and the cooperative individual began to leave

the house.

Q     Was there some discussion either then or as you was leaving between this cooperative individual concerning a motorcycle?

A     There was.

Q     Okay. And would you tell me the nature of that?

A     Yes. As I recall the defendant inquired of the individual I was with if he still had a particular motorcycle. And if he did he would be willing to give an ounce -- up to an ounce for it. Words to that effect.

Q     Okay. And what did the cooperative individual tell you?

A     Counselor, I'm not sure --

          MR. BARNES: Judge, I'm going to object. It's hearsay.

          MR. ROGERS: It's in front of the witness, the State witness that's testifying. But he indicated he wasn't certain. That's why --

Q     (By Mr. Rogers)  Let me go back.

          Officer, was this cooperative individual, was it Steven Sinyard or Gary Walter Meyer.

          MR. BARNES: I'm going to object, Your Honor. That information is not available. There's no testimony to indicate that he observed any material transaction that took place. He was there, but there is

DISTRICT COURT OF OKLAHOMA---OFFICIAL TRANSCRIPT

nothing to indicate that he was -- that he observed the transaction.  And that information is not discoverable by statute.

MR. ROGERS:  Maybe, Your Honor, I didn't hear the testimony.  That when they pulled up the initial conversation was between the cooperative individual and this defendant.  And he said that he overheard part of that conversation.  And then I understood that they went in -- both of them went in when they got back to the residence.

MR. BARNES:  That's correct, Judge.  He did say that they were both in there.  But there is no testimony that the CI observed the transaction, which would only be material if this individual observed the transaction.

Now, I think he needs to lay that foundation before he gets into that.

THE COURT:  All right.  But now you're using the term CI, which is different than what I've gotten from the stand.

I'm laying my cards on the table.  I use CI -- that to me is confidential informant.  He's using cooperative individual.  That's not synonymous in my book.

MR. BARNES:  I believe that it would be, Judge.  Confidential informant and someone who is

DISTRICT COURT OF OKLAHOMA---OFFICIAL TRANSCRIPT

cooperating with authorities generally is considered to be confidential. And unless they're named within, say, a warrant or something of that nature.

MR. ROGERS: But if they're --

THE COURT: I'm telling you in my book cooperating and confidential is not synonymous, and you better make it clear to the court before we get too far into this. If you're talking apples and oranges. Saying they're the same. I'm telling you in my mind cooperating and confidential are not the same.

MR. BARNES: Judge, it is the intent of the State of Oklahoma to present to you testimony that a confidential informant was used in order to make this — purchase.

THE COURT: All right. Now, let's go back to where you are so we know where we are where they're supposed to be.

MR. ROGERS: Well, like I said, maybe I misunderstood the testimony, but his testimony about the cooperative individual -- I thought his testimony was is he went -- when they got back, he went in and his objections was he didn't observe anything and therefore.

THE COURT: Why don't you ask him that and then we'll know.

MR. ROGERS: Well, can I abandon that just

a second and go on this other line that we have.

Q    (By Mr. Rogers) Agent Ottwell, had you ever met this cooperative individual before?

A    I never had.

Q    And had he ever furnished you with any information that would be reliable in the past?

A    No.

Q    And so you met him for the first time and you had no idea as to the truth of what he was telling you concerning the defendant Kenneth Barrett; is that correct?

MR. BARNES:  Judge, I'm going to object as to relevance.  I don't know where this is going.  We're not going to try to lay a foundation of some type of past history.  We're beyond what is required of the state of Oklahoma to prove today and nothing requires the State to prove the reliability of this informant.  This officer was present and observed the transaction and that's all we're here for.

MR. ROGERS:  Your Honor, the whole trust are truth of this case is how they got there to start with.  They had to have information that my client was a known drug dealer in order to -- I mean, I'm trying to lay the ground work.  And I know that in these type of case goes, but entrapment.  And like I said if the man doesn't have sufficient information on his own to go out there,

then like I said, I think that's where I'm going with it.

THE COURT: Well, reliability as I understand it is based on the fact that the officer's testimony is telling a neutral Magistrate, you can trust this guy because this is what I had in contact. I can't tell you who the guy is. But at no time did this case ever approach that posture.

MR. ROGERS: I understand that.

THE COURT: They never came for anything because this was a hands-up, face-to-face transaction, and reliability of the informant is not ever called into question at that point.

MR. ROGERS: Okay. Your Honor. I will go ahead and proceed on then.

Q    (By Mr. Rogers)  What type of vehicle did you all go out to this residence in the McKey Community?

A    As I recall, it was a van.

Q    Okay. And who was driving the van. I mean, I'm not asking the van -- but were you driving or was the cooperative individual driving?

A    Counselor, I believe it was the cooperative individual was driving.

Q    Okay. And when you pulled up in front of this residence, which you described as a single- story wood frame cabin, did you honk or did the cooperative

individual get out and go in and bring the defendant out, or did he just come out?

A    On our first visit there?

Q    You you had --

A    We were moving honked the horn and he came out.

Q    And did you see anyone else around the residence at that time?

A    No.

Q    And what happened after the defendant came out to the van?

A    There was some brief discussion about why we were there.

