**DAVID AUTRY,** OBA No. 11600
1021 N.W. 16th Street
Oklahoma City, OK 73106
Telephone:      (405) 521-9600
Facsimile:      (405) 521-9669
E-mail:dbautry77@gmail.com

**HEATHER E. WILLIAMS**, CA Bar #122664
Federal Defender
**JOAN M. FISHER**, ID Bar #2854
Assistant Federal Defender
**CARRIE L. WARD**, MO Bar #57581
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, CA 95814
Telephone:      (916) 498-6666
Facsimile:      (916) 498-6656
E-mail:Joan_Fisher@fd.org
                Karl_Saddlemire@fd.org
                Carrie_Ward@fd.org

Attorneys for Petitioner/Defendant,
KENNETH EUGENE BARRETT

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KENNETH EUGENE BARRETT,<br><br>      Petitioner/Defendant,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>      Respondent/Respondent. | <u>**CAPITAL CASE**</u><br><br>Case No. 6:04-cr-00115-RAW<br><br>**28 U.S.C. §2255 MOTION TO VACATE CONVICTION UNDER *MCCOY V. UNITED STATES*** |

## TABLE OF CONTENTS

28 U.S.C. §2255 MOTION TO VACATE CONVICTION UNDER
*MCCOY V. UNITED STATES*........................................................................................... 1

**INTRODUCTION**............................................................................................................... 1

**STATEMENT OF RELEVANT FACTS**......................................................................... 4

    **A.**   **Conviction and Sentencing** ............................................................................... 4

    **B.**   **Direct Appeal** ................................................................................................... 4

    **C.**  **Previous §2255 Motions** ................................................................................... 4

    **D.**  *McCoy v. Louisiana* ........................................................................................... 6

**ARGUMENT**...................................................................................................................... 7

  **I.**   **IN LIGHT OF *McCOY*, MR. BARRETT'S CONVICTIONS CANNOT BE SUSTAINED BECAUSE HIS TRIAL COUNSEL VIOLATED HIS RIGHT TO DETERMINE THE OBJECTIVE OF HIS DEFENSE, BY FAILING TO PRESENT AND LITIGATE AN AFFIRMATIVE SELF-DEFENSE**........................................... 7

    **A.**   **Background** ....................................................................................................... 7

    **B.**   **The dismal performance of counsel served to ease any struggling juror's conscience by conceding the unreasonable killing of Trooper Eales during the opening and closing arguments during the guilt innocence phase of trial.** ............................... 12

    **C.**  **Counsel's errors were structural, thereby calling into question the fundamental fairness and accuracy of Mr. Barrett's conviction, and thus mandates reversal** ............... 16

  **II.**  **MR. BARRETT IS ENTITLED TO RELIEF UNDER 28 U.S.C. 2255 BECAUSE HIS CLAIM UNDER *McCOY IS COGNIZABLE, TIMELY, AND SATISFIES THE SUCCESSIVE PETITION REQUIREMENTS OF 2255(h)(2)* ** ................................. 17

    **A.**   **Mr. Barrett's claim is cognizable under § 2255(a)** .............................................. 17

    **B.**   **Mr. Barrett's motion for relief is timely.** ........................................................... 18

    **C.**  **Mr. Barrett's successive §2255 motion satisfies the requirements of 28 U.S.C. §2255(h)(2) because McCoy announced a new, previously unavailable rule of constitutional law and the Supreme Court has made McCoy retroactive to cases on collateral review** ............................................................................................ 18

**CONCLUSION AND PRAYER FOR RELIEF**................................................................. 18

## EXHIBITS

1 –     Doc. 113, Tenth Ex Parte Motion Concerning the Funding of Mr.   Barrett's
        Defense, April 6, 2005

2 –     Doc. 128, Order Granting Ex Parte Motion Concerning Funding of Mr.
        Barrett's Defense, May 5, 2005

3 –     Doc. 132, Mr. Barrett's First Pro Se Motion for Change of Appointed
        Counsel, May 13, 2005

4 –     Doc. 135, Mr. Barrett's Second Pro Se Motion for Change of Appointed
        Counsel, May 23, 2005

5 –     Doc. 137, Order Denying Mr. Barrett's Pro Se Motion for Change of
        Appointed Counsel, May 24, 2005

## 28 U.S.C. §2255 MOTION TO VACATE CONVICTION UNDER
### *McCOY v. UNITED STATES*

Movant/Defendant Kenneth Eugene Barrett, through his undersigned counsel, hereby conditionally files a motion to set aside the judgment against him in case number 6:04-Cr-00115-RAW, pursuant to 28 U.S.C. §2255.[1] As explained below, Mr. Barrett's general convictions and sentences as to all three counts must be vacated in light of the Supreme Court's recent decision in *McCoy v. Louisiana*, 484 U.S.__, 138 S.Ct. 1500 (2018).

