## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| Respondent/Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:04-cr-00115-RAW |
| | ) | |
| **KENNETH EUGENE BARRETT**, | ) | |
| | ) | |
| Movant/Defendant. | ) | |

## ANSWER IN OPPOSITION TO SECOND AND SUCCESSIVE MOTION TO VACATE, SET ASIDE AND CORRECT CONVICTION AND SENTENCE

Comes now, Respondent/Plaintiff, the United States of America, by and through undersigned counsel and respectfully files this Answer in Opposition to Kenneth Eugene Barrett's second and successive motion, pursuant to 28 U.S.C. § 2255, to vacate, set aside and correct his conviction and sentence (Dkt. 453). Unless specifically admitted below, the government denies Barrett's factual allegations. Additionally, the government denies the Motion should be granted, denies that Barrett's confinement is improper, and denies that the judgment underlying his confinement and death sentence is improper or that his rights have been violated.

### PRELIMINARY STATEMENT

In 1999, an Oklahoma state court issued a warrant for Movant/Defendant Kenneth Barrett's arrest after he failed to appear for trial on drug charges. *United States v. Barrett*, 797 F.3d 1207, 1211 (10th Cir. 2015) ("*Barrett II*"). Subsequently, the police learned that Barrett had isolated himself at home, where he sold methamphetamine and "had promised to kill any officer who came to arrest him." *Id.* The police took Barrett's threat seriously, understanding he

1

"routinely carried firearms," and lived on a dead-end road near several relatives. *United States v. Barrett*, 496 F.3d 1079, 1083 (10th Cir. 2007) ("*Barrett I*"). Given the evident risks in arresting Barrett, the police obtained a "no-knock" nighttime service warrant and engaged the assistance of an Oklahoma Highway Patrol ("OHP") tactical team. *Id*. at 1082-83.

Shortly after 12:00 a.m., September 24, 1999, three tactical team vehicles entered Barrett's property, headed toward his house. *Barrett II*, at 1211; *Barrett I*, at 1084. The lead vehicle was an unmarked Bronco. *Barrett I*, at 1084. Another Bronco and a marked patrol car followed close behind with flashing emergency lights. *Id*. As the vehicles approached the house, gunfire erupted, hitting the lead Bronco in "the middle of the windshield, at approximately 'head level.'" *Barrett II*, at 1212; *Barrett I*, at 1084. The gunfire intensified as the Bronco neared the house, where it eventually stopped. *Barrett II*, at 1212. An officer in the Bronco, Trooper David Eales, exited and sought cover. *Barrett II*, at 1212; *Barrett I*, at 1084-1085. Barrett shot Eales three times in the back and arm, killing him. *Barrett I*, at 1085. Eventually, officers shot Barrett in the legs and arrested him. *Barrett II*, at 1212. Inside the home, the police found cash, firearms, and materials used to manufacture methamphetamine. *Id*.

Oklahoma state officials charged Barrett with first degree murder, shooting with intent to kill, and two counts of discharging a firearm with intent to kill. *Barrett II*, at 1212. An initial state trial ended in a hung jury. *Id*. On retrial, a jury convicted Barrett of two lesser offenses—manslaughter and battery with a dangerous weapon, and the court imposed a 30-year prison sentence. *Id*.

After the state proceedings, the U.S. Attorney secured an indictment, charging Barrett with drug and murder offenses. *Barrett II*, at 1212-13. A jury convicted Barrett, as charged, of two counts of causing death through use of a firearm during a drug trafficking and a violent

crime (18 U.S.C. § 924(c)(1)(A) & (j)(1) (Counts One and Two)) and one count of killing a law enforcement officer during a felony drug offense (21 U.S.C. § 848(e)(1)(B) (Count Three)).  *Id*. at 1213.  The jury recommended, and the court imposed, a death sentence on Count Three and life sentences on Counts One and Two.  *Id*.  On direct review, the Tenth Circuit Court of Appeals affirmed, and the Supreme Court denied certiorari.  *Barrett I*, *cert. denied*, 552 U.S. 1260 (2008).

