**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| Respondent/Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:04-cr-00115-RAW |
| | ) | |
| **KENNETH EUGENE BARRETT**, | ) | |
| | ) | |
| Movant/Defendant. | ) | |

**RESPONSE IN OPPOSITION TO MOTION TO ALTER OR AMEND JUDGMENT**

Comes now, Respondent/Plaintiff, the United States of America, by and through undersigned counsel and respectfully files this Response in Opposition to Movant/Defendant Kenneth Eugene Barrett's Motion to Alter or Amend Judgment (Dkt. 469).

**PRELIMINARY STATEMENT**

In 1999, an Oklahoma state court issued a warrant for Movant/Defendant Kenneth Barrett's arrest after he failed to appear for trial on drug charges. *United States v. Barrett*, 797 F.3d 1207, 1211 (10th Cir. 2015) ("*Barrett II*"). Subsequently, the police learned that Barrett had isolated himself at home, where he sold methamphetamine and "had promised to kill any officer who came to arrest him." *Id.* The police took Barrett's threat seriously, understanding he "routinely carried firearms," and lived on a dead-end road near several relatives. *United States v. Barrett*, 496 F.3d 1079, 1083 (10th Cir. 2007) ("*Barrett I*"). Given the evident risks in arresting Barrett, the police obtained a "no-knock" nighttime service warrant and engaged the assistance of an Oklahoma Highway Patrol ("OHP") tactical team. *Id.* at 1082-83.

Shortly after 12:00 a.m., September 24, 1999, three tactical team vehicles entered

1

Barrett's property, headed toward his house. *Barrett II*, at 1211; *Barrett I,* at 1084. The lead

vehicle was an unmarked Bronco. *Barrett I*, at 1084. Another Bronco and a marked patrol car

followed close behind with flashing emergency lights. *Id*. As the vehicles approached the

house, gunfire erupted, hitting the lead Bronco in "the middle of the windshield, at

approximately 'head level.'" *Barrett II*, at 1212; *Barrett I*, at 1084. The gunfire intensified as

the Bronco neared the house, where it eventually stopped. *Barrett II*, at 1212. An officer in the

Bronco, Trooper David Eales, exited and sought cover. *Barrett II*, at 1212; *Barrett I*, at 1084-

1085. Barrett shot Eales three times in the back and arm, killing him. *Barrett I*, at 1085.

Eventually, officers shot Barrett in the legs and arrested him. *Barrett II*, at 1212. Inside the

home, the police found cash, firearms, and materials used to manufacture methamphetamine. *Id*.

Oklahoma state officials charged Barrett with first degree murder, shooting with intent to

kill, and two counts of discharging a firearm with intent to kill. *Barrett II*, at 1212. An initial

state trial ended in a hung jury. *Id*. On retrial, a jury convicted Barrett of manslaughter and

battery with a dangerous weapon, and the court imposed a 30-year prison sentence. *Id*.

After the state proceedings, the U.S. Attorney secured an indictment, charging Barrett

with drug and murder offenses. *Barrett II*, at 1212-13. A jury convicted Barrett, as charged, of

two counts of causing death through use of a firearm during a drug trafficking and a violent

crime (18 U.S.C. § 924(c)(1)(A) & (j)(1) (Counts One and Two)) and one count of killing a law

enforcement officer during a felony drug offense (21 U.S.C. § 848(e)(1)(B) (Count Three)). *Id*.

at 1213. The jury recommended, and the court imposed, a death sentence on Count Three and

life sentences on Counts One and Two. *Id*. On direct review, the Tenth Circuit Court of Appeals

affirmed, and the Supreme Court denied certiorari. *Barrett I, cert. denied*, 552 U.S. 1260 (2008).

In 2009, Barrett moved for relief under 28 U.S.C. § 2255, which this Court denied.

2

*Barrett v. United States*, no. 09–CIV–105–JHP, 2012 WL 3542609 (E.D. Okla. Aug. 16, 2012). On appeal from that decision, the Tenth Circuit affirmed in part and reversed in part, remanding for an evidentiary hearing on a claim that trial counsel rendered ineffective assistance during the penalty phase hearing. *Barrett II*, at 1208. Barrett sought rehearing and certiorari from those aspects of the opinion with which he disagreed, but the Court of Appeals and Supreme Court denied further review. *Barrett II*, *reh'g denied* Oct. 16, 2015, *cert. denied, Barrett v. United States*, 137 S. Ct. 36 (2016). On remand, this Court conducted a multi-day evidentiary hearing, denied relief in an unpublished order, and granted a certificate of appealability. Dkt. 478 & 479. Barrett appealed that decision, and the Tenth Circuit reversed and remanded for a penalty phase retrial that remains pending. *United States v. Barrett*, 985 F.3d 1203, 1233 (10th Cir. 2021).

