The question is on the engrossment and third reading of the bill.

The bill was ordered to be engrossed for a third reading and was read the third time.

The PRESIDING OFFICER. The bill having been read the third time, the question is shall the bill pass? The yeas and nays have been ordered and the clerk will call the roll.

The bill clerk called the roll.

Mr. CRANSTON. I announce that the Senator from West Virginia [Mr. ADAMS] and the Senator from Florida [Mr. CHILES], are necessarily absent.

I also announce that the Senator from Delaware [Mr. BIDEN] is absent because of illness.

Mr. SIMPSON. I announce that the Senator from Maine [Mr. COHEN], the Senator from Texas [Mr. GRAMM], and the Senator from New Hampshire [Mr. HUMPHREY], are necessarily absent.

I further announce that, if present and voting, the Senator from Texas [Mr. GRAMM], would vote yea.

The PRESIDING OFFICER. Are there any other Senators in the Chamber desiring to vote?

The result was announced—yeas 65, nays 29, as follows:

[Rollcall Vote No. 175 Leg.]

YEAS—65

| | | |
|---|---|---|
| Armstrong | Graham | Pressler |
| Baucus | Grassley | Pryor |
| Bentsen | Hatch | Quayle |
| Bingaman | Hecht | Reid |
| Bond | Heflin | Riegle |
| Boren | Heinz | Rockefeller |
| Boschwitz | Helms | Roth |
| Bradley | Hollings | Rudman |
| Breaux | Johnston | Sarbanes |
| Bumpers | Karnes | Sasser |
| Byrd | Kassebaum | Shelby |
| Cochran | Kasten | Simpson |
| D'Amato | Lugar | Specter |
| Daschle | McCain | Stafford |
| DeConcini | McClure | Stevens |
| Dixon | McConnell | Symms |
| Dodd | Metzenbaum | Thurmond |
| Dole | Moynihan | Trible |
| Domenici | Murkowski | Wallop |
| Exon | Nickles | Warner |
| Ford | Nunn | Wilson |
| Garn | Packwood | |

NAYS—29

| | | |
|---|---|---|
| Burdick | Harkin | Mikulski |
| Chafee | Hatfield | Mitchell |
| Conrad | Inouye | Pell |
| Cranston | Kennedy | Proxmire |
| Danforth | Kerry | Sanford |
| Durenberger | Lautenberg | Simon |
| Evans | Leahy | Stennis |
| Fowler | Levin | Weicker |
| Glenn | Matsunaga | Wirth |
| Gore | Melcher | |

NOT VOTING—6

| | | |
|---|---|---|
| Adams | Chiles | Gramm |
| Biden | Cohen | Humphrey |

So the bill (S. 2455), as amended, was passed, as follows:

S. 2455

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

SECTION 1. DEATH PENALTY FOR DRUG-RELATED KILLINGS.

(a) ELEMENTS OF OFFENSE.—Section 408 of the Controlled Substances Act (21 U.S.C. 848) is amended—

(1) by redesigning subsection (e) as subsection (f); and

(2) by adding a new subsection (e) as follows:

#### "Death Penalty

"(e)(1) In addition to the other penalties set forth in this section—

"(a) Any person engaging in a continuing criminal enterprise, or anyone working in furtherance of a continuing criminal enterprise who intentionally, or with reckless indifference to human life, kills or participates substantially in the killing of any individual, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death; and

"(b) Any person, during the commission of, in furtherance of, or while attempting to avoid apprehension, prosecution or service of a prison sentence for, a felony violation of the Controlled Substances Act (21 U.S.C. 801 et seq.) who intentionally, or with reckless indifference to human life, kills or participates substantially in the killing of any federal, state, or local law enforcement officer engaged in, or on account of, the performance of such officer's official duties, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death.

"(2) As used in paragraph (1)(b), a 'law enforcement officer' is a public servant authorized by law or by a Government agency or Congress to conduct or engage in the prevention, investigation, prosecution or adjudication of an offense, and includes those engaged in corrections, probation, or parole functions.".

(b) PROCEDURE APPLICABLE WITH RESPECT TO THE DEATH PENALTY.—Section 408 of the Controlled Substances (21 U.S.C. 848) is amended by adding at the end the following:

#### "Hearing Required with Respect to the Death Penalty

"(g) A person shall be subjected to the penalty of death for any offense under this section only if a hearing is held in accordance with this section.

