6:04-cr-00115-RAW   Document 471-3   Filed in ED/OK on 01/10/22   Page 1 of 27

# CONGRESS.GOV

# H.R.5210 - Anti-Drug Abuse Act of 1988

100th Congress (1987-1988)

| | |
|---|---|
| **Sponsor:** | Rep. Foley, Thomas S. [D-WA-5] (Introduced 08/11/1988) |
| **Committees:** | House - Banking, Finance, and Urban Affairs; Education and Labor; Foreign Affairs; Government Operations; Energy and Commerce; Interior and Insular Affairs; Judiciary; Merchant Marine and Fisheries; Public Works and Transportation; Ways and Means |
| **Latest Action:** | 11/18/1988 Became Public Law No: 100-690. (PDF)  (All Actions) |
| **Roll Call Votes:** | There have been 24 roll call votes |
| **Tracker:** | Introduced    Passed House    Passed Senate    Resolving Differences    To President    **Became Law** |

---

**Summary(3)**    Text(1)    Actions(126)    Titles(58)    Amendments(44)    Cosponsors(1)    Committees(10)    Related Bills(44)

---

There are 3 summaries for H.R.5210.    House agreed to Senate amendment with amendment (10/22/1988) ⌄

Bill summaries are authored by CRS.

---

**Shown Here:**
**House agreed to Senate amendment with amendment (10/22/1988)**

(House agreed to Senate amendment with amendment, roll call #465 (346-11))

Anti-Drug Abuse Act of 1988 - **Title I: Coordination of National Drug Policy - Subtitle A: National Drug Control Program** - National Narcotics Leadership Act of 1988 - Establishes the Office of National Drug Control Policy in the Executive Office of the President. Names as principals of this Office a Director of National Drug Control Policy (Director) and Deputy Directors for Demand Reduction and Supply Reduction, all to be appointed by the President, with the advice and consent of the Senate. Establishes within the new Office a Bureau of State and Local Affairs, to be headed by an Associate Director for National Drug Control Policy, also to be appointed by the President. Sets forth responsibilities of the Director, including requirements that the Director: (1) transmit a consolidated National Drug Control Program (Program) budget proposal; and (2) submit to the Congress annual reports on a National Drug Control Strategy. Describes required report contents.

Describes limitations in connection with Program agency budget reprogramming or transfer requests.

Provides for coordination among executive branch departments and agencies, including a requirement that the head of a Program agency notify the Director in writing of any proposed policy changes relating to Program activities. Requires the Director to respond promptly as to whether the change is consistent with the National Drug Control Strategy.

Terminates the National Drug Enforcement Policy Board and the White House Office of Drug Abuse Policy and repeals specified provisions of the National Narcotics Act of 1984 and of the Drug Abuse Prevention, Treatment, and Rehabilitation Act in connection with these entities.

Prohibits the expenditure of funds for activities of the National Narcotics Border Interdiction System after 30 days following appointment of the Director.

Instructs the Director to report to the President and to the Congress concerning the need for coordinating, consolidating, or otherwise reorganizing agencies and functions of the Federal Government involved in drug supply reduction and demand reduction.

Terminates the Office of National Drug Control Policy five years after this subtitle's enactment, repealing all subtitle provisions relating to the Office and its functions.

Authorizes appropriations to fund the Office during its five-year existence.

**Subtitle B: Department of Justice Civil Enforcement Enhancement** - Justice Department Organized Crime and Drug Enforcement Enhancement Act of 1988 - Requires the Director to report to the Congress, within one year of this title's enactment, for reorganizing existing Department of Justice divisions and programs or creating new Department divisions in the interest of more effective civil and criminal law enforcement.

Directs the Attorney General to ensure that high priority is attached to the enforcement of civil law by Department of Justice components involved in prosecuting organized crime and controlled substances violations.

Authorizes appropriations in connection with these civil enforcement enhancement efforts. Requires the Attorney General to: (1) report to the Congress on these efforts and on resources needed to implement the policy underlying them; and (2) beginning in FY 1990, submit as

6:04-cr-00115-RAW   Document 4713   Filed in ED/OK on 01/10/22   Page 2 of 27

part of the budget request a separate request for appropriations to the Department of Justice Interagency Law Enforcement Appropriation Account for reimbursement to agencies participating in the Organized Crime Drug Enforcement Task Forces.

**Title II: Treatment and Prevention Programs - Subtitle A: Provisions Relating to Public Health Service Act** - Comprehensive Alcohol Abuse, Drug Abuse, and Mental Health Amendments Act of 1988 - **Chapter 1: Revision and Extension of Alcohol and Drug Abuse and Mental Health Services Block Grant** - Amends the Public Health Service Act to authorize FY 1989 through 1991 appropriations for the alcohol and drug abuse and mental health services block grant program. Sets forth formulas for determining allotments among the various States and territories. Earmarks a specified portion of Hawaii's allotment to be available only for Native Hawaiians.

Conditions FY 1989 payments to a State upon the State's agreement to spend the funds exclusively for substance abuse programs, using at least half the funds for an enumerated series of permissible activities addressing intravenous drug abuse prevention and treatment programs. Authorizes the Secretary of Health and Human Services (HHS), with respect to funds available for substance abuse programs, to permit States to use the amounts for construction of substance abuse facilities. Describes conditions under which such a waiver is authorized. Decreases the percentage of funds authorized for administrative expenses.

Conditions FY 1991 payments to a State for mental health services upon the State's agreement to use at least 55 percent of the funds for new services and programs for a limited period of time. Permits the waiver of this condition under certain circumstances.

Requires States to provide for periodic independent peer review with respect to the quality and appropriateness of treatment services provided by entities funded under this chapter. Increases the percentage of allotments that must be used for specified mental health and alcohol and drug abuse activities. Requires States to use at least 50 percent of allotments for alcohol and drug abuse activities for FY 1990 and thereafter for intravenous drug abuse prevention and treatment programs. Requires States to agree to: (1) maintain expenditures for services under this chapter at a specified level, subject to waiver under extraordinary economic conditions; (2) use at least ten percent of funds for programs and services designed for women, especially those who are pregnant or who have dependent children; and (3) use at least ten percent of funds for mental health services for programs for seriously emotionally disturbed children and adolescents. Describes a variety of other conditions that a State must meet in order to receive funds under this chapter, including requirements relating to treatment for intravenous drug abuse, outreach activities, substance abuse spending priorities, and data collection.

Requires recipient States to agree to establish and maintain a State mental health planning council to perform specified duties, including the monitoring of both the allocation and adequacy of mental health services within the State.

Conditions FY 1989 funding to a State upon the State's agreement to establish a revolving fund to make loans for the costs of establishing group housing for persons recovering from alcohol or drug abuse. Requires the State to assure continuing operation of the fund in order to receive payments for FY 1990 and thereafter. Requires reporting: (1) by States in connection with new mental health services and programs; and (2) by the Secretary of HHS to the Congress, by October 1, 1990, on State activities under the alcohol and drug abuse and mental health services block grant program. Directs the Secretary to provide technical assistance to States in connection with the program.

Directs the Secretary, acting through the Director of the National Institute on Alcohol Abuse and Alcoholism and the Director of the National Institute on Drug Abuse, to evaluate alcohol and drug abuse treatment programs to determine their quality and appropriateness and to submit to specified congressional committees, within six months of this Act's enactment, a plan for such an evaluation.

Directs the Secretary, acting through the Director of the National Institute of Mental Health (NIMH), to develop and maintain an ongoing program of research on community mental health programs and services. Describes required program features. Authorizes the NIMH Director to establish research centers to carry out evaluations required under the program.

Directs the Administrator of the Alcohol, Drug Abuse, and Mental Health Administration (ADAMHA) to: (1) develop a model plan for a community-based system of care for chronically mentally ill individuals; and (2) develop a model insurance plan for consideration by the Director of the Office of Personnel Management and the Congress.

Instructs the Comptroller General, by the end of FY 1990, to prepare and submit to specified congressional committees a report assessing the extent to which States have submitted and implemented comprehensive mental health services plans.

**Chapter 2: Revision and Extension of Certain Programs of Alcohol, Drug Abuse, and Mental Health Administration** - Amends the Public Health Service Act to authorize FY 1989 through 1991 appropriations to the Office for Substance Abuse Prevention to be used for: (1) the alcohol and drug abuse information clearinghouse; (2) prevention, treatment, and rehabilitation model projects for high-risk youth; and (3) model projects for pregnant and postpartum women and their infants.

Revises provisions governing the duties of the Director of the Office for Substance Abuse Prevention to: (1) target expressly health professionals involved in drug abuse education, prevention, and intervention as a group for whom clinical training programs must be supported; and (2) implement programs, through appropriate schools, to train health care and social work personnel to diagnose and treat alcohol and drug abuse.

Revises criteria used to determine award priority in connection with grants for drug abuse and alcohol abuse prevention projects for high-risk youth.

Amends the Public Health Service Act to direct the Secretary of HHS, acting through the Administrator of the Alcohol, Drug Abuse, and Mental Health Administration, annually to collect data on the incidence and prevalence of various forms of mental illness and substance abuse, both nationally and in major metropolitan areas. Instructs the Administrator to ensure that specified types of data are collected. Requires annual surveys in connection with collection of these data, with summaries and analyses made available to the public. Directs the ADAMHA Administrator to develop uniform standards for data collection.

6:04-cr-00115-RAW    Document 4713-3    Filed in ED/OK on 01/10/22    Page 3 of 27

Authorizes the Secretary, through the ADAMHA Administrator, to make grants for the purpose of reducing the waiting list of public and nonprofit private programs that provide drug abuse treatment services. Lists eligibility criteria, as well as conditions and limitations applicable to such grants. Authorizes appropriations.

Directs the Secretary of HHS, acting through the Director of the Office for Substance Abuse Prevention, to make grants to establish projects for drug and alcohol abuse prevention, education, and treatment with respect to pregnant and postpartum women and their infants. Gives priority to projects for low-income women and for innovative projects regarding the use of drugs, including cocaine and crack, about which insufficient information exists. Describes application and evaluation procedures.

Empowers the Secretary, acting through the ADAMHA Administrator, to make grants to public and private entities for demonstration projects to: (1) determine the feasibility and long-term effectiveness of offering drug abuse treatment and vocational training in exchange for public service; (2) conduct outreach activities in connection with drug abuse and AIDS; and (3) provide drug abuse treatment services to pregnant and postpartum women and their infants. Requires the Secretary to provide for program evaluations and for the dissemination of derivative information.

Directs the Secretary to establish demonstration projects that provide grants to the States to enable them to provide effective treatment and treatment referrals to drug abusers. Describes criteria to govern grant awards. Requires the Secretary to select projects that focus on treatment of at least one of the following: (1) adolescents; (2) minorities; (3) pregnant women; (4) female addicts and their children; and (5) public housing residents. Requires, in addition, the selection of at least one project that includes a centralized local referral unit meeting specified criteria. Sets forth application procedures and priority concerns. Requires systematic evaluation of the projects on a long-term basis to determine their impact on treated individuals and on the community. Authorizes appropriations.

Authorizes FY 1989 through 1991 appropriations for alcohol abuse and alcoholism research. Authorizes corresponding appropriations for drug abuse research.

Includes individuals between 21 and 24 years old among those to be expressly targeted in suicide-related information that the Secretary of HHS publishes and makes available to the public and to health professionals. (The current focus is on persons 21 years old and younger.)

Directs the Secretary, through the ADAMHA Administrator, to: (1) make grants and enter into agreements with public and nonprofit private entities to undertake research and studies concerning the causes, diagnosis, treatment, control, and prevention of mental illness; and (2) establish a National Mental Health Education Program for a variety of treatment improvement, research support, and data collection purposes, including the establishment of a clearinghouse for mental health research and treatment programs.

Directs the Secretary, through the NIMH Director, to make grants to States and nonprofit private agencies for: (1) mental health services demonstration projects and research projects involving community services for chronically mentally ill individuals, seriously emotionally disturbed children and youth, the elderly, and homeless chronically mentally ill persons; (2) demonstration projects for the prevention of youth suicide; (3) demonstration projects for improved recognition and treatment of depressive disorders; and (4) demonstration projects for prevention and treatment relating to sex offenses. Authorizes similar grants for demonstration projects covering prevention services for persons at risk of developing mental illness. Lists permissible grant uses. Limits grants to no more than three consecutive one-year periods. Authorizes FY 1989 and 1990 appropriations, earmarking a specified percentage for projects in rural areas.

Makes miscellaneous amendments to the Public Health Service Act to: (1) designate the Office of Substance Abuse Prevention as an agency of the Alcohol, Drug Abuse, and Mental Health Administration; (2) require triennial rather than annual reporting on the Administration's prevention activities; (3) eliminate the Alcohol, Drug Abuse, and Mental Health Advisory Board; (4) authorize the Administrator to accept voluntary services and to conduct certain kinds of research training; (5) permit the Secretary, acting through the Administrator, to make grants (authorizes FY 1989 through 1991 funding) of up to $100,000 for the acquisition of small instrumentation necessary for research, on the condition that the grant will be contemporaneously utilized by at least two grantees; and (6) target expressly pregnant women and their children in connection with certain grant programs.

Amends the Anti-Drug Abuse Act of 1986 to extend the deadline by which the Secretary of HHS must report to the Congress on the extent to which drug abuse treatment is covered by private insurance, public programs, and other payors.

**Chapter 3: Reports and Studies** - Directs the Secretary of HHS to: (1) study and report to the Congress on the relationship between mental illness and substance abuse and ways to treat persons having both problems; (2) contract with an independent expert entity to study the current use of involuntary commitment for inpatient or outpatient treatment of mental illness and report results to the Congress; and (3) request the National Academy of Sciences to review the research of the National Institutes of Health and the Alcohol, Drug Abuse, and Mental Health Administration and submit results to the Congress.

**Chapter 4: Miscellaneous** - Amends the Public Health Service Act to instruct the Director of the National Institute on Drug Abuse and the States to take specified actions in connection with military facilities identified by the Commission on Alternative Utilization of Military Facilities as usable to house nonviolent persons for drug abuse treatment purposes. Amends the Federal Property and Administrative Procedures Act of 1979 to permit the transfer of such properties to the States for donation to drug abuse treatment centers.

**Subtitle B: Employee Assistance Programs** - Directs the Secretary of Labor to establish a grant program to enable employers to develop employee drug and alcohol abuse assistance programs. Authorizes FY 1989 through 1991 appropriations.

**Subtitle C: Indian Alcohol and Substance Abuse Prevention and Treatment** - Amends the Indian Alcohol and Substance Abuse Prevention and Treatment Act of 1986 to add as duties of the Office of Alcohol and Substance Abuse: (1) monitoring the performance in achieving compliance with minimum performance standards through remedial plans of Tribal Action Plans; and (2) reporting to the Congress instances when remedial plans are needed to address program deficiencies.

6:04-cr-00115-RAW   Document 471-3   Filed in ED/OK on 01/10/22   Page 4 of 27

Permits Tribal Action Plans to include provisions for Plan modification.

Authorizes FY 1990 through 1992 appropriations for grants to Indian tribes to develop Tribal Action Plans.

Authorizes the Secretaries of the Interior and of HHS to enter into long-term leases of tribally owned or leased facilities to house programs under this subtitle if there is no Federal facility available and if the cost of constructing one would exceed the cost of the lease. Permits the leasing of a tribal facility for use as a regional treatment center only if all the tribes within the Indian Health Service area served consent to the lease.

