2022 WL 5249440
Only the Westlaw citation is currently available.
United States District Court, E.D. Virginia.

UNITED STATES OF AMERICA,
v.
RICHARD TIPTON, Defendant.

Criminal No. 3:92cr68 (DJN)
|
Civil No. 3:22cv99 (DJN)
|
Filed 10/06/2022

**MEMORANDUM OPINION**

David J. Novak United States District Judge

**\*1** A jury convicted Defendant of killing numerous individuals in furtherance of his substantial drug ring. Defendant now asks the Court to find that those convictions constitute neither crimes of violence nor drug trafficking crimes. This matter comes before the Court on Defendant Richard Tipton's Amended Motion to Vacate Conviction under 28 U.S.C. § 2255 in Light of *United States v. Davis* ("§ 2255 Motion" (ECF No. 159)). Defendant moves for the vacatur of his convictions under 18 U.S.C. § 924(c) in light of the Supreme Court's decisions in *United States v. Davis*, 139 S. Ct. 2319 (2019) and *Borden v. United States*, 141 S. Ct. 1817 (2021). Defendant argues that his § 924(c) convictions now rest on invalid predicate crimes in that the predicates no longer constitute crimes of violence. However, Defendant's § 924(c) convictions rest on multiple convictions that constitute both drug trafficking convictions and crimes of violence. Consequently, for the reasons explained below, the Court will DENY Defendant's § 2255 Motion.

**I. BACKGROUND** [1]

**A. Factual Background**
Defendant, along with Corey Johnson ("Johnson") and James Roane, Jr. ("Roane") (collectively, the "partners"), ran a substantial drug trafficking conspiracy that lasted from 1989 through July of 1992. *Roane*, 378 F.3d at 389. The partners in the conspiracy obtained wholesale quantities of powder cocaine from suppliers in New York City, converted it into crack cocaine, divided it among themselves and then distributed it through a network of 30-40 street level dealers. *Id.* at 389-90. Typically, the partners took two-thirds of the proceeds realized from the street-level sales of their product. *Id.* at 390.

Over a short time in early 1992, the partners took part, in some form, in the murders of ten persons in the Richmond area. *Id.* These murders occurred "in relation to their drug trafficking operation and either because their victims were suspected of treachery or other misfeasance, or because they were competitors in the drug trade, or because they had personally offended one of the 'partners.' " *Id.* The murders described below directly implicated Defendant.

On January 4, 1992, Roane and Tipton drove Douglas Talley, an underling in disfavor for mishandling a drug transaction, to the south side of Richmond. *Id.* Roane grabbed Talley and Tipton stabbed him repeatedly for three to five minutes. *Id.* Talley died from eighty-four stab wounds to his head, neck and upper body. *Id.*

On January 13, 1992, Roane and Tipton went to the apartment of Douglas Moody, a suspected rival in their drug trafficking area, and Tipton shot Moody twice in the back. *Id.* Tipton and Roane pursued the fleeing Moody before Roane caught him and stabbed him eighteen times, killing him. *Id.*

In late January 1992, after Johnson threatened Dorothy Armstrong for not paying for a supply of crack cocaine, Armstrong went to live with her brother, Bobby Long. *Id.* On February 1, 1992, Johnson, Tipton and Jerry Gaiters ("Gaiters") went to Long's house. *Id.* at 391. While Tipton waited in the car, Johnson and Gaiters approached the front door. *Id.* When Long opened the door, Johnson opened fire, killing Dorothy Armstrong and Anthony Carter. *Id.* As Bobby Long fled out the front door, Johnson shot him dead in the front yard. *Id.*

**\*2** On February 19, 1992, Johnson arranged to meet with Linwood Chiles, who Johnson suspected of cooperating with the police. *Id.* That night, Chiles and Johnson drove off together in Chiles' station wagon, with Curtis Thome and sisters Priscilla and Gwen Greene also in the car. *Id.* Chiles parked in an alley before Tipton parked behind the station

wagon and walked up beside it. *Id.* With Tipton standing by, Johnson told Chiles to place his head on the steering wheel before shooting him twice at close range. *Id.* The partners fired additional shots, killing Thome and critically wounding the Greene sisters in the station wagon. *Id.* The autopsy report indicated that bullets fired from two different directions had hit Thome. *Id.*

**B. Verdict and Sentencing**

In January and February of 1993, United States District Judge James R. Spencer presided over the trial of Defendant and his co-conspirators. Defendant[2] faced capital murder charges for Murder in Furtherance of a Continuing Criminal Enterprise ("CCE") under 21 U.S.C. § 848(e)(1)(A) for eight of these killings — Talley (Count Three), Moody (Count Five), Louis Johnson (Count Eleven), Armstrong (Count Seventeen), Carter (Count Eighteen), Long (Count Nineteen), Thome (Count Twenty-Four) and Chiles (Count Twenty-Five) (collectively, the "CCE Murder Counts"). *Id.* at 391; (Second Superseding Indictment ("Indictment") (Dkt. No. 115) at 6-18). On February 3, 1993, the jury convicted Defendant of six of the CCE Murder Counts — Counts Three, Seventeen, Eighteen, Nineteen, Twenty-Four and Twenty-Five (the "CCE Murder Convictions"). One of the other two CCE Murder Counts was dismissed (Count Eleven) and the other resulted in an acquittal (Count Five). *Id.* The jury also convicted Defendant of one count of participating in a Conspiracy to Possess Cocaine Base with Intent to Distribute, in violation of 21 U.S.C. § 846 (Count One); one count of engaging in a CCE, in violation of 21 U.S.C. § 848(a) (Count Two); eight counts of Committing Acts of Violence in Aid of Racketeering ("VICAR"), in violation of 18 U.S.C. § 1959 (Counts Four, Twenty-One, Twenty-Two, Twenty-Three, Twenty-Seven, Twenty-Eight, Twenty-Nine, Thirty) and two counts of Use of a Firearm in Relation to a Crime of Violence or Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c) (Counts Twenty and Twenty-Six) (collectively, the "§ 924(c) Counts"). 378 F.3d at 391; (Dkt No. 592). Finally, the jury convicted Defendant of two counts of Possession with Intent to Distribute Crack Cocaine, in violation of 21 U.S.C. § 841(a)(1) (Counts Thirty-Two and Thirty-Three (the "Drug Distribution Counts" or the "Drug Distribution Convictions")). 378 F.3d at 391; (Dkt Nos.

465, 592.) Defendant's § 2255 Motion pertains to Counts Twenty and Twenty-Six — the § 924(c) Counts.

