**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **KENNETH EUGENE BARRETT,**    ) | |
| ) | |
| Movant,    ) | |
| ) | |
| ) | |
| **v.**    ) | **Case No. 6:04-CR-00115-RAW** |
| ) | |
| **UNITED STATES OF AMERICA,**    ) | **CAPITAL CASE** |
| ) | |
| Respondent.    ) | |
| _____    ) | |

## MOTION FOR INDEPENDENT TESTING OF FIREARMS AND PROJECTILE EVIDENCE

Comes now Kenneth Eugene Barrett, through counsel, and files this Motion for

Independent and Protected Defense Access to and Testing of Firearms and Toolmarks Evidence

pursuant to Fed.R.Crim. P. 16(a)(1)(E), and the Fifth, Sixth, and Eighth Amendments to the U.S.

Constitution.  By way of this motion, as set forth particularly below, the defendant seeks to have

a federally licensed firearms examiner independently examine the defendant's Colt Sporter rifle

and the projectile fragments recovered from the decedent's body at autopsy.

The government has previously allowed the defense to view the physical evidence

presently in the custody of the DEA, and opposes the present motion insofar as it requests

transfer of certain evidence from DEA custody to an independently retained defense expert for

testing, inspection and examination.  The testing will involve no consumption or alteration of any

of the physical evidence in the case, but does require special equipment in the expert's laboratory

for examination (a calibrated comparison microscope) and access to a test firing range.[1] This

evidence has never been independently inspected or tested for comparison purposes by any

expert for the defense in the underlying proceedings.  Lay persons such as undersigned counsel

cannot conduct this testing and examination without the assistance of their expert witness, who is

qualified to inspect and examine the evidence once the physical evidence is sent to his office.

Mr. Barrett asks the Court to direct the government through the DEA to cooperate with

defense efforts to independently, and confidentially, examine or test the following items[2] within

the DEA's possession, custody, and control:

1. Colt AR-15 .223 caliber semiautomatic rifle, serial number: MH043631 (USAO Exhibit #128, Agency Evidence #N-11, and Evidence #P1) (seized from the defendant).

2. 3 "Y" configured magazines taped together (USAO Exhibit #125, Agency Evidence # N-10, Latent Evidence Unit # 99-11543, and Evidence #P5) (seized from the defendant).

3. F40 and F41 Projectile Fragments (USAO Exhibit #129, Agency Evidence #N-10, OSBI Evidence Control #TB0679).

The above-listed physical evidence is central to the government's case in aggravation

pursuant to 21 U.S.C. §§848(j) and 848(n)(1)-(12) (the factors for which the government has

given notice), and Mr. Barrett's lawyers must examine them through an expert witness in order

to provide competent representation.  *Strickland v. Washington*, 466 U.S. 668 (1984); *see also,*

*e.g., United States v. Hill*, 322 F.Supp.2d 1081, 1092 (C.D. Cal. 2004), *aff'd*, 459 F.3d 966 (9th

Cir. 2006) ("[C]ounsel cannot be expected to provide defendant with competent representation

---

[1] The expert possesses a certified and calibrated comparison microscope that is not portable. Seven (7) days are estimated for completion of examination, which includes time for overnight shipment of the requested physical evidence. The expert carries a Federal Firearms License and is capable of receiving and shipping firearms.  The expert also has access to a test firing range.

[2] The parties conducted a joint physical evidence review at DEA headquarters in this case. In preparation for that review, the government kindly provided defense counsel a list of identifying information for each piece of evidence. The descriptors, exhibit number, and agency evidence numbers listed herein are derived from the government's evidentiary list.

unless counsel and his expert have ready access to the materials that will be the heart of the government's case"). Independent examination of this physical evidence is necessary to test the government's case in aggravation, and the requested inspection and examination is key to understanding the circumstances of the offense.

<strong>ARGUMENT</strong>

**A.  Lack of Specific Intent to Cause Death Is A Mitigating Factor That Must Be Considered at a Capital Resentencing Hearing.**

All circumstances of the offense, including a defendant's intent to cause death, or lack thereof, are relevant to the calculus of mitigating and aggravating factors. *Lockett v. Ohio*, 438 U.S. 586, 604 (1978) (The Eighth Amendment requires that the sentencer "not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.") (emphasis in original). "[N]either may the sentencer refuse to consider, *as a matter of law*, any relevant mitigating evidence."[3] *Eddings v. Oklahoma*, 455 U.S. 104, 114 (1982) (emphasis in original). To be clear, the sentencer determines the weight to be given relevant mitigating evidence but may not give it no weight by excluding it from their consideration altogether. *Id*. at 115; *see also Buchanan v. Angelone*, 522 U.S. 269, 276 (1998).