Q    Who had that discussion; you or the cooperative individual?

A    The cooperating individual and the defendant. I was simply sitting there in the van beside him.

Q    Okay. And you indicated in your direct that you overheard a conversation on part of it. Was there part of the conversation that you were not able to hear?

A    I think it would be more accurate to say couldn't understand them, because they weren't talking loud enough for me to understand it all.

Q    Okay. And so the cooperative individual, what did he tell the defendant that he was there for?

A    We were there to get some methamphetamine. Now, I

don't think that we used that direct, "we're here to get methamphetamine," but our conversation, or what I would call drug talk.  Are you doing anything?  We're looking to get something.

Q    And what did the defendant tell the cooperative individual?

A    We need to come back in a half an hour.  He didn't have anything right there.

Q    That he didn't have anything at the residence at that time?

A    That's what he said.

Q    Now, do you recall all of this time, this visit and the second visit that you made, where is Officer Blount and Investigator Lloyd?

A    I had given my State vehicle to them and they were conducting surveillance from vantage points out and from a distance.

Q    Okay.  You were not -- were you with the cooperative individual wearing any type of recording device or a wire during either of the visits?

A    No.

Q    Okay.  And where did you go after you left the first time?  You said you came back in about 30 minutes.

A    Yes.  As I recall we traveled the countryside.  We stopped and talked to Detective Blount, Officer Lloyd.

Advised them of what was going on.  We simply went out and killed a half hours worth of time.

Q     Were you in that area?

A     Yes.  Well, yes.  Basically in that area.  Not right there in the cabin, but --

Q     Did Agent Lloyd -- Investigator Lloyd and Detective Blount, did they remain where they could survey -- conduct surveillance on this house?

A     No.  That wasn't possible.

Q     So you do not know whether or not -- well, you said you were in there.  Do you know whether or not if the defendant left the residence after you and this cooperative individual left?

A     I don't know.

Q     Did you see him leave the residence?

A     No.

Q     And had you -- when you came out of there the first time, did you tell Agent Blount and Investigator Lloyd what the defendant had said?

A     As I recall, yes, I would have.

Q     And it did not occur to you to observe to so where the defendant went if he said he didn't have anything then as to where he was going to go pick it up?

A     Oh.  Certainly it occurred to me.

Q     But you did not do that in this case?

A    No.

Q    You all went out and killed time for 30 minutes?

A    That's correct.

Q    Now, when you got back what happened then, Agent?

A    We pulled up into the defendant's, what I would call his front yard.  Exited the vehicle.  Went to the front door.  Were admitted by the defendant.  And almost immediately upon entering went to this bedroom to the immediate right as you enter the front door.

Q    Was this cooperative individual with you at the time that you went into that room?

A    Yes.  He was.

Q    So he observed the transaction?

A    No, sir.  I don't see how he could have.  I had my back to him.

Q    Officer, let me show you your report.  You indicated that he did not observe this transaction.  Did you and the cooperating individual remove some plastic from some cigarettes to place this in?

A    Yes, we did.

Q    And does your report not show that the confidential -- or the cooperative individual did not assist in that?  And are you telling the court that even though he took the wrapper off the cigarettes, that he didn't observe this transaction?

DISTRICT COURT OF OKLAHOMA---OFFICIAL TRANSCRIPT

A    I don't see that he could have.

Q    Because you had your back to him?

A    Well, I had my wrapper turned back around to where the substance, which is what I was interested in obtaining.  I don't see how he could have seen it.

Q    Well, officer, how big a room "or was this room that you were in something of a -- of the size of this room here?

A    Oh, no.  The whole house wasn't that big.

Q    Okay.  The room where this dresser was, that it was being cut, that you and the cooperative individual were in, what would you say the size of that room was?

A    Counselor, just guessing.  Maybe eight feet by eight feet.  If that -- you know, approximately.

Q    And it's your testimony that the cooperative individual could not see you pick up this bag of meth or what ever it is?

A    Well, counselor, of course, I was conducting business with the defendant.  I got the wrapper from the cooperative individual, turned my back to him and conducted business with the defendant.  I don't see how he could have seen it with my back to him, but...

Q    But you got the wrapper off of the cigarettes that were owned or in possession of the cooperative individual?

A    That's correct.

Q    Is that correct?

And was there any conversations going on between you and the defendant while he was cutting this out on top of this dresser?

A    Counselor, I'm sure we were passing conversation back and forth, but I don't remember what it concerned.

Q    At what point in time did you learn that the cost of the goods that you were buying was $25?  Had that been discussed at the initial conversation at the van or was it discussed after you got back?

A    I think it was discussed after we got back.

Q    Okay.  So he cuts out a portion.  You take the wrapper from the cigarettes of the cooperative individual.  And does the defendant make any statement then?  Here it is.  Or where's the money?  Or anything of that nature?

A    Counselor, I don't remember if there was conversation like that.  I specifically remember taking my money and giving it to the defendant.  I don't remember what words may have been exchanged during that process.

Q    Okay.  But it all -- during all of these activities the cooperative individual was present?

A    He was present in the same room.  That's correct.

Q    And then after you had your goods you said that the defendant asked the cooperative individual about a certain motorcycle?