### INTRODUCTION

On November 4, 2008, Kenneth E. Barrett, was convicted of one count of using and carrying a firearm during and in relation to drug trafficking crimes and possessing a firearm in furtherance of such drug trafficking offenses, resulting in

Death, in violation of 18 U.S.C. §924(c)(1)(A) and (j) (Count 1), one count of using or carrying a firearm during and in relation to a crime of violence, to wit:

Title 21 U.S.C. §848(e)(1)(B), killing of a state law enforcement officer engaged in or on account of the performance of such officer's official duties, such killing being murder as defined in Title 18 U.S.C. §1111 in violation of 18 U.S.C. §924(c)(1)(A)and (j) (Count 2); and, one count of intentionally killing, during the commission of a drug trafficking crime, a state law enforcement officer engaged in the performance of his official duties, in violation of 21 U.S.C. §848(e)(1)(B) (Count 3). CR-04-00115-RAW,[2] Doc. 240 at 5-8. On November 17, 2005, Mr.

---

[1] This date Mr. Barrett filed his Application for Authorization to File his Successive Section 2255 Motion to Vacate under *McCoy v. Louisiana* and time this Motion conditioned on the Circuit Court's authorization to file the same.

[2] Unless otherwise indicated all documents docketed and cited as "Doc." refer to Mr. Barrett's criminal proceeding, CR-04-00115-JHP (now RAW, as of the order dated March 4, 2019 Doc. 445).

**28 U.S.C. §2255 Motion to Vacate**          **1**                    *Barrett v. United States,*
**Conviciton Under *McCoy v. United States***          **OK-ED No. 6:09-cv-00105-RAW**

Barrett was sentenced by the jury to life without possibility of release on Counts 1 and 2 and to death on Count 3.  Doc. 258 at 30, 34, 40.

Mr. Barrett was twice tried for offenses relating to the death of Trooper Eales by the State of Oklahoma.  The first resulted in a mistrial, the second a conviction for voluntary manslaughter and a sentence of twenty years confinement.  Mr. Barrett was represented by attorney John Echols at both state trials.

On the date the statute of limitations was set to expire related to the drug offenses, the federal government indicted Mr. Barrett.  Mr. Echols was appointed by the trial judge to represent Mr. Barrett.  Mr. Roger Hilfiger was appointed as co-counsel.  Doc. 004-0 (Initial Appearance, Minutes); Doc. 010 (Entry of Appearance).  Mr. Barrett was ultimately convicted on the superseding indictment.  Doc. 052.

Later, in a sealed pleading, Mr. Echols' filed a motion to withdraw as counsel, citing budget issues as creating a conflict of interest.  Doc. 113, attached hereto as Exhibit (Exh.) 1. This pleading made clear that Mr. Barrett was not satisfied with the release of his counsel, and there is no indication that the Court conducted any colloquy with Mr. Barrett prior to approving the request to withdraw.  Mr. Echols' request was granted on May 5, 2005.  Doc. 128 attached hereto and marked Exhibit (Exh.) 2.  In fact, the record is clear and unambiguous that Mr. Barrett was not satisfied with Mr. Hilfiger, his remaining counsel, nor with the appointment of Mr. Smith as co-counsel, who was recognized at the outset as not meeting the American Bar Association's Guidelines for counsel learned in the practice of capital defense litigation.  Doc. 132, Doc. 135 (*pro se* motions for substitution of counsel), attached hereto and marked Exhibits (Exhs.) 3 and 4.

In his first hand-written motion, Mr. Barrett alleges that his counsel ignored his efforts to communicate and, when in contact, lied to him. This motion was declared moot by the Court in light of Mr. Barrett's filing of a second motion for the substitution of counsel Doc. 137, attached hereto and marked Exhibit (Exh.) 5. In his first motion, Mr. Barrett specifically seeks the release of both Roger Hilfiger and Bret Smith. Exh. 3 p. 3. He avers to the Court that he does "not have the faith in them or the trust to be able to defend [him]." And he "does not agree with their strategy with [his] case." Exh. 4 pp. 3-4.

Although Mr. Barrett raised strategy concerns to the Court, the Court failed to engage in any discourse with Mr. Barrett regarding the issues with his counsel. In the written order, the trial court reduced the complaint to "Mr. Barrett indicates he does not feel comfortable" with his appointed counsel. Doc. 137, p. 2. The Court relies solely on the Sixth Amendment right to counsel, finding only that "he does not have the right to choose his counsel." *Id.*[3]

In *McCoy, supra*, issued on May 14, 2018, the Supreme Court articulated a watershed rule of constitutional law that the Sixth Amendment protects a criminal defendant's right "to have the assistance of counsel" for his defense and it is the defendant's prerogative to name the objective of his defense. *Id.*, at 1503. As outlined below, Mr. Barrett made clear and unrefuted objections to his trial counsel, both on and off the record, twice filing a motion for new counsel. Exhs. 3 and 4.[4] Given his unambiguous dissatisfaction with their representation and strategy, in

---

[3] At Exh. 5, n.3, the Court notes that Mr. Barrett's counsel will be armed with the transcripts of the prior state trials" which first resulted in a mistrial and the second, although charged with capital murder, returned a verdict of various acquittals and a conviction and sentence to 20 years confinement for the voluntary manslaughter of Trooper Eales.

[4] Because Mr. Barrett's ability to cooperate in his own defense was raised as an issue in a post-conviction evidentiary hearing, all three trial counsel testified on this issue. The government relied heavily on Mr. Barrett's personal trial notes, evidencing his strong desire throughout the guilt phase of his trial to present impeachment and extrinsic evidence of his affirmative claim of self-defense.