In 2009, Barrett moved for relief under 28 U.S.C. § 2255, which this Court denied. *Barrett v. United States*, no. 09–CIV–105–JHP, 2012 WL 3542609 (E.D. Okla. Aug. 16, 2012). On appeal from that decision, the Tenth Circuit affirmed in part and reversed in part, remanding for an evidentiary hearing on a claim that trial counsel rendered ineffective assistance during the penalty phase hearing.  *Barrett II*, at 1208.  Barrett sought rehearing and certiorari from those aspects of the opinion with which he disagreed, but the Court of Appeals and Supreme Court denied further review.  *Barrett II*, *reh'g denied* Oct. 16, 2015, *cert. denied, Barrett v. United States*, 137 S. Ct. 36 (2016).  On remand, this Court conducted a multi-day evidentiary hearing, denied relief in an unpublished order, and granted a certificate of appealability.  Dkt. 478 & 479. Barrett's appeal from that decision is pending in *United States v. Barrett* (10th Cir. no. 19-7049).

On May 12, 2016, while seeking certiorari from the partial affirmance of the decision to deny his first § 2255 motion, Barrett moved for permission to file a second or successive § 2255 motion, challenging his convictions based on a claim that "continuous, pervasive egregious prosecutorial and police misconduct" violated his due process at trial.  *See In re: Barrett*, 10th Cir. Case no. 16-7035 ("*§ 2255(h)-I*").  The Tenth Circuit denied the request in a published opinion.  *In re: Barrett*, 840 F.3d 1223 (10th Cir. 2016) (*Barrett, III*).  On May 23, 2016, Barrett moved for a second time for permission to file a successive § 2255 motion, proposing to attack one of his two § 924 convictions based on an allegedly vague provision in the statute.  *See* Ex. A

3

(from *In re: Barrett*, 10th Cir. case no. 16-7039 ("*§ 2255(h)-II*")).  On June 24, 2016, the Court

of Appeals ordered the request held in abeyance.  On May 15, 2019, Barrett petitioned for a third

time to file a successive § 2255 motion, in *In re: Barrett*, 10th Cir. case no. 19-7028 ("*§ 2255(h)-*

*III*"), seeking permission to argue that his trial attorneys had not acted on his goals for the

defense.  The Tenth Circuit denied the petition in *§ 2255(h)-III* but, following a period of

abatement, granted the request in *§ 2255(h)-II*, in view of the Supreme Court's recent in decision

in *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019).

On December 13, 2019, in apparent accordance with the order in *§ 2255(h)-II*

(Dkt. 452), Barrett filed the instant motion in this Court.  Dkt. 453 ("Br.").  On January 3,

2020, the Court ordered this response.

## ARGUMENT

### I.    ALTHOUGH BARRETT COULD HAVE SUFFERED CONVICTION AS AN ACCOMPLICE FOR INTENTIONALLY KILLING TROOPER EALES, THE OFFENSE CONSTITUTTED A CRIME OF VIOLENCE THAT SATISIFIED A VALID PROVISION OF § 924

In *United States v. Davis*, *supra*, the Supreme Court invalidated one of the two provisions

in § 924 that defined a crime of violence.  The second such provision, unaffected by *Davis*,

permits a conviction under § 924 if the underlying crime "has as an element the use, attempted

use, or threatened use of physical force against the person of another."  *See* 18 U.S.C. §

924(e)(2)(B)(i).  According to Barrett, the crime of violence underlying his Count Two § 924

conviction—killing a state law enforcement officer during a continuing criminal enterprise (21

U.S.C. § 848(e)(1)(B)) —does not satisfy the valid "categorical" definition of a crime of

violence because it permits the conviction of a defendant who "counsels, commands, induces,

procures or causes" the killing of a police officer.  Br. 10-15.  Accomplice liability, like

permitted by the language of § 848, satisfies § 924's surviving categorical definition of violent

4

crime.  Assuming accomplice liability did not satisfy § 924, the required vacatur of Barrett's

Count Two conviction would have no effect on his separate convictions and sentences for Counts

One and Three.

     A.  Intentional Killing of a Police Officer is a Crime of Violence

In deciding whether an offense constitutes a "violent felony" under the elements clause of

§ 924, the courts of this Circuit "apply the categorical approach, focusing on the elements of the

crime of conviction, not the underlying facts," to determine if the offense requires use, attempted

use, or threatened use of physical force.  *United States v. Dieter*, 890 F.3d 1203, 1211 (10th Cir.