On three occasions, Barrett sought permission under § 2255(h) to file a second motion for collateral relief. He succeeded in the second request, as the Tenth Circuit held that Barrett had established a prima facie case that his conviction for § 924 murder, charged in Count 2, offended *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019). *See In re: Barrett*, 10th Cir. case no. 16-7039, Slip Op. (10th Cir. Nov. 29, 2019); *see also In re Barrett*, No. 19-7028, Slip Op. (10th Cir. June 11, 20119) (denying a third request to file a successive motion); *In re: Barrett*, 840 F.3d 1223 (10th Cir. 2016) (denying the first request). Count 2 alleged that Barrett used a firearm to murder Trooper Eales during a crime of violence, the § 848 homicide charged in Count 3, but *Davis* invalidated the so-called "residual clause" of § 924, one of two provisions in the statute that defined a crime of violence. As the Tenth Circuit observed, Barrett "alleges that the underlying offense qualified as a "crime of violence" *only* as that term is defined in § 924(c)(3)'s residual clause." *In re: Barrett*, 10th Cir. case no. 16-7039, Slip Op. at 1 (emphasis added).

On December 13, 2019, Barrett filed his successive § 2255 motion, which included an

unauthorized instructional claim.  Dkt. 453.  On December 6, 2021, this Court denied relief,

rejecting the authorized claim and finding it could not consider contentions the Tenth Circuit had

not sanctioned.  Dkt. 467.  Even as to the authorized claim, this Court held that Barrett did not

satisfy the procedural requirements for a successive § 2255 motion, because his claim did not

actually sound within *Davis*.

On January 3, 2022, Barrett filed this motion to alter or amend the judgment.

Dkt. 467.  This response in opposition follows.

## **ARGUMENT**

### **THE COURT PROPERLY REJECTED BARRETT'S CLAIM THAT INTENTIONALLY KILLING A POLICE OFFICER DOES NOT CONSTITUTE A CRIME OF VIOLENCE**

This Court rejected successive § 2255 relief after finding that intentionally killing

a police officer constituted a crime of violence as defined by statutory language

unaffected by *Davis*.  In view of that failing, the Court dismissed Barrett's successive

motion because it did not demonstrate an error under the new retroactive rule announced

in *Davis*.  Dkt. 467.  Despite Barrett's protestations to the contrary (Dkt. 469), this Court

properly determined that intentionally killing a police officer is a crime of violence under

§ 924's "force" clause (§ 924(c)(3)(A)), a definition that does not offend *Davis*.  Barrett

cannot demonstrate, as he claimed in the Tenth Circuit, that the offense could have only

satisfied the "residual" clause definition that *Davis* rejected as vague.  *See* 139 S. Ct. at

2336 (holding § 924(c)(3)(B) was unconstitutionally vague).  Because Barrett's claim

does not sound within *Davis*, this Court appropriately dismissed the motion for failure to

satisfy § 2255(h), and Barrett's present motion should fail.

The Rules of Civil procedure permit a court to alter or amend its judgment in

limited circumstances, including "(1) an intervening change in the controlling law, (2) [when] new evidence previously [was] unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Courts enjoy discretion to reject a motion to alter or amend. *Hayes Family Trust v. State Farm Fire & Casualty Co.*, 845 F.3d 997, 1004 (10th Cir. 2017). But the motions are "inappropriate vehicles" to reargue judicially resolved issues based on contentions or facts "available at the time of the original motion." *Paraclete*, 204 F.3d at 1012.

Given that the law supports this Court's conclusion that the intentional killing of a peace officer constitutes a crime of violence under § 924's force clause, Barrett necessarily failed in demonstrating that he had presented a *Davis* claim in his successive § 2255 motion. Section 924(c)'s force clause requires "violent force — that is, force capable of causing physical pain or injury to another person." *United States v. Bowen*, 936 F.3d 1091, 1101 (10th Cir. 2019) (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010). The clause "does not require any particular degree of likelihood or probability that the force used will cause physical pain or injury; only potentiality." *Stokeling v. United States*, 139 S. Ct. 544, 554 (2019). "[H]itting, slapping, shoving, grabbing, pinching, biting, and hair pulling," therefore, all suffice. *Id*.