#### "Notice by the Government in Death Penalty Cases

"(h)(1) Whenever the Government intends to seek the death penalty for an offense under this section for which one of the sentences provided is death, the attorney for the Government, a reasonable time before trial or acceptance by the court of a plea of guilty, shall sign and file with the court, and serve upon the defendant, a notice—

"(A) that the Government in the event of conviction will seek the sentence of death; and

"(B) setting forth the aggravating factors enumerated in subsection (n) and any other aggravating factors which the Government will seek to prove as the basis for the death penalty.

"(2) The court may permit the attorney for the Government to amend this notice for good cause shown.

#### "Hearing Before Court or Jury

"(i)(1) When the attorney for the Government has filed a notice as required under subsection (h) and the defendant is found guilty of or pleads guilty to an offense under subsection (e), the judge who presided at the trial or before whom the guilty plea was entered, or any other judge if the judge who presided at the trial or before whom the guilty plea was entered is unavailable, shall conduct a separate sentencing hearing to determine the punishment to be imposed. The hearing shall be conducted—

"(A) before the jury which determined the defendant's guilt;

"(B) before a jury impaneled for the purpose of the hearing if—

"(i) the defendant was convicted upon a plea of guilty;

"(ii) the defendant was convicted after a trial before the court sitting without a jury;

"(iii) the jury which determined the defendant's guilt has been discharged for good cause; or

"(iv) after initial imposition of a sentence under this section, redetermination of the sentence under this section is necessary; or

"(C) before the court alone, upon the motion of the defendant and with the approval of the Government.

"(2) A jury impaneled pursuant to paragraph (i)(B) shall consist of 12 members, unless, at any time before the conclusion of the hearing, the parties stipulate with the approval of the court that it shall consist of any number less than 12.

#### "Proof of Aggravating and Mitigating Factors

"(j) Notwithstanding rule 32(c) of the Federal Rules of Criminal Procedure, when a defendant is found guilty of or pleads guilty to an offense under subsection (e), no presentence report shall be prepared. In the sentencing hearing, information may be presented as to any matter relevant to the sentence and shall include matters relating to any of the aggravating or mitigating factors set forth in subsections (m) and (n), or any other mitigating factor. Where information is presented relating to any of the aggravating factors set forth in subsection (n), information may be presented relating to any other aggravating factor. Information presented may include the trial transcript and exhibits if the hearing is held before a jury or judge not present during the trial. Any other information relevant to such mitigating or aggravating factors may be presented by either the Government or the defendant, regardless of its admissibility under the rules governing admission of evidence at criminal trials, except that information may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. The Government and the defendant shall be permitted to rebut any information received at the hearing and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any of the aggravating or mitigating factors and as to appropriateness in that case of imposing a sentence of death. The government shall open the argument. The defendant shall be permitted to reply. The Government shall then be permitted to reply in rebuttal. The burden of establishing the existence of any aggravating factor is on the Government, and is not satisfied unless established beyond a reasonable doubt. The burden of establishing the existence of any mitigating factor is on the defendant, and is not satisfied unless established by a preponderance of the evidence.

#### "Return of Findings

"(k) The jury, or if there is no jury, the court, shall consider all the information received during the hearing. It shall return special findings identifying any aggravating factors set forth in subsection (n), found to exist. If one of the aggravating factors set

6:04-cr-00115-RAW    Document 471-2    Filed in ED/OK on 01/10/22    Page 2 of 3

forth in subsection (n)(1) and another of the aggravating factors set forth in paragraphs (2) through (12) of subsection (n) is found to exist, a special finding identifying any other aggravating factor may be returned. A finding with respect to a mitigating factor may be made by one or more of the members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such a factor established for purposes of this subsection, regardless of the number of jurors who concur that the factor has been established. A finding with respect to any aggravating factor must be unanimous. If an aggravating factor set forth in subsection (n)(1) is not found to exist or an aggravating factor set forth in subsection (n)(1) is found to exist but no other aggravating factor set forth in subsection (n) is found to exist, the court shall impose a sentence, other than death, authorized by law. If an aggravating factor set forth in subsection (n)(1) and one or more of the other aggravating factors set forth in subsection (n) are found to exist, the jury, or if there is no jury, the court, shall then consider whether the aggravating factor or factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or in the absence of mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death. Based upon this consideration, the jury by unanimous vote, or if there is no jury, the court, shall return a finding as to whether a sentence of death is justified.