Extends through FY 1992 the authorization of appropriations for pilot programs in selected Indian schools to determine the effectiveness of summer youth programs in preventing alcohol and substance abuse among Indians. (Under current law, the authorization expires at the end of FY 1989.)

Specifies permitted uses of halfway houses. Authorizes FY 1990 through 1992 appropriations for halfway houses and emergency shelters for Indian youth.

Directs the Secretary of the Interior to assist the St. Regis Band of Mohawk Indians of New York in developing tribal law enforcement and judicial systems to aid in the investigation and control of illegal narcotics traffic on their reservation along the Canadian border. Authorizes FY 1989 through 1990 appropriations for this assistance. Extends through FY 1992 the authorization of appropriations for assistance to the Tohono O'odham Tribe of Arizona for illegal narcotics traffic investigation and control.

Extends through FY 1992 the authorization of appropriations for: (1) marijuana eradication programs in Indian country; and (2) Bureau of Indian Affairs law enforcement and judicial training programs.

Prohibits the Indian Health Service from refusing to give necessary interim treatment to any Indian youth arrested or detained for offenses relating to alcohol or substance abuse.

Extends through FY 1991 the authorization of appropriations for the construction or renovation of juvenile detention centers and through FY 1992 the authorization of appropriations for staffing and operating these types of centers. Makes corresponding provisions with respect to youth regional treatment centers under the Indian Health Service Youth Program. Extends through FY 1992 the authorization of appropriations for rehabilitation and follow-up services under the Indian Health Service Youth Program. Provides for the inclusion of family members of affected youth in treatment services under the Program.

Repeals provisions establishing and governing a demonstration program to determine the most effective and cost-efficient means of training Indians in health promotion matters. Directs the Secretary of HHS, in administering programs of training and community education, to consider and make available the results of the demonstration project for children of alcoholics that was funded by the Office of Minority Health of the Department of HHS. Extends through FY 1992 the authorization of appropriations for training and community education.

Decreases funds authorized for the Navajo Alcohol Rehabilitation Demonstration Program for FY 1989 and 1990. Authorizes appropriations for the Program for each subsequent fiscal year.

Establishes an urban Indian program under which the Secretary of HHS is authorized to make grants to certain urban Indian organizations to provide health-related services in school and community-based education, prevention, treatment, or rehabilitation of alcohol and substance abuse in urban centers. Sets forth grant criteria. Authorizes FY 1990 through 1992 appropriations.

Revises the administrative structure of the Office of Alcohol and Substance Abuse within the Office of the Assistant Secretary of the Interior for Indian Affairs. Places responsibility for the appointment both of employees of this Office and of the Indian Youth Programs Officer with this Assistant Secretary.

Authorizes the Secretary of HHS to enter into contracts with both public and private providers of alcohol and substance abuse treatment services to assist in the Indian Health Service Program. Authorizes FY 1989 through 1992 appropriations for such contracts.

Authorizes appropriations for FY 1989 through 1992 for costs of publishing an alcohol and substance abuse newsletter relating to Indians.

**Subtitle D: Native Hawaiian Health Care** - Native Hawaiian Health Care Act of 1988 - Authorizes the Secretary of HHS (Secretary) to make a grant to or contract with Papa Ola Lokahi (an organization comprising specified governmental, academic, and social entities) to develop a Native Hawaiian comprehensive health care master plan of health promotion and disease prevention services with respect to Native Hawaiians. Authorizes FY 1990 appropriations.

Authorizes the Secretary to make grants to qualified entities to provide comprehensive health promotion and disease prevention services, as well as primary health services, to Native Hawaiians. Gives preference to Native Hawaiian health centers and organizations with respect to such grants. Requires grant recipients to provide specified services, including health education, immunizations and other preventive medical services, nutrition services, and physician services. Authorizes other services as well. Sets forth various conditions relating to the grants, including limitations on fund uses and geographic distribution, and matching fund requirements. Authorizes FY 1991 through 1992 appropriations.

Authorizes grants to Papa Ola Lokahi to plan Native Hawaiian health centers to serve specified Native Hawaiian communities. Authorizes FY 1990 appropriations.

Authorizes the Secretary to make grants to Papa Ola Lokahi to: (1) implement and update of the comprehensive health care master plan developed in accordance with this Act; (2) train appropriate Native Hawaiian health care personnel in health promotion and disease prevention education; and (3) identify and study diseases prevalent among Native Hawaiians. Authorizes FY 1990 through 1992 appropriations.

Sets forth administrative requirements with respect to grants under this subtitle, including conditions to be met by grantees, evaluation procedures, and reporting requirements. Limits new spending authority under this subtitle to amounts provided in appropriation Acts.

**Subtitle E: Provisions Relating to Certain Drugs** - Declares any criminal conviction punishable by imprisonment for more than one year for violations of the Federal Food, Drug, and Cosmetic Act involving anabolic steroids or a human growth hormone subject to criminal forfeiture under the Controlled Substances Act to be a conviction for a violation of this latter Act.

Directs the Comptroller General to study and report to the Congress by June 1, 1989, on the extent of anabolic steroid and human growth hormone use among high school and college students and other adults. Lists required report contents.

Amends the Federal Food, Drug, and Cosmetic Act to make it a criminal offense to distribute or to possess with the intent to distribute any anabolic steroid other than in accordance with a physician's order for the purpose of treating disease. Authorizes the imposition of longer prison terms if distribution or intent is directed to an individual under age 18.

Declares butyl nitrite to be a banned hazardous product under the Consumer Product Safety Act, except in connection with commercial purposes other than use in products for inhaling or otherwise introducing it into the human body for euphoric or physical effects.

Establishes a Joint Federal Task Force on Illegal Drug Laboratories, made up of persons appointed by the Administrators of the Environmental Protection Agency (EPA) and the Drug Enforcement Administration (DEA), to formulate, establish, and carry out a program for the cleanup and disposal of hazardous waste produced by illegal drug laboratories. Lists factors to be considered in formulating this program. Directs: (1) the Task Force to recommend guidelines for cleanup of such laboratories in the interest of protecting the public health and environment; and (2) the Administrators of EPA and DEA to formulate and publish such guidelines within 180 days after this Act's enactment.

Directs the Attorney General to make grants and enter into contracts for demonstration projects for the safe clean-up and disposal of potentially dangerous substances associated with illegal drug laboratories. Requires evaluations of these activities, as well as reporting to the Congress. Makes available FY 1989 amounts to carry out this grant program.

Directs the Administrators of EPA and DEA to: (1) report to the President and to the Congress on the program established by the Task Force and on its implementation; and (2) report to the Congress on the evaluations made of the Attorney General's demonstration project grant program.

**Subtitle F: Certain Provisions with Respect to Veterans** - Directs the Administrator of Veterans Affairs to evaluate the inpatient and outpatient drug and alcohol treatment programs operated by the Veterans Administration, including a determination of their medical advantages and cost-effectiveness. Authorizes FY 1989 through 1991 appropriations: (1) for costs of this evaluation; and (2) exclusively for providing hospital, nursing home, domiciliary, and medical care to eligible veterans with alcohol or drug dependence or abuse disabilities.

**Subtitle G: Miscellaneous Health Amendments** - **Chapter 1: Technical and Conforming Amendments to Health Omnibus Programs Extension of 1988** - Makes technical amendments and corrections of provisions in titles II, VI, VII, and IX of the Health Omnibus Programs Extension of 1988.

**Chapter 2: Technical and Conforming Amendments to the Public Health Service Act** - Amends Public Health Service Act provisions relating to peer review of specified types of grant applications for costs of disseminating research findings or developing research agendas.

Amends the National Institute on Deafness and Other Communication Disorders and Health Research Extension Act of 1988 to direct the Secretary of HHS to establish in the National Institute on Deafness and Other Communication Disorders (Institute) the National Deafness and Other Communications Disorders Advisory Board to: (1) review, evaluate, and periodically update the required plan regarding activities in connection with relevant disorders; (2) maintain liaison with other appropriate advisory bodies; and (3) submit annual reports to the Secretary.

Authorizes the Secretary to establish a Deafness and Other Communication Disorders Interagency Coordinating Committee to coordinate national research efforts and all Federal health programs and activities relating to the relevant disorders. Requires the committee to report annually to specified Federal health care leadership entities.

Sets out administrative features concerning administrative expenses of the Institute.

Makes technical amendments and corrections of provisions in titles IV, V, VII, VIII, XXIII, XXIV, and XXV (both the first and second versions, as added by the Health Omnibus Programs Extension of 1988) of the Public Health Service Act.

**Chapter 3: Technical and Conforming Amendment to Federal Food, Drug, and Cosmetic Act** - Makes a technical correction of a Federal Food, Drug, and Cosmetic Act provision added by the Health Omnibus Programs Extension of 1988.

**Chapter 4: Miscellaneous** - Prescribes the prospective interaction, with respect to the effect on title VIII of the Public Health Service Act, of the Nursing Shortage Reduction and Education Extension Act of 1988 (H.R. 4833) and the Health Omnibus Programs Extension of 1988, upon their enactment.

**Title III: Drug Abuse Education and Prevention - Subtitle A: Drug and Alcohol Abuse Education Programs - Chapter 1: Alcohol Abuse Education Programs** - Amends the Elementary and Secondary Education Act of 1965 to authorize the Secretary of Education to develop materials for innovative alcohol abuse education programs, especially ones that focus on the effect of alcoholism on the families, particularly the children, of alcoholics. Requires programs for which such materials are developed to be designed for young children, particularly those in grades five through eight.

Authorizes the Secretary of Education to make grants to training programs for educators that are designed to: (1) increase awareness of children's problems that may be caused by an alcoholic parent; (2) enhance educators' ability to identify children at risk for alcohol abuse; (3) inform educators concerning referral of children of alcoholics for appropriate professional treatment; and (4) train educators to inform the public about the special problems of children who have an alcoholic parent.

**Chapter 2: Drug Abuse Education for Participants in the Special Supplemental Food Program for Women, Infants, and Children** - Amends the Child Nutrition Act of 1966 to include: (1) drug abuse among health problems covered by such Act; (2) drug abuse education along with the nutrition education provided under such Act; and (3) drug abuse education and instruction relating to such education under specified requirements for State plans.

Adds two members to the National Advisory Council on Maternal, Infant, and Fetal Nutrition. Requires one of them to be an expert in drug abuse education and prevention, and the other an expert in alcohol abuse education and prevention.

Directs the Secretary of Agriculture: (1) within six months after enactment of this Act, to study appropriate methods of drug abuse education instruction; and (2) to prepare and distribute drug abuse education materials. Authorizes appropriations.

**Chapter 3: Amendments to the Drug-Free Schools and Communities Act of 1986** - Amends the Drug-Free Schools and Communities Act of 1986 to increase the FY 1989 authorization of appropriations for financial assistance for drug abuse education and prevention programs. Limits the percentage of State allotments that may be used for administrative costs. Includes among permissible State programs intrastate drug and alcohol abuse education and prevention centers.

Allows up to ten percent of participants in innovative State programs under such Act to be individuals who are not high-risk youth, if the Secretary of Education determines that their participation will not significantly diminish the amount or quality of services provided to high-risk youth. Limits amounts made available to a State to expenditures under authorized State programs that demonstrate benefits for individual participants. Amends State application provisions to require additional information.

Revises responsibilities of State educational agencies in connection with the development, identification, and dissemination of model curriculum materials concerning drug abuse education and prevention.

Revises standards for drug abuse education curricular and teaching materials and the information from which they are developed. Requires local drug abuse education and prevention programs to include outreach activities for school dropouts and guidance counseling programs and referral services for the parents and immediate families of drug and alcohol abusers.

Requires biennial State reporting to the Secretary of Education concerning State and local programs funded under such Act. Describes required report format and contents.

Directs the Secretary of Education to make grants to State and local educational agencies and to institutions of higher education for programs to train teachers and other educational personnel concerning drug and alcohol abuse education and prevention. Sets forth application procedures and requirements. Authorizes FY 1989 through 1992 appropriations.

Includes as one of the duties of the Secretary of Education under such Act the coordination of activities that complement media efforts of anti-drug abuse groups. Directs the Secretary to summarize and consolidate the required biennial State reports and to submit the summary, with recommendations for future education and prevention efforts, to the Associate Director of the Office of National Drug Control Policy and to the Congress. Requires the Secretary to: (1) conduct an independent evaluation of a representative sample of programs funded under such Act in the interest of identifying successful projects; and (2) submit both an interim and final report of results to the Congress. Directs the Secretary to: (1) develop model criteria and forms for data collection with respect to programs assisted under such Act and disseminate these materials to established regional centers as a resource for State and local educational programs; and (2) provide for the development of age-appropriate drug abuse education and prevention curricula and materials for use in early child development programs, including Head Start and other federally assisted programs.

**Chapter 4: Community-Based Volunteer Demonstration Projects for Drug Abuse Education and Prevention Services and Activities** - Amends the Domestic Volunteer Service Act of 1973 to authorize the Director of the ACTION Agency to make grants to public and nonprofit organizations for innovative, community-based volunteer demonstration projects that provide comprehensive drug abuse education and prevention services and activities to youth during the summer months.

Enumerates permissible activities, including: (1) extending effective school-based programs to the summer months; (2) offering summer recreational, volunteer service, and youth development activities as positive alternatives to illicit drug use; and (3) incorporating drug abuse education and prevention activities in public and private programs serving youth during the summer months.

Gives priority to projects that serve high-risk youth and provide opportunities for parent involvement.

Authorizes appropriations for FY 1989 through 1991.

**Subtitle B: Drug Abuse Education and Prevention - Chapter I: Drug Education and Prevention Relating to Youth Gangs** - Directs the Secretary of Health and Human Services (HHS), through the Administration on Children, Youth, and Families, to make grants and contracts for drug education and prevention projects and activities to: (1) prevent and reduce youth drug abuse and participation in gang-committed, drug-related crimes; and (2) support local law enforcement outreach activities. Sets forth grant application requirements, as well as application approval priorities.

Directs the Secretary of HHS to coordinate this program with the programs and activities of the Attorney General and with those under the Juvenile Justice and Delinquency Prevention Act of 1974.

Authorizes appropriations for FY 1989 through 1991.

**Chapter 2: Program for Runaway and Homeless Youth** - Directs the Secretary of HHS to make grants to public and private nonprofit entities for research, demonstration, and services projects for runaway and homeless youth, especially projects relating to illicit use of drugs. Enumerates possible projects, including: (1) individual, family, and group counseling; (2) community education; (3) rural area assistance; (4) information and training to individuals providing youth services; and (5) research on the effects on such youth of their own or family members' drug abuse, and correlations between such use and suicide attempts.

Directs the Secretary to give grant priority to agencies and organizations with experience in providing services to such youth.

Limits grants to three years' duration.

Directs the Secretary, within 180 days after the end of a fiscal year for which funds are appropriated for this subpart, to report to the President and specified congressional leadership. Details required report contents.

Authorizes appropriations for FY 1989 through 1991, but only if the aggregate amount appropriated to carry out title III (Runaway and Homeless Youth) of the Juvenile Justice and Delinquency Prevention Act of 1974 for the fiscal year in question is not less than such amount for the preceding fiscal year.

Sets forth application procedures, required contents, and criteria to govern review.

**Chapter 3: Community Program** - Directs the Secretary of HHS to make grants to eligible States to develop community services, as well as partnerships designed to develop community activities directed at drug abuse prevention through education, training, and recreation projects. Describes: (1) application procedures, including a requirement that an applicant State must demonstrate a need for the proposed activities; and (2) formulas to be used in allotting grant amounts. Reserves a specified portion of funds for programs designated as "activities and projects of national significance." Lists priorities to be considered in awarding grants. Provides for project evaluations. Authorizes appropriations for FY 1989 through 1993.