On February 16, 1993, following a penalty hearing on the CCE Murder Counts, the jury recommended that Defendant be sentenced to death for the murders of Talley, Chiles and Thome. 378 F.3d at 392. Consequently, on June 1, 1993, pursuant to 21 U.S.C. § 848(1), the Court sentenced Defendant to death for Counts Three, Twenty-Four and Twenty-Five. *Id.* Relevant here, the Court also sentenced Defendant to life imprisonment for each of the CCE Murder Convictions for which he did not receive a death sentence — Counts Seventeen, Eighteen and Nineteen. Defendant also received a life imprisonment sentence for the CCE conviction in Count Two, life sentences for Counts Four, Twenty-One, Twenty-Two, Twenty-Three, Twenty-Seven and Twenty-Eight. (Dkt No. 592.) Additionally, Defendant received a sentence of forty years' imprisonment for Count Thirty-Two, thirty years' imprisonment for each of Counts Twenty-Nine and Thirty, twenty years' imprisonment for each of Counts Twenty-Six and Thirty-Three and five years' imprisonment for Count Twenty. (Dkt. No. 592.)

**C. Post-Trial Proceedings**

**\*3** The defendants appealed their convictions and sentences and the Government cross-appealed the stay of the death sentences. *Id.* at 392. In a lengthy opinion, the Fourth Circuit analyzed and disposed of approximately sixty issues, including challenges by the defendants to aspects of the jury-selection process and both the guilt and penalty phases of the trial. *United States v. Tipton*, 90 F.3d 861, 861 (4th Cir. 1996). The Fourth Circuit rejected nearly all of the claims, affirming the convictions and sentences of all of the defendants, except that it vacated on Double Jeopardy grounds the drug conspiracy convictions under 21 U.S.C. § 846, finding that the CCE convictions in Count Two precluded sentences for the drug conspiracy offenses. *Id.* at 903.

Defendant continued to press his appeals. On June 1, 1998, Defendant filed a motion under 28 U.S.C. § 2255 to vacate and set aside his sentences. *Roane*, 378 F.3d at 392. The Court granted the Government's summary judgment motion, and Defendant appealed. *Id.* at 393. The Fourth Circuit affirmed, ruling against Defendant on all accounts. *Id.* at

398-407. In 2016, Defendant filed an application with the Fourth Circuit to file a successive § 2255 petition to invalidate his § 924(c) convictions. The Fourth Circuit denied his requests. *In re Tipton*, No. 16-7 (4th Cir. 2016), ECF No. 13.

On July 31, 2020, Defendant filed a Motion for the Imposition of a Reduced Sentence Under Section 404 of the First Step Act (("First Step Act Motion") ECF No. 24), arguing for a reduced sentence on his CCE Murder Counts and Drug Distribution Counts. The First Step Act, in relevant part, allows defendants convicted of certain crack-cocaine drug trafficking offenses to move for a reduced sentence if the Fair Sentencing Act modified the statutory penalties for those drug trafficking offenses. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. Defendant argued that the First Step Act covered his CCE Murder Counts, because the CCE Murder Counts rely on drug trafficking predicates that the Fair Sentencing Act Modified. (First Step Act Motion at 4-5.)

With respect to the present § 2255 Motion, on June 8, 2020, Defendant filed yet another application with the Fourth Circuit for a successive § 2255 pursuant to the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). *In re Tipton*, No. 20-10 (4th Cir. 2020), ECF No. 2. On January 4, 2022, the Fourth Circuit granted authorization to Defendant to file a successive 28 U.S.C. § 2255 motion. [3] (ECF No. 159.) On February 22, 2022, Defendant filed his § 2255 Motion. On April 27, 2022, the Government filed its Response in Opposition to Defendant's Motion to Vacate (("Govt.'s Opp.") (ECF No. 172)). On June 17, 2022, Defendant filed his Reply (("Def.'s Reply") (ECF No. 179)), rendering this matter ripe for review.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a movant may collaterally attack a conviction or sentence that the Court imposed in violation of the United States Constitution or its laws, where the Court lacked jurisdiction to impose the sentence, where the sentence exceeded the maximum sentence authorized by law, or "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A movant under § 2255 bears the burden of showing a constitutional violation. *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010). Generally, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice" to excuse

his procedural default or his actual innocence." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

**\*4** "[H]abeas petitioners 'are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.' " *Davis v. Ayala*, 576 U.S. 257, 267 (2015) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). This standard requires the habeas petitioner to show that "[t]here [is] more than a 'reasonable possibility' that the error was harmful." *United States v. Said*, 26 F.4th 653, 660 (4th Cir. 2022) (alterations in original) (quoting *Davis*, 576 U.S. at 268). "Thus, mere speculation that the defendant was prejudiced by trial error is not enough; the court must find that the defendant was actually prejudiced by the error." *Id.*

## III. ANALYSIS

Resolution of Defendant's § 2255 Motion first requires the Court to determine whether his two § 924(c) Counts still rest on valid predicates. Because they do, the Court will then determine whether Defendant can show prejudice from the possibility that some of the predicate offenses may not constitute valid predicates while others do. He cannot. However, the Court must first address whether Defendant may bring this claim at all in light of the fact that he did not raise this challenge at trial or on direct appeal.

### A. Procedural Default

The Government argues that Defendant procedurally defaulted on his claim, because he did not raise it at trial or on direct appeal. (Govt's Opp. at 6-14.) Generally, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice" to excuse his procedural default or his actual innocence. *Massaro*, 538 U.S. at 504.

Defendant claims that his actual innocence excuses any procedural default. (Def.'s Reply at 4.) In the event of a procedural bar, "actual innocence, if proved, serves as a gateway through which a petitioner may pass." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). A gateway claim requires a petitioner to present "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence —that was

not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Defendant has not presented any new reliable evidence of his innocence of his § 924(c) conviction. That alone forecloses his assertion of actual innocence.

With respect to cause and prejudice, Defendant claims that the Fourth Circuit has excused procedural default for petitioner bringing a § 2255 claim under *Davis.* (Def.'s Reply at 2.) In support, Defendant cites *United States v. Jackson*, where the court rejected a similar argument by the Government in a footnote: "For this reason, the Government's first argument, that procedural default bars Jackson's § 2255 motion because he did not raise the issue on direct appeal, fails." 32 F.4th 278, 283 n.3 (4th Cir. 2022). The Government asks the Court not to view this "single undeveloped footnote" as binding on this Court, because it misconstrues precedent on procedural default and "not everything said in a panel opinion binds future panels." (Govt.'s Opp. at 14, n.5.) However, the Court need not wade into an analysis of whether it must follow *Jackson* or reject it as conflicting with prior precedent, because the Court can assume without deciding that *Jackson* renders Defendant able to show cause as to his procedural default. Even if Defendant can show cause, Defendant cannot demonstrate prejudice that would satisfy the requirements for procedural default or habeas review generally, as described below.