The evidence in question – the firearm and fragments – possesses potentially exculpatory value should the recovered projectile fail to match Mr. Barrett's rifle. This evidence is central to the government's case-in-chief, has been preserved for 24 years, and is available for independent testing. Counsel has an affirmative and ethical duty to exhaustively investigate all

---

[3] Relevant mitigating evidence is evidence which tends logically to prove or disprove some fact or circumstance which a fact finder could reasonably deem to have mitigating value. *Tennard v. Dretke*, 542 U.S. 274, 284-85 (2004).

potential mitigating factors. *Wiggins v. Smith*, 539 U.S. 510 (2003); *Williams v. Taylor*, 529 U.S. 362 (2000). Trial counsel's failure to investigate and discover readily available mitigation evidence amounts to constitutionally deficient performance. *Anderson v. Sirmons*, 476 F.3d 1131 (10th Cir. 2007).

### B. This Capital Resentencing Begins Anew Where the Initial Jury's Guilty Verdict Concluded.

This case has been remanded by the Tenth Circuit Court of Appeals for a new capital sentencing hearing. *United States v. Barrett*, 985 F.3d 1203, 1233 (10th Cir. 2021) (vacating "Mr. Barrett's sentence on Count 3, and remand[ing] for resentencing on Count 3"). "The sentencing stage is the most critical phase of a death penalty case." *Romano v. Gibson*, 239 F.3d 1156, 1180 (10th Cir. 2001). A full resentencing hearing, conducted under 21 U.S.C. §848(j), as it must be here, requires the new resentencing jury to "determine for itself whether the government has proved the statutory aggravating factors alleged in the notice of intent to seek [the] death penalty. If it finds that the defendant is eligible for the death penalty, it must weigh those statutory aggravating factors it finds beyond a reasonable doubt against any mitigating factors any juror finds. The new jury must engage in the entire process of finding and weighing those factors to determine the defendant's sentence." *United States v. Johnson*, 764 F.3d 937, 944 (8th Cir. 2014) (rejecting the notion that the new sentencing jury should be required to accept the prior sentencing jury's findings on the intent factors in §848(n)(1)).

Mr. Barrett's penalty phase trial thus begins anew with the government's presentation of evidence on any statutory aggravating factors under §848(n)(1)-(12) that have been alleged in the Notice of Intent (NOI). Nothing found by the first jury in the prior capital sentencing hearing is binding on the new resentencing jury.

Under the provisions of 21 U.S.C. §848(j), once the defendant has been found guilty by a

4

jury, a sentencing hearing shall be conducted. The government shall open the hearing by presenting evidence of their aggravating factors for which notice has been given under §848(n), the defense shall reply, the government shall be permitted rebuttal, and then the defendant shall present evidence of mitigating factors under §848(m). "The burden of establishing the existence of any aggravating factor is on the Government, and is not satisfied unless established beyond a reasonable doubt. The burden of establishing the existence of any mitigating factor is on the defendant, and is not satisfied unless established by a preponderance of the evidence." 21 U.S.C. §848(j).

In 2006, the provisions of 21 U.S.C. §848 were repealed.[4] However, this is the law that still governs Mr. Barrett's upcoming resentencing hearing on Count 3. As explained by the Tenth Circuit in Mr. Barrett's direct appeal, at the time of his conviction, there were two separate, though substantially similar, federal schemes in place for imposition of the death penalty:

> The first of those was set forth in the [Federal Death Penalty Act (FDPA)], 18 U.S.C. §§3591 – 98. That statutory scheme applied to Counts 1 and 2 of the superseding indictment in this case. The second was set forth in 21 U.S.C. §§848(g)-(p) and applied only to defendants charged with violating §848. This scheme applied to Count 3 of the superseding indictment. In March 2006, not long after Barrett was sentenced in this case, Congress repealed the death penalty provisions of §848, effectively rendering the FDPA applicable to all federal death-eligible offenses. In his appellate brief, Barrett appears to refer exclusively to the FDPA in making his various constitutional arguments. Obviously, however, he lacks standing to challenge the FDPA because he was not sentenced to death under that Act.