A      Yes.

Q      And that he would be willing to pay an ounce for that?

A      That's correct.

Q      Okay.  Do you know what kind of motorcycle it was?

A      No, I did not.

Q      They did not discuss it in any detail as to what kind of motorcycle it was?

A      The defendant inquired about a specific motorcycle that -- it appeared to me -- or sounded to me as though the cooperating individual had ownership of.  I don't remember what kind it was.

Q      Was there anybody either your first visit or your second visit that you saw other than you, the cooperating individual and the defendant present at this location?

A      Inside the house?

Q      Inside the house or outside in the yard?  Did you see any other individuals there, not talking about Agent Blount or Investigator Lloyd.  Did you see any other --

A      Well, the only other officer that was involved with this was Agent Jerome was in the van with me, but he was not with me in the undercover capacity in the house.

Q      Where was Agent Jerome?

A      In the van.

Q      Was he able to hear the initial transaction?  I

mean, the first conversation between the cooperating individual and Mr. Barrett?

A    Well, he didn't tell me, counselor.  He was in the back of the van, specifically concealed in the back of the van for my safety since I didn't wear a wire.

Q    Okay.  He was not visible -- he was concealed in the back of the van; is that correct?

A    Yes.

Q    Should have been anyway?  That was the purpose -- that was the idea, since you were not wearing a wire or a gun that the agent was backing you up by being concealed. If anything came down he would have came out?

A    Well, I wasn't wearing a wire.  That was correct?

Q    Now, what did you do after you indicated you went back to the Sallisaw Police Department?

A    Yes.  That's correct.

Q    Did you immediately go back to the Sallisaw Police Department?

A    No.  We immediately went back to a predetermined location where we met with Investigators Lloyd and Blount and switched vehicles.  And then we went to the police department.

Q    Okay.  And did Agent or Detective Blount and Investigator Lloyd come back to the police department with you?

A       Yes, they did.

Q       What happened to this cooperating individual?

A       Counselor, we went -- counselor, he went on his way.

Q       Okay.  Now, agent you indicated that you had had a conversation with Detective Blount, was the reason that you were in Sallisaw that day?

A       Yes.

Q       At his request to come down here.  Did you make any other buys of illegal or illicit drugs on that date while you were here?  I'm not asking you who.  I'm just seeing how many transactions that you went through that day?

A       None.  None other than this one.

Q       And when was the next time that you came back to — Sallisaw if you can recall, Agent?

                MR. BARNES:  Okay, relevance, judge.

                MR. ROGERS:  Well, immediately after, Your Honor.  I mean, I'm just trying to -- I know that from -- take judicial notice or notice that the agent has made several buys.  But I'm just trying to get some ideas of the area around the 19th to test his credibility with other buys.

                THE COURT:  Response.

                MR. BARNES:  Judge, that's not relevant.  I could understand the question on the same day whether he may have gotten one substance confused with another

substance. And how it was handled. That would go to that. But as to whether he purchased other substances on other days while working on the same capacity, I don't see how that's relevant for December the 19th.

THE COURT: As I understood your original testimony on direct, at least I think it was direct, you took the substance after you obtained it, and you did a field test here. Of course, we didn't get into the results. That wasn't necessary. Then you took the substance to Tulsa?

THE WITNESS: That's correct.

THE COURT: And then put them in the evidence locker. And the way I took it you did them all that same date?

THE WITNESS: All the same day.

THE COURT: Okay. And your reason for the question is what?

MR. ROGERS: Just to find out. There's no question. I don't doubt his testimony that this was only one. But if he was here later on that night or early the next morning making other buys and in this area, I think it would be relevant. Like I said, just to see how much activity he was doing at this time. Because he has a very vivid memory of everything that occurred there on December the 19th.

Maybe I'm putting too much -- if I did ten things in a couple days. If I just do one, sometimes that sticks out to me. And I'm just trying to find that out.

THE COURT: I'm going to sustain the objection. Let's move on.

MR. ROGERS: Okay.

Q    (By Mr. Rogers)  Did you have any discussion particularly with Agent Lloyd -- Investigator Lloyd at any time after this -- this buy on December the 19th, concerning this particular case?

MR. BARNES: I'm going to object, Your Honor, relevance.

THE COURT: Overruled. He's entitled to some discovery?

THE WITNESS: Yes. I discussed the case with Detective Lloyd.

Q    (By Mr. Rogers)  Did Detective Lloyd indicate to you that he was going to approach the defendant to see if he would become a cooperating individual?

A    Yes.

MR. BARNES: And I'm going to object, Your Honor, as relevance.

MR. ROGERS: He's already answered.

THE COURT: He wants it stricken, I think.

MR. BARNES: Stricken.

DISTRICT COURT OF OKLAHOMA---OFFICIAL TRANSCRIPT

MR. ROGERS:  Are you going to strike?

THE COURT:  No.  Overruled.

Q      (By Mr. Rogers)  And you did discuss that?

A      Yes.

Q      Okay.  And did Agent Lloyd at any time report back to you that the defendant was not willing to be a cooperative individual?

MR. BARNES:  I'm going to object, Your Honor.  It calls for hearsay.

THE COURT:  Will be sustained.