**28 U.S.C. §2255 Motion to Vacate**            **3**                        *Barrett v. United States,*
**Conviciton Under *McCoy v. United States***                        **OK-ED No. 6:09-cv-00105-RAW**

failing to pursue his affirmative defenses in order to obtain a life sentence, Mr. Barrett's convictions cannot be sustained in light of the holding in *McCoy v. Louisiana, supra*.

STATEMENT OF RELEVANT FACTS

### A. Conviction and Sentencing

Mr. Barrett  was indicted and ultimately tried for three capital offenses, Count 1 alleging the use of a firearm during and in relation to drug trafficking crimes, in violation of 18 U.S.C. §924(c)(1)(A); Count 2 alleging the use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §848(e)(1)(B); and Count 3, alleging the intentionally killing, during the commission of a drug trafficking crime, a state law enforcement officer, in violation of 21 U.S.C. §848(e)(1)(B).  Each alleged an action resulting in the death of Trooper Eales.  Doc. 152.

Mr. Barrett was subsequently convicted of all three counts.  Doc. 241.  His jury returned sentences of life without possibility of release as to Counts 1 and 2 and death as to Count 3. Doc. 258.

### B. Direct Appeal

Along with newly appointed appellate counsel, Mark Henricksen, Mr. Barrett was represented on appeal by his lead trial counsel, Mr. Roger Hilfiger.  On appeal, counsel raised several issues to the Circuit Court, none of which touched upon the presentation of evidence in the guilt phase of Mr. Barrett's federal trial.  The Circuit Court rejected all claims and affirmed Mr. Barrett's convictions and death sentence.  *United States v. Barrett* (I), 496 F.3d 1079 (10th Cir. 2007).  The United States Supreme Court denied *certiorari*.  *Barrett v. United States*, 552 U.S. 1260 (2008).

### C. Previous §2255 Motions

Following the denial of *certiorari*, Mr. Barrett timely filed in the Eastern District of Oklahoma a motion for collateral relief under 28 U.S.C. § 2255.  He asserted in the motion numerous claims including (1) the denial of a fair and impartial judge, (2) denial of due process

by prosecutorial misconduct in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Napue v. Illinois* 360 U.S. 264 (1959), and (3) that trial and appellate counsel was ineffective in numerous respects. The district court denied relief. *Barrett v. United States*, 2012 WL 3542609 (E.D. Ok. Aug. 16, 2012). The district court also denied Mr. Barrett's subsequent motion to amend the judgment pursuant to Fed. R. Civ. P. 59(e). *Barrett v. United States*, 2012 WL 5363410 (E.D. Ok. Oct. 30, 2012). The Tenth Circuit Court of Appeals affirmed in part and reversed in part, and remanded the same for an evidentiary hearing on the ineffective assistance of counsel at sentencing. *Barrett v. United States* (II), 797 F. 3d 1207 (10th Cir. 2015).

On May 11, 2016, Mr. Barrett filed a Motion seeking authorization to file a second Motion to Vacate ("Motion for Pre-filing Authority"), alleging newly discovered evidence of continuous, pervasive egregious prosecutorial and police misconduct in violation of due process as held by the United States Supreme Court in *Napue v. Illinois*, 360 U.S. 264 (1959), *Giglio v. United States*, 405 U.S. 150 (1972), and *Mooney v. Holohan*, 294 U.S. 103, 112 (1935) that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense under 28 U.S.C.§ 2255(h)(1). *In re Barrett*, Case No. 16-7035, Dkt. # 01019619071 (10th Cir. May 12, 2016).

The Second §2255 Motion to Vacate was filed in the United States District Court for the Eastern District of Oklahoma, conditioned on the grant of authorization by this Court. *United States v. Barrett*, 6:04-cr-00115-JHP, Doc. 431 (Notice of Conditional Filing), Doc. 432 (Second Motion to Vacate, Set Aside or Correct). On May 19, 2016, the district court denied the Motion to Vacate for lack of jurisdiction. Doc. 438 (Minute Order). This petition was denied by the

10th Circuit Court on November 7, 2016.  *In re Kenneth Eugene Barrett*, Case No. 16-7035, Doc. 01019716712.

On May 23, 2016, Mr. Barrett filed a Third Application to file a Motion to Vacate, this time based upon the newly articulated and retroactive Supreme Court law in *Johnson v. United States*, 135 S. Ct. 2551 (2015) and supplemented the motion and sought action by the Tenth Circuit after *Sessions v. Dimaya*.  *In re Barrett,* Case No. 16-7039, *See* Doc. 01019625476.  That successor petition is pending in this Court under an Order of Abatement.  *See* Doc. 01019645405.

### D.  McCoy v. Louisiana

On May 14, 2018, the Supreme Court issued its ruling in *McCoy v. Louisiana*, 485 U.S. __, 138 S.Ct. 1500 (2018).  The Sixth Amendment guarantees a defendant the right to choose the objective of his defense and to insist that his counsel refrain from admitting guilt, even if the decision is contrary to the attorney's advice based upon experience and expertise.  *Id*., at 1503. Such a violation is structural error.  *Id*.  The holding recognizes the defendant's rights to define the objective of his defense, for the first time carving away a substantive right that is exempt from the rubric of assessing errors caused by the ineffective assistance of counsel.  *Id*.