2019) (citing *United States v. Harris*, 844 F.3d 1260, 1263 (10th Cir. 2017)).  "Physical force"

involves "violent force—that is, force capable of causing physical pain or injury to another

person."  *Johnson v. United States*, 559 U.S. 133, 140 (2010).  Unsurprisingly, intentional

killings satisfy the definition of physical force.[1]  *See United States v. Teague*, 884 F.3d 726, 729-

30 (7th Cir. 2018) (holding Illinois second degree murder constituted a crime of violence); *In re

Irby*, 858 F.3d 231, 235-36 (4th Cir. 2017) (holding second degree retaliatory murder constituted

a crime of violence); *see also United States v. Duncan*, Nos. 2:17-cv-91-EJL, 2:07-cr-23-EJL,

2019 WL 6053010, *5 (D. Idaho Nov. 15, 2019) (citing *Begay*, 934 F.3d at 1038-40 for the

proposition that first degree murder is a crime of violence).

Barrett, however, seizes on language in § 848 that permits a conviction for a defendant

---

[1] Barrett appears to concede that intentionally killing a police officer under § 848 constitutes a violent crime (albeit not when committed by an accomplice).  Still, in arguing that the trial court failed to instruct on the intent element of the § 924(j) homicide offenses, he cites *Begay*, which held that federal second degree murder (18 U.S.C. § 1111) is not a crime of violence because a defendant can commit it recklessly rather than intentionally.  Br. 18 & n.12 (citing *United States v. Begay*, 934 F.3d 1033 (9th Cir. 2019).  Unlike second degree murder, Barrett's § 848(e) offense required a specific intent to kill, limiting the reach of *Begay*.  Barrett did not receive permission to challenge the § 924 jury charge (*see* Arg. II, *infra*), but for clarity's sake the government notes that the court instructed with a felony-murder theory, obviating the need for further explication of mens rea.  *See Barrett-II*, at 1220-22.

who aids and abets an intentional killing and, he claims, takes the offense outside categorical definition of a crime of violence.  Recently, the Tenth Circuit rejected much the same contention in a case involving a defendant who claimed his conviction as an aider and abettor to a bank robbery foreclosed a finding that he had necessarily committed a crime of violence.  *See Deiter*, 890 F.3d at 1214.  The court observed that the federal aiding and abetting statute, 18 U.S.C. § 2, defined as a principal, anyone who "aids, abets, counsels, commands, induces or procures [a crime's] commission," language virtually identical to the § 848 text upon which Barrett premises his argument.  *Id*.; *see also United States v. Walker*, 142 F.3d 103, 113 (2d Cir. 1998) (holding "§ 848(e)(1)(A) expressly includes language of aiding and abetting liability which applies to all prongs under the section").

"[U]nder § 2 those who provide knowing aid to persons committing federal crimes, with the intent to facilitate the crime, are themselves committing a crime."  *Deiter*, 890 F.3d at 1214 (quoting *Rosemond v. United States*, 572 U.S. 65, 134 S. Ct. 1240, 1245 (2014) (quotation marks omitted)).  Indeed, an aiding abetting conviction requires proof that the defendant "shared in the intent to commit the underlying offense, willfully associated with the criminal venture, and aided the venture through affirmative action"  *Id*. (quoting *United States v. Rosalez*, 711 F.3d 1194, 1205 (10th Cir. 2013) (quotation marks omitted)).  Given the shared liability amongst principals and accomplices, if one commits a crime of violence, so do all the others:

> Because an aider and abettor is responsible for the acts of the principal as a matter of law, an aider and abettor of a Hobbs Act robbery necessarily commits all the elements of a principal Hobbs Act robbery. . . . And because the substantive offense of Hobbs Act robbery "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," . . . . aiding and abetting a Hobbs Act robbery qualifies as a "crime of violence."

*In re Colon*, 826 F.3d 1301, 1305 (11th Cir. 2016) (per curiam) (quoted in *Deiter*, at 1215).

Like the text of § 2, the language of § 848 contemplates those who knowingly share the

6

intent to bring about a crime. Because § 848 defines a violent crime within the categorical definition of § 924, regardless of the potential for accomplice liability, Barrett's Count Two conviction remains valid.

B.  The Alleged Flaw in Count Two does not Require Resentencing

Relying on non-capital cases, Barrett argues that the alleged flaw in Count Two requires a vacatur of the conviction and resentencing on the remaining counts. Br. 16-17. Assuming, arguendo, that Barrett had identified a basis for vacating Count Two, his argument regarding the viability of his remaining sentences would fail, as it rests on inapposite authority.