Under the force clause's definition, multiple courts have concluded that murder—the unlawful killing of a human being with malice aforethought (18 U.S.C. § 1111)—qualifies as a crime of violence. *See United States v. Baez-Martinez*, 950 F.3d 119, 127-28 (1st Cir. 2020); *United States v. Mathis*, 932 F.3d 242, 265 (4th Cir. 2019); *Thompson v. United States*, 924 F.3d 1153, 1158 (11th Cir. 2019); *Hill v. United States*, 877 F.3d 717, 720 (7th Cir. 2017); *In re Irby*,

5

858 F.3d 231, 236 (4th Cir. 2017).  Moreover, a recent Supreme Court opinion explained that the requirements of § 924's force clause are designed to "mark out a narrow 'category of violent, active crimes."  *Borden v. United States*, 141 S. Ct. 1817, 1830 (2021) (plurality opinion) (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)).  Though *Borden* produced several opinions, eight justices agreed that "murder" qualified as one of the "quintessential violent crimes."  *Id.* at 1830 (plurality opinion); *id.* at 1856 (Kavanaugh, J., dissenting).

If murder constitutes a crime of violence under the force clause, surely a § 848 intentional killing—which requires more than mere malice—does as well.  Indeed, the *Borden* dissent suggests as much, noting that only homicide offenses that lack an intent element might fall outside the force clause.  141 S. Ct. at 1856.

To avoid that conclusion, Barrett observes that a Sixth Circuit opinion upheld a jury instruction that permitted the § 848(e) instruction that permitted conviction for "intentionally engag[ing] in conduct which the defendant knew would create a grave risk of death to a person other than one of the participants in the offense and result[ing] in death to the victim."  *United States v. Alvarez*, 266 F.3d 587, 594-95 (6th Cir. 2001).  The instruction in *Alvarez* came from the death penalty provisions of former § 848(n), which codified a Supreme Court opinion that delineated the constitutional limits of accomplice liability for capital punishment.  *See Tison v. Arizona*, 481 U.S. 137, 157-58 (1987) (holding "the reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death . . . may be taken into account in making a capital sentencing judgment").  On appeal, the *Alvarez* court looked to legislative history and concluded that the 848(n) factors, including the grave risk language, encompassed the elements of the substantive offense:

> The legislative history appears to support this analysis.  The congressional record indicates that congress intended the § 848(n)(1) provisions to be a

6

recapitulation of the "elements of the offense." 134 Cong. Rec. S. 7489–91 (daily ed. June 9, 1988) statement of Sen. D'Amato. The congressional discussion indicated that § 848(n)(1) "basically ... reiterate[s] the element of the crime." *Id*.

*Alvarez* ad 595.

The *Alvarez* court, however, relied on a hearing concerning a bill that did not become law. As the *Alvarez* court noted, a hearing about Senate Bill 2455, involved a statement by Senator Levin, who argued to the bill's sponsor, Senator D'Amato, "what (n)(l) does is reiterate the element of the crime. What basically (n)(1) says is if the jury finds that you did it, that is an aggravating factor." Ex. A. at 13995 (as originally paginated). But, the senators had already agreed that the legislation criminalized reckless homicides:

> Mr. D'AMATO. "Intentionally engaged in conduct which the defendant knew would create a grave risk of death to a person, other than one of the participants in the offense." . . . [¶] I can give you a case that takes place regularly. Some fellow came in and sprayed an area, shot it up. They did not know that Rosa Brown up on the first floor was going to be hit. But they intentionally engaged in the conduct which posed grave risk to people in that community. And they should be held, if they are as other sections say, to have acted in some disregard of life.

> Mr. LEVIN. I would agree with that. But that is the element of the offense, if you go back to the offense on page 2:

>> Any person engaging in a continuing criminal enterprise, or anyone working in furtherance of a continuing criminal enterprise—

> And then your bill says:

>> . . . who intentionally, *or with reckless indifference to human life*, kills or participates substantially in the killing of any individual, shall be sentenced . . .