### "Imposition of Sentence

"(l) Upon a finding that a sentence of death is justified, the court shall sentence the defendant to death. Otherwise the court shall impose a sentence, other than death, authorized by law. A sentence of death shall not be carried out upon a person who is under 18 years of age at the time the crime was committed. A sentence of death shall not be carried out upon a person who, by reason of a mental disease or defect, is unable to understand his impending death or the reasons for it.

### "Mitigating Factors

"(m) In determining whether a sentence of death is to be imposed on a defendant, the following mitigating factors shall be considered but are not exclusive:

"(1) The defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to the charge.

"(2) The defendant was under unusual and substantial duress, although not such duress as constitutes a defense to the charge.

"(3) The defendant is punishable as a principal (as defined in section 2(a) of title 18 of the United States Code) in the offense, which was committed by another, but the defendant's participation was relatively minor, although not so minor as to constitute a defense to the charge.

"(4) The defendant could not reasonably have foreseen that his conduct in the course of the commission of murder, or other offense resulting in death for which the defendant was convicted, would cause, or would create a grave risk of causing, death to any person.

### "Aggravating Factors for Homicide

"(n) If the defendant is found guilty of or pleads guilty to an offense under subsection (e), the following aggravating factors shall be considered but are not exclusive:

"(1) The defendant—
"(A) intentionally killed the victim;
"(B) intentionally inflicted serious bodily injury which resulted in the death of the victim;
"(C) intentionally engaged in conduct intending that the victim be killed or that lethal force be employed against the victim, which resulted in the death of the victim.
"(D) intentionally engaged in conduct which—
"(i) the defendant knew would create a grave risk of death to a person, other than one of the participants in the offense; and
"(ii) resulted in the death of the victim.

"(2) The defendant has been convicted of another Federal offense, or a State offense resulting in the death of a person, for which a sentence of life imprisonment or a sentence of death was authorized by statute.

"(3) The defendant has previously been convicted of two or more State or Federal offenses punishable by a term of imprisonment of more than one year, committed on different occasions, involving the infliction of, or attempted infliction of, serious bodily injury upon another person.

"(4) The defendant has previously been convicted of two or more State or Federal offenses punishable by a term of imprisonment of more than one year, committed on different occasions, involving the distribution of a controlled substance.

"(5) In the commission of the offense or in escaping apprehension for a violation of subsection (e), the defendant knowingly created a grave risk of death to one or more persons in addition to the victims of the offense.

"(6) PROCUREMENT OF THE OFFENSE BY PAYMENT.—The defendant procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value.

"(7) COMMISSION OF THE OFFENSE FOR PAYMENT.—The defendant committed the offense as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value.

"(8) SUBSTANTIAL PLANNING AND PREMEDITATION.—The defendant committed the offense after substantial planning and premeditation.

"(9) VULNERABILITY OF VICTIM.—The victim was particularly vulnerable due to old age, youth, or infirmity.

"(10) The defendant had previously been convicted of violating a provision of the Controlled Substances Act for which a sentence of five or more years may be imposed or was engaged in a continuing criminal enterprise.

"(11) The violation of this chapter in relation to which the conduct described in subsection (e) occurred was a violation of section 405.

"(12) The defendant committed the offense in an especially heinous, cruel, or depraved manner.

### "RIGHT OF THE DEFENDANT TO JUSTICE WITHOUT DISCRIMINATION

"(o)(1) In any hearing held before a jury under this section, the court shall instruct the jury that in its consideration of whether the sentence of death is justified it shall not consider the race, color, national origin, or sex of the defendant or the victim, and that the jury is not to recommend a sentence of death unless it has concluded that it would recommend a sentence of death for the crime in question no matter what race the defendant, or the victim, may be. The jury shall return to the court a certificate signed by each juror that consideration of race, color, national origin, creed, or sex of the defendant or the victim was not involved in reaching his or her individual decision, and that the individual juror would have made the same recommendation regarding a sentence for the crime in question no matter what race the defendant, or the victim, may be.