Directs the Secretary of HHS, acting through the Administrator of the Office of Juvenile Justice and Delinquency Prevention, to develop and carry out a structured evaluation of various approaches used in the United States to reduce drug abuse. Requires the Secretary to report evaluation results to the Congress at specified times. Authorizes FY 1989 through 1993 appropriations.

**Subtitle C: Miscellaneous** - Defines terms used in this title.

**Title IV: International Narcotics Control** - **Subtitle A: General Provisions** - International Narcotics Control Act of 1988 - Presents the table of contents and definitions relevant to this title.

**Subtitle B: Multilateral Narcotics Control Efforts** - Expresses the sense of the Congress concerning the need for an anti-narcotics force in the Western Hemisphere. Instructs the President to direct the U.S. Ambassador to the Organization of American States (OAS) to initiate diplomatic discussions with other member nations in the interest of securing an agreement to form a multinational force to combat illegal drug smuggling organizations. Requires the Secretary of State to report to specified congressional committees on progress. Directs the President, if an agreement is reached, to submit to the Congress supplemental budget requests for FY 1989 and 1990 to cover the U.S. share of costs.

Urges the President to seek the establishment in other relevant regions of the world of multilateral anti-narcotics forces similar to the contemplated Western Hemisphere force.

Encourages the United Nations to consider ways and means of establishing an international force to stop drug trafficking.

Expresses the sense of the Congress that the President should: (1) call for international negotiations for the purpose of agreeing to establish an international drug force to pursue and apprehend major international drug traffickers; and (2) convene, as soon as possible, an International Conference on Combatting Illegal Drug Production, Trafficking, and Use in the Western Hemisphere.

Directs the Secretary of State to consult with the heads of appropriate Federal agencies and departments and with the governments of Western countries involved in cocaine trafficking or use about the feasibility of creating a comprehensive, integrated, multinational plan to reduce or eliminate the international cocaine trade. Requires reporting to the Congress concerning such a plan, means of achieving its objectives, and resources required and available for such efforts.

Expresses the sense of the Congress that the Assistant Secretary of State for International Narcotics Matters should: (1) seek the establishment of a regional anti-narcotics training center in the Caribbean; and (2) both contribute to and seek contributions of other countries to such a center.

Amends the Foreign Assistance Act of 1961 (FAA) to authorize FY 1989 appropriations to the President exclusively for U.S. contributions to: (1) the United Nations Fund for Drug Abuse Control; and (2) the OAS Inter-American Drug Abuse Control Commission's Legal Development Project and Law Enforcement Training Project.

Expresses the sense of the Senate that the President should begin discussions with foreign governments concerning the feasibility and advisability of establishing an international criminal court to expedite cases involving international drug trafficking and other international crimes.

**Subtitle C: Authorizations and Earmarkings of Foreign Assistance** - Amends the Foreign Assistance Act of 1961 (FAA) to authorize FY 1989 appropriations for international narcotics control assistance to other countries and to international organizations. Sets a minimum expenditure level for the testing and use of safe, effective herbicides for aerial eradication of coca. Instructs the President to monitor the environmental and health-related effects of such herbicide use and to report results to the Congress. Requires an immediate report to

6:04-cr-00115-RAW   Document 471-3   Filed in ED/OK on 01/10/22   Page 8 of 27

specified congressional committees upon any determination that herbicide use in this context is harmful to the environment or to the health of individuals.

Makes available a portion of FY 1989 grant military assistance funds to arm, for defensive purposes, extant aircraft used in narcotics eradication or interdiction efforts. Applies the standard 15 days' notice requirement to specified congressional committees in connection with this reprogramming.

Earmarks amounts from funds for international military education and training to be used solely for: (1) education and training involving equipment used in narcotics interdiction and eradication efforts in Latin America and the Caribbean; and (2) the expenses of deploying Department of Defense mobile training teams in a requesting country to conduct training in military-related skills to improve its tactical operations in narcotics interdiction. Limits this assistance to foreign law enforcement agencies or other units organized expressly for narcotics enforcement and to countries that meet criteria set out in this title.

Waives provisions that would prohibit the use of grant military assistance funds to procure weapons or ammunition for foreign law enforcement entities when they are organized specifically for narcotics enforcement in countries meeting the criteria of this title. Directs the President to report to the Congress within 15 days before funds are obligated for this type of assistance. Describes required report contents. Provides for human rights reporting with respect to countries authorized to receive assistance. Earmarks an amount to be available solely for assistance for countries in Latin America and the Caribbean.

Directs the President to reallocate funds withheld from countries failing to take adequate steps to halt illicit drug production or trafficking for use by countries that have met their illicit drug eradication targets or have otherwise taken significant steps to halt illicit drug production or trafficking. Prescribes conditions to govern transfers among international narcotics control assistance funds and reprogramming of security assistance resulting from these reallocations.

**Subtitle D: Provisions Relating to Specific Countries** - Urges the Assistant Secretary for International Narcotics Matters to pay greater attention, and provide more narcotics control assistance, to those countries that are drug-transit countries (but not major ones) cooperating with U.S. international narcotics control efforts. Earmarks a minimum FY 1989 amount to be available for their assistance.

Permits security assistance to Bolivia for FY 1989 only if the President certifies to the Congress that the Government of Bolivia has enacted and is implementing specified types of legislation to eradicate illicit coca production.

Sets nonwaivable conditions that the Government of Bolivia must meet before the President may make the certification necessary to obligate and expend FY 1989 U.S. assistance funds suspended because of major illicit drug activities (certification).

Requires that project agreement documents for projects in particular areas of Brazil contain a clause calling for suspension of FY 1989 development assistance if specified coca-related objectives are not met.

Deletes a provision of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1988 that earmarked funds for narcotics interdiction and control programs for Bolivia.

Directs the President, in making FY 1989 determinations with respect to the certification necessary for assistance to Peru, to give foremost consideration to whether the Government of Peru made substantial progress in meeting its coca eradication targets during the previous year.

Describes conditions that must be met before FY 1989 funds may be made available for the Agency for International Development's project in the Upper Huallaga Valley of Peru.

Limits FY 1989 international narcotics control assistance made available for Mexico. Makes additional assistance available only if specified congressional committees are notified in accordance with normal applicable reprogramming procedures.

Urges the Government of Mexico to cooperate fully with the United States with respect to drug law enforcement and especially in connection with the effective prosecution of those responsible for the murder and torture of specified Drug Enforcement Administration (DEA) personnel.

Directs the President, in making FY 1989 determinations with respect to the certification necessary for assistance to Mexico, to consider the Mexican Government's response to U.S. proposals to establish and implement a joint U.S.-Mexico airborne apprehension capability and air surveillance operations.

Encourages the Government of Mexico, upon ratification of the Mutual Legal Assistance Treaty with the United States, to furnish banking information pursuant to the treaty that would permit the successful U.S. investigation and prosecution of major narco-terrorists who use Mexican financial institutions to launder their profits.

Includes Colombia among the countries authorized to have more than six members of the U.S. armed forces assigned to carry out international security assistance programs.

Authorizes supplemental FY 1988 appropriations, to remain available until expended, to be used exclusively for defense articles to the Colombian armed forces to support their anti-narcotics efforts.

Earmarks amounts, to be available until expended, to assist Colombia in providing protection against narco-terrorist attacks on judges, other government officials, and members of the press. Requires congressional notification at least 15 days before funds may be obligated.

Directs the President, in making determinations with respect to the certification necessary for assistance to Pakistan, to take into account the extent to which the Government of Pakistan is increasing specified anti-narcotics activities.

Directs the President to review and report to the Congress within six months of this Act's enactment on U.S. narcotics raw material policy, determining the options available to reduce U.S. reliance on licit opium gum from foreign sources.

Expresses the sense of the Congress that: (1) the U.S. Government should pursue efforts to press the Government of Afghanistan, and work with the Mujahadeen, to reduce heroin production and trafficking in areas under their respective control and to encourage eradication, interdiction, and crop substitution in Afghanistan; and (2) an initiative should be developed which could be put in place as the Mujahadeen and successors to the present Kabul regime begin to exert greater civil authority.

Directs the President to prepare and transmit to the Congress periodic reports containing determinations with respect to any involvement by the Government of Laos (and other governments in the region) in illicit drug production and trafficking. Describes required report contents, depending on the determinations reached.

**Subtitle E: Annual Report and Certification Process** - Requires the President's annual report to the Congress pursuant to the FAA to: (1) express in numerical terms the maximum reductions in illicit drug production achievable during the next fiscal year; and (2) describe the U.S. assistance for the preceding fiscal year that was denied to each major illicit drug producing country and each major drug-transit country.

Revises the FAA definition of "United States assistance" to exclude certain assistance for narcotics education and awareness activities.

Directs the President to report to the Congress annually, rather than biannually, listing each major illicit drug producing country and major drug-transit country. Includes this report in the required midyear report on international narcotics control activities and operations.

Establishes a timetable according to which the Secretary of State must establish numerical standards and other guidelines for determining which countries will be considered as major drug-transit countries for FAA purposes. Requires reports to appropriate congressional committees in connection with these standards and their modification. Sets forth a transitional timetable for 1988.

Waives restrictions on FY 1989 U.S. assistance to any major drug-transit country if the President certifies to the Congress that: (1) significant drug-related money laundering is not occurring there with government knowledge or complicity; (2) the country previously was a major illicit drug producing country but has effectively eliminated illicit drug production during each of the preceding two years; and (3) the country is cooperating fully with the United States or has taken adequate steps on its own in satisfying specified anti-narcotics goals.

Amends provisions of the FAA governing annual certification procedures for bilateral and multilateral assistance, adding as criteria for certification whether the country has cooperated fully with the United States or has taken adequate steps on its own to: (1) satisfy goals agreed to in an applicable bilateral narcotics agreement with the United States or comparable multilateral agreement; and (2) prevent and punish bribery and other forms of public corruption that facilitate illicit drug activity or discourage drug law enforcement. Revises the FAA definition of "bilateral narcotics agreement" to permit multilateral agreements as an alternative to bilateral ones. Imposes more stringent certification requirements with respect to a major illicit drug producing or drug-transit country that also produces licit opium.

Adds to current requirements a variety of considerations the President must respect in determining whether to certify a country for assistance.

Amends the Trade Act of 1974 to make corresponding revisions with respect to annual certification procedures for trade and aviation sanctions. Requires the Secretary of State annually to establish numerical standards and other guidelines for determining which countries will be considered to be major drug-transit countries for such Act's purposes.

**Subtitle F: Miscellaneous Provisions Relating to Assistance Programs** - Applies the standard reprogramming procedures of the FAA to any transfer by the U.S. Government to a foreign country for narcotics control purposes of any property seized by or otherwise forfeited to the Government in connection with narcotics-related activity. Requires annual reports to the Congress of such transfers.

Expresses the sense of the Congress that suppression of international narcotics trafficking is among the most important U.S. foreign policy objectives.

Directs the President to take all reasonable steps to ensure that assistance under the FAA and the Arms Export Control Act is not provided to or through any individual or entity that the President knows or has reason to believe: (1) has been convicted of a violation of, or a conspiracy to violate, any U.S. or foreign law relating to narcotics, psychotropic drugs, or other controlled substances; or (2) is or has been an illicit trafficker in any such substance. Requires the President to issue regulations, subject to congressional review, specifying steps to be taken in carrying out this provision.

Urges the Secretary of State to take appropriate corrective action to improve the Department of State's procurement operations in order to assure timely and efficient procurement of property and services for international narcotics control assistance.

Prohibits the use of narcotics control assistance funds to acquire real property for use by foreign military, paramilitary, or law enforcement forces.

Amends the FAA to permit reimbursement for Department of Defense services in providing international narcotics control assistance.

Directs the President to: (1) take all reasonable steps to ensure that aircraft and other equipment made available for foreign countries are used only in ways consistent with the purposes underlying their availability; and (2) report on any misuse in this context and U.S. actions taken to prevent future misuse.

**Subtitle G: Department of State Activities** - Makes the Secretary of State responsible for coordinating all Government assistance to support international efforts to combat illicit narcotics production or trafficking.

Requires the Secretary to submit annual reports to the appropriate congressional committees. Describes required report contents. Allows reports to be classified to the extent necessary.

Amends the State Department Basic Authorities Act of 1956 to authorize appropriations, without fiscal year limitation, for use in paying rewards for information leading to the arrest or conviction of individuals for certain extraterritorial narcotics-related offenses.

Prohibits the issuance of a passport and requires the Secretary of State to revoke any passport previously issued to any individual who is convicted of certain drug law offenses if the individual used a passport or otherwise crossed an international border in committing the offense. Applies these restrictions during the period when the person is either imprisoned or on parole or other supervised release in connection with the offense in question. Permits exceptions in emergency circumstances or for humanitarian reasons.

Directs the Department of State, the U.S. Customs Service, and the Immigration and Naturalization Service to develop a comprehensive machine-readable travel and identity document border security program, including an integrated cooperative data exchange system incorporating law enforcement data on various types of offenders. Requires these agencies to submit to the President and to the Congress a detailed implementation plan regarding this program. Lists agencies that will be required to contribute appropriate law enforcement data to the exchange system. Authorizes FY 1989 appropriations. Requires all designated agencies to maintain their participation in the program in FY 1990 through 1992.

Directs the Secretary to place greater emphasis on updating extradition treaties and on negotiating mutual legal assistance treaties with major illicit drug producing and drug-transit countries.

Requires the Secretary and the Attorney General jointly to develop a model extradition treaty with respect to narcotics-related violations, a model mutual legal assistance treaty, and model comprehensive anti-narcotics legislation. Directs the Secretary to distribute these materials to each U.S. mission abroad and to report to the Congress within six months of this title's enactment.

Expresses the sense of the Congress that Regional Security Officers and other security personnel at U.S. embassies and other civilian posts abroad should be directed to expand their investigative activities with respect to illicit drug use and trafficking by Government personnel and their dependents.

Urges the Secretary to permit the assignment of additional DEA agents to U.S. diplomatic missions in foreign countries where illicit narcotics production or trafficking is, or is likely to become, a significant problem.

**Subtitle H: International Banking Matters** - Urges the Secretary of the Treasury (Secretary) to negotiate with finance ministers of foreign countries to establish an international currency control agency to analyze currency transaction reports and serve as a central information source for international drug enforcement agencies.

Directs the Secretary to enter into negotiations with the appropriate finance leadership of countries whose financial institutions do business in U.S. currency to: (1) reach at least one international agreement to ensure that adequate records of U.S. currency transactions in excess of $10,000 are maintained; and (2) establish a mechanism for making such records available to U.S. law enforcement officials. Instructs the Secretary to submit an interim progress report to specified congressional committees and a final report to the same committees and to the President.

Requires the President to impose appropriate penalties and sanctions with respect to any country: (1) whose financial institutions the Secretary determines are substantially engaging in currency transactions involving the proceeds of international narcotics trafficking affecting the United States; and (2) that is not negotiating an agreement for exchanging records. Terminates presidential authority to impose such sanctions on June 30, 1994.

Amends the Export-Import Bank Act of 1945 to permit pre-FY 1991 Export-Import Bank financing of sales of defense articles or services to economically less developed countries if: (1) the Bank is requested to guarantee or insure the sale and the authority to do so would not exceed five percent of the Bank's guarantee and insurance authority in any given fiscal year; and (2) the President determines, in accordance with prescribed criteria (pro-democratic and anti-drug) that the sale is in the U.S. national interest. Requires both a presidential determination that the required Bank guarantee would be in the national interest and notification to the Congress of this determination before the Bank Board may approve the guarantee in question.