**B. Section 924(c)**

Section 924(c) provides that "any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" shall be subject to an additional mandatory minimum sentence. 18 U.S.C. § 924(c)(1)(A). The statute defines a "drug trafficking crime" as "any felony punishable under the Controlled Substances Act (21 U.S.C. § 801, *et seq.)*, the Controlled Substances Import and Export Act (21 U.S.C. § 951, *et seq.*), or chapter 705 of title 46." § 924(c)(2). Further, the statute defines "crime of violence" to mean "an offense that is a felony and has as an element the use, attempted use, or threatened use of physical force against the person or property of another."

§ 924(c)(3). [4] As the statute plainly states, it "prohibits the possession of a firearm in furtherance of a crime of violence *or* a drug trafficking crime." *United States v. Hare*, 820 F.3d 93, 105-06 (4th Cir. 2016). Therefore, the Court must determine whether Defendant's convictions in Counts Twenty and Twenty Six rest on convictions that constitute valid crimes of violence or drug trafficking crimes. This begins with an examination of the predicate convictions.

**D. Defendant's Predicate Convictions for Counts Twenty and Twenty-Six**

**1. The Charges in the Indictment**

**\*5** Count Twenty of the Second Superseding Indictment states: [5]

> THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, ... RICHARD TIPTON aka Whittey ... did knowingly, willfully and unlawfully use a firearm during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is a violation of Title 21, United States Code, Sections 846 and 848, and Title 18, United States Code, Section 1959, as set forth in Counts One, Seventeen, Eighteen & Nineteen and Twenty-One through Twenty-Three of this Indictment.

(Indictment at 15.) Thus, the Indictment predicated Count Twenty on the following Counts:

**Count One** charged Tipton with participating in a conspiracy to possess with intent to distribute and to distribute fifty (50) grams or more of cocaine base. (*Id.* at 2-5.)

**Count Seventeen** charged that, on February 1, 1992, Tipton, while engaged in and working in furtherance of a CCE, "knowingly, intentionally, and unlawfully killed

and counseled, commanded, induced, procured, and caused the intentional killing of Bobby Lone, and such killing resulted. (In violation of 21 United States Code, Section 848(e)(1)(A) and Title 18 United States Code, Section 2.).” (*Id.* at 13-14.)

**Count Eighteen** charged that, on February 1, 1992, while engaged in and working in furtherance of a CCE, Tipton “knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Anthony Carter, and such killing resulted. (In violation of 21 United States Code, Section 848(e)(1)(A) and Title 18 United States Code, Section 2.).” (*Id.* at 14.)

**Count Nineteen** charged that, on February 1, 1992, while engaged in and working in furtherance of a CCE, Tipton “knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Dorothy Mae Armstrong, and such killing resulted. (In violation of 21 United States Code, Section 848(e)(1)(A) and Title 18 United States Code, Section 2.).” (*Id.*)

**Count Twenty-One** charged that, on February 1, 1992, Tipton “did knowingly, intentionally, and unlawfully cause the murder of Bobby Long, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering being dealing in narcotic or other dangerous drugs. (In violation of Title 18, United States Code, Sections 1959 and 2.)” (*Id.* at 15-16.)

**Count Twenty-Two** charged that, on February 1, 1992, Tipton “did knowingly, intentionally, and unlawfully cause the murder of Anthony Carter, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering being dealing in narcotic or other dangerous drugs. (In violation of Title 18, United States Code, Sections 1959 and 2.)” (*Id.* at 16.)

**\*6 Count Twenty-Three** charged that on February 1, 1992, Tipton “did knowingly, intentionally, and unlawfully cause the murder of Dorothy Mae Armstrong, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering being dealing in narcotic or other dangerous drugs. (In violation of Title 18, United States Code, Sections 1959 and 2.)” (*Id.* at 16-17.)

**B. Count Twenty-Six**

Count Twenty-Six of Second Superseding Indictment states:

> THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, ... RICHARD TIPTON, aka Whittey ... did knowingly, intentionally, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is a violation of Title 21, United States Code, Section 846 and 848, and Title 18, United States Code, Section 1959, as set forth in Counts One, Twenty-Four, Twenty-Five and Twenty-Seven through Thirty of this Indictment.

(*Id.* at 18.) Thus, the Indictment predicated Count Twenty-Six on the following charges:

**Count One** charged Tipton with participating in a conspiracy to possess with intent to distribute and to distribute fifty (50) grams or more of cocaine base. (*Id.* at 2-5.)

**Count Twenty-Four** charged that, on February 19, 1992, Tipton, while engaged in and working in furtherance of a CCE, “knowingly, intentionally, and unlawfully killed

and counseled, commanded, induced, procured, and caused the intentional killing of Curtis Thome, and such killing resulted. (In violation of 21 United States Code, Section 848(e)(1)(A) and Title 18 United States Code, Section 2.).'' (*Id.* at 17.)

**Count Twenty-Five** charged that, on February 19, 1992, Tipton, while engaged in and working in furtherance of a CCE, "knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Anthony Mack, and such killing resulted. (In violation of 21 United States Code, Section 848(e)(1)(A) and Title 18 United States Code, Section 2.).'' (*Id.* at 17-18.)

**Count Twenty-Seven** charged that, on February 19, 1992, Tipton "did knowingly, intentionally, and unlawfully cause the murder of Curtis Thorne, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering being dealing in narcotic or other dangerous drugs. (In violation of Title 18, United States Code, Sections 1959 and 2.)'' (*Id* at 18-19.)

**Count Twenty-Eight** charged that, on February 19, 1992, Tipton "did knowingly, intentionally, and unlawfully cause the murder of Linwood Chiles, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering being dealing in narcotic or other dangerous drugs. (In violation of Title 18, United States Code, Sections 1959 and 2.)'' (*Id.* at 19.)

 **\*7 Count Twenty-Nine** charged that, on February 19, 1992, Tipton "did knowingly, intentionally, and unlawfully cause the maiming of Priscilla Green, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering being dealing in narcotic or other

dangerous drugs. (In violation of Title 18, United States Code, Sections 1959 and 2.)'' (*Id.* at 19-20.)

**Count Thirty** charged that, on February 19, 1992, Tipton "did knowingly, intentionally, and unlawfully cause the maiming of Gwendoyln Green, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering being dealing in narcotic or other dangerous drugs. (In violation of Title 18, United States Code, Sections 1959 and 2.)'' (*Id.* at 20.)