*United States v. Barrett* ("*Barrett I*"), 496 F.3d 1079, 1106 (10th Cir. 2007). Because Mr. Barrett was initially sentenced to death in 2005 under The Anti-Drug Abuse Act, for violations of 21 U.S.C. §848(e)(1)(B), the resentencing hearing is governed by procedures outlined in 21

---

[4] Provisions of 21 U.S.C. §848 prior to its repeal is attached as Exhibit 1.

U.S.C. §848(g) – (p), rather than the FDPA. *See United States v. Stitt*, 552 F.3d 345, 352 (4th Cir. 2008) (finding 18 U.S.C.A. §3593(b)(2)(D) permits a second sentencing jury only when the initial sentence was imposed "under this section"); *see also United States v. Johnson*, 900 F.Supp.2d 949, 954 (N.D. Iowa 2012) (agreeing with *Stitt* that the sentencing provisions under §848 are saved by the savings statute, 1 U.S.C. §109, as part of the prosecution of a penalty, which also includes preserving the mechanisms (§848(g)-(r)) for enforcing that penalty). "Indeed, the repealed portions of §848 are a constitutionally required condition precedent to imposing §848(e)'s penalty of a death sentence." *Stitt* at 354-55.

**C. Under 21 U.S.C. §848, the Mental Culpability Factors Set Out in 848(n)(1) are Statutory Aggravators Which Must Be Proven in the Resentencing Hearing.**

Under §848, an individual may be subjected to the death penalty only if a sentencing hearing is held in accordance with provisions explained in subsections (g) to (p). In particular, subsection (n) sets forth 12 statutory aggravating factors to be weighed by a juror, which includes the mental culpability aggravating factors set out in §848(n)(1). "For a defendant to become 'death eligible' under this scheme, the jury, during the second-stage proceedings, had to find the existence of (1) this first statutory aggravating factor, i.e., that the defendant committed the offense of conviction with one of the listed culpable mental states, and (2) at least one other statutory aggravating factor." *Barrett I*, at 1110-11. "If an aggravating factor set forth in subsection (n)(1) is not found to exist or an aggravating factor set forth in subsection (n)(1) is found to exist but no other aggravating factor set forth in subsection (n) is found to exist, the court shall impose a sentence, other than death." §848(k). Additionally, under §848 the jury is tasked with weighing the aggravating (including threshold aggravating factors set forth in 848(n)(1)), along with the remainder of the aggravating factors previously noticed in 848(n)(2)-(12)) and mitigating factors during the penalty phase. *See Barrett I*, at 1107, 1110-11.

6

Indeed, in *United States v. Johnson*, 915 F.Supp.2d 958, 968 (N.D. Iowa 2013), the government argued *against* confining the retrial of a penalty phase to only the statutory factors contained in 848(n)(2)-(12) (a phase of the penalty re-trial they labeled the "selection phase"), as opposed to a retrial also starting anew with the intent factors in 848(1) (the "eligibility phase"), claiming "it would be unreasonable – and prejudicial to it – to expect a new jury to weigh 'empty labels' for 'statutory aggravating factors' which had been found in the original 'eligibility phase,' without any evidence to support them, if the 'eligibility phase' is not retried.  The prosecution argues that Johnson cannot pick and choose the portions of the sentencing hearing that will be retried." *Id*. at 968.  The government's definition of the full scope of the penalty phase retrial was affirmed by the Eighth Circuit on interlocutory appeal of this issue, taken by the government.

The Eighth Circuit held that the new sentencing hearing must start anew with the government's case in aggravation, beginning with the intent factors set out in 21 U.S.C. §848(n)(1), and no preclusive effect would be given to any of the prior sentencing jury's findings:  "The new jury must determine for itself whether the government has proved the statutory aggravating factors alleged in the notice of intent to seek [the] death penalty [including those set out in 848(n)(1)], it must weigh those statutory aggravating factors it found beyond a reasonable doubt with any non-statutory aggravating factors it finds beyond a reasonable doubt against any mitigating factors any juror finds.  The new jury must engage in the entire process of finding and weighing those factors to determine the defendant's sentence.  We thus hold that the district court must conduct a full sentencing rehearing." *Johnson*, 764 F.3d  943.