MR. ROGERS:  Your Honor, I've got Agent Lloyd subpoenaed.  And they've indicated he's present in the court house.  I think it would take it out of the hearsay rule.

THE COURT:  No.  It's still hearsay too.

MR. ROGERS:  My question was did he discuss with Investigator Lloyd the fact that the defendant was not going to become a cooperative individual?

MR. BARNES:  Which calls for hearsay.

MR. ROGERS:  Judge, just let me tell you where I'm going with this.  This buy was made in December.  Charges wasn't filed, I don't believe, until March some time.

THE COURT:  March.

MR. ROGERS:  In the mean time after this

man had made the sale he was approached by Investigator Lloyd and told if you will do three -- be a cooperative individual for three times, this will all be forgotten. And that's the type of evidence that I'm trying to illicit. If I have to go to a jury, like I say, it is a little discovery that the State was willing, if he would be a cooperative individual and was told you don't get by with one, you don't get by with two, you don't get when you do three, you're free. You can go on. And that's what I'm trying to get at.

MR. ROGERS: Because like I said, the buy recently occurred in December and the charges weren't filed until March the 24th.

THE COURT: Well, I understand where you're headed with. It's still hearsay.

MR. ROGERS: Okay. Okay.

Q    (By Mr. Rogers)  Did -- at any point after that day have you seen the defendant Kenneth Eugene Barrett since December the 1st other than the courtroom today?  Or say at the courthouse?

A    No.

Q    You never -- did anybody ever take you back -- this is the only buy the only time that you ever spoke to the defendant Kenneth Eugene Barrett?

A    That's correct.

DISTRICT COURT OF OKLAHOMA---OFFICIAL TRANSCRIPT

Q    And the reason that you were at his residence or at this residence in the first place on December the 19th, was as a result of someone telling you this cooperative individual and Detective Blount, that they wanted you to go out and make a buy; is that correct?

A    Basically.

Q    Had you ever heard of Kenneth Barrett before that day?

A    No.

Q    Okay.  Officer, was this room that you were in was it a bedroom?  A living room?  A den?  Or kitchen?  What was the nature of it?

A    Well, counselor, I guess I took it to be a bedroom. But it may not have been.  But there was a dresser in it I know.

Q    Did you see a dresser in there?

A    I don't know.

Q    Did you see a couch?

A    No.  I don't remember seeing a couch.

Q    And did you see a desk in that room?

A    I don't recall a desk.

Q    Did you -- Mr. Barnes indicated to you about a spiral stair case, did you ever go into any other room other than this while you were there conducting this transaction?

A    No.

Q    Okay.

MR. ROGERS:  I believe that's all at this time, Your Honor.

THE COURT:  Redirect?

MR. BARNES:  No, Your Honor.

THE COURT:  All right.  Agent, you may step down.

(Witness left the stand.)

THE COURT:  State call its next.

MR. BARNES:  Your Honor, the State has no further witnesses to present.  The State of Oklahoma rests.

MR. ROGERS:  Comes the defendant at this time, Your Honor, would demurrer to the evidence offered by the State on the basis it's wholly and totally insufficient to support the charge as alleged in the information.

THE COURT:  Demurrer will be overruled.

MR. ROGERS:  Exceptions.

THE COURT:  Noted.

THE COURT:  At this time the court is going to exercise its discretion.  I'm going to terminate the Preliminary Hearing as such.  I will give you the

DISTRICT COURT OF OKLAHOMA---OFFICIAL TRANSCRIPT

authority to take depositions of any witnesses that you care to depose by terminating.  And issue a bind-over order at this time.

THE COURT:  Off the record.

(Off the record.)

THE COURT:  Going to go back on the record. All right.  At this time because of the jury docket, the defendant is willing to waive the 30 days in which to appear for his DCA.  I'm going to set the DCA on October the 9th at 1:30 in the afternoon before the Honorable Judge Garrett.

If there does need to be any changes with that, gentlemen, you will need to contact him directly.

With that, of course, the defendant is out on bond has appeared each and every time the court has directed him to appear.  Court will allow him to remain free on that present bond subject to that date and time.

Does the State have any request at this time?

MR. BARNES:  No, Your Honor.

THE COURT:  All right.

MR. ROGERS:  May we be excused, Your Honor?

MR. BARNES:  I'm sorry, judge, I would ask that we be allowed to withdraw State's exhibit 1.

DISTRICT COURT OF OKLAHOMA---OFFICIAL TRANSCRIPT

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write *"Return Receipt Requested"* on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

*Is your RETURN ADDRESS completed on the reverse side?*

**SUBMITTAL FORM ENCLOSED**

3. Article Addressed to:

OSBI Laboratory
700 North Vinita
Tahlequah, OK 74465

4a. Article Number
Z 346 910 200

4b. Service Type

☐ Registered   ☒ Certified
☐ Express Mail   ☐ Insured
☐ Return Receipt for Merchandise   ☐ COD