The Supreme Court has held that courts must give retroactive effect, on collateral review, to new watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.  *Montgomery v. Louisiana*, 136 S.Ct. 718, 728 (2016).  This seems to be the case, with the Supreme Court summarily vacating the judgment and remanding cases of similarly situated petitioners in light of *McCoy*.  *See, e.g.*, *Hashimi v. United States*, __U.S.__. 139 S.Ct. 377 (Unanimous opinion of the Court; Decided October 15, 2018).  In *Hashimi*, the concession of guilt was a single statement uttered in closing argument.  Hashimi's Petition for Writ of Certiorari, filed in the U.S.S.C. on June 9, 2018, Case No. 16-4846.  One comment in

closing argument amid the entire record in a capital case was sufficient for the Supreme Court to vacate and remand under *McCoy*.

## ARGUMENT

I.  **IN LIGHT OF *McCOY*, MR. BARRETT'S CONVICTIONS CANNOT BE SUSTAINED BECAUSE HIS TRIAL COUNSEL VIOLATED HIS RIGHT TO DETERMINE THE OBJECTIVE OF HIS DEFENSE, BY FAILING TO PRESENT AND LITIGATE AN AFFIRMATIVE SELF-DEFENSE**

### A.  Background

Mr. Barrett was tried twice for the alleged murder of Trooper Eales by the State of Oklahoma, which also brought forth capital charges in his state trials.  At both trials, Mr. Barrett was represented by John Echols.  The first trial resulted in a mistrial.  At the second trial, Mr. Barrett was acquitted of first degree murder and convicted of first degree manslaughter.  He was convicted of a lesser included offense, assault and battery with a dangerous weapon, but acquitted of two counts alleging discharge of a deadly weapon with intent to kill.  Exh. 1 (Declaration John Echols.)[5]  The jury sentenced Mr. Barrett to twenty (20) years.  At the state trials, Mr. Echols effectively presented a theory of self-defense and the justified defense of Mr. Barrett's juvenile son, Toby Barrett.  On the evening of the incident, Toby had been out in the yard when the law enforcement task force executed its midnight "no knock" warrant for Kenny Barrett's arrest.

On the date the statute of limitations on the related drug offenses would expire, the federal government indicted Mr. Barrett, alleging the gravamen offense of the intentional killing of a state law enforcement officer.  Ultimately, Mr. Barrett was tried and convicted of one count of using and carrying a firearm during and in relation to drug trafficking crimes and possessing a firearm in furtherance of such drug trafficking offenses, resulting in Death, in violation of 18

---

[5] Before the Court as Exhibit 34 to Mr. Barrett's §2255 Amended Motion.  Doc. 095.

**28 U.S.C. §2255 Motion to Vacate**                    **7**                    *Barrett v. United States,*
**Conviciton Under *McCoy v. United States***                    **OK-ED No. 6:09-cv-00105-RAW**

U.S.C. §924(c)(1)(A) and (j) (Count 1),  one count of using or carrying a firearm during and in relation to a crime of violence, to wit: Title 21 U.S.C. §848(e)(1)(B), killing of a state law enforcement officer engaged in or on account of the performance of such officer's official duties, such killing being murder as defined in Title 18 U.S.C. §1111 in violation of 18 U.S.C. §924(c)(1)(A)and (j) (Count 2); and, one count of intentionally killing, during the commission of a drug trafficking crime, a state law enforcement officer engaged in the performance of his official duties, in violation of 21 U.S.C. §848(e)(1)(B) (Count 3).  Doc. 240 at 5-8.  All three charges were eligible for the death penalty.  On November 17, 2005, Mr. Barrett was sentenced by the jury to life without possibility of release on Counts 1 and 2 and to death on Count 3.  Doc. 258 at 30, 34, 40.

For nearly 8 years, Mr. Barrett was represented by John Echols, lead counsel in both state trials through the pretrial phases of his federal proceedings.  In a sealed pleading, Mr. Echols' filed a pretrial motion to withdraw as counsel from the federal trial, citing budget issues as creating a conflict of interest.  Exh. 1.  This pleading made clear that Mr. Barrett was not satisfied with the release of his counsel, and there is no indication that the Court conducted any colloquy with Mr. Barrett prior to approving the request to withdraw.  Mr. Echols' request was granted on May 5, 2005.  Exh. 2.

The record is clear and unambiguous that Mr. Barrett was not satisfied with Mr. Hilfiger, his remaining counsel, nor with the appointment of Mr. Smith as co-counsel, who was recognized at the outset as not meeting the American Bar Association's Guidelines for counsel learned in the practice of capital defense litigation.  Mr. Barrett filed two *pro se* motions for substitution of counsel.  Doc. 132, 135.  (*Pro se* motions for substitution of counsel, attached hereto as Exhs. 3 and 4).

Counsel's lacksidaisical opening statement, "the Government cannot disprove that Kenny Barrett acted in self-defense" is not an effort to present an affirmative defense. Tr. Vol. 2 p. 219. If anything, the promises within the opening statement, followed by an ambivalent performance,[6] and concluding with a concession that Mr. Barrett acted unreasonably, served only to highlight counsel's belief in his client's guilt and help shepherd Mr. Barrett's third jury to his first conviciton for premeditated murder and sentence to death.