Barrett founds his argument on irrelevant dicta, a judicial observation that the unit of prosecution for a § 924 charge "matters greatly" because it informs a *non-capital* defendant's aggregate sentence exposure. Br. 16 (citing *United States v. Rentz*, 777 F.3d 1105, 1108 (10th Cir. 2015)). The comment Barrett cites does not announce a binding rule, much less could it require resentencing of a capital defendant whose jury provided separate penalty phase consideration of each count and recommended a death sentence for an offense under 21 U.S.C. § 848, not § 924. Still, Barrett persists, citing opinions that recognize the interdependence of non-capital sentences imposed for § 924 charges and their underlying crimes of violence. Br. 16-17 (citing *Davis*, 139 S. Ct. 2336; *United States v. Smith*, 756 F. 3d 1179, 1189 (10th Cir. 2014); and *United States v. Rodriguez*, 114 F. 3d 46 (5th Cir. 1997)). He concludes by citing an opinion that predates the enactments of the Federal Death Penalty Act (1994) or the death penalty provisions of the § 848 (1988), noting the need to resentence a defendant subjected to a partially unlawful sentence. Br. 17 (citing *United States v. Rosen*, 764 F. 2d 763, 767 (11th Cir. 1985)).

None of Barrett's authority has any relevance, as the jury imposed separate sentences for each count. The jury's instruction on the deliberative process required it "to make independent

7

findings for each of Counts One, Two and Three." Dkt. 257, Inst. No. 7. The jury received two additional admonitions to consider the counts separately. *Id*. at Inst. Nos. 9, 13. And the panel completed a special verdict form that required discrete findings as to each count. Dkt. 258. Had the jury returned a general verdict of death as to all three counts, Barrett could show the requisite interdependence of sentences to require a new penalty phase hearing, assuming he succeeded in demonstrating the invalidity of one or more counts. *See United States v. Causey*, 185 F.3d 407, 422-23 (5th Cir. 1999) (vacating a general death sentence based on the reversal of one of the three counts of conviction underlying a single sentence of death). But on this record, there exists no basis upon which find any interdependence among Barrett's discrete sentences for his § 924 and § 848 offenses. *See* 18 U.S.C. § 3594 (requiring imposition of a death sentence recommended by a jury).

Accordingly, even if Barrett could demonstrate error requiring the dismissal of Count Two, he cannot establish any right to resentencing on the remaining charges.

## II.    BARRETT'S REMAINING CLAIM IS PROCEDURALLY BARRED

In a parting claim, Barret argues that the *Davis* decision not only requires a vacatur of Count Two but demands the conclusion that the trial court provided the jury with vague and misleading instructions. Br. 17-20. Barrett failed to secure permission to raise this claim, which is inappropriate to collateral review in any event.

"Before a second or successive application . . . is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A); *see Gonzalez v. Crosby*, 545 U.S. 524, 530 (2005) (holding a district court may not accept a successive petition absent an order of the relevant court of appeals). Upon returning to the district court, the applicant must demonstrate

8

that his claims actually satisfy the requirements for filing a second or successive motion.  §

2244(b)(4); *Case v. Hatch*, 731 F.3d 1015, 1028-29 (10th Cir. 2013).

As noted, Barrett sought the Tenth Circuit Court of Appeals' permission, under § 2244,

to assert in a successive § 2255 motion that *Davis* required a vacatur of his conviction for Count

Two.  *See* Ex. A.  Although Barrett attached a proposed § 2255 motion to his Tenth Circuit

petition, he filed a substantively different document in this Court, adding an argument about

flaws in the jury charge.  *Compare* Ex. A; *with* Br. 17-20.  This Court lacks jurisdiction to

consider a claim outside the ambit of the appellate court's authorization for a second or

successive § 2255 motion.  *Holland v. MacLaren*, No. 13–cv–10267, 2013 WL 5745174 (E.D.

Mich. Oct. 23, 2013).

Even if the scope of the appellate court's order did not limit this Court's review, it should

still reject the instructional claim under § 2244(b)(4), which empowers it to disallow, on its own,

any contention that fails to satisfy the requirements for a second and successive § 2255 motion.

*See United States v. Murphy*, 887 F.3d 1064, 1067 (10th Cir. 2018).  The new claim, which

concerns the adequacy of the court's jury instructions, relies entirely on matters within the record

that Barrett could have raised on direct appeal.  As such, he defaulted the claim and can only

excuse his omission by demonstrating actual innocence or cause and prejudice for his omission.