Ex. A. at 13994 (emphasis added); *see also* Ex. B (reciting the amended language of Senate Bill 2455 as amended the day after the remarks by Senators Levin and D'Amato). The bill, though resembling § 848, did not become law. The enacted statute—proposed in House Resolution

7

5210—only prohibits intentional killings (*see* Ex. C), and Barrett cannot show that recklessness played, or should have played, a role in his case.

Indeed, this Court instructed the jury that it could not convict Barrett of the predicate § 848 homicide without finding an intentional killing.  Dkt. 240 at Instructions 14 & 15. Acknowledging as much, Barrett nonetheless argues the charge defining the § 924 homicide did not repeat the intentionality requirement for the predicate, though he does not identify a duty to do so or explain what benefit he might have derived, given that the jury convicted him of the § 848 under a complete instruction. [1]  In any event, an argument premised on a selective reading of the instructions cannot stand, as courts construe jury charges in toto.  *United States v. Grissom*, 814, F.2d 577, 580 (10th Cir. 1987) (citing *United States v. Park*, 421 U.S. 658, 674 (1975).  The charge in this case plainly required Barrett's intentionality for a conviction under § 848(e) and supports a presumption that the jury found as much.  *See Weeks v. Angelone*, 628 U.S. 226, 234 (2000) (holding "[a] jury is presumed to follow its instructions").

Attempting to divorce his crime from the jury's intentionality finding, Barrett seeks refuge in the law of the case doctrine.  He argues that the Tenth Circuit, on appeal from his first § 2255 motion, held that the "'murder' required for the predicate crime of violence . . . [§ 848(e)] was not limited to an intentional killing" under § 1111.  Dkt. 469 at 7 citing *Barrett*, 797 F.3d at 1221.  Barrett misconstrues the Tenth Circuit's opinion, which concerned the mens rea for the § 924 offense, not its predicate.  *See Barrett*, at 1220 ("Counts One and Two charged Defendant with felony-murder violations of 18 U.S.C. § 924(c)(1)(A) and (j).  To determine whether a lesser-included offense was available, we must first review the statutory scheme underlying these

---

[1] Any free-standing claim concerning the adequacy of the instructions falls outside the Tenth Circuit's § 2255(h) order and offends the procedural default doctrine.  *See United States v. Frady*, 456 U.S. 152, 165 (1982).

charges."); *see also* § 924(j) (defining murder in light of § 1111).  The Tenth Circuit's opinion does not assist Barrett in this dispute.  But even if the Tenth Circuit had defined § 848 in conformity with § 1111 murder, Barrett's arguments would fail given the overwhelming authority recognizing that the crime satisfies the force clause of § 924.

Because the § 848(e) homicide satisfies the force clause, it constitutes a crime of violence despite the holding in *Davis*, which invalidated a different provision of § 924.  Accordingly, Barrett cannot make a successful *Davis* claim and cannot demonstrate a procedural right to have presented his second and subsequent § 2255 motion, which this Court appropriately dismissed.  In the face of arguments Barrett could have, and did, make in his initial pleading, this Court should uphold its initial decision and dismiss the successive § 2255 motion and deny a certificate of appealability.

## CONCLUSION

Based on the foregoing reasoning and authority, the United States respectfully urges this Court to deny Barrett's motion to alter or amend the judgment.

Dated: January 10, 2022.

<div style="margin-left:40%">

Respectfully submitted,

*/S/ Christopher J. Wilson*
CHRISTOPHER J. WILSON, OBA # 13801
Interim United States Attorney
520 Denison Avenue
Muskogee, OK 74401
Telephone: (918) 684-5100
FAX: (918) 684-5150

*/S/ Jeffrey B. Kahan*
JEFFREY B. KAHAN, PaBN #93199
Deputy Chief, Capital Case Section
U.S. Dept. of Justice
1331 F Street, NW; 6th Fl.
Washington, DC 20530
Telephone: (202) 305-8910
FAX: (202) 353-9779

</div>

**CERTIFICATE OF ECF FILING AND DELIVERY**

I, hereby certify that on January 10, 2022, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. A Notice of Electronic Filing will be sent via the Court's ECF system to the following counsel of record for the Petitioner/Appellant:

- Mr. David B. Autry: Dbautry77@gmail.Com
- Ms. Joan M. Fisher:  Joan.Fisher@fd.Org
- Laura E. Udall:  ludall@cooperudall.com

*/S/ Jeffrey B. Kahan*
JEFFREY B. KAHAN, PaBN #93199
Deputy Chief, Capital Case Unit