"(2) Not later than one year from the date of enactment of this section, the Comptroller General shall conduct a study of the various procedures used by the several States for determining whether or not to impose the death penalty in particular cases, and shall report to the Congress on whether or not any or all of the various procedures create a significant risk that the race of a defendant, or the race of a victim against whom a crime was committed, influence the likelihood that defendants in those States will be sentenced to death. In conducting the study required by this paragraph, the General Accounting Office shall—

"(A) use ordinary methods of statistical analysis, including methods comparable to those ruled admissible by the courts in race discrimination cases under Title VII of the Civil Rights Act of 1964;

"(B) study only crimes occurring after January 1, 1976; and

"(C) determine what, if any, other factors, including any relation between any aggravating or mitigating factors and the race of the victim or the defendant, may account for any evidence that the race of the defendant, or the race of the victim, influences the likelihood that defendants will be sentenced to death. In addition, the General Accounting Office shall examine separately, and include in the report, death penalty cases involving crimes similar to those covered under this section.

### "Sentencing in Capital Cases in Which Death Penalty is not Sought or Imposed

"(p) If a person is convicted for an offense under subsection (e) and the court does not impose the penalty of death, the court may impose a sentence of life imprisonment without the possibility of parole.

### "Appeal in Capital Cases

"(q)(1) In any case in which the sentence of death is imposed under this section, the sentence of death shall be subject to review by the court of appeals upon appeal by the defendant. Notice of appeal must be filed within the time prescribed for appeal of judgment in section 2107 of title 28 of the United States Code. An appeal under this section may be consolidated with an appeal of the judgment of conviction. Such review shall have priority over all other cases.

"(2) On review of the sentence, the court of appeals shall consider the record, the evidence submitted during the trial, the information submitted during the sentencing hearing, the procedures employed in the sentencing hearing, and the special findings returned under this section.

"(3) The court shall affirm the sentence if it determines that—

"(A) the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor; and

"(B) the information supports the special finding of the existence of every aggravating factor upon which the sentence was based, together with or the failure to find any mitigating factors as set forth or allowed in this section.

In all other cases the court shall remand the case for reconsideration under this sec-

tion. The court of appeals shall state in writing the reasons for its disposition of the review of the sentence.

"(4) In any post-conviction proceeding under section 2254 or 2255 of title 28, United States Code seeking to vacate or set aside a death sentence, the court shall appoint counsel to represent any defendant who is or becomes financially unable to obtain adequate representation.

"Refusal to Participate by State and Federal Correctional Employees

"(r) No employee of any State department of corrections or the Federal Bureau of Prisons and no employee providing services to that department or bureau under contract shall be required, as a condition of that employment, or contractual obligation to be in attendance at or to participate in any execution carried out under this section if such participation is contrary to the moral or religious convictiions of the employee. For purposes of this subsection, the term 'participation in executions' includes personal preparation of the condemned individual and the apparatus used for execution and supervision of the activities of other personnel in carrying out such activities.".

Mr. D'AMATO. Mr. President, I move to reconsider the vote by which the bill passed.

Mr. THURMOND. I move to lay that motion on the table.

The motion to lay on the table was agreed to.

The PRESIDING OFFICER. The Senator from New York.

Mr. D'AMATO. Mr. President, I take this opportunity to thank my colleagues for their support of this bill and more particularly to say thank you to our majority leader for having made this vote possible, for having taken into consideration the very difficult problems of other bills and schedules, rights and prerogatives of Senators and having cleared the way to make this an opportunity where people could have their say, offer their amendments, and we could act on this bill.

I thank the Senate majority leader. I thank the minority leader. Without their dual cooperative efforts, we never would have had this opportunity, we never would have passed this bill in the manner in which it was and maintain the kind of relationship that is so important to doing the business of the people in this Chamber.

So once again, Mr. President, a particular word of thanks to the majority leader.

Mr. HELMS. Will the Senator yield just one moment?

I think it is high time that we paid our respects to Senator D'AMATO for a job well done. He has really hung in there. Whether this year is divisible by four or not, he has addressed the issue that needed addressing, and I want the Senator to know that I am very proud of him.