**Subtitle I: Miscellaneous Provisions** - Expresses the sense of the Congress that the intelligence community should be more actively involved in covert actions to combat illicit international drug trafficking.

Corrects technical errors in the FAA and in the Anti-Drug Abuse Act of 1986.

Expresses the sense of the Congress that the Director of National Drug Control Policy should: (1) review the entire drug control problem to determine priorities for resource allocation, especially with respect to assistance to the Airwing Operations of the Department of State's Bureau of International Narcotics Matters and assistance to control youth gangs that traffic in illegal drugs; and (2) consider recommending supplementary resources as necessary.

Directs appropriate agency heads prescribing regulations under the Drug-Free Workplace Act of 1988 contained in this Act to: (1) establish only requirements consistent with U.S. international obligations; and (2) consider applicable laws and regulations of foreign countries.

**Title V: User Accountability - Subtitle A: Opposition to Legalization and Public Awareness** - Declares the congressional finding that the legalization of illegal drugs is an unconscionable surrender in the war on drugs.

Requires the Director of National Drug Control Policy to develop a program to inform the American public of this Act's provisions concerning penalties for the use or possession of illegal drugs.

6:04-cr-00115-RAW Document 471-3 Filed in ED/OK on 01/10/22 Page 11 of 27

**Subtitle B: National Commission on Drug-Free Schools** - Establishes a National Commission on Drug-Free Schools to prepare criteria to identify drug-free schools and develop recommendations for identifying model programs to meet these criteria. Requires the Commission to report to the President and the Congress within one year of this Act's enactment. Specifies required report contents. Authorizes appropriations.

**Subtitle C: Preventing Drug Abuse in Public Housing** - **Chapter 1: Regulatory and Enforcement Provisions** - Amends the United States Housing Act of 1937 to require public housing agencies to use leases that prohibit public housing tenants or persons under their control from engaging in criminal activity on or near public housing premises, declaring such criminal activity to be a cause for terminating the tenancy.

Directs the Secretary of Housing and Urban Development (HUD) to study and report to the Congress on the extent to which security activities in public housing projects are funded by annual contributions under the performance funding system for operation of lower income housing projects. Describes required report contents.

Directs the HUD Secretary to report to the Congress on the effect of specified public housing tenancy and administrative grievance procedure regulations on the ability of public housing agencies to evict or otherwise respond to tenants who engage in criminal activity.

Amends the Omnibus Crime Control and Safe Streets Act of 1968 to include as permissible activities under the Bureau of Justice Assistance block grants program actions to address problems of drug trafficking in public housing.

Amends the Controlled Substances Act to include leasehold interests among the classes of property subject to forfeiture under such Act.

**Chapter 2: Public Housing Drug Elimination Pilot Program** - Public Housing Drug Elimination Act of 1988 - Authorizes the Secretary of HUD to make grants to public housing agencies for programs to eradicate drug-related crime in public housing projects. Lists permissible grant uses, including the hiring of security personnel, physical improvements designed to enhance security, training and supporting voluntary public housing tenant patrols, and employing persons to investigate drug-related crime on public housing property. Sets forth application criteria. Requires the Secretary to report to the Congress on activities under this chapter. Authorizes appropriations.

**Chapter 3: Drug-Free Public Housing** - Drug-Free Public Housing Act of 1988 - Directs the Secretary of Housing and Urban Development to: (1) establish in the Department of Housing and Urban Development's Office of Public Housing a clearinghouse on drug abuse in public housing; and (2) establish a regional training program for public housing officials confronting such problems.

**Subtitle D: Drug-Free Workplace Act of 1988** - Drug-Free Workplace Act of 1988 - Sets forth drug-free workplace requirements for Federal grantees and contractors.

Sets forth grounds for suspension, termination, or debarment of grantees or contractors who have violated such requirements. Sets forth rules for related proceedings and the effect of such debarment.

Requires grantees or contractors, within 30 days after receiving notice from an employee of a conviction for a drug law violation in the workplace, to: (1) take appropriate personnel action up to and including termination against the employee; or (2) require the employee to participate satisfactorily in an approved drug rehabilitation program.

Provides for waiver of the requirements of this title in the interest of the Federal Government or the general public.

Repeals corresponding provisions enacted as part of the Treasury, Postal Service and General Government Appropriations Act, 1989.

**Subtitle E: President's Media Commission on Alcohol and Drug Abuse Prevention** - Authorizes appropriations for the President's Media Commission on Alcohol and Drug Abuse Prevention for FY 1989 through 1991.

**Subtitle F: Drug-Free America Policy** - Declares it to be U.S. policy to create a drug-free America by 1995.

**Subtitle G: Denial of Federal Benefits to Drug Traffickers and Possessors** - Denies Federal benefits (grants, contracts, loans, licenses, and public housing): (1) for up to five years to any person convicted for the first time of any Federal or State drug trafficking offense; (2) for up to ten years upon the second conviction for such an offense; and (3) permanently upon a third or subsequent conviction. Imposes one or a combination of the following sanctions on persons convicted for the first time of drug possession offenses: (1) ineligibility for Federal benefits for up to one year; (2) required successful completion of an approved drug treatment program; or (3) required community service. Extends benefit ineligibility for up to five years with respect to possessors convicted for a second or subsequent time. Permits penalty waivers under certain circumstances if the offender submits to a long-term treatment program for addiction. Supends the benefit ineligibility period if the offender attempts to enter a drug rehabilitation program or is rehabilitated either through such a program or otherwise. Exempts Government witnesses from penalties under this subtitle.

Requires: (1) the President to report to the Congress before May 1, 1989, concerning specified features of this subtitle's implementation; and (2) the Congress to consider the report and enact appropriate changes no later than September 1, 1989.

**Title VI: Anti-Drug Abuse Amendments Act of 1988** - Anti-Drug Abuse Amendments Act of 1988 - **Subtitle A: Chemical Diversion and Trafficking** - Chemical Diversion and Trafficking Act of 1988 - Amends the Controlled Substances Act to establish recordkeeping and reporting requirements for persons who manufacture, distribute, import, or export a listed precursor or essential chemical, a tableting machine, or an encapsulating machine. Prohibits transactions involving these items unless the recipient provides proper identification.

Includes confidentiality provisions with respect to records, authorizing an aggrieved person to bring a civil action against violators.

Amends the Controlled Substances Import and Export Act to require importers and exporters of listed chemicals to notify the Attorney General of importations or exportations within 15 days before the transaction in question. Provides for exceptions with respect to transactions with regular business customers of the regulated person, if the relationship is reported to the Attorney General. Authorizes the

Attorney General to order the suspension of a transaction. Requires written notice justifying such an order. Entitles the affected regulated person to a hearing, if requested. Sets forth a timetable to govern activities of the Attorney General and of the Director of the Office of Management and Budget in connection with the promulgation of regulations relating to these provisions. Establishes criminal penalties for persons who knowingly or intentionally import or export a listed chemical with intent to manufacture a controlled substance or with reasonable cause to believe that the chemical will be used for such a purpose. Applies civil penalties to persons who fail to meet notification requirements, unless the failure is intentional, in which case criminal penalties apply.

Lists the precursor chemicals and essential chemicals regulated under this Act. Describes transactions exempted from reporting and recordkeeping requirements, including certain lawful distributions in the usual course of business between agents or employees of a single regulated person and transactions involving listed chemicals contained in a drug lawfully marketable under the Federal Food, Drug, and Cosmetic Act.

Amends the Controlled Substances Act to apply criminal penalties to persons who knowingly or intentionally: (1) possess a listed chemical with intent to manufacture a controlled substance; (2) possess or distribute a chemical having reasonable cause to believe that it will be used for such a purpose; (3) receive or distribute reportable amounts of chemicals in de minimis amounts so as to evade reporting and recordkeeping requirements; (4) distribute a listed chemical unlawfully; or (5) possess listed chemicals with knowledge that recordkeeping or reporting requirements have not been met and fail to remedy the violation. Authorizes as an additional penalty an injunction preventing any person convicted of a felony violation of controlled substances laws regarding listed chemicals from engaging in any regulated transaction involving a listed chemical for up to ten years.

Amends sections of the Controlled Substances Act that describe prohibited acts and penalties to account expressly for new violations instituted in this subtitle.

Grants the Attorney General subpoena power with respect to precursor and essential chemicals.

Subjects all listed precursor and essential chemicals, drug manufacturing equipment, tableting and encapsulating machines, and gelatin capsules that have been imported, exported, manufactured, possessed, or distributed in violation of such Act (as well as all conveyances and equipment) to forfeiture to the United States.

Directs the Attorney General to maintain an active domestic and international program to curtail the diversion of chemicals used in the illicit manufacture of controlled substances.

**Subtitle B: Asset Forfeiture Amendments** - Asset Forfeiture Amendments Act of 1988 - Amends the Federal judicial code to decrease the percentage of program related use required in connection with automatic data processing equipment purchased or leased with monies from the Department of Justice Assets Forfeiture Fund (Fund).

Authorizes the Attorney General to transfer residual amounts from the Fund to the Building and Facilities Account of the Federal Prison System only at the end of FY 1989. (Under current law, the authority applies at the end of each fiscal year.)

Distinguishes between Fund amounts for authorized expenditures that must be specified in appropriations Acts and those that need not be so.

Authorizes the Attorney General to exempt certain contract services from specified advertising and procurement requirements if necessary to maintain the security and confidentiality of an investigation.

Revises provisions concerning the delegation of authority to pay awards for information or assistance leading to a forfeiture. Increases to $250,000 the allowable award amount in this context.

Enumerates topics to be included in the Attorney General's annual report to the Congress concerning the Fund. Requires an additional annual report concerning the value of property forfeited but not attributable to the Fund.

Subjects the Fund to annual audits by the Comptroller General.

Authorizes appropriations for those functions for which amounts must be specified in appropriations Acts. Authorizes the transfer of unobligated amounts of up to $150,000,000 of residual Fund amounts to the Special Forfeiture Fund at the end of FY 1990 through 1992.

Establishes in the Treasury the Special Forfeiture Fund, to be available to the Director of National Drug Control Policy. Directs the President to: (1) include in the budget submission a separate request for the use of Special Fund amounts, reflecting the priorities of the National Drug Control Strategy; and (2) submit to the Congress a detailed report on Fund deposits and expenditures.

Amends provisions of the Controlled Substances Act with respect to the disposition of forfeited property to authorize the Attorney General to transfer such property to any foreign country that participated in the seizure and meets certain criteria.

Exempts from forfeiture for drug abuse violations conveyances to the extent of the interest of an owner who did not know of or consent to the relevant unlawful act or omission.

Directs the Attorney General to assure that equitable sharing principles are applied with respect to property transferred to a State or local law enforcement agency that participated directly in the seizure or forfeiture.

Instructs the Attorney General and the Secretary of the Treasury to: (1) develop and maintain a joint plan to coordinate and consolidate post-seizure administration of property seized under controlled substances laws; and (2) prescribe regulations for expedited administrative procedures for seizures under specified Acts for violations involving the possession of personal use quantities of controlled substances. Prescribes specifications the procedures must meet. Subjects them to a public comment period.

Establishes expedited procedures for seized conveyances.

6:04-cr-00115-RAW    Document 471-3    Filed in ED/OK on 01/10/22    Page 13 of 27

**Subtitle C: State and Local Narcotics Control and Justice Assistance Improvements** - **Part 1: State and Local Narcotics Control and Justice Assistance Improvements** - Amends the Omnibus Crime Control and Safe Streets Act of 1968 with respect to the Bureau of Justice Assistance to: (1) shift responsibility for appointment of the Director from the Attorney General to the President, with the advice and consent of the Senate; and (2) add to the Director's duties that of preparing recommendations on the State and local drug enforcement component of the National Drug Control Strategy, to be submitted to the Associate Director of the Office on National Drug Control Policy.

Broadens the scope of the Bureau of Justice Assistance grant program, designating the restructured programs as the Edward Byrne Memorial State and Local Law Enforcement Assistance Programs. Emphasizes programs to support national drug control priorities and to assist multijurisdictional and multi-State organizations in controlling drugs.

Adds to the list of permitted grant uses a number of activities, including: (1) drug demand reduction education programs; (2) programs to target domestic sources of controlled substances; (3) antiterrorism plans; (4) financial investigative programs and information sharing systems; and (5) various programs to improve the criminal and juvenile justice systems. Requires each program funded under this part to contain an evaluation component. Sets forth revised State application requirements to reflect the shifted emphasis on drug-related programs. Increases the allowable Federal portion of program costs for FY 1989. Describes limitations applicable to the grants. Sets forth revised provisions for allocating and distributing funds under these formula grants. Describes procedures for State distribution of grant monies to lcoal governments.

Revises the program of discretionary grants to provide additional Federal assistance to public and private entities for a number of educational, technical assistance, and demonstration programs consistent with the purposes of this part. Sets forth provisions with respect to the allocation of funds for these grants and relevant application requirements.

Directs the National Institute of Justice to develop guidelines to assist State and local government in evaluating programs under this part, requiring the Institute's Director to report annually to the President, the Attorney General, and the Congress concerning the evaluations and research and development activities funded under this part.

Requires the Bureau of Justice Assistance to prepare a Program Brief and an Implementation Guide for proven projects to be funded with grants under this part.

Requires: (1) States receiving formula grants to submit to the Director of the Bureau of Justice Assistance reports containing specified information with respect to the use of grant funds; and (2) the Director to report to specified congressional leadership concerning States' use of grant monies.

Adds to authorized functions of the Bureau of Justice Statistics the responsibility for collecting, analyzing, and disseminating specified types of drug enforcement information and for improving various types of criminal justice records and information systems.

Extends through FY 1992 the authorization of appropriations for: (1) the Bureau of Justice Statistics; (2) the National Institute of Justice; (3) other functions of the Office of Justice Programs and the Bureau of Justice Assistance; and (4) various other justice system improvement programs.

**Part 2: Regional Information Sharing Systems Grants** - Replaces the current program of grants for drug law enforcement programs with provisions authorizing the Director of the Bureau of Justice Assistance to make grants to State and local criminal justice agencies and nonprofit organizations to identify and remove criminal activities that overlap jurisdictional boundaries. Specifies permitted grant uses, all in the interest of establishing and operating information sharing systems.

**Part 3: Public Safety Officers' Death Benefits Improvement** - Amends the Omnibus Crime Control and Safe Streets Act of 1968 to increase from $50,000 to $100,000 the benefits paid to survivors of public safety officers (law enforcement officers and fire fighters) who die as a result of injury sustained in the line of duty.

Directs the Bureau of Justice Assistance to adjust public safety officer death benefits to reflect the annual change in the Consumer Price Index. Makes the date of death the determining date with respect to the amount payable to beneficiaries.

Permits nondependent parents to be beneficiaries.

Instructs the Director of the Bureau of Justice Assistance to establish national programs to assist families of public safety officers who have died in the line of duty.

**Subtitle D: Authorizations of Appropriations for the Department of Justice, Prisons, and Related Law Enforcement Programs** - Authorizes FY 1989 appropriations, in addition to those provided in regular appropriations Acts, for the Immigration and Naturalization Service (INS) for additional personnel and for uses consistent with increased commitment to the Organized Crime Drug Enforcement Task Forces (OCDETF). Authorizes the Director of the OCDETF pilot project to undertake specified activities. Directs the Attorney General to evaluate the program's effectiveness after its first year.