**2. The Pertinent Jury Instructions and Verdict Form**

The Court instructed the jury that:

> In order to sustain its burden of proof of the crime of using or carrying a firearm during and in relation to a crime of violence or drug trafficking crime as charged in Counts ... Twenty and Twenty-Six of the indictment, the government must prove the following two essential elements beyond a reasonable doubt: One, the defendant committed the crime as charged in the indictment; and two, during and in relation to the commission of that crime, the defendant knowingly used or carried a firearm.
>
> The term "crime of violence" means an offense that is a felony and has as one of its essential elements the use, the attempted use, or threatened use of physical force against the person or property of another, or an offense that by its very nature involves a substantial risk that such physical force may be used in committing the offense.
>
> The term "drug trafficking crime" means an offense that is a felony and involves the distribution, manufacture, or importation of any controlled substances. The offenses alleged in Counts ... Seventeen, Eighteen, Nineteen, Twenty-One, Twenty-Two, Twenty-Three, Twenty-Four, Twenty-Five, Twenty-Seven, Twenty-Eight, Twenty-Nine, Thirty, Thirty-One, Thirty-Two, and Thirty-Three are crimes of violence or drug trafficking crimes.

(Feb. 2, 1993 Tr. 3222–23.)

Defendant's Verdict Form further stated:

Count 20: Use of Firearm in Relation to Killing of Bobby Long, Anthony Carter and Dorothy Mae Armstrong

    (Guilty or Not Guilty)

....

Count 26: Use of Firearm in Relation to Killing of Curtis Thome and Linwood Chiles and Maiming of Priscilla Green and Gwendolyn Greene

    (Guilty or Not Guilty)

(Docket No. 465, at 5-6.) The jury found him guilty of both. (*Id.*)

### 3. Defendant's Arguments for Relief

Defendant contends that in the wake of *Davis* and *Borden*, none of the designated offenses constitute a viable crime of violence predicate for the § 924(c) offenses in Counts Twenty and Twenty-Six. His arguments fail. As explained below, Counts Twenty and Twenty-Six are supported by multiple, valid drug trafficking and crime of violence predicates. Counts One, Seventeen through Nineteen, Twenty-Four and Twenty-Five constitute valid drug trafficking crime predicates for his § 924(c) convictions. Counts Seventeen through Nineteen, Twenty-Four and Twenty-Five remain valid crime of violence predicates for his § 924(c) convictions. Defendant devotes most of his brief to arguing that his racketeering-related crimes no longer qualify as a crime of violence. Given the many unquestionably valid predicates for Defendant's § 924(c) convictions, no need exists to assess whether the racketeering crimes could serve as crime of violence predicates for the § 924(c) convictions. *Said,* 26 F.4th at 659 ("[A] § 924(c) conviction may stand even if the jury based its verdict on an invalid predicate, so long as the jury *also* relied on a valid predicate." (citing *United States v. Crawley,* 2 F.4th 257, 263 (4th Cir. 2021), *cert. denied,* 142 S. Ct. 819 (2022); *Hare,* 820 F.3d at 106)).

### E. Counts One, Seventeen through Nineteen, Twenty-Four and Twenty-Five Remain Valid Drug Trafficking Predicates for § 924(c) Convictions.

**\*8** First, Defendant's § 924(c) convictions rest on valid drug trafficking predicates, a fact that Defendant barely addresses.[6] The statute defines a "drug trafficking crime" to mean "any felony punishable under the Controlled Substances Act (21 U.S.C. § 801 *et seq.*), the Controlled Substances Import and Export Act (21 U.S.C. § 951 *et seq.*), or chapter 705 of title 46." 18 U.S.C. § 924(c). Several of Defendant's predicate convictions meet this definition.

Defendant's drug distribution conspiracy conviction in Count One remains a valid drug trafficking predicate for Counts Twenty and Twenty-Six. *Hare,* 820 F.3d at 97, 106 (finding that drug distribution conspiracy charge could properly support a § 924(c) conviction); *see United States v. Heyward,* 3 F.4th 75, 81 (2d Cir. 2021) ("[A] § 924(c) conviction may be premised on a drug-trafficking crime, including conspiracies." (citing *United States v. Dussard,* 967 F.3d 149, 157-58 (2d Cir. 2020))); *United States v. Cannon,* 987 F.3d 924, 948 (11th Cir. 2021) (denying relief in the wake of *Davis* where 924(c) conviction was predicated on an invalid Hobbs Act conspiracy and "the still-valid cocaine conspiracy crime"), *cert. denied sub nom. Holton v. United States,* 142 S. Ct. 283 (2021). The vacatur on appeal of Count One on double jeopardy grounds does not impact this analysis. *United States v. Hopkins,* 310 F.3d 145, 153 (4th Cir. 2002) ("Moreover, a defendant's conviction under § 924(c) 'does not depend on his being convicted — either previously or contemporaneously — of the predicate offense, as long as all of the elements of that offense are proved and found beyond a reasonable doubt.' " (citing *United States v. Crump,* 120 F.3d 462, 466 (1997))). The jury found beyond a reasonable doubt that Defendant conspired to traffic at least 50 grams of crack cocaine. The Fourth Circuit vacated this conviction not based on any defect in the jury's finding or the evidence to support the conviction, but rather because the charge constituted a lesser included offense within the CCE conviction. *Tipton,* 90 F.3d at 891. Thus, Count One remains a valid drug trafficking predicate.

Even if the Court could not consider the vacated Count One conviction, Defendant's CCE Murder Convictions constitute valid drug trafficking crimes. The CCE Murder statute prohibits killing while trafficking in drugs or engaging in a continuing criminal enterprise, which it defines in terms

of drug trafficking activities undertaken in concert with five or more persons. 21 U.S.C. § 848(e). This prohibition appears in Title 21 as part of the Controlled Substances Act, bringing it squarely within the ambit of the definition of a drug trafficking crime in § 924(c). Controlled Substances Act, Pub. L. No. 91-513, § 408, 84 Stat. 1236 (1970), *as amended by* the Anti-Drug Abuse Act, Pub. L. No. 100-690, § 7001, 102 Stat. 4181, 4387-88 (1988) (codified as amended at 21 U.S.C. § 848(e)(1)(a)).

**\*9** Courts have recognized that convictions under § 848(e) qualify as drug trafficking predicates for the purpose of § 924(c). *United States v. Walker*, 142 F.3d 103, 111 (2d Cir. 1998) (observing that " 21 U.S.C. § 841(a) (1) and § 848(e)(1)(A), like § 846, are part of the Controlled Substances Act."); *United States v. Gomez*, 2021 WL 2592965, at \*3 (S.D.N.Y. June 24, 2021) (concluding that "murder while engaging in a major drug conspiracy" in violation of 21 U.S.C. 848(e)(1)(A), is a "felon[y] under the Controlled Substances Act" and remains a valid drug trafficking predicate for a § 924(c) conviction after *Davis*).