In other words, as part of the government's case in aggravation, which includes the mental culpability aggravating factors or "preliminary factors" as stated in the NOI, the United

States must prove, beyond a reasonable doubt and unanimously to a jury, that "2.  The defendant, Kenneth Eugene Barrett, intentionally killed the victim as alleged in Count 3."  DN 052, Superseding Indictment, Count 3, Special Findings, at 6 (Exhibit 2); *see also* DN 060, NOI (Exhibit 3).

Here, the 2005 trial jury found Mr. Barrett "Guilty" of count three. *See* Verdict Form, DN 241, attached as Exhibit 4. That jury was instructed under 21 U.S.C. §848(e)(1)(B), but the guilty verdict does not conclusively establish an intentional killing. *See* Jury Instructions, DN 240, attached as Exhibit 5 at 27-30 (allowing the jury to convict under alternate theories at jury instruction numbers 14 and 15: "With respect to the offense alleged in Count Three of the superseding indictment, the law of the United States provides that any person, during the commission of, in furtherance of, or while attempting to avoid apprehension, prosecution or service of a prison sentence for, a felony drug violation, who intentionally kills **or** counsels, commands, induces, procures, or causes the intentional killing of any Federal State, or local law enforcement officer engaged in, or on account of, the performance of such officer's official duties, is guilty of a crime against the United States") (emphasis added). The jury's verdict of guilt on the trial verdict form does not specify the theory upon which the trial jury convicted Mr. Barrett.

The pending sentencing begins with the government's case in aggravation, including all factors set forth in 21 U.S.C. §848(n) for which notice has been given.  *See* 21 U.S.C. §848(j). The aggravating factors for which notice have been given here open the question of whether Mr. Barrett intentionally and directly killed the victim in this case.[5]  Examination of the weapon

---

[5] To be clear, Mr. Barrett's right to rebut applies to all noticed aggravating factors, (n)(1), as well as (n)(2) thru (n)(4), should the government choose to proceed alternatively.

and the fragments recovered at autopsy are central to this question.

Mr. Barrett maintains an absolute right to rebut any evidence submitted by the government's case in aggravation. *See* §848(j) ("The government and the defendant shall be permitted to rebut any information received at the hearing and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any of the aggravating or mitigating factors.")."A fair opportunity to present argument as to the adequacy of the information" includes the right, at the outset, to inspect, examine, and test the ballistics evidence at issue here, including Mr. Barrett's Colt Sporter rifle and the fragments recovered from the victim at autopsy, to examine and come to an expert conclusion as to whether the rifle can be said to have fired the lethal fragments. *Id*. Defense counsel are untrained and do not have the equipment necessary to properly evaluate any relationship between the ballistics fragments recovered at the victim's autopsy with a fired shell casing from the defendant's rifle.

**D. The Ballistics Evidence is Material.**

An examination of the firearm alleged to have been fired by Mr. Barrett and the projectiles recovered from the body of Trooper Eales is necessary to a determination of this alleged special finding for Count 3 of the Superseding Indictment, and the intentional killing statutory aggravating factor under 21 U.S.C. §848(n)(1), and is therefore essential to the government's burden of proof in its case-in-chief. This evidence was not independently inspected by any expert for the defense, and no comparison of the firearm and the spent projectiles recovered at autopsy have ever been independently conducted by the defense in this case.

The Federal Rules of Criminal Procedure provide a right to such testing and require the government to cooperate with defense efforts to independently test evidence. Rule 16 provides

that the government "must permit the defendant to inspect" an item if the item is "within the government's possession, custody, or control" and "(i) the item is material to preparing the defense; (ii) the government intends to use the item in its case in chief at trial; or (iii) the item was obtained from or belongs to the defendant." Fed.R.Crim.P. 16(a)(1)(E). Evidence is material under Rule 16 if "there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, … or *assisting impeachment or rebuttal*." *United States v. DeLeon*, 428 F.Supp.3d 716, 774 (D. New Mexico 2019) (emphasis added) (quoting *United States v. Graham*, 83 F.3d 1466, 1474 (D.C. Cir. 1996)). The defense request for independent inspection "must be permitted if any of the three circumstances exist." *United States v. Giardina*, No. 04-cr-29J, 2005 WL 3088441, at *7 (W.D. Pa. 2005).