7. Date of Delivery

5. Received By: *(Print Name)*

8. Addressee's Address *(Only if requested and fee is paid)*

6. Signature: *(Addressee or Agent)*
X

*Thank you for using Return Receipt Service.*

PS Form **3811,** December 1994          Domestic Return Receipt

OSBI Laboratory
700 North Vinita
Tahlequah, OK 74464



MAIL

Z 346 910 200

JAN 27 97

# OKLAHOMA STATE BUREAU OF INVESTIGATION

Tahlequah Regional Laboratory
P.O. Box 767
Tahlequah, OK 74465
(918) 456-0653

## CRIMINALISTICS EXAMINATION REPORT

| | | | |
|---|---|---|---|
| LAB NO.: | 97-1078 | Reported To:<br>Address: | OBNDD<br>3313 W. 45th<br>Tulsa, Oklahoma  74107 |
| Date Received: | 01-29-97 | | |
| Date Reported: | 04-30-97 | | |
| Classification of Case: | Drugs | Submitted By: | Kevin Ottwell, OBN<br>By Cert. Mail Z 346 910 200 |

Suspect(s):  Kenny BARRETT, WM                    Victim(s):

Description of Evidence:
Sealed manilla envelope containing sealed evidence envelope with OBN seal #28610 containing manilla envelope containing:

#T1     Small ziplock plastic bag containing cellophane wrapper containing off white powder, net weight: 0.15 gram.
#T2     Piece of notebook paper with writing.

Analysis of Evidence:

ITEMS:              ANALYSIS:
#T1                 Methamphetamine, Schedule II.
#T2                 Not analyzed.

Dennis W. Reimer
Senior Criminalist

DWR/cr

Pursuant to Title 22 O.S. Section 751,
I hereby certify that I am maker of
this document, and that it is a true and
correct report of the findings of the
Oklahoma State Bureau of Investigation
Criminalistics Laboratory.



## OKLAHOMA STATE BUREAU OF
## NARCOTICS AND DANGEROUS DRUGS CONTROL

## REPORT OF INVESTIGATION

Case Number: CRE 96-298 | Reporting Date: 01/27/97

Reporting Agent: KEVIN OTTWELL | Status: Pending/Initial

FILE TITLE:    KENNETH EUGENE BARRETT

DEFENDANT(S):  D1)  KENNETH EUGENE BARRETT
W/M, 5'10", 145 lbs., Eyes/Blue, Hair/Blonde
DOB: 06/29/61, SSN: 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
ADDRESS: Route 1, McKey, OK 74955

VIOLATIONS:    D1)  Unlawful Delivery of CDS
Violation of Title 63 § 2-401

IDENTIFICATION OF EVIDENCE:

1)    An off-white powder substance contained in a cellophane wrapper.

Chain of Custody: Barrett to this agent and from this agent to OSBI Laboratory in Tahlequah, Oklahoma, via U.S. Certified Mail, Return Receipt Requested, Z 346 910 200, using OBN Seal #28610, on January 27, 1997.

MONEY LIST:

| DENOMINATION | SERIAL # |
| --- | --- |
| $20.00 | B31327945M 1990 Series |
| $ 5.00 | E30271771B 1995 Series |

DESCRIPTION OF VEHICLE:  N/A

LIST OF WITNESSES:

Primary:
1)    Kevin Ottwell, Agent, Oklahoma Bureau of Narcotics
3313 West 45th Street, Tulsa, Oklahoma 74107
Telephone: 918/446-1616

2)    Robert Jerome, Agent, Oklahoma Bureau of Narcotics
3313 West 45th Street, Tulsa, Oklahoma 74107
Telephone: 918/446-1616

OFFICIAL USE ONLY
This report is the property of the Oklahoma State Bureau of Narcotics and Dangerous Drugs Control, neither it nor its contents may be disseminated outside the agency to which it is loaned.

REPORT OF INVESTIGATION                           Case Number: CRE 96-298
(Continuation)                                                      Page 2

    3)    OSBI Chemist, OSBI Laboratory
        700 North Vinita, Tahlequah, OK
        Telephone: 918/456-0653

    4)    Larry Blount, Detective, Sallisaw Police Department
        115 North Elm, Sallisaw, Oklahoma 74955
        Telephone: 918/775-4177

## SUMMARY:

On December 19, 1996, at approximately 1310 hours, this agent purchased one-quarter (1/4) gram of methamphetamine from a KENNETH EUGENE BARRETT of McKey, Sequoyah County, Oklahoma. This agent used Twenty-Five Dollars ($25.00) of Oklahoma State Bureau of Narcotics (OBN) official advanced funds during the buy.

Surveillance during the buy was provided by OBN agent Robert Jerome and Sallisaw Police Detective Larry Blount.

No arrests were made and no vehicles were seized.

## DETAILS:

On December 19, 1996 this agent and Oklahoma Bureau of Narcotics (OBN) agent Robert Jerome traveled to the residence of KENNETH E. BARRETT who lives in rural Sequoyah County in the McKey community. Sallisaw police detective Larry Blount knew Barrett to live at this location. A confidential informant (CI) knew BARRETT to deal in methamphetamine and had reason to believe BARRETT would sell same to this agent. Surveillance was provided from this agent's assigned Bureau vehicle by Sallisaw Detective Larry Blount and District Attorney's Investigator Frank Loyd.