Ironically, at the conclusion of the guilt phase of Mr. Barrett's federal trial, it was the prosecutor and not his own counsel who advocated for instructions to allow for a lesser included offense, while Mr. Hilfiger remained silent. Tr. Vol. 19, p. 4215. Ultimately, the trial judge refused the instructions, finding no applicable lesser included offenses, and did not give the jury any instruction regarding self-defense. Mr. Hilfiger did not request an instruction regarding self-defense or join in the government's argument, thereby allowing the jury to deliberate without any inference that they could find Mr. Barrett not guilty based upon an affirmative defense strategy. This, more than any fact of record, calls into the question the fundamental fairness and accuracy of Mr. Barrett's convictions, in light of his counsel's abject failure to forward the objective of his affirmative defense strategy.

---

[6] In Mr. Barrett's case, his trial counsel superficially cross-examined key witnesses to the trial. For example, although armed with the strategy and "presumed knowledge of partial transcripts from the two prior trials, he failed to address the scientific and procedural evidence of a law enforcement raid. Counsel acquiesced to the testimony regarding the execution of the no-knock warrant in the manner described by government witnesses, despite two prior trials wherein their testimonies were rife with inconsistencies and outright perjury. He failed to object to key matters during the government's case-in-chief. He failed to identify the source of the fatal bullet. He failed to track down and attempt to explain away three untraced bullets, all of which landed in or near Officer Eales' vehicle raising the spectre of friendly fire. He failed to present the one eye witness to the scene, Toby Barrett. He failed to consult or present evidence of a criminalist to combat the expert testimony of government experts, allowing the weight of these experts to go unchallenged in their professional opinions.

At the evidentiary hearing held on remand from this Court, all three trial counsel testified on the separate inquiry into the effectiveness of counsel during the penalty phase proceedings of Mr. Barrett's federal trial. *See Barrett v. United States*, 797 F.3d 1207 (10th Cir. 2015). The testimony sheds sufficient light to make the *prima facie* case of Mr. Barrett's *McCoy* claim.

Mr. Echols' testified that due to the budget restraints imposed by the Court, he was unable to adequately represent Mr. Barrett. He asked Mr. Hilfiger to join in the motion, who declined. Dkt. 430, p. 465.[7] Mr. Echols felt that Mr. Barrett "wanted to be defended." Dkt. 430, p. 509.[8] In his declaration, attached to the Amended §2255 Motion (Doc. 095), Mr. Echols' identified multiple deficiencies in the pretrial investigation before the state trials, and avenues that should have been explored by forensic experts and criminalists in order to fully defend against the state's key witness testimony. This declaration discusses the necessary expert consultations to prepare for the federal trial, which expanded into areas of law enforcement procedures and investigations into drug related offenses, as well as identifying perjured testimony from key witnesses such as Monk Sanders, who's testimony at the federal trial was grossly inconsistent with the affidavit prepared by Clint Johnson, in support of the original no-knock warrant. Dkt. 95, Exh. 34, p. 15.

---

[7] Until this time, Mr. Echols' had been doing nearly all of the work on Mr. Barrett's case and based upon the read outs of the computer file, Mr. Hilfiger had accessed the file perhaps 1-2 times before Mr. Echols was released from the federal case. Doc. 430, p. 457.

Mr. Echols' recalled that Mr. Barrett would often remind him of prior testimony of witnesses and "he was invariably correct" and he was interested in his case. Doc. 430, p. 472. This participation and ability to recall the prior trials was heavily relied upon by the government in their arguments against a new penalty phase proceeding. *Id.*

[8] Unless otherwise indicated all documents dockets and cited as "Dkt." Refer to Mr. Barrett's subsequent civil proceeding, CV-00105-RAW.

Bret Smith was appointed as co-counsel after Mr. Echols' release. As he recalled, the case had been tried before and was highly publicized and there was not going to be a new strategy per se. Doc. 446, p. 523. From Mr. Smith's understanding, Roger Hilfiger was "relying on work that had been prepared by Mr. Echols in both the first two trials and what they'd done up until Mr. Echols' departure." Doc. 446, p. 524.

Bret Smith recognized that Mr. Barrett was naturally upset at the loss of Mr. Echols' and immediately filed a motion to fire Messrs. Hilfiger and Smith. Doc. 446, p. 552. He also testified that Mr. Barrett and Mr. Hilfiger did not have a good working relationship. *Id*. Mr. Smith admits that they went directly against Mr. Barrett's wishes. Dkt. 446, p. 584. For example, On cross-examination with the prosecutor:

Q: You mentioned on direct that you attempted to broker a life sentence for Mr. Barrett; is that correct?
A: That's correct.
Q: Was Mr. Barrett interested in that?
A: No Sir.
Q: Mr. Barrett ever say to you that he would prefer the death penalty?
A: It was all or nothing.

Dkt. 446, p. 617.

Roger Hilfiger testified that Mr. Barrett took notes throughout his federal trial. Dkt. 447, p. 754 (Admitted at the evidentiary hearing as Government Exhibit #38). To the extent that Mr. Barrett was able to assist in his defense, these notes make clear that Mr. Hilfiger directly disregarded his wishes throughout the guilt phase of his trial. Trial counsel did not present any extrinsic evidence in Mr. Barrett's defense to support his superficial proffer that "the government can't disprove Kenneth Barrett acted in self-defense." Tr. Vol. 2 p. 219.