*See United States v. Frady*, 456 U.S. 152, 165 (1982); *United States v. Snyder*, 871 F.3d 1122,

1126 (10th Cir. 2017) (citing *Massaro v. United States*, 538 U.S. 500, 504 (2003) regarding

cause and prejudice); *United States v. Wiseman*, 297 F.3d 975, 979 (10th Cir. 2002) (quoting

*Bousley v. United States*, 523 U.S. 614, 623-24 (1998) regarding actual innocence).

Barrett has made no effort to meet either requirement for the presentation of a defaulted

claim, though he might reply that his reliance on the recently issued *Davis* opinion supplies cause

9

for his earlier omission.  *Davis* does not, however, concern the adequacy of jury instructions, and Barrett cannot succeed in his strained effort to extend its reach to dimly-related issues, much less explain his failure to raise them earlier.  Indeed, his complaints about the jury instructions appear to turn on the extent to which the trial court may have invaded the fact-finding province of the jury in view of case law that predates his trial.  *See* Br. 18-20 & n.14 (citing, inter alia, *Apprendi v. New Jersey*, 530 U.S. 466, 492 (2000) and *Ring v. Arizona*, 536 U.S. 609 (2002)).

More to the point, *Davis* simply does not speak to any supposed flaw in the instructions on Counts One and Three, offenses defined without reference to crimes of violence.  The convictions and sentences for those offenses remain unaffected by Barrett's contention.  As to Count Two, Barrett has not shown that *Davis* undermines the conclusion that the intentional killing of a police officer constitutes a crime of violence (*see* Arg. I, *supra*), and he therefore cannot succeed in relying on the opinion as a novel basis for identifying some flaw in the instructions concerning the offense.

Barrett also suggests, but does not squarely raise, two other claims outside the scope of his permission to file a successive § 2255 motion.  He observes that an en banc opinion of the Tenth Circuit limited the unit of prosecution for § 924 offenses, and a concurrence to that decision recognized that the government may have exceeded those strictures in charging two such offenses in this case.  Br. 9 n.7 (citing *United States v. Rentz*, 777 F.3d 1105, 1115 (10th Cir. 2015) (en banc)).  But only a decision of the Supreme Court, not an intermediate appellate court sitting en banc, could justify Barrett in filing a successive § 2255 motion.  *See* 28 U.S.C. § 2244(b).  Barrett also implies that the jury instruction regarding Count 3 did not adequately define the offense.  Br. 14 n.10.  In this regard, he relies on case law that long predates his initial § 2255 motion (*id.* (citing *Richardson v. United States*, 526 U.S. 813 (1999))) and, therefore,

10

cannot justify the filing of a successive petition for collateral relief.  § 2244(b)(4).

## CONCLUSION

Based on the foregoing reasoning and authority, this Court should deny and dismiss

Barrett's second and successive § 2255 Motion.

Dated: January 15, 2020.

Respectfully submitted,

BRIAN J. KUESTER
United States Attorney
Eastern District of Oklahoma

*/S/ Christopher J. Wilson*
CHRISTOPHER J. WILSON, OBA # 13801
First Assistant United States Attorney

LINDA EPPERLEY
Assistant United States Attorney
520 Denison Avenue
Muskogee, OK 74401
Telephone: (918) 684-5100
FAX: (918) 684-5150

*/S/ Jeffrey B. Kahan*
JEFFREY B. KAHAN, PaBN #93199
Deputy Chief, Capital Case Section
U.S. Dept. of Justice
1331 F Street, NW; 6th Fl.
Washington, DC 20530
Telephone: (202) 305-8910
FAX: (202) 353-9779

## CERTIFICATE OF ECF FILING AND DELIVERY

I, hereby certify that on January 15, 2020, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. A Notice of Electronic Filing will be sent via the Court's ECF system to the following counsel of record for the Petitioner/Appellant:

- Mr. David B. Autry: Dbautry77@gmail.Com
- Ms. Joan M. Fisher:  Joan.Fisher@fd.Org
- Tivon Schardl: tim.schardl@fd.org

*/S/ Jeffrey B. Kahan*
JEFFREY B. KAHAN, PaBN #93199
Deputy Chief, Capital Case Unit