Mr. D'AMATO. I thank the Senator.

Mr. THURMOND. Mr. President, I also commend the able Senator from New York for sponsoring this death penalty bill in connection with drugs.

It is a very important piece of legislation and no one has been more effective in getting a piece of legislation through than he. We not only need the death penalty in connection with drugs but we need it generally at the Federal level. The only death penalty we have now is for plane hijacking. Certainly we need it for murder; we need it for espionage; we need it for treason; we need it for attempts to kill the President. Those are other facets that should be acted upon.

Four years ago I offered a capital punishment bill that passed in the Senate and went to the House but no steps were ever taken over there. We now have such bills pending in the Judiciary Committee. I hope we can get that legislation out and give the Senate a chance to pass it again.

The PRESIDING OFFICER. The majority leader. If the majority leader will suspend, the Senate is not in order. If Senators would take their seats in the Chamber, the majority leader is entitled to be heard.

ORDER TO PROCEED TO THE CONSIDERATION OF S. 1511—WELFARE REFORM

Mr. BYRD. Mr. President, I ask unanimous consent that on Monday, at the hour of 1 p.m., the Senate proceed to the consideration of Calendar Order No. 711, S. 1511, the welfare reform bill.

The PRESIDING OFFICER. Is there objection? Without objection, it is so ordered.

Mr. BYRD. Mr. President, I thank the distinguished Republican leader.

MORNING BUSINESS

Mr. BYRD. Mr. President, I ask unanimous consent that there now be a period for morning business, that Senators be permitted to speak therein for not to exceed 10 minutes each, and that the period not extend beyond the hour of 2 p.m. today.

The PRESIDING OFFICER. Without objection, it is so ordered.

ORGAN DONOR PROGRAMS

Mr. THURMOND. Mr. President, new Federal regulations published in the March 1, 1988, Federal Register require all hospitals that receive Federal funds to identify potential organ donors and assure that the family of each potential donor knows of its options either to donate organs or tissues or to decline to donate. The regulations encourage discretion and sensitivity with respect to the family's circumstances, views, and beliefs. But they also require that an organ procurement organization be notified of potential organ donors.

According to some regional donor programs, not all hospitals are in com-

pliance with the new regulations. The need for organ donors becomes even more acute when you consider recent advances in medical technology. Organ transplants for children and adults have become increasingly common, which means the need for potential organ donors grows each day.

Nothing is more precious than human life, especially when it involves the life of a newborn. The problems associated with a shortage of available donors have been brought to my attention in the last 3 weeks. On May 21, Carley Hunter was born to her parents, Lisa and Jimmy Hunter, of Greenville, SC.

Carley was born with a defective heart and immediately airlifted to Kosair Children's Hospital in Louisville, KY, to await a transplant. Should a suitable heart donor be found soon, Carley's doctors say she has a very good chance of a complete recovery. However, each day that passes without finding a compatible donor makes it less likely that Carley will survive much longer.

Mr. President, I encourage all Americans to become familiar with organ donor programs and the opportunity you or one of your loved ones may have to save a life. This problem is especially painful when it involves a newborn such as Carley, who is now awaiting a heart transplant. I further encourage all hospitals to implement policies that would ensure potential donors are identified and their families made aware of the options they have. Medical science has brought us far, but the caring and compassion of all Americans is needed to help the likes of Carley Hunter.

Mr. President, again, this child is at the Kosair Children's Hospital in Louisville, KY. If anyone knows of a possible donor, it will save this little girl's life, I encourage them to get in touch with Kosair Children's Hospital in Louisville, KY, if they learn of any information that will assist in obtaining a heart for this little Hunter girl. I thank the Chair.

LEAVE OF ABSENCE

Mr. MURKOWSKI. Mr. President, I ask unanimous consent, pursuant to paragraph 2, rule VI, of the Standing Rules of the Senate, I be relieved from attending the sessions of the Senate on Monday and a portion of Tuesday, June 13 and 14.

The PRESIDING OFFICER. Without objection, it is so ordered.

Mr. MURKOWSKI. Mr. President, I make this request because on those days, I will be participating in a freedom flight between Nome, AK, and Provideniya, in Siberia.

Mr. President, the Nome-to-Provideniya good will flight is a historic