Instructs the Attorney General, through the Investigative Division of the INS, to establish a pilot program in four cities to improve the capabilities of the local INS offices and of local law enforcement agencies to respond to inquiries about aliens involved with controlled substances.

Authorizes FY 1989 appropriations, in addition to those provided in regular appropriations Acts, to the following agencies and activities for specified drug control purposes: (1) the Bureau of Alcohol, Tobacco and Firearms; (2) the Drug Enforcement Administration (DEA), including funds to establish a DEA Drug Education Program; (3) the Federal Bureau of Investigation; (4) the U.S. Marshals Service; (5) support of U.S. prisoners in non-Federal institutions; (6) the Federal Prison System; (7) U.S. Attorneys in the Department of Justice; and (8)

the Federal judiciary, including the Courts of Appeals, district courts, other judicial services, the Federal Public Defender and Community Defender organizations, juror fees and expenses, and security equipment.

Directs the Judicial Conference of the United States to prepare and submit to specified congressional entities a report evaluating the impact of drug-related criminal activity on the Federal judiciary.

Establishes a National Advisory Commission on Law Enforcement to study and analyze the methods and rates of compensation of Federal, State, and local law enforcement personnel in the interest of identifying inequities and recommending changes to eliminate them. Requires the Commission to report findings and recommendations to the President and to specified congressional leadership. Terminates the Commission 60 days following submission of the required report.

Authorizes FY 1989 appropriations, in addition to those provided in regular appropriations acts, for: (1) drug interdiction equipment for the Border Patrol within the Department of Justice; (2) Border Patrol personnel enhancement; (3) designing improvements for the INS border patrol station at San Clemente, California; and (4) establishing an INS Drug Education Officers program.

Instructs the President to direct the Office of National Drug Control Policy to develop a comprehensive plan for using at least eight existing facilities associated with specified agencies to develop law enforcement technologies. Requires the plan to be submitted to the Congress within 90 days of this Act's enactment. Lists facilities to be examined in developing the plan. Directs the Comptroller General to monitor plan development.

Authorizes FY 1989 appropriations, in addition to those provided in regular appropriations Acts, for improving the Federal Law Enforcement Training Center. Directs the Secretary of the Treasury to expand the advanced training programs for Federal law enforcement agencies at the satellite facility in Marana, Arizona, and to report to appropriate congressional committees concerning the planned expansion.

Authorizes: (1) the Departments of Defense and of State to provide, on a cost reimbursable basis, foreign language training to special agents of Federal civilian agencies involved in drug law enforcement; and (2) the DEA, U.S. Customs Service, and the INS to detail investigative personnel for language training at the relevant Department of Defense and Department of State facilities. Authorizes appropriations for this training.

Authorizes FY 1989 appropriations, in addition to those included in regular appropriations Acts, to the DEA for the United States-Bahamas Drug Interdiction Task Force. Conditions availability of the funds upon receipt of a specified contribution by the Commonwealth of the Bahamas.

Expresses the sense of the Congress that: (1) the Commonwealth of the Bahamas should aggressively pursue the extradition of Nigel Bowe and the consummation of the pending extradition treaty with the United States by the end of 1988; (2) the U.S. Government should cooperate with the Bahamas both in providing information regarding allegations of corruption and in responding to requests for the extradition of U.S. citizens indicted for drug-related offenses in the Bahamas; and (3) DEA agents should be physically present when seized illegal drug contraband is destroyed by Bahamian government personnel.

Authorizes additional FY 1989 appropriations for the U.S. National Central Bureau of Interpol to increase personnel and to upgrade telecommunications equipment.

Directs the DEA Administrator to take actions as necessary to establish and operate a special purposes facility for use by the Air Wing at a site having direct aircraft access to public aviation facilities. Authorizes appropriations.

**Subtitle E: Money Laundering** - Money Laundering Prosecution Improvements Act of 1988 - Amends the Federal criminal code to exclude monetary transactions involving bona fide attorney fees from consideration as unlawful activity for particular racketeering law purposes. Revises the definition of "monetary instrument" for money laundering purposes.

Amends the Bank Secrecy Act to include within the definition of "financial institution" a number of entities engaging in activities similar to those usual to financial institutions, including vehicle sales businesses, persons involved in real estate closings and settlements, and any other businesses designated by the Secretary of the Treasury as having cash transactions with a high degree of usefulness in criminal, tax, or regulatory matters.

Amends Federal law to prohibit financial institutions from issuing checks or money orders to individuals in connection with transactions involving U.S. money in amounts or denominations of $3,000 or more unless the individual provides proper identification and the institution verifies that the individual has an account there.

Authorizes the Secretary of the Treasury to require any domestic financial institution to obtain information, keep records, and submit reports concerning: (1) its transactions involving monetary instruments that exceed amounts the Secretary prescribes; and (2) other parties to the transactions.

Amends the Federal Deposit Insurance Act and the National Housing Act to impose a civil penalty of up to $10,000 on insured institutions and their principals and personnel that willfully or through gross negligence violate recordkeeping and reporting requirements. Increases from $1,000 to $10,000 the corresponding penalty with respect to uninsured financial institutions. Revises provisions describing the range of uninsured entities subject to financial recordkeeping requirements.

Authorizes the Secretary of the Treasury to delegate to the Postal Service powers and duties in connection with records and reports on monetary instruments transactions.

Authorizes a financial institution or its officers and employees notifying a Government authority concerning information potentially relevant to a legal violation to include information concerning any corporation involved in the suspected illegal activity. (Currently law calls only for

information concerning any individual or account involved in such activity.)

Amends the Right to Financial Privacy Act of 1978 to exempt from confidentiality requirements financial records transferred to the Attorney General by other Federal entities when there is reason to believe that the records may be relevant to criminal offenses.

Denies confidentiality of financial information when a financial institution or supervisory agency provides the Attorney General or a State law enforcement agency with financial records of any officer, director, employee, or controlling shareholder (or a major borrower acting in collusion with any of these), if there is reason to believe the record is relevant to either crimes by these persons against such an institution or agency or violations of statutes governing recordkeeping and reporting on monetary instruments transactions. Revises the good faith defense to account for this exception.

Permits descriptions of records, rather than the records themselves, to be presented to a grand jury when the volume of paperwork makes actual presentation impractical.

Directs the Secretary of the Treasury to study the feasibility of withdrawing the legal tender status of $100 Federal Reserve notes. Enumerates required report contents, to be submitted to the Congress within 180 days of this Act's enactment.

**Subtitle F: Sense of Congress that Proposals to Legalize Illicit Drugs Should be Rejected** - Expresses the sense of the Congress that proposals to legalize illicit drugs should be rejected and consideration given only to proposals that directly attack the supply of, and demand for, illicit drugs.

**Subtitle G: Firearms Provisions** - Amends the Federal criminal code to establish criminal penalties applicable to any person who knowingly: (1) travels to another State to acquire or transfer a firearm for use in racketeering, drug law violations, or a crime of violence; or (2) transfers a firearm knowing that it will be used to commit a crime of violence or a drug trafficking crime.

Directs the Attorney General to: (1) develop a dealer-accessible system for the immediate and accurate identification of felons who attempt to purchase firearms; (2) establish a plan for implementing the system 30 days following a required report to the Congress within one year of this Act's enactment; and (3) study, report to the Congress, and make results available to the public concerning the possibility of an effective method of making rapid and accurate identification of other persons who try to purchase firearms but are ineligible to do so by reason of specified unlawful acts relating to the shipment of firearms in interstate or foreign commerce.

Revokes probation of any defendant found to be in actual possession of a firearm.

Imposes criminal penalties on any person who knowingly possesses or causes to be present a firearm or other dangerous weapon in a Federal facility. Increases the penalties in cases when the offender has intent that a firearm or other dangerous weapon be used in the commission of a crime. Requires conspicuous posting at Federal facility entrances indicating that these acts constitute criminal offenses. Denies conviction for the offense if such notice is not posted at the facility in question.

**Subtitle H: Investigative Powers of Postal Service Personnel and National Forest System Drug Control** - Amends the Federal criminal code to permit certain Postal Service personnel to carry firearms and make seizures of property under specified circumstances.

Amends the Controlled Substances Act to allow the Postal Service to carry out the Attorney General's civil forfeiture activities with respect to controlled substances and related articles and conveyances. Directs that proceeds of Postal Service forfeitures be deposited in the Postal Service Fund.

Amends the National Forest System Drug Control Act of 1986 to double the number of Forest Service personnel whom the Secretary of Agriculture may designate and specially train as officers to enforce controlled substances law and other Federal criminal law relating to National Forest System lands. Extends the authority of such persons beyond the boundaries of National Forest System lands when the investigation or law enforcement in question affects the administration of such lands.

Directs the Forest Service to cooperate with the Attorney General in carrying out seizure and forfeiture provisions relating to controlled substances.

Empowers the Secretary of Agriculture to designate law enforcement officers of other Federal agencies to exercise specified law enforcement powers when assisting Forest Service personnel in relevant activities. Authorizes the Forest Service to accept law enforcement designation from another Federal or State agency in order to cooperate in multi-agency anti-drug law enforcement task force investigations.

Amends the Anti-Drug Abuse Act of 1986 to authorize additional appropriations to the Secretary of Agriculture for FY 1989 and thereafter to be used for the employment and training of Forest Service law enforcement personnel and for associated equipment and facilities. Authorizes corresponding appropriations to the Secretary of the Interior for National Park Service and, under a new subtitle to be cited as the Bureau of Land Management Drug Enforcement Supplemental Authority Act, Bureau of Land Management law enforcement personnel and activities.

Amends the Federal criminal code to impose criminal penalties on persons who place hazardous or injurious devices on Federal lands with reckless disregard of the risk to another person or with the intent either to violate the Controlled Substances Act or to obstruct the harvesting of timber.

Amends the Controlled Substances Act to establish criminal penalties for creating a serious hazard to life, harming the environment, or polluting water when the violator knowingly uses a chemical, poison, or other hazardous substance on Federal lands in connection with unlawful acts relating to controlled substances. Credits amounts imposed as penalties to the Drug Pollution Fund, to be established in the

Treasury, for use in cleaning up pollution resulting from the offending actions. Describes procedures that executive agency heads must follow in order to receive Fund monies for such expenses.

Amends the Federal criminal code to revise the monetary component of criminal penalties for arson involving timber.

Directs the Secretary of Agriculture and the Attorney General each to submit to specified congressional committees a report on their respective activities in expediting investigations with respect to criminal laws relating to controlled substances manufactured or distributed on National Forest System lands.

**Subtitle I: Travel Expenses and Health Care of Department of Justice Personnel Serving Abroad** - Amends the Federal judicial code to authorize Department of Justice appropriations for any fiscal year to pay travel and health care expenses of employees serving abroad and their families.

**Subtitle J: Program-Related and Study Provisions** - Amends the Contract Services for Drug Dependent Federal Offenders Act of 1978 to increase amounts authorized for FY 1988 and 1989 for the Administrative Office of the U.S. Courts' program of drug aftercare for certain conditionally released offenders.

Instructs the Director of the National Institute of Corrections to establish and operate a national center for training Federal, State, and local prison officials to conduct drug rehabilitation programs for criminals convicted of drug-related crimes and for drug-dependent criminals. Authorizes FY 1989 through 1991 appropriations.

**Subtitle K: Manufacturing Offenses** - Amends the Controlled Substances Act to impose criminal penalties for creating a substantial risk of harm to human life while illegally manufacturing a controlled substance.

**Subtitle L: Serious Crack Possession Offenses** - Amends the Controlled Substances Act to increase the criminal penalties with respect to persons convicted for the possession of a mixture or substance containing cocaine base.

**Subtitle M: Miscellaneous Drug Enforcement** - Authorizes the DEA, beginning in FY 1989, to pay bonuses to its employees who make substantial use of one or more languages, other than English, in performing their official duties.

**Subtitle N: Sundry Criminal Provisions** - Amends Federal criminal code provisions relating to penalties for firearms violations to revise definitions of "violent felony" and "conviction" to include violent acts of juvenile delinquency.

Amends penalty provisions of the Controlled Substances Act to impose a mandatory term of life imprisonment without release with respect to violators convicted for a third felony drug offense.

Directs the U.S. Sentencing Commission to issue or revise its sentencing guidelines to make specified types of provisions with respect to: (1) defendants convicted of Controlled Substances Import and Export Act violations involving importation by aircraft and other vessels (calls for imprisonment for no less than 63 months); and (2) violations of the Controlled Substances Act involving any person under the age of 18.

Amends the Controlled Substances Act to apply mandatory minimum sentencing provisions to offenses involving the distribution of five grams or less of marijuana to persons under age 21.

Includes as a prohibited criminal act under the Controlled Substances Act: (1) possessing a controlled substance with the intent to distribute it in or near a school; (2) distributing, possessing, or manufacturing a controlled substance within 100 feet of a playground, public or private youth center, public swimming pool, or video arcade facility; and (3) receiving a controlled substance from a person under age 18.

Increases the criminal penalties imposed on persons who use firearms in connection with violent crimes, drug trafficking crimes, and certain other firearms offenses.

Authorizes interception of wire, oral, or electronic communications in cases involving Federal firearms violations.

Subjects property involved in money laundering transactions to both civil and criminal forfeiture.

Applies criminal penalties in money laundering cases when the offender is dealing with property that has been represented to be the proceeds of some form of unlawful activity (current law covers only proceeds in fact).

Adds a number of specific money laundering offenses to the Federal criminal code list of unlawful activities.

Calls for transfer for criminal prosecution of delinquency proceedings in district courts involving minors convicted of certain types of drug trafficking offenses.

Imposes a sentence of up to 20 years on persons who provide or possess certain controlled substances or an alcoholic beverage in Federal prison. Makes any penalties imposed on inmates who provide or possess contraband in prison consecutive to the sentence being served. Directs the U.S. Sentencing Commission to issue or revise its sentencing guidelines to call for imprisonment for no less than 63 months with respect to persons who provide or possess contraband in Federal prison.

Authorizes the United States Postal Service to investigate money laundering offenses.

Includes violations involving specified amounts of methamphetamine as prohibited acts subject to criminal penalties under the Controlled Substances Act.

Amends Federal law with respect to money laundering offenses. Establishes criminal penalties for activities with the intent either to evade or defeat tax requirements.

Amends jurisdictional provisions of the Ballistic Knife Prohibition Act of 1986.

Amends Federal criminal code provisions relating to common carrier operation by persons under the influence of alcohol or drugs.

1/10/22, 3:34 PM
6:04-cr-00115-RAW 5210 Document 471-3 100th Congress (1987-1988) Filed in ED/OK on 01/10/22 Page 17 of 27
Congress.gov | Library of Congress

Amends Federal criminal code provisions relating to the importation, manufacture, distribution, and storage of explosive materials to: (1) impose criminal penalties on persons who possess an explosive in any airport subject to Federal Aviation Administration authority; (2) increase penalties in connection with violations with respect to persons who possess an explosive in any Federal airport or building; and (3) increase the severity of penalties imposed on persons who use or carry an explosive in connection with a felony.

Amends the Speedy Trial Act of 1974 with respect to time limits applicable to defendants absent on the day set for trial who subsequently appear under a bench warrant or similar process.

Amends Assimilative Crimes Act provisions relating to penalties for operating a motor vehicle while under the influence of drugs or alcohol.