Despite Defendant's fleeting arguments to the contrary, his convictions under § 848(e)(1)(A) necessarily implicate drug trafficking offenses. "A CCE conviction requires proof that the defendant... committed felony violations of federal narcotics laws." *United States v. Roane*, 2020 WL 6370984, at \* 11 (E.D. Va. Oct. 29, 2020). As the Fourth Circuit noted on direct appeal, "a substantive connection [between the murder and the drug offense] must be implied as an essential element of § 848(e)." *Tipton*, 90 F.3d at 887, n.13.

In moving for relief under the First Step Act, Defendant argued that his CCE Murder convictions constituted "covered offenses," because they relied on drug trafficking crimes. (First Step Act Motion at 4-7.) Indeed, during oral argument before the Fourth Circuit on his appeal of this Court's denial of his First Step Act Motion, Defendant argued that § 848(e) could not "be separated out from Title 21, where it is placed" and that "it's absolutely regulating drug dealing." (Oral Argument at 29:06; 1:00:40, *United States v. Tipton*, (No. 20-16, 4th Cir.), *available at* https://www.youtube.com/watch?v=GzoJ-X54ge4.) The Court agrees that § 848(e) necessarily implicates drug trafficking offenses and arises

under the Controlled Substances Act. Given its plain text and placement within the United States Code, the Court has little trouble determining that § 848(e)(1)(A) constitutes a "drug trafficking crime" as defined by § 924(c)(2). [7]

**F. Counts Seventeen through Nineteen, Twenty-Four and Twenty-Five Remain Valid Crime of Violence Predicates for the § 924(c) Convictions.**

Defendant contends that the CCE Murder Counts charged in Counts Seventeen through Nineteen, Twenty-Four, and Twenty-Five fail to qualify as crimes of violence under the elements clause. First, Defendant contends that CCE Murder does not require the necessary *mens rea* specified in *Borden v. United States*, 141 S. Ct. 1817 (2021) for a crime of violence, because it encompasses merely reckless conduct. (ECF No. 159, at 37–38.) Second, Defendant contends that, because "848(e)(1) authorizes a conviction for any person who, *inter alia*, 'counsels, commands, induces, procures, or causes the intentional killing of an individual' in furtherance of CCE," it does not invariably require the use, attempted use, or threatened use of physical force against another person. (§ 2255 Motion at 38 (emphasis corrected).) Both of Defendant's arguments fail. His CCE murders constitute valid crime of violence predicates under the elements clause.

### 1. Crime of Violence Jurisprudence

**\*10** In *Johnson v. United States*, 576 U.S. 591 (2015), the Supreme Court held "that imposing an increased sentence under the residual clause of the Armed Career Criminal Act [("ACCA")] violates the Constitution's guarantee of due process," *id.* at 606, because the Residual Clause of the ACCA, 18 U.S.C. § 924(e)(2)(B)(ii), defined "violent felony" in an unconstitutionally vague maimer for the reason that the Residual Clause encompassed "conduct that presents a serious potential risk of physical injury to another." *Id.* at 597–98 (citation omitted). [8] Subsequently, in *Welch v. United States*, 578 U.S. 120 (2016), the Supreme Court held that "*Johnson* announced a substantive rule [of law] that has retroactive effect in cases on collateral review." *Id.* at 135.

Similarly, § 924(c) provides for consecutive periods of imprisonment when a defendant uses or carries a firearm in

furtherance of violence or a drug trafficking crime. At the time of Defendant's convictions on Counts Twenty and Twenty-Six, the United States could demonstrate that an underlying offense constitutes a crime of violence if it established that the offense satisfies one of two requirements. Namely, the statute defined a crime of violence as any felony:

(A) [that] has as an element the use, attempted use, or threatened use of physical force against the person or property of another [(the "force clause or the elements clause")], or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense [(the "residual clause")].

18 U.S.C. § 924(c)(3). The Supreme Court recently invalidated the residual clause of § 924(c). Davis, 139 S. Ct. at 2336 (holding that "§ 924(c)(3)(B) is unconstitutionally vague"). Thus, for Defendant's § 924(c) convictions in Counts Twenty and Twenty-Six to pass constitutional muster as crimes of violence, they must be predicated on a crime of violence that satisfies the force/elements clause of § 924(c).

To determine whether a charged offense constitutes a crime of violence, courts apply the categorical approach, which requires them to "ask whether the most innocent conduct that the law criminalizes requires proof of the use, attempted use, or threatened use of force sufficient to satisfy the elements clause." United States v. Roof, 10 F.4th 314, 398 (4th Cir. 2021). If yes, "then the offense categorically qualifies as a crime of violence. But if the statute defines an offense in a way that allows for both violent and nonviolent means of commission, then that predicate offense is not 'categorically' a crime of violence under the elements clause." Id. (cleaned up). This approach requires courts to analyze the elements of the offense charged, rather than the specific way in which the defendant committed the crime. Id.

Therefore, the Court begins with the elements of a CCE conviction. To obtain a conviction for a CCE Murder, the Government must prove beyond a reasonable doubt three elements: (1) that while engaged in a continuing criminal enterprise or engaging in an offense punishable under § 841(b)(1)(A) or § 960(b)(1) that involved a certain quantity of drugs;[9] (2) the defendant intentionally killed the victim or commanded, induced, procured or caused the intentional killing of the victim; and (3) that the death of the victim resulted from such activity of the defendant. 21 U.S.C. § 848(e)(1)(A); see United States v. Hager, 721 F.3d 167, 185 (4th Cir. 2013) (reviewing district court's jury instructions for an § 848(e)(1)(A) charge). The Court will determine if these elements require the mens tea and force necessary to qualify as a crime of violence.

### 2. The CCE Murder Statute Satisfies the Mens Rea Requirement to Serve as a Crime of Violence.

*11 In Borden v. United States, 141 S. Ct. 1817 (2021), the Supreme Court held that the ACCA's Force Clause's "definition of 'violent felony' — an offense requiring the 'use of physical force against the person of another' — [does not] include[ ] offenses criminalizing reckless conduct." Id. at 1825. The Court reasoned that "[t]he phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual. Reckless conduct is not aimed in that prescribed manner." Id. The Fourth Circuit has applied this reasoning to § 924(c)'s force clause and held that, "even if the statute governing the predicate offense requires that the proscribed conduct result in death, it must also indicate a higher degree of intent than reckless, negligent, or merely accidental conduct in order to satisfy the elements[/force] clause." Roof, 10 F.4th at 399–400 (citing Borden, 141 S. Ct. at 1824; United States v. Runyon, 994 F.3d 192, 200 (4th Cir. 2021)). Therefore, "to qualify as a crime of violence for purposes of § 924(c), a predicate offense such as CCE [murder] must involve a purposeful or knowing mens rea" United States v. Smith, No. __ F. Supp. 3d __, 2022 WL 1538706, at *13 (D.D.C. May 16, 2022).