With respect to Items 1 and 2 above, the Colt AR-15 .223 semiautomatic rifle, and the 3 magazines, those items belonged to the defendant at the time they were seized by the government. With regard to Item 3, this item of physical evidence was and is central to the government's penalty phase case-in-chief and its case in aggravation. The government contends that Mr. Barrett fired the fatal shot which took the life of Trooper Eales, and the claim rests upon an examination of Mr. Barrett's Colt AR-15 .223 semiautomatic rifle and comparison of fired projectiles with the projectile fragments recovered at the autopsy of Trooper Eales (Item 3 above).

The right to independent "inspection" encompasses the right to independent testing. *United States v. Bowers*, No. 18-292, 2022 WL 7602419, at *2 (W.D. Pa. 2022) ("[C]ourts interpreting this Rule have consistently explained that, where rule 16(a)(1)(E)'s prerequisites are met, a defendant is entitled to independently review and test such materials."); *see United States v. Giardina*, No. 04-cr-29J, 2005 WL 3088441, at *8 (W.D. Pa. 2005) (ordering the government

10

to produce to the defense the alleged heroin for "non-destructive, independent testing"); *see United States v. Nguyen*, Nos. 08-2601, 08-3715, 2010 WL 1896416, at *181 (3d Cir. 2010) (noting that appellant's counsel "could have had independent testing performed on the evidence"); *United States v. Shrake*, 515 F.3d 743, 747 (7th Cir. 2008) (defense entitled to "access on equal terms" to pretrial evidence); *United States v. Butler*, 988 F.2d 537, 543 (5th Cir. 1993) ("In cases involving a controlled substance, a concomitant part of the examination or inspection is the right of the accused to have an  independent chemical analysis performed on the seized substance") (quotation marks, brackets, and citation omitted).

Any defense examination of an item under Rule 16(a)(1)(E) is defense work product and should remain confidential to the defense.  *United States v. Nobles*, 422 U.S. 225, 238-39 (1975) (noting that because "attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial," it therefore is "necessary that the [work product] doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself"); *United States v. Carrell*, No. 05-cr-1484 MCA, 2006 WL 8427721, at *4 (D.N.M. Aug. 2, 2006) (ordering that a controlled substance be transferred out-of-state for independent defense testing, and further ordering that "[e]xcept as noted above with respect to weights and chain-of-custody documentation, the Government is not entitled to receive the test results as to the content of the representative sample unless Defendant intends to use those results or [the defense expert's] testimony at trial or sentencing.  *See* Fed.R.Crim.P. 16(b)(1)(B)"); *United States v. Frabizio,* 341 F.Supp.2d 47, 49 (D. Mass. 2004) (granting the defense motion to order the government to transfer pornographic material to a defense lab for independent testing, in part because "requiring the defense to conduct these tests at the FBI facility would make confidentiality impossible").

11

<u>Conclusion</u>

For the foregoing reasons, the defense asks the Court to direct the DEA to coordinate with defense counsel for delivery of the firearms and projectile evidence to a licensed and qualified firearms expert retained by the defense, as specifically identified above.

DATED this 5th day of January, 2024.

Respectfully submitted,

*/s/ Kimberly C. Stevens*
Kimberly C. Stevens
NC State Bar # 20156
Senior Capital Resource Counsel
1070-1 Tunnel Road, Ste 10-215
Asheville, NC 28805
Telephone: (336) 575-4337
E-mail: Kim_Stevens@fd.org

*/s/ Laura E. Udall*
Laura Elisabeth Udall
AZ Bar # 010501
Laura E. Udall, PLLC
P.O. Box 40294
Tucson, AZ 85717-0294
Telephone: (520) 770-1414
E-mail: Laura@udall.me

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was served on the United States by e-filing same to its counsel of record, Jeffrey B. Kahan, United States Department of Justice; Christopher J. Wilson, Assistant United States Attorney, United States Department of Justice, Eastern District of Oklahoma, this 5th day of January, 2024.

*/s/ Kimberly C. Stevens*
Kimberly C. Stevens

12