At approximately 1235 hours this agent and Agent JEROME, along with the CI, arrived at BARRETT's house in the CI's vehicle. This agent honked the horn and BARRETT came out to speak with the CI. After a few minutes of conversation with BARRETT beside the van, the CI said that BARRETT currently had no controlled dangerous substance (CDS). However, if this agent would come back in one-half (1/2) hour BARRETT would obtain some methamphetamine.

At approximately 1305 hours this agent, Agent Jerome, and the CI returned to BARRETT's house and this agent honked the horn. This agent could see BARRETT motion at a front window for the CI to come inside. This agent and the CI went to the front door and were admitted to the house by a white male, approximately thirty-two (32) years of age, with long reddish blonde hair.

OFFICIAL USE ONLY
This report is the property of the Oklahoma State Bureau of Narcotics and Dangerous Drugs Control, neither it nor its contents may be disseminated outside the agency to which it is loaned.

REPORT OF INVESTIGATION                    Case Number: CRE 96-298
(Continuation)                                          Page 3

_____

This agent followed the CI and BARRETT to an adjacent room where BARRETT obtained a quantity of an off-white powder substance from a dresser and this agent then handed Twenty-Five Dollars ($25.00) in OBN official advanced funds (OAF) to BARRETT. BARRETT sat down at a desk and proceeded to separate out one-quarter (1/4) gram methamphetamine with a plastic credit card. BARRETT asked for a cigarette wrapper and this agent and the CI took the wrapper off of the CI's cigarettes. This agent handed the wrapper to BARRETT who placed a quantity of the substance in the wrapper. BARRETT examined the quantity and then handed it to this agent.

This agent and the CI thanked BARRETT and BARRETT inquired with the CI about a motorcycle which he (BARRETT) would be willing to give an "ounce" for. This agent and the CI then left the house and left the area with Agent Jerome. A field test by this agent at the Sallisaw Police Department indicated the substance was amphetamine/methamphetamine. This agent can identify BARRETT again at a later time if necessary. This agent spoke with Agent Jerome and Sallisaw detective Blount whose surveillance observations noted nothing additional to this violation.

This agent then returned to the Tulsa District Office where the substance was sealed and placed into the evidence locker.

On January 27, 1997 this agent mailed the substance to the OSBI Laboratory at Tahlequah, Oklahoma by U.S. Certified Mail, Return Receipt Requested, Z 346 910 200, using OBN seal #28610.

This is an ongoing investigation and further reports will follow as the case progresses.

LIST OF ATTACHMENTS:

1)    Photocopy of OSBI Lab Submittal sheet
2)    Photocopy of OSBI Lab Submittal Envelope
3)    Photocopy of Mailing Documents

_____          Date 1/27/97
            Agent's Signature

_____          1/28/97
            Supervisor's Approval           Date

DISSEMINATION:

1)    Sequoyah County District Attorney

OFFICIAL USE ONLY
This report is the property of the Oklahoma State Bureau of Narcotics and Dangerous Drugs Control, neither it nor its contents may be disseminated outside the agency to which it is loaned.

FOR LABORATORY USE ONLY

# OKLAHOMA STATE BUREAU OF INVESTIGATION
## REQUEST FOR LABORATORY EXAMINATION

Original Requesting Agency: **OBN**

Requesting Officer: **KEVIN OTTWELL**
(Officer's Name - TYPE OR PRINT)

**OBN**                    **1-800-722-6420**
(Agency)                   (Phone No.)

Submitting Officer: (Personnel delivering evidence to OSBI Laboratory)

**Cert. MAIL - USPO**

(Officer's Name - TYPE OR PRINT)              (Agency)

LAB USE ONLY
Received:_____        _____
(Initial, Last Name)              (Method)

LAB #_____
B Record #_____
E Record #_____
Transp. to LAB:_____

on_____ by_____
(Date)              (Name - No Initials)

Received:_____
(Initial, Last Name)

Has there been any previous evidence submitted on this case?  YES_____  NO **✓**

Related OSBI Lab #:_____

Requesting Agency Case # **N/A**              Approximate Date

| Control # | Container Description |
|---|---|
|  |  |

TYPE OF OFFENSE: **Unlawful Delivery of CDS**
DATE OF OFFENSE: **12/19/96**
COUNTY OF OFFENSE: **SEQUOYAH**
SUBJECT/SUSPECT(S) NAME: **KENNY BARRETT, W, M, Approx 32  OBN SEAL #2861C**
(DOB, race, sex):

VICTIM(S) NAME: **N/A**
(DOB, race, sex):

ITEMIZED DESCRIPTION OF EVIDENCE:
(Attach additional pages if necessary)

1. **1-cellophane wrapper containing off-white powder substanc**
2.
3.
4.
5.
6.