Mr. Barrett's habeas counsel located Paul Gordon. At the time of the incident, Mr. Gordon was a Second Lieutenant with Oklahoma Highway Patrol (OHP) Internal Affairs, charged with the investigation of the police shooting. Mr. Gordon testified by affidavit that there was evidence readily available to impeach the unsupported expert testimony of Mr. Higgs, the government's criminalist and eviscerate the eye witness accounts of the tactical team members. CV - 105, Dkt. 199. The affidavit highlights the inconsistencies of the officers' testimony, collectively and individually with significant prior inconsistent statements from the state trial testimonies. This evidence was offered to Mr. Hilfiger prior to the federal trial. Mr. Gordon's affidavit alone is sufficient to satisfy the prima facie case that Mr. Barrett's trial counsel did not serve or assist in the objective purpose of his defense.[9]

### B. The dismal performance of counsel served to ease any struggling juror's conscience by conceding the unreasonable killing of Trooper Eales during the opening and closing arguments during the guilt innocence phase of trial.

In Mr. Barrett's case, there simply cannot be any question that he wanted to be defended. He faced his third trial for the death of Trooper Eales and had successfully established an affirmative self-defense with two state juries. They found that Mr. Barrett did not have the specific intent to kill anyone and was instead guilty of voluntary manslaughter. He was sentenced to twenty years. He would one day go home.

---

[9] To the extent this should have been pursued, Mr. Barrett affirmatively maintains that this court should reconsider prior claims regarding the ineffective assistance of counsel at the guilt phase of trial. Due to improper rulings and the misapplication of rules for §2254 rather than this §2255 proceeding which arises directly from the criminal proceeding, the district court denied opportunity and access to many avenues of discovery, and specifically refused to consider the information provided by Mr. Gordon. See Doc. 214, pp. 16, 37; its misapplication of Bracy v. Gramley, 520 U.S. 899 (1999) Doc. 269, p. 1; see, e.g., Doc. 249, 250, 251, 269, 350, 353, 389).

At his federal trial, Mr. Barrett was unwillingly represented by court-appointed counsel. Through a series of trial errors, Mr. Barrett's right to define the objective of his defense was violated. The judge failed to appoint counsel learned in the law related to capital defense litigation. The judge failed to make a record, and did not conduct a colloquy with Mr. Barrett before releasing Mr. Echols, his lead counsel. The trial judge found that the statutory right to counsel is simply the right to the assistance of one attorney. Exh. 5, p. 2.

However and most importantly is the Court's failure to make the record, as required by controlling precedent on this specific issue of Mr. Barrett's choice of counsel. With its summary denial of Mr. Barrett' motion for new counsel, the Court abandoned its *sua sponte* duty to inquire into the nature of failed relationship. When a defendant asks for new counsel, the district court should make "formal inquiry" into the reasons for the request. *United States v. Lott*, 433 F.3d 718, 721 (10th Cir. 2006).

As the direct result of judicial error, the record may not be crystal clear but it is littered with sufficient factual predicate to see that Mr. Barrett was, *prima facie*, not defended as he demanded at his federal trial. He was instead subject to the whim, inexperience, and lack of expertise of his counsel, who overruled rather than assisted in his defense.

These factors demonstrate the total control of the government over the criminal justice process. That is the very reason the Supreme Court wrote an expanded right to self-representation into a new right of constitutional law. Citing Erica Hashimoto, "Resurrecting Autonomy: The Criminal Defendant's Right to Control the Case," the Court reaffirmed the role of an attorney… one that is to assist the objective, but cannot override a client's ultimate decisions concerning the objectives of the representations. *McCoy*, 138 at 1509 (citing also, ABA Model Rule of Professional Conduct 1.2(a)(2016)).

At his federal trial, Mr. Hilfiger immediately admitted the tragedy of the incident, a short 10 second span. TR Vol. 2 p. 218. "Why this happened and how it happened will probably never be fully explained during this trial." *Id.*

It could have been explained. In defending its conviction, the government introduced evidence of Kenny Barrett's trial notes at the post-conviction evidentiary hearing. These documents show a portion of Mr. Barrett's contemporaneous trial notes, highlighting for his counsel the inconsistencies with prior testimony from state trials, guiding his counsel to extrinsic evidence that could be used to impeach key witnesses or outright exculpate him entirely. Time and again, Mr. Barrett instructed his counsel to defend him. He showed them the evidence, the way and the means to do so. After hearing Mr. Barrett's objections to their strategy, his counsel overruled him. *Id.*

"Counsel, in any case, must still develop a trial strategy and discuss it with [his] client." *McCoy*, 138 S.Ct. at 1509 (citing *Florida v. Nixon*, 543 U.S. 175, 178 (2004). If, after such discussion, the client still wishes to present a zealous defense, it was not open to counsel to override his objection. *Id.* The Court goes further still, finding that "action taken by counsel over his client's objection . . . ha[s] the effect of revoking [counsel's] agency with respect to the action in question." *McCoy*, 138 S.Ct. at 1509)(citing *Gonzalez v. United States*, 553 U.S. 242, 254 (2008)(Scalia, J., concurring in judgment).