Presumes that individuals operating motor vehicles in Federal areas consent to submit to alcohol and drug tests when arrested for any offense under circumstances giving the police officer reasonable grounds to believe the person was driving under the influence of alcohol or drugs. Describes procedures associated with such testing. Revokes driving privileges in such areas to any person who declines to submit to testing after being informed of his or her rights.

Includes various offenses within the District of Columbia against foreign officials, official guests, and international protected persons among those subject to criminal penalties.

Amends the Controlled Substances Act to: (1) impose criminal penalties for offenses involving marijuana plants; (2) delete certain limitations on penalties for simple possession of a controlled substance; and (3) increase the penalties applied in connection with continuing criminal enterprise.

Amends the Federal criminal code to revise criminal penalties for operating vehicles while under the influence of alcohol or drugs to: (1) include the operation of locomotives within the penalty framework; and (2) increase penalties in cases involving death or serious bodily injury.

Amends the Federal Rules of Criminal Procedure to add a rule describing procedures to be followed by a defendant intending to claim a defense of actual or believed exercise of public authority on behalf of a law enforcement or Federal intelligence agency at the time of the alleged offense.

Amends provisions of the Federal criminal code relating to witnesses and evidence to provide for the temporary transfer to the United States, for the purposes of giving testimony in a criminal proceeding, of persons in the custody of another country.

Imposes a civil penalty of up to $10,000 per violation on any individual who knowingly possesses a controlled substance in a personal use amount. Prohibits consideration of the income and net assets of the violator in determining the penalty amount. Requires a hearing and permits judicial review in connection with orders imposing such penalties, but only if requested by the individual subject to the order. Authorizes the Attorney General to institute a civil action, subject to a five-year statute of limitations, to recover the penalty if the individual neither requests a hearing nor seeks judicial review. Directs the Attorney General to dismiss proceedings in such cases upon request of the penalized individual if that person meets specified conditions after the expiration of three years.

Includes former officials and their families within the scope of criminal penalties against persons who assault, resist, or otherwise impede certain Federal officials in the performance of official duties.

**Title VII: Death Penalty and Other Criminal and Law Enforcement Matters** - **Subtitle A: Death Penalty** - Amends the Controlled Substances Act to establish criteria for the imposition of the death penalty with respect to any person who intentionally kills or causes the killing of a law enforcement officer or any other person during the commission of, in furtherance of, or while attempting to avoid apprehension, prosecution, or service of a prison sentence for a felony violation under such Act.

Requires the Government, for such offense, to serve notice upon the defendant a reasonable time before trial or acceptance of a plea, disclosing the factors it will seek to prove as a basis for the death penalty.

Requires a separate sentencing hearing before a jury, or the court upon motion by the defendant, when the defendant is found guilty or pleads guilty to the offense.

Allows the defendant and the Government to present any information relevant to sentencing, without regard to the rules of evidence, but permits information to be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury.

Directs the court, or the jury by unanimous vote, to return a finding as to whether the death sentence is justified based on consideration of both aggravating and mitigating factors. States that, regardless of its findings with respect to these factors, the jury or the court is never required to impose a death sentence. Requires the jury to be so instructed.

Directs the court to sentence the defendant to death upon the recommendation that the death sentence be imposed. Prohibits the death sentence with respect to any person who: (1) was under 18 years of age at the time the crime was committed; (2) by reason of mental disease or defect is unable to understand his or her impending death or its reasons; or (3) is mentally retarded.

Sets forth both mitigating and aggravating factors to be considered by the jury or the court when imposing its sentence. Includes among the latter: (1) the intentional nature of the act that resulted in the victim's death; (2) previous convictions for Controlled Substances Act violations; and (3) the especially heinous, cruel, or depraved nature of the offense.

Requires the court to instruct the jury not to consider the race, color, national origin, or sex of the defendant in its consideration of the sentence. Requires each juror to return a signed certificate stating that these features were not considerations in determining the sentence.

Directs the Comptroller General to: (1) study the procedures used by States in determining whether to impose the death penalty; and (2) report to the Congress on any factors that may account for the evidence that the race of the defendant or victim influences the likelihood that defendants will be sentenced to death.

Allows the court to impose a sentence of life imprisonment without the possibility of parole if the death penalty is not imposed. Describes procedures to apply with respect to defendants' appeals of death sentences.

Entitles a defendant to court-appointed counsel if he or she is or becomes financially unable to obtain adequate representation or reasonably necessary services in any criminal action in which the relevant crime may be punishable by death. Directs the court to fix attorney and other fees in connection with the required services.

States that no employee shall be required to participate in or attend any execution carried out under this Act if such participation is contrary to the employee's moral and religious convictions.

Directs the Comptroller General to: (1) review the cost of implementing the procedures for imposing and carrying out a death sentence prescribed by this title, including a study of data relating to the workload of judicial and law enforcement personnel; and (2) report findings to the Congress within four years of this Act's enactment.

**Subtitle B: Minor and Technical Criminal Law Amendments** - Minor and Technical Criminal Law Amendments Act of 1988 - Makes technical and conforming amendments to the Federal criminal code.

Increases criminal penalties imposed in cases when a bodily injury results during the commission of the crime of deprivation of rights under color of law.

Grants the Associate Attorney General authority to: (1) approve certain civil rights prosecutions; (2) approve prosecutions for flight to avoid service of process; (3) summon special grand juries; (4) request a judicial grant of immunity; and (5) object to the disclosure of classified information under the Classified Information Procedures Act.

Grants specially designated Assistant Attorney General authority to approve certain civil rights prosecutions. Grants the Deputy Assistant Attorney General authority to request judicial grants of immunity.

Permits the transmission of information on sports betting from a State where such betting is legal to a foreign country where such betting is legal.

Permits prosecutions for certain obstruction of justice offenses: (1) to be brought in the district where the official proceeding was intended to be effected or in the district in which the conduct constituting the alleged offense occurred; and (2) where the culpable conduct is "corrupt persuasion."

Authorizes governmental access to records concerning electronic communication service or remote computing service through the issuance of a trial subpoena. (Current law provides for such access only through the issuance of an administrative or grand jury subpoena.)

Amends the Sentencing Reform Act of 1984 to raise the maximum prison term for class B felonies from 20 to 25 years.

Amends the Comprehensive Crime Control Act of 1984 to establish conditions for the temporary release (furlough) of persons hospitalized following an acquittal by reason of insanity.

Requires copies of certain periodic reports prepared by directors of psychiatric hospitals concerning persons hospitalized for threatening the President, the Vice President, or certain other persons protected by the Secret Service, to be submitted to the Director of the U.S. Secret Service.

Extends the power to conduct certain psychiatric and psychological examinations under the Federal criminal code to all psychologists. (Current law extends such power to psychiatrists and clinical psychologists.) Makes conforming amendments to the Federal Rules of Civil Procedure permitting courts to designate psychologists to conduct mental examinations of parties in civil proceedings.

Amends the Racketeer Influenced and Corrupt Organizations Act (RICO) to create three additional RICO predicates: (1) murder-for-hire; (2) sexual exploitation of children; and (3) fraud in connection with access devices, such as credit cards and electronic banking cards.

Establishes a misdemeanor penalty in connection with the criminal escape of a person being detained for the purpose of exclusion or deportation under the immigration laws.

Increases the maximum prison term in connection with specified crimes of sexual abuse, murder for hire, attempted murder, and certain types of racketeering offenses.

Amends the Interstate Agreement on Detainers Act to revise provisions applicable to transfers involving the United States when it obtains custody of a State prisoner on Federal charges.

Revises the Federal Rules of Criminal Procedure to require a Federal district court to advise a defendant concerning the effects of supervised release terms on the possible penalty before the court accepts a plea of guilty or nolo contendere.

Permits the United States to bring an action to enjoin various types of fraud against the Government.

Imposes criminal penalties for obstructing Federal audits and for using the term "Secret Service" without authorization.

Amends Federal criminal code provisions governing the time for refiling an indictment or information after it is dismissed because it was found to be defective.

Authorizes the Government to refund erroneously forfeited bail.

Revises the amount of special assessments imposed on persons convicted of Federal misdemeanors.

Authorizes a court to impose conditions alternative to fines, restitution, or community service as conditions of probation for felons.

Authorizes a judge or magistrate of the District of Columbia to issue an arrest warrant for a foreign fugitive whose location is unknown.

Revises the definition of "petty offense" for purposes of the Federal criminal code, the Rules of Procedure for the Trial of Misdemeanors before United States Magistrates, and the Federal Rules of Criminal Procedure.

Imposes criminal penalties on persons who mail locksmithing devices.

Amends provisions with respect to the setting of bail pending appeal.

Authorizes the emergency installation of pen registers and trap and trace devices under specified circumstances.

Amends the Federal criminal code to authorize Federal Prison Industries, Incorporated (Corporation) to issue its obligations to the Secretary of the Treasury. Authorizes the Secretary to purchase such obligations. Limits the aggregate amount of outstanding obligations from exceeding 25 percent of the Corporation's net worth.

Allows the Secretary to: (1) sell such obligations as public debt transactions; and (2) upon the request of the Corporation, invest excess monies from the Prison Industries Fund.

Permits Corporation funds to be used to acquire industrial buildings and equipment for corporate operations. Prohibits the use of corporate funds for the construction or acquisition of penal or correctional institutions or camps.

Requires the board of directors of the Corporation to include in its annual report to the Congress: (1) a statement of the amount of obligations issued during the fiscal year; and (2) an estimate of the amount of obligations that will be issued in the following fiscal year.

Requires the board of directors to employ the greatest possible number of inmates in U.S. penal institutions who are eligible to work.

Directs the Corporation to: (1) produce products on an economic basis, but avoid capturing a reasonable share of the market among Federal departments; (2) concentrate on providing to the Federal Government only those products which permit employment of the greatest number of inmates; and (3) diversify products so that sales are broadly distributed among industries.

Requires any decision to produce a new product or expand production significantly to be made by the board of directors. Directs the Corporation, before such decision is made, to prepare a written analysis of the plan's impact on industry and free labor. Requires the Corporation to provide notice of such plans to potentially affected private vendors or trade associations, allowing such parties to submit comments. Directs the Corporation to provide to the board of directors the analysis, comments, and recommendations for action.

Requires the Corporation to publish the final decision of the board of directors and, after each six-month period, a list of sales by the Corporation.

**Subtitle C: Sentencing Amendments** - Amends the Sentencing Act of 1987 to require that the Attorney General assign to the United States Parole Commission for supervision any offender on parole from a foreign country who transfers to the United States. Directs the Parole Commission to determine a release date as well as a period and conditions of supervised release for an offender transferred to serve a prison term in the United States. Sets out criteria to govern such determinations. Describes the appeals process and other features of relevant civil procedure.

Amends provisions of both the Federal criminal and civil codes with respect to the standard of appellate review of sentences.

Authorizes the United States Sentencing Commission to: (1) retain private attorneys to advise it; and (2) grant incentive awards to its employees.

Requires a court to consider the need to protect the public from future crimes of a defendant when terminating or modifying conditions of supervised release.

Deletes provisions authorizing a court to treat violations of conditions of supervised release as a contempt of court.

Describes procedures to be followed by the United States Sentencing Commission in amending its guidelines and modifying previously submitted amendments that have not taken effect.

Amends the Federal Rules of Appellate Procedure with respect to the time for filing a notice of appeal of a sentence.

**Subtitle D: Victim Compensation and Assistance** - Amends the Victims of Crime Act of 1984 to: (1) increase the ceiling amount permitted in the Victims Crime Fund (Fund); (2) make a specified portion of excess Fund monies available to the judiciary to operate a computerized fine receipt system; (3) extend the sunset of the Fund to September 30,1994 (under current law, the Fund expired on September 30, 1988); and (4) revise provisions relating to the use of excess fund monies.

Requires a State's chief executive to certify that victim assistance funds will be made available for grants to programs that will serve previously underserved populations of victims of violent crime.

Establishes within the Department of Justice an Office for Victims of Crime, to be headed by a Director appointed by the President, with the advice and consent of the Senate.

Directs the Attorney General, acting through the Director of the Office for Victims of Crime, to use a specified portion of Fund monies for grants to assist Native American Indian tribes in developing and operating programs to handle and prosecute child abuse cases.

Makes various other amendments to the Victims of Crime Act of 1984, including provisions to: (1) revise criteria governing assistance to State programs of compensation to victims of violent crimes; (2) require that victims of drunk driving and domestic violence be included

among those eligible for compensation; (3) add provisions regarding compensation for eyeglasses and other corrective lenses; (4) consider the Virgin Islands as a State for victim assistance grant purposes; and (5) revise the formula used to calculate State victim assistance grant allocations.

**Subtitle E: Federal Aviation Administration Drug Enforcement Assistance** - Federal Aviation Administration Drug Enforcement Assistance Act of 1988 - Amends the Federal Aviation Act of 1958 to direct the Federal Aviation Administrator to modify systems relating to aircraft registration, airman's certification, and fuel system alterations in order to make these systems more responsive to the needs of drug law enforcement authorities. Cites the areas to be modified. Requires the Administrator to issue final regulations implementing such modifications within ten months after the date of enactment of this subtitle. Authorizes the Administrator to establish and collect user fees to cover the costs associated with these modifications. Prescribes user fee guidelines. Directs the Comptroller General to conduct annual audits of fee collection and use during the first five years of their imposition.

Requires the Administrator to report annually to the Congress for a five-year period regarding the progress made under this subtitle.

Establishes civil penalties for violations of this subtitle and sets forth administrative procedures and jurisdictional requirements in connection with their imposition.

Establishes criminal penalties for an enumerated series of aircraft registration violations. Cites conditions under which an aircraft used in connection with violations may be seized by drug law enforcement authorities.

Requires the Administrator to report annually to the Congress for a three-year period on progress regarding: (1) informational assistance to drug law enforcement authorities; (2) registration and certification suspensions; (3) assessments of the appropriate relationship among Federal Aviation Administration (FAA) informational assistance resources; and (4) the training of FAA personnel with respect to controlled substances traffic.

Requires the Administrator to report to the Congress on the funding resources needed on an annual basis to implement this subtitle during a five-year period.

Requires the Office of Personnel Management to report to the Congress within 120 days after enactment of this subtitle regarding the results of its review of a certain FAA position classification scheme.

Directs the Secretary of Transportation to report to the Congress the results of a feasibility and cost/benefit study (with respect to drug interdiction) of requiring aircraft entering the continental United States to have an operating transponder installed and to have a flight plan filed with the FAA before such entry.

Requires the Secretary of Transportation to report to the Congress the results of a study of: (1) the feasibility of intercepting aircraft deviating from established flight corridors across the borders of the continental United States; and (2) the impact of the establishment of such corridors on safe and efficient aircraft movement and upon drug interdiction.

Applies this subtitle only to aircraft that are not used to provide specified air transportation.

**Subtitle F: Juvenile Justice and Delinquency Prevention** - Juvenile Justice and Delinquency Prevention Amendments of 1988 - **Chapter 1: Amendments to the Juvenile Justice and Delinquency Prevention Act of 1974** - Amends the Juvenile Justice and Delinquency Prevention Act of 1974 (JJDPA) to: (1) delete language that assigns to the Deputy Administrator of the Office of Juvenile Justice and Delinquency Prevention (Office) supervisory duties in connection with the National Institute for Juvenile Justice and Delinquency Prevention; and (2) direct the Office Administrator to develop and publish in the Federal Register each year a comprehensive plan describing proposed activities relating to specified juvenile delinquency programs.