Defendant argues that the intent level required for a CCE Murder conviction falls short of the purposeful or knowing mens rea required for a crime of violence. (§ 2255 Motion at 37-38.) However, the statute belies this argument. The statute provides that anyone engaging in a CCE "who intentionally kills or counsels, commands, induces, procures or causes the intentional killing of an individual and such killing results," is subject to conviction of CCE Murder. Thus, the

statute explicitly requires an intentional killing created by the defendant's intentional behavior, satisfying the heightened *mens rea* requirement.

The recent district court decision in *Smith* supports this outcome, as the court there found that CCE Murder constitutes a crime of violence for purposes of § 924(c). A defendant, "who 'intentionally kills' the victim while working in furtherance of a continuing criminal enterprise has obviously displayed [the requisite] intent." *Smith,* 2022 WL 1538706, at *13. "[Alternatively, a defendant commits CCE Murder by counseling, commanding, inducing, procuring, or causing the victim to be killed, the active, intentional nature of each of these verbs reflects the same degree of direct, knowing involvement and thus the same heightened culpability." *Id* (citing Oxford English Dictionary (3d ed. 2007)). Therefore, "courts interpreting the CCE Murder statute have consistently found a heightened *mens rea* to apply, [that the defendant intended the killing to occur,] regardless of the form of defendant's contribution to the intentional killing." *Id.* at *14 (citing *United States v. Johnson*, 495 F.3d 951, 967 (8th Cir. 2007); *United States v. Chandler*, 996 F.2d 1073, 1099-1100 (11th Cir. 1993); *United States v. Villarreal*, 963 F.2d 725, 728 (5th Cir. 1992); *United States v. Tidwell*, No. 94-cr-353 (MOR), 1995 WL 764077, at *2 (E.D. Pa. Dec. 22, 1995); *United States v. Bedford*, 966 F. Supp. 1415, 1426 (E.D. Va. 1997)). The Court agrees with the reasoning in *Smith*.

Additionally, the jury instructions here for the CCE Murder predicates required "a higher degree of intent than reckless, negligent, or merely accidental conduct." *Roof*, 10 F.4th at 399–400 (citing *Borden*, 141 S. Ct. at 1824; *Runyon*, 994 F.3d at 200). Specifically, the Court instructed the jury that:

> Before you can find an individual defendant guilty of [a CCE Murder], you must be convinced beyond a reasonable doubt of each of the following elements: First, that the defendant was engaged in or working in furtherance of the continuing criminal enterprise charged in Count Two of the indictment; second, that while the defendant was so engaged,

> the defendant intentionally killed, or counseled, commanded, induced, procured, or caused the intentional killing of the individual victim named in a particular count; and three, that the killing of that victim actually resulted.

**\*12** (Feb. 2, 1993 Tr. 3217.) These instructions required the jury to find that Defendant intended to kill each of the victims of the CCE murders. Therefore, each of the CCE murders required the requisite intent to serve a crime of violence predicate for the § 924(c) charges.

### 3. CCE Murder Categorically Requires the Use of Force Against a Person.

Defendant further argues that the statute's varying levels of culpability render it not a crime a violence, presumably because someone other than the one who carries out the killing can face liability under § 848(e)(1)(a). (§ 2255 Motion at 38-40.) As noted previously, § 924(c)(3)'s "force clause" defines a "crime of violence" as any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). "To determine whether an offense is a crime of violence under [the force] clause, courts use an inquiry known as the 'categorical' approach. They look to whether the statutory elements of the offense necessarily require the use, attempted use, or threatened use of physical force." *United States v. Simms*, 914 F.3d 229, 233 (4th Cir. 2019) (citing *Leocal v. Ashcroft*, 543 U.S. 1, 7-10 (2004); *United States v. McNeal*, 818 F.3d 141, 151-52 (4th Cir. 2016)). "When a statute defines an offense in a way that allows for both violent and nonviolent means of commission, that offense is not 'categorically' a crime of violence under the force clause." *Id.*

Within the context of defining a violent felony, "the phrase 'physical force' means *violent* force — that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010). "[M]urder is a crime of violence under § 924(c)'s force clause because it '[h]as an element the use, attempted use, or

threatened use of physical force against the person.' " *In re Irby*, 858 F.3d 231, 234–35 (4th Cir. 2017) (alteration in original) (citing *In re Hubbard*, 825 F.3d 225, 229 (4th Cir. 2016)). "Murder 'requires the use of force capable of causing physical pain or injury to another person' irrespective whether that force is exerted directly or indirectly by a defendant." *United States v. Mathis*, 932 F.3d 242, 265 (4th Cir. 2019) (citing *In re Irby*, 858 F.3d at 236, 238).

With respect to CCE Murder, the statute requires an intentional killing and that the killing actually results. 21 U.S.C. § 848(e)(1)(A). Thus, the elements of the offense require infliction of "the greatest physical injury imaginable — death." *Jackson*, 32 F.4th at 287. Because CCE Murder necessarily results in death, it satisfies the physical force element of a crime of violence. *See id.* (concluding that a death-results crime necessarily requires the use of violent force).

Defendant focuses on the statute's prohibition on counseling, commanding, inducing, procuring or causing an intentional killing, rather than providing liability only for the person who carries out the killing. However, this argument misconstrues the principles of aiding and abetting law. Federal law provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2. Thus, these actions "simply describe[ ] the way in which a defendant's conduct resulted in the violation of a particular law." *United States v. Ali*, 991 F.3d 561, 574 (4th Cir. 2021). In *Ali*, the Fourth Circuit determined that "aiding and abetting a crime of violence is also categorically a crime of violence." *Id.* It reached this decision on the grounds that "since the law generally treats aiders and abettors the same as principals, the categorical approach must as well." *Id.* at 573. The Fourth Circuit noted that the decisions brought it in line with its sister circuits who have considered the issue. *Id.* at 574 (collecting cases). The Court sees no reason to treat a defendant who "counsels, commands, induces, procures, or causes" differently for the categorical approach than one who "aids and abets," especially when Congress has instructed that all of those actions subject an offender to principal liability. 18 U.S.C. § 2.