STATEMENT OF FACTS (OR ATTACH A COPY OF POLICE REPORT) - ALL CASES: **purchased during u/c operation**

TYPE OF EXAMINATION(S) REQUESTED: **Identify substance & weigh**

SEND A COPY OF REPORT TO: (ONLY) **K. Ottwell**

Find in EDOK on 05/11/00   Document AVAILABLE - AH-OITE-ED   Page 43 of 50

# OKLAHOMA STATE BUREAU OF INVESTIGATION

## TECHNICAL SERVICES DIVISION

## FORENSIC LABORATORY

NAME OF DEFENDANT(S) _Kenny Barrett_

ADDRESS OF DEFENDANT(S) _McKey, OK_

NAME OF VICTIM _N/A_

CRIME _Unlawful Delivery of CDS_

DATE OBTAINED _12/19/96_

DESCRIPTION OF EVIDENCE _1 wrapper containing an off white substi_

WHERE OBTAINED AND BY WHOM _by O'neill C suspects residence_

SEALED BY _[signature]_   DATE _12/19/96_   TIME _1700_

**FOR LAB USE ONLY**

DATE SUBMITTED _____

LAB NO _____

SUBMITTED BY _____

AGENCY _____

**OKLAHOMA BUREAU OF NARCOTICS**

EVIDENCE SEAL          No 28610

DATE _12/19/96_          CASE# _CRF96-NEW_

DEFENDANT _Kenny Barrett_

LOCATION _McKey, OK_          AGENT(S) _Orwell_

# IN THE DISTRICT COURT WITHIN AND FOR SEQUOYAH COUNTY,
## STATE OF OKLAHOMA

### CRIMINAL AND CIVIL JURY DOCKET

**COMMENCING February 28, 2000**
**9:00 o'clock A.M.**

| HONORABLE JOHN C. GARRETT | HONORABLE JAMES EDMONDSON |
|---|---|
| **DISTRICT JUDGE** | **DISTRICT JUDGE** |
| **HONORABLE MIKE NORMAN** | **HONORABLE BRUCE SEWELL** |
| **DISTRICT JUDGE** | **DISTRICT JUDGE** |
| **HONORABLE A.J. HENSHAW** | **HONORABLE DENNIS SPROUSE** |
| **ASSOCIATE DISTRICT JUDGE** | **SPECIAL DISTRICT JUDGE** |

### MONDAY, FEBRUARY 28, 2000

| CF-97-160 | State of Oklahoma | District Attorney |
|---|---|---|
| | vs. | Gary Huggins |
| **JUDGE HENSHAW** | David Joe Traywick | Drew Warren |

| CF-97-254 | State of Oklahoma | District Attorney |
|---|---|---|
| | vs | |
| **JUDGE GARRETT** | Samuel Curtis Searcy | Gerald Hunter |

| CJ-95-85 | Billie Auffett | Todd Hembree |
|---|---|---|
| | vs | |
| **JUDGE GARRETT** | State of Oklahoma, Dept. | |
| | Of Wildlife Conservation | Kelly Hunter-Bur |

## TUESDAY, FEBRUARY 29, 2000

| | | |
|---|---|---|
| CF-99-237 | State of Oklahoma vs | District Attorney |
| JUDGE GARRETT | Donald Lee Blackbird | Randy Jones |
| CF-98-375  NO CF-98-463 | State of Oklahoma vs | District Attorney |
| JUDGE HENSHAW | Carrie Beth Gill | Gerald Hunter |
| D-94-59 | Sherry Sweeney now Carter vs | Tim Baker |
| JUDGE NORMAN | Mark Sweeney | Clark Woods |

## WEDNESDAY, MARCH 1, 2000

| | | |
|---|---|---|
| CF-98-349  NO CF-98-345 | State of Oklahoma vs | District Attorney |
| JUDGE HENSHAW | Ronnie Wilkins | Wm. Orendorff |
| CF-97-175 | State of Oklahoma vs | District Attorney Farley Ward |
| JUDGE GARRETT | Kenneth Ray Hixson | Donn Baker |
| CF-95-74 | State of Oklahoma vs | District Attorney |
| JUDGE GARRETT | Harold Lee Kelly, Sr. | Donn Baker |
| C-99-204 | Monica Diane Will vs | Micki R. Burnett |
| JUDGE HENSHAW | Douglas Martin Will | Barney Long |

## THURSDAY, MARCH 2, 2000

| | | |
|---|---|---|
| CF-99-240 | State of Oklahoma | District Attorney |
| | vs | |
| JUDGE HENSHAW | Jeff Ragsdale | Dan George |
| CR-95-380 | State of Oklahoma | District Attorney |
| | vs | Darrell Dowty |
| JUDGE GARRETT | Bradley Evan Price | Harry Scoufos |
| CF-99-131 | State of Oklahoma | District Attorney |
| | vs | |
| JUDGE GARRETT | Bart Laine Guthrie | Dan George |
| CJ-98-687 | Holly Vera Kinsey, et al., | Barney Long |
| | vs. | Wm. Dodson |
| JUDGE HENSHAW | Timothy Don Ales | George Gibbs |
| | | Brian Been |
| C-91-173 | State of Oklahoma, Dept. Transport. | Belva Brooks Barber |
| | vs | |
| JUDGE HENSHAW | Larry Sparks and Nancy Sparks | Harry Scoufos |
| | James H. Martin and Marcedith Martin | Jim Jones |
| | First National Bank Roland; Richard J. | Morris Bell |
| | Looper and June Marie Looper, et al., | |