Mr. Hilfiger concluded his opening statement with a half-hearted nod to Kenny Barrett's defense, telling the jury "Kenny Barrett is not guilty of murder by reason of self-defense. ***Kenny Barrett may have been guilty of other things***, but he's not guilty of murder." Tr. Vol. 2, p. 238. (Emphasis added).

In his closing argument, Mr. Hilfiger all but abandons the theory by conceding that a homicide occurred. "I'm going to handle some of the matters that deal directly with the homicide." Tr. Vol. 20, p. 4312. He reminds the jury of his opening statement with a weak challenge to the evidence, "the prosecutors' theories are not fully consistent with what the physical evidence is and what it shows. Mr. Barrett *may be guilty of some things*, but he's not guilty of murder in connection with the charges." *Id*. At 4314. (Emphasis added).

One, the bench conference reviewing jury instructions was complete. Tr. Vol. 20, pp. 4250-4273. The trial judge affirmatively declined to instruct the jury on anything less than the charged offenses, finding no applicable lesser included offenses. This was known to trial counsel, and yet he concedes "Mr. Barrett may be guilty of some things."

Two, the prosecutor asked the Court for instructions to cover Mr. Hilfiger's promise of a defense in the opening statements. The prosecutor specifically mentioned self-defense and the defense of others, while Mr. Barrett's counsel sat silent. Tr. Vol. 19, p. 4215. The judge declined and Mr. Hilfiger made no objection, no request to reconsider, no motion for instructions as to any affirmative defense. Tr. Vol. 19, pp. 4215-4224; p. 4238. *See United States v. Barrett*, 797 F. 3d 1207 (10th Cir. 2015) ("Perhaps a self-defense instruction was warranted and Defendan't trial attorneys should have requested one, [but] Defendant has failed to show the requisite prejudice.").

Finally, without any experts to buttress his claim, Mr. Hilfiger argued Kenny Barrett's "known paranoia" to explain "what he did next and what occurred next may not have been reasonable, I'm not saying it's reasonable, but it was not done with malice aforethought." Tr. Vol. 20 p. 4330.

He allowed the jury to consider the woefully inconsistent "eye witness" testimonies of the troopers; to consider the experts that explained away their fallacies without challenge; to consider the death of a law enforcement officer; to consider Kenny Barrett's paranoia and "unreasonable response" without any instruction, definition, or legal guidance as to any affirmative defense.  Mr. Hilfiger already knew they would not have the option to convict on any lesser offenses.  Yet, Mr. Hilfiger embraced Kenny Barrett's culpability to killing Trooper Eales, in order to challenge the solitary question of premeditation.  Mr. Barrett's counsel abandoned any theory of self-defense when he conceded the unreasonableness of the actions.  Mr. Barrett's counsel sealed his conviction when he failed to request any instructions on any affirmative defense.

### C. Counsel's errors were structural, thereby calling into question the fundamental fairness and accuracy of Mr. Barrett's conviction, and thus mandates reversal.

The beauty of *McCoy's* holding is its pure commitment to the fairness of the criminal justice system.  The Supreme Court acknowledged the reasonable belief of McCoy's counsel that the evidence of guilt was overwhelming.  It just didn't matter.  By declaring the violation of a criminal defendant's right to self-autonomy structural, the Court pulled the assessment of counsel's actions out of *Strickland's* rubric.  *Strickland v. Washington*, 466 U.S. 668 (1984).  The Court need not determine whether trial counsel's strategy was ineffective.  There is no harm assessment to conduct.  "[H]armless-error analysis is inapplicable to deprivations of the self-representation right, because '[t]he right is either respected or denied; its deprivation cannot be harmless."  *McCoy*, 138 S.Ct. at 1511.  (Internal citations omitted).

Therefore, while the rights protected from ineffective assistance of counsel and the rights of self-representation are often intertwined, they now require separate independent analysis.  The arguments raised in Mr. Barrett's prior §2255 petitions in support of the ineffective assistance of

**28 U.S.C. §2255 Motion to Vacate**                    **16**                    *Barrett v. United States,*
**Conviciton Under *McCoy v. United States***                                         **OK-ED No. 6:09-cv-00105-RAW**

counsel claims are relevant here to provide the factual predicate for the failure to present Mr.

Barrett's chosen defense. *McCoy*, however, changed the landscape, and this Court must assess

those facts without demanding any showing of prejudice. The dual rights are parallel in this

case, but both are equally inviolable under the law, and now demands reversal of Mr. Barrett's

conviction.

II.   **MR. BARRETT IS ENTITLED TO RELIEF UNDER 28 U.S.C. 2255 BECAUSE HIS CLAIM UNDER *McCOY* IS COGNIZABLE, TIMELY, AND SATISFIES THE SUCCESSIVE PETITION REQUIREMENTS OF 2255(h)(2)**

   **A.  Mr. Barrett's claim is cognizable under § 2255(a).**

A federal prisoner may obtain relief under 28 U.S.C. §2255(a) if his conviction "was

imposed in violation of the Constitution or laws of the United States, or is in excess of this

Court's jurisdiction. Mr. Barrett's conviction violates the Due Process Clause of the Sixth

Amendment and violates federal law. This Court therefore should grant him relief under

§2255(a). For all the reasons explained above, Mr. Barrett's convictions violate due process

because his counsel, from the outset, violated his autonomous right to self-representation and

denied him the assistance of counsel in the pursuit of his objective defense.