Adds to the duties of the Coordinating Council on Juvenile Justice and Delinquency Prevention, requiring them to: (1) review the reasons why Federal agencies take juveniles into custody and make recommendations for improving Federal practices and facilities for holding juveniles in custody; and (2) review programs of Federal agencies and report on the extent to which they are consistent with specified requirements regarding detention of juveniles (this latter function is authorized, but not required, under current law).

Revises annual reporting requirements applicable to the Office. Lists required report contents.

Directs the Administrator of the Office to make grants to provide technical assistance to the States and local private agencies to facilitate compliance with State juvenile justice plan requirements.

Increases the minimum formula grant allocation to the States.

Adds a number of provisions relating to juvenile crime problems in areas where Indian tribes perform law enforcement functions, including funding for programs to assist the tribes in these functions.

Extends through 1993 the period during which the Administrator must promulgate regulations making exceptions in connection with juvenile detention in jails and lockups for adults (the requirement under current law extends through 1989).

Requires State plans to address efforts to reduce any disproportion in numbers of juveniles detained or otherwise confined who are members of minority groups. Revises compliance requirements relating to the removal of juvenile offenders from jails and lockups for adults.

Revises provisions concerning the national activities of State advisory groups.

Authorizes the National Institute for Juvenile Justice and Delinquency Prevention to review reports, data, and standards relating to the U.S. juvenile justice system on a continuing basis.

Shifts the research, demonstration, and evaluation functions of the National Institute for Juvenile Justice and Delinquency Prevention (Institute) to the Administrator, acting through the Institute. Adds new functions, requiring: (1) support of research relating to the disproportion of minority group juveniles detained or confined; and (2) the development of model State legislation consistent with specified guidelines. Makes a corresponding shift to the Administrator of technical assistance and training functions.

Makes technical amendments that restructure the JJDPA.

Revises the Special Emphasis Prevention and Treatment Program with respect to: (1) youth advocacy; and (2) law-related education.

Amends provisions relating to the consideration of grant applications, including peer review requirements.

Directs the Administrator to study and report to specified congressional committees on: (1) the conditions in detention and correctional facilities for juveniles and the extent to which they meet recognized national standards; and (2) the treatment of American Indian and Alaskan Native juveniles under justice systems administered by the relevant law enforcement group.

Reauthorizes appropriations for juvenile justice and delinquency prevention programs. Revises allocations.

Makes technical amendments to administrative provisions of the JJDPA, adding requirements relating to withholding of funds, use of funds, payments, and confidentiality of program records.

Directs the Administrator, by grants to and contracts with individuals and public and private nonprofit entities, to establish and support programs and activities that involve families and communities in prevention and treatment programs to address juvenile gangs and drug abuse and trafficking. Describes permissible grant uses and the approval application process, including priority applications.

**Chapter 2: Amendments to the Runaway and Homeless Youth Act** - Amends the Runaway and Homeless Youth Act to restructure current law.

Directs the Secretary of Health and Human Services (HHS) to make grants to public and private entities to establish and operate local runaway and homeless youth centers (current law authorizes, but does not require, such grants).

Reauthorizes appropriations for runaway and homeless youth programs.

Authorizes the HHS Secretary to make grants and provide technical assistance to public and nonprofit private entities to establish and operate transitional living youth projects for homeless youth. Describes eligibility requirements.

Sets a due date for the HHS Secretary's annual report to the Congress on runaway centers.

Directs the Secretary of HHS to make grants for a national communication system to assist runaway and homeless youth in communicating with their families and with service providers. Reserves funds for this purpose.

Authorizes the HHS Secretary to make grants to: (1) statewide and regional nonprofit organizations to provide technical assistance and training in connection with grantees establishing and operating runaway and homeless youth centers; and (2) States and private entities to carry out research, demonstration, and service projects designed to increase knowledge about and improve services for runaway and homeless youth.

Directs the Secretary of HHS to: (1) develop and publish each year in the Federal Register annual program priorities to be observed in making grant awards; (2) coordinate the activities of specified entities in matters relating to communicable diseases.

Authorizes FY 1989 through 1992 appropriations for services under this chapter.

**Chapter 3: Amendments to the Missing Children's Assistance Act** - Amends the Missing Children's Assistance Act to revise duties of the Administrator by: (1) deleting provisions requiring an analysis, compilation, publication, and dissemination of an annual summary of specified information concerning missing children; (2) requiring an annual report to specified congressional leadership containing an enumerated list of items relating to missing children; and (3) removing a requirement to prepare an annual comprehensive plan for interagency cooperation.

Requires the national toll-free telephone hotline to: (1) operate 24 hour on a basis; and (2) coordinate with the national communication system.

Requires the national resource center and clearinghouse on missing children to: (1) maintain information on free or low-cost services available for the benefit of missing children and their families, and information about other Federal programs to assist them; and (2) provide State and local governments and other entities with information to facilitate the lawful use of school records and birth certificates to identify and locate missing children.

Repeals provisions governing the Advisory Board on Missing Children, thus eliminating the Board.

Authorizes the Administrator to make grants for research, demonstration projects, or service programs designed to: (1) address the needs of missing children and their families following their reunion; (2) reduce the likelihood that individuals under age 18 will be removed from a legal custodian without the consent of the latter; and (3) establish or operate statewide clearinghouses to assist in locating and recovering missing children.

Requires the Administrator to use a competitive process in awarding grants or contracts exceeding $50,000.

Authorizes FY 1989 through 1992 appropriations.

Directs the Administrator to study and report to specified congressional committee leaders concerning the obstacles that prevent or impede individuals who have legal custody of children from recovering them from parents who have removed them unlawfully.

6:04-cr-00115-RAW Document 471-3 Filed in ED/OK on 01/10/22 Page 22 of 27

**Chapter 4: Miscellaneous** - Directs the Comptroller General to study and report to specified congressional committee leaders on the extent to which both valid court orders and court orders other than valid court orders are used during a specified five-year period to place juveniles in secure detention facilities, in secure correctional facilities, and in jails and lockups for adults.

**Subtitle G: Provisions Relating to Prisons, Probation, Parole, and Supervised Release** - Directs the United States Sentencing Commission to study the feasibility of requiring prisoners incarcerated in Federal correctional institutions to pay some or all of the costs of their confinement.

Assigns to the Bureau of Prisons a number of administrative responsibilities in connection with confinement facilities for civilian nonviolent prisoners located on military installations. Requires the Bureau to exercise these responsibilities in conjunction with the Department of Defense and the Commission on Alternative Utilization of Military Facilities.

Amends the Federal criminal code to revoke probation or parole and terminate the supervised release of any person found to be in possession of a controlled substance.

Instructs the Director of the Administrative Office of the United States Courts to establish a two-year demonstration program of mandatory drug testing of criminal defendants in eight Federal judicial districts. Sets forth provisions to govern the program. Requires a report to the Congress on the program's effectiveness, including recommendations as to whether mandatory drug testing of defendants should be made more general and permanent.

Adds as a discretionary condition of probation, parole, or supervised release the requirement that the affected individual remain at home during nonworking hours.

**Subtitle H: Provisions Relating to Courts** - Amends the State Justice Institute Act of 1984 to authorize FY 1989 through 1992 appropriations for activities of the State Justice Institute.

Amends the Federal judicial code to empower U.S. magistrates to enter a sentence for a misdemeanor or infraction, with the consent of the parties.

Describes conditions to govern the introduction and consideration within the Senate of habeas corpus reform legislation, following submission by the Chief Justice of the United States of the report and recommendations of the Special Committee on Habeas Corpus Review of Capital Sentences. Urges this Special Committee to expedite the filing of its report. Directs the House of Representatives to give fair and expeditious consideration to the Committee's report.

**Subtitle I: Provisions Relating to the Federal Bureau of Investigation** - Amends the Federal judicial code to authorize the Attorney General and the Federal Bureau of Investigation (FBI) to investigate felonious killings of State and local law enforcement officers.

Uniform Federal Crime Reporting Act of 1988- Requires the Attorney General to collect and preserve national data on Federal criminal offenses as part of the Uniform Crime Reports. Directs all Federal agencies that routinely investigate complaints of criminal activity to report details to the Attorney General in a uniform manner. Requires the Attorney General to distribute annual Uniform Crime Reports containing this information to the President, Members of Congress, and various persons and entities involved in law enforcement activities.

Authorizes the Attorney General to designate the FBI as the lead agency for performing the functions authorized by this Act and to establish advisory boards.

Requires the FBI Director to classify any offense involving illegal drugs and drug trafficking as a part I crime in the Uniform Crime Reports.

Authorizes appropriations.

Includes railroad police departments and police departments of private colleges and universities among entities to be involved with information exchanges of criminal justice, criminal identification, and other crime records.

**Subtitle J: Provisions Relating to the Deportation of Aliens Who Commit Aggravated Felonies** - Amends the Immigration and Nationality Act to direct the Attorney General to: (1) take into custody any alien convicted of an aggravated felony (murder, drug trafficking crimes, or illicit trafficking in firearms or destructive devices) upon completion of the relevant sentence; (2) establish a system to maintain records of such aliens and train Immigration and Naturalization Service (INS) personnel to act as a liaison to other law enforcement entities with respect to such aliens; and (3) report to the congressional Judiciary Committees on efforts in these areas.

Prohibits the voluntary departure of aliens convicted of an aggravated felony.

Includes within a class of deportable aliens any alien convicted: (1) of an aggravated felony at any time after entry into the United States; or (2) possessing or carrying unlawfully any firearm, destructive device, or revolver. Establishes criminal penalties to apply to persons deported subsequent to a felony or aggravated felony conviction who reenter the United States, as well as for persons who assist certain deportees in their reentry.

Instructs the Attorney General to establish expedited procedures for aliens convicted of aggravated felonies. Sets forth guidelines to govern these procedures.

Prohibits reentry into the United States of any alien convicted of an aggravated felony and deported who seeks reentry within ten years after deportation.

Directs the Attorney General to: (1) establish a pilot program in four cities to improve the capabilities of the INS to respond to law enforcement inquiries concerning aliens who are either under investigation or have been arrested or convicted for drug related offenses; and (2) report to the Judiciary Committees on the program.

**Subtitle K: United States Customs Service** - Amends the Customs Procedural Reform and Simplification Act of 1978 to authorize FY 1989 appropriations for the U.S. Customs Service, earmarking part of the funds for use to increase the number of customs inspectors for contraband enforcement and other drug interdiction activities.

Authorizes FY 1989 appropriations to the Secretary of the Treasury for payment to the Customs Cooperation Council.

Increases the required personnel level with respect to the Customs Service.

Directs the Secretary of the Treasury to prescribe regulations designed to ensure uniformity in various decisions made by customs officers. Requires that the regulations be: (1) published in the Federal Register for public review; and (2) submitted to specified congressional committees for review. Directs the Secretary to submit a report to the same committees on the effectiveness of the regulations and recommendations for permanent legislation to effect the decisional uniformity in question.

Directs the Secretary of the Treasury to transfer a specified aircraft to the office of the sheriff of Marion County, Indiana, for drug enforcement and prisoner transportation uses.

Amends the Tariff Act of 1930 to establish in the Treasury a Customs Forfeiture Fund, to be available to the U.S. Customs Service for expenses associated with their seizures and forfeitures, as well as those by the U.S. Coast Guard. Directs the Commissioner of Customs to report annually to the Congress on Fund receipts and expenditures. Authorizes appropriations.

Provides for seizure of certain property under search warrant authority.

Adds options for the Secretary of the Treasury in connection with forfeited property, permitting the Secretary to retain property for official use or transfer it to a foreign government that cooperated in joint law enforcement operations.

Increases the penalty for failure to declare controlled substances.

Amends the Tariff Act of 1930 with respect to materials seized for customs law violations, including provisions relating to: (1) summary forfeiture and sale; (2) judicial condemnation; (3) forfeiture proceedings; and (4) summary sale.

Authorizes additional FY 1989 appropriations to the U.S. Customs Service to be used exclusively for research and development in connection with detection of illegal narcotics in cargo containers entering the United States. Directs the Commissioner of Customs to coordinate and share findings associated with this research and to report to the Congress.

Directs the Secretary of the Treasury to: (1) prescribe regulations that set forth criteria requiring persons in charge of common carriers to exercise the highest degree of care to know whether controlled substances imported into the United States are on board; (2) issue air carrier controlled substances interdiction regulations for a two-year demonstration program. Sets forth criteria to govern these latter regulations, to be applied to at least three U.S. international airports classified by the Customs Service as high-risk and based upon the highest volume of cargo and number of aircraft arriving from high-risk points of departure. Requires that the regulations establish procedures for the development and approval of supplemental inspection practices reflecting the nature and level of controlled substance threat that particular foreign locations pose and the ambient security conditions at each foreign airport. Exempts participating air carriers that comply with the program from fines, penalties, and seizure provisions associated with drug smuggling.

Commends: (1) Commissioner William von Raab for his outstanding leadership of the United States Customs Service; and (2) Special Agent Bonni Tischler and other officials who participated in Operation C-Chase, which led to the first indictment of an international financial institution for laundering illegal narcotics proceeds.

**Subtitle L: Coast Guard Drug Law Enforcement** - Amends Federal law to indemnify commanders of surface naval vessels on which Coast Guard personnel are assigned from penalties or litigation for damages for firing at or into vessels that refuse to stop upon proper warning.

Revises the scope of primary duties of the Coast Guard to include the enforcement of Federal laws above the high seas and waters.

Directs the Secretaries of Transportation and of the Treasury to enter into an agreement to increase the effectiveness of Coast Guard and Customs Service maritime drug interdiction activities in the Great Lakes area.

Encourages the Secretary of State to negotiate with appropriate Canadian officials to establish an agreement for increased cooperation and information sharing between U.S. and Canadian law enforcement officials with respect to efforts on the Great Lakes border.

Authorizes FY 1989 appropriations to the Coast Guard for acquisition, construction, and improvements and FY 1989 through 1992 appropriations for operating expenses. Makes all of these amounts available until expended and supplemental to other amounts and personnel strengths.

**Subtitle M: Interpol Provisions** - Authorizes the Attorney General to accept and administer gifts for the purpose of: (1) hosting the International Criminal Police Organizations's (INTERPOL) American Regional Conference in the United States in 1989; and (2) making a commemorative gift of up to $10,000 to the INTERPOL General Secretariat on the opening of its headquarters in Lyon, France.

**Subtitle N: Child Pornography and Obscenity** - Child Protection and Obscenity Enforcement Act of 1988 - **Chapter 1: Child Pornography** - Amends the Federal criminal code to make it illegal to use a computer to transport information in interstate or foreign commerce concerning the visual depiction of minors engaging in sexually explicit conduct (child pornography).

Establishes criminal penalties for buying, selling, or transferring the custody of a minor: (1) knowing that, as a consequence of the sale or transfer, the minor will be used in child pornography; or (2) with the intent to promote child pornography. States that such sale or transfer must involve: (1) the minor or other actor traveling in interstate or foreign commerce; (2) communications in interstate or foreign commerce; or (3) conduct in a territory or possession of the United States.

6:04-cr-00115-RAW Document 471-3 Filed in ED/OK on 01/10/22 Page 24 of 27

Requires any person who produces a book, magazine, periodical, film, videotape, or other matter which contains any visual depiction of sexually explicit conduct (which is shipped or intended for shipment in interstate or foreign commerce, or contains material shipped in interstate or foreign commerce) to maintain certain records regarding the performers portrayed in such conduct. Directs the Attorney General to issue regulations regarding the maintenance and availability of such records.

Includes the sexual exploitation of children as a predicate offense to the Racketeer Influenced and Corrupt Organizations (RICO) statute.