 **\*13** Moreover, the Supreme Court has held that "physical force is simply force exerted by and through" human action and, therefore, a person need not "directly" touch his victim

to exert "physical force." *United States v. Castleman*, 572 U.S. 157, 170-71 (2014). Consequently, "so long as an offender's use of physical force, whether direct or indirect, could cause a violent result, the force used categorically is violent." *Mathis*, 932 F.3d at 265; *see also In re Irby*, 858 F.3d at 236, 238 (noting that the distinction "between indirect and direct applications of force ... no longer remains valid in light of *Castleman's* explicit rejection of such a distinction"). Here, the statute requires intentional action by the defendant to bring about the intentional killing of the victim. Whether the defendant directly touches the victim or not, it remains categorically a violent crime.

Defendant cites to the Fourth Circuit's decision in *United States v. Simms* as supporting his argument that none of "counsels, commands, induces, procures, or causes" necessitates the use of force. (§ 2255 Motion at 38.) In *Simms*, the Fourth Circuit determined that a conspiracy to commit Hobbs Act robbery did not constitute a crime of violence, because "the Government must prove only that defendant agreed with another to commit actions that, if realized, would violate the Hobbs Act." 914 F.3d at 233-34. Such agreement would not necessarily require the actual, attempted, or threatened use of physical force. *Id.* at 234. However, the comparison to a conspiracy charge does not help Defendant. As the Fourth Circuit noted, a conspiracy conviction does not require the commission of the substantive violent crime. The agreement itself exposes the defendant to criminal liability. In contrast, a CCE Murder requires the commission of the crime, as the statute requires that "such killing results" for criminal liability to attach. 21 U.S.C. § 848(e)(1)(A). This distinction finds support in *Ali*, where the Fourth Circuit held that the defendant's § 924(c) conviction could not rest on a conspiracy to commit Hobbs Act robbery, but that it could rest on his conviction for aiding and abetting a Hobbs Act robbery. *Ali*, 991 F.3d at 574 ("And, under [the categorical approach], we already know that conspiracy does not count and aiding and abetting does."). Accordingly, Defendant's argument that his CCE Murder convictions do not constitute crimes of violence for purposes of his § 924(c) convictions fails.

### G. Defendant Fails to Demonstrate Prejudice. [10]
Defendant contends that he suffered prejudice, because a § 924(c) conviction cannot stand "if even one of the

possible predicates is not" a valid predicate. (§ 2255 Motion at 25.) However, Fourth Circuit caselaw forecloses Defendant's argument.

"[H]abeas petitioners 'are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.' " *Ayala*, 576 U.S. at 267 (quoting *Brecht*, 507 U.S. at 637). This standard requires the habeas petitioner to show that "[t]here [is] more than a 'reasonable possibility' that the error was harmful." *United States v. Said*, 26 F.4th 653, 660 (4th Cir. 2022) (alterations in original) (quoting *Davis*, 576 U.S. at 268). Under this standard, "it is proper to look at the record to determine whether the [alleged] invalid predicate actually prejudiced the petitioner — that is, actually led to his conviction — or whether the jury instead (or also) found the defendant guilty under a valid theory." *Granda v. United States*, 990 F.3d 1272, 1294 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 1233 (2022).

 **\*14**  Even assuming Defendant's VICAR convictions cannot establish valid predicates for his § 924(c) convictions,[11] Defendant's CCE Murder convictions constitute valid predicates. Therefore, "a § 924(c) conviction may stand even if the jury based its verdict on an invalid predicate, so long as the jury *also* relied on a valid predicate." *Said*, 26 F.4th at 659 (citing *Crawley*, 2 F.4th at 263; *Hare*, 820 F.3d at 106). Here, the Special Verdict Form did not require the jury to identify which predicate crimes of violence or drug trafficking crimes that it relied upon to find Defendant guilty of Counts Twenty and Twenty-Six. Defendant asserts that in cases such as his, "in which multiple potential predicates are put before the jury, a § 924(c) conviction cannot be sustained if even *one* of the possible predicates is not categorically a crime of violence under the force clause and the [relevant] documents do not conclusively establish the basis for the conviction." (§ 2255 Motion at 23.) This statement demonstrates that Defendant fails to appreciate the burden that he bears in demonstrating actual prejudice at this stage.

"[M]ere 'uncertainty as to which ... [predicate or predicates] the jury [relied on] when it found [the defendant] guilty of the § 924(c) count[ ]' does not suffice to demonstrate plain error, let alone the sort of substantial and injurious error required for habeas relief." *Said*, 26 F.4th at 661-62 (citing

*Davis*, 576 U.S. at 268; *Ali*, 991 F.3d at 575). At this stage, to meet his burden, Defendant "must show 'more than a reasonable possibility' that the jury *only* found him guilty" of Counts Twenty and Twenty-Six, because it improperly considered one of the listed predicate counts to be a crime of violence. *Id.* at 662 (citing *Davis*, 576 U.S. at 268). This he cannot do.

As pertinent here, the jury found Defendant guilty of the drug conspiracy in Count One, and the murders in furtherance of a CCE in Counts Seventeen, Eighteen, Nineteen, Twenty-Four, and Twenty-Five. As discussed above, these offenses constitute valid drug trafficking predicates for Counts Twenty and Twenty-Six. Additionally, the CCE Murders constitute valid crime of violence predicates for Counts Twenty and Twenty-Six. Common sense dictates that the jury had at least one of these valid predicates in mind when it convicted Defendant on Count Twenty and Twenty-Six. *See id.* at 664 (finding error harmless when the defendant "pointed to nothing to eliminate the common sense prospect that the jury relied on one or more of the valid predicates when it convicted him of the § 924 charges").

Indeed, Defendant's Motion, filed before the Fourth Circuit's decision in *Said*, now undercuts his position. Defendant argues: "The case of *United States v. Said*, which is now pending on appeal in the Fourth Circuit, is instructive." (§ 2255 Motion at 25.) The Court agrees.

In *Said*, the Fourth Circuit overturned the district court's decision, which had vacated the defendant's § 924(c) conviction on the grounds that "there was a reasonable possibility that the jury relied solely on those invalid predicates" for his § 924(c) convictions. 26 F.4th at 658. The defendant had been convicted of three counts of § 924(c). Following the Supreme Court's decision in *Davis*, three of the predicate convictions for the § 924(c) convictions no longer remained valid, while four others remained valid convictions. *Id.* at 659.[12] The Fourth Circuit framed the question as follows: "So, we are left with the question of whether Said is entitled to habeas relief because the jury *may* have relied *solely* on one or more of the invalid predicates in rendering guilty verdicts on Counts 4 and 10." *Id.* In answering the question in the negative, the court rejected both of the defendant's arguments: (1) that he had shown prejudicial error because "it is impossible to know

from the record which predicate" the jury had in mind in convicting him of the 🚩 § 924(c) counts, and (2) that he could show prejudicial error, because the court could not determine "whether the jury was unanimous in its decision as to which predicate or. predicates applied." *Id.* at 661.