## FRIDAY, MARCH 3, 2000

| | | |
|---|---|---|
| CF-99-269 | State of Oklahoma | District Attorney |
| | vs | |
| JUDGE GARRETT | Billy Gene Loftis | Eddie McCroskey |
| CF-98-267 | State of Oklahoma | District Attorney |
| | vs | |
| JUDGE GARRETT | Christopher W. Smith | Todd Hembree |
| CF-98-269 | State of Oklahoma | District Attorney |
| | vs | |
| JUDGE GARRETT | Robert N. Cantu | Todd Hembree |
| CF-98-417 | State of Oklahoma | District Attorney |
| | vs | |
| JUDGE GARRETT | Brian Keith Holt | Todd Hembree |

## MONDAY, MARCH 6, 2000

| | | |
|---|---|---|
| CF-96-292 | State of Oklahoma | District Attorney |
| | vs | |
| JUDGE GARRETT | Floyd Leon Harlow | Dan George |

| | | |
|---|---|---|
| CJ-96-284 | Carma Wallace Brown | Paula R. Inman |
| | vs | |
| JUDGE HENSHAW | Tycin Project, Inc., d/b/a Gambino's Pizza, Tyla Brown and Cynthia Irwin | Rachel C. Mathis |

## TUESDAY, MARCH 7, 2000

| | | |
|---|---|---|
| CF-96-306 | State of Oklahoma | District Attorney |
| | vs | |
| JUDGE HENSHAW | Cody Jason Taylor | Bill Ed Rogers |

| | | |
|---|---|---|
| CF-97-341 | State of Oklahoma | District Attorney |
| | vs | |
| JUDGE HENSHAW | Scott Owen Schielke    Gerald Hunter | |

| | | |
|---|---|---|
| CJ-97-31 | Larry Osborne, a/k/a Osborne Const. | Barney Long |
| | vs | |
| JUDGE HENSHAW | Samuel M. Dattle, et al., | Frank Sullivan |

## WEDNESDAY, MARCH 8, 2000

| | | |
|---|---|---|
| CF-97-86 | State of Oklahoma | District Attorney |
| | vs | |
| JUDGE GARRETT | Kenneth Eugene Barrett | Monte Johnson |

| | | |
|---|---|---|
| CF-98-500 | State of Oklahoma | District Attorney |
| | vs | Gary Huggins |
| JUDGE GARRETT | Tonya Stephens,aka Bracy,aka Taylor | Fourth Scoufos |

| | | |
|---|---|---|
| C-92-414 | Melvin Chilcoat | Michael Daffin |
| | vs | |
| JUDGE HENSHAW | Harold Gordon | Tanya Dobbs |

| | | |
|---|---|---|
| C-91-171 | State of Oklahoma, Dept. Transp. vs | Belva Brooks Barber |
| JUDGE HENSHAW | Herbert Pierce, a/k/a Herb Pierce And Doris Pierce, et al., | John Montgomery Morris Bell |

## THURSDAY, MARCH 9, 2000

| | | |
|---|---|---|
| CF-99-360 CF-99-446 | State of Oklahoma vs | District Attorney |
| JUDGE GARRETT | Theodore Harper | Monte Johnson |
| CF-98-130 | State of Oklahoma vs | District Attorney |
| JUDGE HENSHAW | Jimmy Lee Cowans | Gerald Hunter |
| CJ-98-294 | Joe Whitsett vs | Dan George |
| JUDGE GARRETT | Edwin E. Burt, Jr. | Rick Horton |

## FRIDAY, MARCH 10, 2000

| | | |
|---|---|---|
| CF-98-117 | State of Oklahoma vs | District Attorney |
| JUDGE GARRETT | Jill Ellis Owens, aka Ward__ | Gerald Hunter |
| CJ-98-467 | Bob Freeman & Ruth Freeman vs | Bill Ed Rogers |
| JUDGE GARRETT | John T. Posey, Jr. | Donn Baker |

**IN THE SEQUOYAH COUNTY DISTRICT COURT**
**STATE OF OKLAHOMA**

SEQUOYAH COUNTY, OKLAHOMA
FILED
IN DISTRICT COURT

MAR 0 1 2000

BERNELL EDWARDS, COURT CLERK
BY _____ DEPUTY

THE STATE OF OKLAHOMA

    Plaintiff,

- v. -

KENNETH EUGENE BARRETT

    Defendant.

Case No. CF-97-86

**ENTRY OF APPEARANCE**
**ON BEHALF OF MR. BARRETT**

COMES NOW John David Echols, OBA #2605, and enters his appearance as counsel on behalf of the Defendant, Kenneth Eugene Barrett. Please provide copies of all pleadings, notices and other matters relating to this case to the address shown below my signature.

        Respectfully submitted and mailed or delivered to:

        Office of the District Attorney
        Sequoyah County Courthouse
        Sallisaw, OK 74955
        918/775-9131 [voice]

        Monte E. Johnson, Esq.
        209 North Oak Street
        Sallisaw, OK 74955
        918/775-2223 [voice]
        918/775-2246 [fax]

as of Wednesday, March 1, 2000

**John David Echols, OBA #2605**
P.O. Box 701196
Tulsa, OK 74170-1196
918/299-3802 [voice]
918/299-9765 [fax]
defender@pianosa.com

**Attorney for Mr. Barrett**