Given the plain language of *McCoy v. Louisiana* and the Court's subsequent application

of *McCoy* to a similarly situated petitioner in *Hishami*, Mr. Barrett's conviction violates the law

of the United States and results in a fundamental miscarriage of justice. It renders the trial itself

fundamentally unfair, with a personal right violated and held beyond any assessment of harm as

to the outcome of the trial itself. This is precisely the type of error that is cognizable under

§2255(a).

## B.  Mr. Barrett's motion for relief is timely.

Section 2255(f) requires that §2255 motions be filed within a one-year limitations period. That period runs from the latest applicable triggering event.  28 U.S.C. §2255(f).  Among these triggers is "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  *Id*. at §2255(f)(3).

The Supreme Court decided *McCoy* on May 14, 2018.  Mr. Barrett has filed this application within one year of that date.  This motion therefore is timely filed.

### C.  Mr. Barrett's successive §2255 motion satisfies the requirements of 28 U.S.C. §2255(h)(2) because McCoy announced a new, previously unavailable rule of constitutional law and the Supreme Court has made McCoy retroactive to cases on collateral review.

The analysis above demonstrates that Mr. Barrett has presented a *prima facie* showing of a tenable claim that all the requirements of § 2255(h)(2) are satisfied, he respectfully requests that the Court of Appeals certify the successive motion.  It contains a claim based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."  *Id*.; *see also,* 28 U.S.C. §2244(b)(3)(C).

## CONCLUSION AND PRAYER FOR RELIEF

For all the reasons set forth above, Mr. Barrett respectfully asks this Court to vacate his convictions and sentence and remand his case for new trial.  Mr. Barrett further requests the following relief:

a)   That his Court hold this Motion in abeyance pending authorization of its filing by the 10th Circuit Court of Appeals sought by Mr. Barrett this date;

b)  That this Court grant him leave to amend this motion, including by submitting a supplemental memorandum of law to support it;

c)  That this Court schedule a status conference on this motion at the Court's earliest

convenience; and,

d)  That this Court grant any other relief that may be necessary to correct Mr. Barrett's

invalid conviction and sentence.


DATED:  May 14, 2019                    Respectfully submitted,

                                        */s/ Joan M. Fisher*
                                        JOAN M. FISHER
                                        Assistant Federal Defender

                                        */s/ Carrie Ward*
                                        CARRIE WARD
                                        Assistant Federal Defender

                                        Attorney for Petitioner/Defendant,
                                        KENNETH EUGENE BARRETT

## CERTIFICATE OF ELECTRONIC SERVICE AND DELIVERY

On this 14th day of May, 2019, I caused the foregoing Motion to be filed with the Clerk of the Court using the ECF System for filing, with service via CM/ECF to be made to Christopher J. Wilson, AUSA, Jeffrey B. Kahan, U.S. Department of Justice, and to all counsel of record.

To counsel's knowledge, there are no non-ECF registrants who are counsel in this case.


*/s/ Joan M. Fisher___*
JOAN M. FISHER
Assistant Federal Defender

**VERIFICATION BY COUNSEL**

I am an attorney licensed to practice law by the State of Idaho, and I am a member in good standing of the bar of the United States District Court for the Eastern District of Oklahoma. I am an Assistant Federal Defender in the Office of the Federal Defender for the Eastern District of California. In 2008, the Federal Defender's Office was appointed post-conviction counsel for Kenneth Eugene Barrett and was assigned to represent Mr. Barrett in May, 2009.

I am authorized by Kenneth Eugene Barrett to file the foregoing Fourth Motion to Vacate, Set Aside, or Correct the Sentence Pursuant to 28 U.S.C. § 2255. I am filing the motion on Mr. Barrett's behalf. Mr. Barrett is confined and restrained of his liberty at the United States Penitentiary at Terre Haute, Indiana.

I declare that the contents of the foregoing fourth § 2255 Motion to Vacate, Set Aside or Correct Convictions and Sentences is made pursuant to 28 U.S.C. § 2255 (h)(2) and is conditionally filed herein pending authority to file from the Tenth Circuit Court of Appeals.

I declare that the contents of the foregoing motion are true, except for those matters based upon information and belief, and I have reason to and do believe the latter matters to be true, as well. The sources of my information include, but are not limited to, official court records, various documents obtained or prepared during investigation of this motion, and items in the possession of other lawyers, investigators and/or experts connected with the preparation of this amended motion. I make this verification pursuant to Rule 2(b)(5) of the Rules Governing § 2255 Proceedings because these matters are more within my knowledge than Mr. Barrett's knowledge.

I have met with and discussed the contents herein with Mr. Barrett and he has authorized me to file the same on his behalf.  An Authorization to that effect executed by Mr. Barrett is filed herewith.

DATED: May 14, 2019

                                        *Joan M. Fisher*_____
                                        JOAN M. FISHER
                                        Assistant Federal Defender