**Chapter 2: Obscenity** - Makes it a Federal criminal offense for any person engaged in the business of selling or transferring obscene matter to knowingly receive or possess, with the intent to distribute, obscene matter which has been transported in interstate or foreign commerce.

Makes it a Federal criminal offense to knowingly use a facility or means of commerce to sell or distribute obscene matter in interstate or foreign commerce.

Establishes a rebuttable presumption, with respect to Federal criminal offenses involving obscene matter, that obscene matter produced in one State (or outside the United States) which is subsequently located in another State (or in the United States) was transported, shipped, or carried in interstate (or foreign) commerce.

Establishes: (1) criminal forfeiture procedures with respect to Federal offenses involving obscene material; and (2) criminal and civil forfeiture procedures with respect to Federal offenses involving child pornography.

Includes communications by means of cable or subscription television within the prohibition against broadcasting obscene language.

Amends the Communications Act of 1934 to: (1) modify the penalty provisions of such Act with respect to obscene telephone communications; and (2) impose criminal penalties on persons who make any indecent telephone communication for commercial purposes to any person, regardless of the recipient's age or consent.

Adds obscenity offenses to the list of crimes for which the Government may obtain wiretaps.

Amends the Federal criminal code to impose criminal penalties on any person who knowingly sells or possesses with intent to sell obscene matter on Federal property.

**Subtitle O: Miscellaneous** - Amends Internal Revenue Code provisions requiring the filing of information returns relating to cash received in a trade or business to impose on payors who cause others to fail to file a return the same civil and criminal sanctions (increased by this subtitle) applicable to the principal who fails to file. Authorizes the Secretary of the Treasury to disclose information from such information returns to officers and employees administering Federal criminal statutes not related to tax administration.

Broadens the scope of undercover operations that the Internal Revenue Service is authorized to undertake. Sets forth rules with respect to the conduct of such operations, including provisions relating to required audits and to the use of proceeds.

Amends the Internal Revenue Code to require the Internal Revenue Service (IRS) to reimburse costs of pertinent investigations of State and local law enforcement agencies that provide information which substantially contributes to the recovery of Federal taxes imposed with respect to illegal drug-related activities. Includes as reimbursable costs: (1) reasonable expenses; (2) per diem expenses; and (3) salaries and overtime compensation. Limits the amount of such reimbursement to ten percent of the sum ultimately recovered.

Directs the IRS to maintain records of information provided by State and local law enforcement agencies and to notify them when their information results in a tax recovery.

Directs that ten percent of any amount recovered as the result of information offered by such governmental units be deposited in a separate account, to be used for payments to the eligible law enforcement agencies, with any surplus to be withdrawn and deposited in the Treasury as internal revenue collections.

Revises the Federal criminal code definition of "scheme or artifice to defraud" with respect to mail fraud offenses.

National Commission on Measured Responses to Achieve a Drug-Free America by 1995 Authorization Act - Establishes a Commission to develop a proposed uniform code of State laws representing measured responses to achieve a drug-free America by 1995, including such possible subjects as: (1) appropriate penalties for drug offenses; (2) appropriate use of drug testing; (3) cooperative ventures among the Federal, State, and local levels; and (4) reducing demand through education efforts. Directs the Commission to report its proposals to the Mayor of the District of Columbia and to all State Governors. Expresses the sense of the Congress that the Mayor of the District of Columbia and all State Governors should convene State conferences for a drug-free America by 1995 to consider the Commission's proposals and make recommendations. Authorizes appropriations.

Directs the President to instruct the Office of National Drug Control Policy to develop a comprehensive plan to use no fewer than eight existing facilities of specified executive departments and agencies to develop techologies for application to Federal law enforcement agency missions and to provide support to Federal law enforcement agencies. Lists facilities to be considered in developing the plan. Directs the Comptroller General to monitor plan development and to report to appropriate congressional committees on progress.

Instructs the Secretary of the Air Force to: (1) issue regulations to ensure that the Civil Air Patrol has an integral role in drug interdiction and eradication activities; and (2) submit to specified congressional committees quarterly reports that include details concerning these activities.

Establishes as a bureau within the Department of Justice the United States Marshals Service, headed by a Director appointed by the President, with the advice and consent of the Senate. Directs the President to appoint a U.S. marshal for each judicial district of the United States and for the Superior Court of the District of Columbia. Sets forth procedures for filling vacancies in the Office of a U.S. Marshal.

Specifies the powers and duties of the Service.

Prescribes a schedule of fees that the Service may collect.

Authorizes the Attorney General to use funds appropriated to the Service for the support of U.S. prisoners in non-Federal institutions.

Directs the Attorney General to require the inclusion in uniform crime reports of the victim's age and relationship to the offender in connection with specified types of crimes.

Instructs the Director of the Bureau of Justice Statistics, through the annual National Crime Survey, to collect and publish more accurate data concerning domestic violence, especially child abuse and elder abuse. Authorizes appropriations.

**Title VIII: Federal Alcohol Administration** - Amends the Federal Alcohol Administration Act to add a new title to be cited as the Alcoholic Beverage Labeling Act of 1988. Makes it unlawful, effective one year following this Act's enactment, for any person to manufacture, import, or bottle an alcoholic beverage in the United States that does not bear in a conspicuous place a warning that: (1) women should not drink alcoholic beverages during pregnancy because of the risk of birth defects; and (2) alcoholic beverage consumption impairs one's ability to drive a car or operate machinery and may cause health problems. Imposes civil penalties on violators. Preempts State law with respect to alcoholic beverage labeling. Directs the Secretary of the Treasury to report to the Congress any available scientific information that would justify a change in the labeling requirements.

**Title IX: Miscellaneous** - **Subtitle A: Alcohol and Drug Traffic Safety** - Drunk Driving Prevention Act of 1988 - Directs the Secretary of Transportation to make basic and supplemental grants to States to be used exclusively to improve the effectiveness of law enforcement with respect to drivers operating motor vehicles while under the influence of alcohol. Requires recipient States to agree to maintain aggregate expenditures from all other sources for drunk driving enforcement programs at or above the average level in the two years preceding enactment of this program. Limits a State to grants in three fiscal years and sets maximum amounts applicable to each of these years. Describes eligibility criteria for basic grants, requiring the State to: (1) provide for an expedited driver license suspension or revocation system for persons who operate motor vehicles while under the influence of alcohol; and (2) operate a self-sustaining drunk driving prevention program that uses fines generated from drunk driving offenses for prevention programs in communities.

Sets forth additional criteria for supplemental grant eligibility, requiring the State to: (1) provide for mandatory blood alcohol content testing under certain circumstances,; (2) provide an effective system to prevent drivers under age 21 from obtaining alcoholic beverages; (3) have laws against the possession of open alcoholic beverage containers or the consumption of alcoholic beverages in vehicles; and (4) require, with limited exception, the suspension of registration, and return to the State of the license plates, in connection with any motor vehicle owned by an individual convicted of specified alcohol-related driving offenses. Authorizes FY 1989 through 1991 appropriations for the grant program.

Instructs the Secretary of Transportation to arrange with the National Academy of Sciences to conduct a study to determine the appropriate blood alcohol concentration level to use in presumptions as to whether a person is driving under the influence of alcohol. Requires submission of the report, for immediate transmittal to the Congress, within 15 months after this Act's enactment. Authorizes FY 1989 appropriations.

Directs the Secretary also to conduct a study concerning the exchange of information between the Federal Government and State law enforcement officials on all arrests for drunk driving and to report results to the Congress within one year of this Act's enactment. Authorizes appropriations.

Instructs the Secretary of Transportation, through the National Highway Traffic Safety Administration, to: (1) establish a three-year pilot, regional program to train law enforcement officers to identify individuals who are operating a motor vehicle while under the influence of alcohol or controlled substances; and (2) report to the Congress on the program's effectiveness. Authorizes appropriations.

Directs the Secretary to design a pilot grant program in not more than four States for controlled substances testing of first-time driver license applicants. Describes the State selection process and requirements to be met by States in administering sanctions under the program. Directs the Secretary to report to the Congress on program results. Authorizes appropriations.

**Subtitle B: Truck and Bus Safety and Regulatory Reform** - Truck and Bus Safety and Regulatory Reform Act of 1988 - Amends the Motor Carrier Safety Act of 1984 to prohibit the Secretary of Transportation from exempting any person or commercial motor vehicle from complying with any commercial motor vehicle safety regulation or from waiving application of such regulation solely on the grounds that the commercial carrier's operations take place entirely within a municipality or its commercial zone. (Grandfathers certain commercial motor vehicle operators who operated entirely within a municipality or its commercial zone during the one-year period ending on the date of enactment of this subtitle.)

Directs the Secretary to: (1) delay application of Federal safety regulations to foreign motor carriers in border commercial zones for a one-year period beginning on the date of enactment of this subtitle if certain conditions are met; and (2) report to the Congress on the effects of the delay.

Directs the Secretary to: (1) study the hours of service regulations pertaining to commercial motor vehicle operators to determine any relationship among them, operator fatigue, and the frequency of serious accidents involving such vehicles; (2) report study results to the Congress; and (3) initiate a rulemaking proceeding regarding commercial motor vehicle operator compliance with the relevant regulations (including the use of onboard monitoring devices to record speed, driving time, and other information). Stipulates that any rule promulgated by the Secretary shall ensure that such devices are used solely for monitoring operator productivity, and not for harassment.

Requires the Secretary to issue regulations establishing minimum uniform standards for a biometric identification system for commercial motor vehicle operators. Authorizes the Secretary to use specified funds to implement a pilot project demonstrating such a system.

6:04-cr-00115-RAW   Document 471-3   Filed in ED/OK on 01/10/22   Page 26 of 27

Directs the Secretary to initiate a rulemaking proceeding regarding the use of flares as an alternative to bidirectional emergency reflective triangles. Requires the Secretary to report to the Congress regarding: (1) the need for improved brake systems for commercial motor vehicles operating on the Federal-aid highway system; and (2) the results of a study on whether speed control devices enhance safe operation of commercial motor vehicles.

Authorizes the Secretary to extend for up to 12 more months the 60-month delay period granted to States before Federal pre-emption applies if a State requests such an extension to further consider adoption of safety regulations compatible with Federal law.

Directs the Secretary to initiate a rulemaking proceeding for the purpose of adopting improved methods of ensuring proper maintenance of commercial motor vehicle brake systems. Calls for the promulgation of derived regulations by December 31, 1990.

Amends Federal motor carrier law to require foreign motor carriers to obtain a certificate of registration from the Interstate Commerce Commission (ICC) as a condition of providing interstate transportation of property (including exempt property) in the United States. Requires a copy of such certificate to be in the carrier's vehicle any time it provides such transportation.

Authorizes the Secretary to issue regulations permitting foreign motor carriers and foreign motor private carriers providing transportation of property under a registration certificate to meet Federal insurance requirements for financial responsibility only during those periods in which they provide such transportation in the United States.

Repeals the requirement that the ICC report annually to the Congress on the extent to which cost savings resulting from direct sales at a food and grocery seller's shipping point are passed on to the ultimate consumer.

Makes technical amendments of provisions relating to the liability of freight forwarders under receipts and bills of lading and the associated statute of limitations.

**Subtitle C: Comptroller General Study** - Directs the Comptroller General to: (1) study and report to the Congress on the effect of additional resources to certain components of the Federal criminal justice system and of new penalties and laws on specified Federal entities relating to criminal justice; and (2) use resulting information to develop a model that can be used to help determine appropriate staff and budget responses for effectively implementing changes in resources, laws, or penalties.

**Subtitle D: Insular Areas** - Insular Areas Drug Abuse Amendments of 1988 - Amends the United States Insular Areas Drug Abuse Act of 1986 to add the Secretary of Education as a principal in administering such Act's enforcement and administration provisions.

Applies such Act to substance abuse generally rather than limiting it solely to drug abuse.

Replaces current authorizations with an authorization for FY 1989 and subsequent fiscal years for grants to the Governments of American Samoa, Guam, the Northern Mariana Islands, Puerto Rico (amounts to remain available until expended), and Palau, to be spent in accordance with an approved plan.

Directs the Secretary of the Treasury to provide the Government of American Samoa with a vessel for narcotics enforcement and other law enforcement activities. Authorizes appropriations.

Authorizes appropriations for a grant to the Government of Guam to be spent for drug abuse law enforcement equipment in accordance with an approved plan.

Amends crime victim assistance provisions of the Victims of Crime Act of 1984 to remove certain authority restrictions currently applied with respect to U.S. territories and possessions.

Authorizes FY 1990 and subsequent fiscal year appropriations, to remain available until expended, to the Government of the Virgin Islands, to be spent in accordance with an approved plan.

Requires the Attorney General and the Secretaries of Health and Human Services and of Education to provide appropriate law enforcement training, technical assistance, and equipment upon the request of the government of any insular area covered under such Act.

Directs the Attorney General to assign necessary personnel to serve in the office of the U.S. Attorney for the Virgin Islands to assist in the prosecution of narcotics law violations.

Authorizes appropriations, effective FY 1989, for a grant to the Virgin Islands Government to be used for a substance abuse facility in accordance with an approved plan.

Brings Palau within the jurisdiction of such Act. Authorizes the major Federal law enforcement entities, including the Drug Enforcement Administration and the Customs Service, upon the request of the Palau Government, to cooperate with Palau's law enforcement agencies in investigating U.S. criminal law violations there.

Sets October first as the transmission date for the President's annual reports to specified congressional committees on the illegal transit of controlled substances from insular areas into the United States and from other nations into the insular areas.

**Title X: Supplemental Appropriations** - Urgent Supplemental Appropriations Act of 1989 to Meet the Dire Emergency Created by the Crisis of Drug Abuse - Makes supplemental FY 1989 appropriations to provide additional funding for treatment and rehabilitation for drug users and for law enforcement relating to this Act and other anti-drug legislation.

**Chapter I: Department of Justice** - Appropriates supplemental FY 1989 funds to the Department of Justice for: (1) legal activities; (2) the Federal Bureau of Investigation; (3) the Drug Enforcement Administration; (4) the Immigration and Naturalization Service; (5) the Federal Prison System; and (6) the Office of Justice Programs.

6:04-cr-00115-RAW HR 5210 Document 471-3 100th Congress (1987-1988): Anti-Drug Abuse Act of 1988 | Congress.gov | Library of Congress

Appropriates supplemental FY 1989 funds to: (1) the Department of State for administration of foreign affairs; and (2) the Judiciary for the Courts of Appeals, district courts, and other judicial services.

**Chapter 2: Department of Labor** - Provides supplemental FY 1989 appropriations to the Departments of Labor, Health and Human Services (for the Alcohol, Drug Abuse and Mental Health Administration), and Education (for school improvement programs) and to ACTION.

**Chapter III: Department of Agriculture** - Appropriates supplemental FY 1989 funds to the Department of Agriculture's Food and Nutrition Service and to the Food and Drug Administration of the Department of Health and Human Services.

**Chapter IV: Department of Transportation** - Provides supplemental FY 1989 appropriations to the Department of Transportation for the Coast Guard.

**Chapter V: Department of the Treasury** - Appropriates supplemental FY 1989 funds to: (1) the Department of the Treasury for the Bureau of Alcohol, Tobacco and Firearms and for the U.S. Customs Service; and (2) the Executive Office of the President for the Office of National Drug Control Policy.

**Chapter VI: General Provisions** - Limits the availability for obligation of all appropriations under this title to FY 1989, unless expressly provided otherwise.