**\*15** In rejecting these arguments, the Fourth Circuit relied heavily on the fact that the defendant bore the burden of establishing that the jury did not convict him on a valid predicate. *Id.* at 661-62. The record did not indicate which predicate the jury relied on, but "that sort of ambiguity is not enough." *Id.* at 662. Even though the Government pointed to the conspiracy predicates in its closing argument, "common sense" supported that when the jury found a defendant guilty of several substantive crimes of violence, and the evidence showed that he had used firearms in the attacks at issue, the jury "had at least one of those crimes in mind when they convicted him" of the 🚩 § 924(c) counts. *Id.* at 662. The court concluded: "neither Said nor the district court has pointed to any reason why the jury would not have convicted him on Counts 4 and 10 based on at least one of the valid predicates — let alone any evidence that they did not do so." *Id.*

The Court agrees with Defendant that *Said* controls. Defendant attempts a similar argument as the defendant in *Said*, arguing that the record does "not establish with 'certainty' which potential predicates underlay the jury's ultimate 🚩 § 924(c) determinations." (§ 2255 Mot. at 26.) But, this flips the burden on its head, as the Fourth Circuit has instructed that Defendant must show "more than a reasonable possibility" that the jury only found him guilty on invalid predicates. This, he cannot do.

In his Reply, filed after the Fourth Circuit's decision in *Said*, Defendant latches onto the Fourth Circuit's comment that it did "not hold that a challenge such as Said's will *never* succeed when the defendant has been convicted of both a 🚩 § 924(c) charge and a valid crime-of-violence predicate." 26 F.4th at 664. It did not elaborate on what a successful challenge would entail. Defendant's claim that he fits into one of the unidentified exceptions largely flows from his argument that neither his CCE Murder Convictions nor VICAR Convictions constitute valid predicates. But, the Court has already rejected that argument. Consequently, Defendant has not offered a sufficient reason for the Court to stray from the Fourth Circuit's rule in *Said* that a 🚩 § 924(c)

conviction may properly rest on a valid predicate even if it also rests on an invalid predicate.

Defendant also claims that he can demonstrate prejudice, because the record does not demonstrate that Defendant himself used a firearm in the commission of any of the 🚩 § 848(e) offenses. (Def's Reply at 11.) However, in finding Defendant guilty of the underlying CCE Murders as well as in the separate counts charging him with use of a firearm in relation to those murders, the jury necessarily found that he used a firearm in the commission of the predicate offenses. Accordingly, his argument that they could not have found that he used a firearm in the commission of any of the CCE Murders amounts to nothing more than a collateral attack on the sufficiency of the evidence. Although the record demonstrates ample evidence to support the jury's verdict, the Court need not review that evidence here. Given that Defendant has already exhausted his direct appeal process and the habeas review process once, the time to raise a sufficiency of the evidence challenge has long since expired. Accordingly, Defendant has not demonstrated prejudice with respect to his 🚩 § 924(c) convictions.

## IV. CONCLUSION

Defendant's CCE Murder Convictions, wherein the jury convicted him of killing individuals in furtherance of his substantial drug trafficking ring, plainly constitute both crimes of violence and drug trafficking crimes. Accordingly, his 🚩 § 924(c) convictions predicated on those convictions must stand. Accordingly, the Court will DENY Defendant's § 2255 Motion. (ECF No. 159.) A certificate of appealability will be denied.

An appropriate Order shall issue.

Let the Clerk file a copy of the Memorandum Opinion electronically and send a copy to counsel of record.

**\*16** Richmond, Virginia

**All Citations**

Slip Copy, 2022 WL 5249440

## Footnotes

1    The Court takes these background facts from the Fourth Circuit's opinion in *United States v. Roane*, 378 F.3d 382 (4th Cir. 2004).

2    The Court tried Roane, Tipton and Johnson along with four other defendants on a thirty-three-count superseding indictment.

3    The Court agrees with the Fourth Circuit that Defendant's § 2255 Motion relies upon "a new rule of constitutional law, made retroactive to cases on collateral review." 28 U.S.C. § 2255(h)(2).

4    The Supreme Court has struck down the additional phrase in the "crime of violence" definition as discussed below.

5    The Court corrects the capitalization in any quotations referring to the counts of the Second Superseding Indictment.

6    Defendant largely ignores the fact that his § 924(c) convictions could be predicated upon drug trafficking crimes. Instead of squarely addressing this facet of his § 924(c) convictions, he makes unsupported assertions such as, "the record does not establish that the jury found – or was even asked to consider – that he committed any remaining, valid drug-trafficking offense *using a firearm*." (ECF No. 179, at 4.) The jury instructions and the Second Superseding Indictment reflect that this is simply not true.

7    In finding that the CCE Murder Convictions constitute drug trafficking offenses, the Court does not conflict with its earlier holding that the CCE Convictions do not constitute covered offenses under the First Step Act. The First Step Act implicates a narrow set of certain crack-cocaine related offenses for which the Fair Sentencing Act modified the statutory penalties, whereas § 924(c) predicates encompass all felonies under the Controlled Substances Act or the Controlled Substances Import and Export Act. 18 U.S.C. § 924(c)(2).

8    The ACCA provides that

     [i]n the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years ....

     18 U.S.C. § 924(e)(1). Under the Residual Clause of the ACCA, the term violent felony had been "defined to include any felony that 'involves conduct that presents a serious potential risk of physical injury to another.'" *Johnson*, 576 U.S. at 593 (quoting 18 U.S.C. § 924(e)(2)(B)).

9    The Court need not employ the modified categorical approach. Even if the first element is divisible, the force and mens rea requirements of the other three elements dictate that the categorical analysis would reach the same conclusion regardless of which alternative element of the first element forms the basis of the charge.

10   The Court's finding that Defendant has suffered no prejudice applies equally to the analysis of whether he can show prejudice for his procedural default (assuming he can show cause) and whether he can demonstrate a harmful error for habeas review.

UNITED STATES OF AMERICA, v. RICHARD TIPTON, Defendant., Slip Copy (2022)

11    Again, the Court need not reach this question, as Defendant's 924(c) convictions rest on multiple other valid predicates.

12    The Government conceded to the vacatur of one of the 🚩§ 924(c) counts, because it relied only on invalid predicates following *Davis. Id.* at 658.

---

**End of Document**                                          © 2022 Thomson Reuters. No claim to original U.S. Government Works.