**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 6:04-CR-00115-RAW** |
| | ) | |
| **KENNETH EUGENE BARRETT** | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**REPLY TO OPPOSITION TO MOTION FOR INDEPENDENT
TESTING OF FIREARMS AND PROJECTILE EVIDENCE, DN 491**

Kenneth Eugene Barrett, through undersigned counsel, and pursuant to Fed.R.Crim.P. Rule 16(a)(1)(E), 18 U.S.C. §§ 3553, 3661, and the Fifth and Sixth Amendments to the U.S. Constitution, respectfully files this reply to the government's response to DN 491. By way of this motion, the defendant seeks to have a federally licensed firearms examiner independently examine the defendant's Colt Sporter rifle and the projectile fragments recovered from the decedent's body at autopsy and compare and photograph the items under a microscope in his laboratory. This evidence will not be altered or harmed in the independent examination.

On February 16, 2024, the United States filed a notice withdrawing their intent to seek the death penalty in this case. DN 502. At DN 503, the United States filed its opposition to the defendant's motion for independent testing of the firearms and projectile evidence. The government contends that its withdrawal of the death notice now renders the original motion, which was filed while the case was capital, moot. The United States claims that the items sought have no relevance in a non-capital sentencing, and, accordingly, the motion for independent testing of the evidence should fail. DN 503, at 3.

1

On the contrary, the evidence is equally relevant to the non-capital aggravating circumstances at issue here – namely, the "nature and circumstances" of the offense, which plays a role in the determination in this Court's imposition of sentence on Count 3 of the superseding indictment, carrying a range of 20 years to life. 18 U.S.C. §3553(a)(1); 21 U.S.C. 848(a).

This ballistics evidence has never been independently examined by any expert separate from the OSBI firearms examiner who testified 19 years ago in the case. That expert, Terrance Higgs, left behind no photographs or any other hard data by which the accuracy of his opinions can be independently evaluated by any subsequent firearms examiner or the parties. Quite simply, we cannot scientifically evaluate, through any photographs or other hard data (because Mr. Higgs produced none) the basis of any microscopic comparisons of the original test fired rounds and the projectiles recovered at autopsy. Without access to the physical evidence, the defense is left with no means to test the accuracy of the government's assertions in aggravation.

There is no substitute for independent examination of the physical evidence in this case. We are simply asking to be allowed to test fire the weapon so that the test firings can then be compared with the projectile evidence recovered at autopsy. To do that, the defense needs access to the physical evidence. The defense retained examiner will photograph the items under a microscope, so that the basis for any comparisons of the test firings and the autopsy projectiles can be scientifically observed. The comparison of the firearm test firings and the projectile evidence recovered at the autopsy is material to the issue of sentencing before the Court. This Court has a range at sentencing of between twenty years to life. 21 U.S.C. Section 848(a). The questions posed by examination of this physical evidence relate to sentencing considerations which remain relevant in the non-capital context, including consideration of the nature and circumstances of the offense. 18 U.S.C. § 3553(a)(1) ("The nature and circumstances of the

offense" are factors that must be considered at sentencing).

Prior to filing their opposition brief, the United States sought two extensions of time to file their response, both of which were consented-to by the defense so that the parties could agree on the mechanics by which the testing would be carried out.  In their requests to extend time, the United States set forth that "the parties are continuing to actively engage in discussions regarding a possible agreement concerning the defendant's request for independent testing of the firearms and projectiles, but additional time is required to establish protocols and logistics to accomplish the requested testing."  DN 494, at paragraph 4.  This recitation was set forth in both motions to extend time.[1]

It is the parties' understanding that the original evaluator of the evidence – Terrance Higgs – is no longer employed by the OSBI. The opinions that Mr. Higgs left behind are not subject to independent scientific evaluation or verification by current counsel or any independent examiner.

---

[1] All counsel were actively engaged and working diligently throughout the time frame of both requested extensions of time in coming to a resolution regarding the mechanics of facilitating independent examination.  A meeting was held on February 15, 2024 between counsel for the government and for the defense, an independent firearms and toolmark examiner retained by the defense, representatives of the OSBI crime lab in Oklahoma City and an agent from the DEA. The parties were near completion on working out the mechanics of testing such that the firearm at issue could remain in the State of Oklahoma.  Representatives of the OSBI had agreed to videotape their test firing of the Colt Sporter, and to provide that videotape and the test-fired rounds to an agent of the DEA.  The defense agreed to the OSBI test firing the weapon, rather than the defense retained expert, to allay the government's concern about the weapon traveling outside of Oklahoma.  From there, the parties had discussed that (1) the OSBI's videotaped and test fired rounds and the projectiles recovered at autopsy were to be sent or hand-delivered by an agent with the DEA to the independent examiner, as well as (2) Item P5, the bag of ammunition containing a sub-envelope with markings indicating previous test-fired rounds may be inside, along with (3) the OSBI's videotapes from the Colt Sporter's firing.  Once the evidence is either mailed or hand-delivered to the independent examiner, the defense-retained examiner can then photograph and review the test firings and the autopsy projectiles under a microscope to accomplish an independent examination and comparison analysis.  The defense even agreed to allow a DEA agent to stay with the evidence in person within the defense expert's laboratory.

Mr. Barrett asks the Court to grant the defendant's motion, and / or to direct the parties to continue to work together to devise a method to secure an independent evaluation of the evidence, as the parties had nearly completed prior to the issuance of the deauthorization.

The following items within the DEA's possession, custody, and control are at issue:

1. Colt AR-15 .223 caliber semiautomatic rifle, serial number: MH043631 (USAO Exhibit #128, Agency Evidence #N-11, and Evidence #P1) (seized from the defendant).

2. Evidence #P5, (a bag of ammunition seized from the defendant and containing an inner envelope indicating it may contain test fired exemplars).

3. F40 and F41 Projectile Fragments (USAO Exhibit #129, Agency Evidence #N-10, OSBI Evidence Control #TB0679).

The requested defense examination will involve no consumption or alteration of these three items, but does require special equipment in the expert's laboratory for examination (a calibrated comparison microscope) and access to a test firing range.[2] Undersigned counsel cannot conduct this testing and examination without the assistance of an expert evaluator who is qualified to inspect, examine, document and photograph the evidence. Investigating, testing and rebutting the government's aggravating evidence is part of undersigned counsel's duties in this case, whether capital or non-capital in stature. *Strickland v. Washington*, 466 U.S. 668 (1984); *see also, e.g., United States v. Hill*, 322 F.Supp.2d 1081, 1092 (C.D. Cal. 2004), *aff'd*, 459 F.3d 966 (9th Cir. 2006) ("[C]ounsel cannot be expected to provide defendant with competent representation unless counsel and his expert have ready access to the materials that will be the heart of the government's case").

---

[2] As set forth in the original motion, the expert retained by the defense possesses a certified and calibrated comparison microscope that is not portable. Seven (7) days are estimated for completion of examination, which includes time for overnight shipment of the requested physical evidence. The expert carries a Federal Firearms License and is capable of receiving and shipping firearms. The expert also has access to a test firing range.

While the government contends that examination of the physical evidence is no longer relevant in the non-capital sentencing context, it remains a fact that "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." *United States v. Beaulieu*, 893 F.2d 1177, 1179 (10th Cir. 1990) (quoting 18 U.S.C. § 3661). Independent testing of this evidence is necessary to test and potentially rebut the government's case in aggravation, and is therefore part of a mandatory statutory factor to be considered at sentencing.

## I.    ARGUMENT

### A. The nature and circumstances of the offense is a sentencing factor that must be considered by the Court at sentencing, in the non-capital setting as well.

"The nature and circumstances of the offense," including a defendant's intent to cause death, or lack thereof, are factors that must be considered at sentencing. 18 U.S.C. §3553(a)(1); *Gall v. United States,* 552 U.S. 38, 49 n. 6 (2007) ("The first factor is a broad command to consider 'the nature and circumstances of the offense and the history and characteristics of the defendant.'" (quoting 18 U.S.C. §3553(a)(1)). The government has maintained the position that Mr. Barrett intentionally killed the decedent in this case. The instant motion is a necessary part of the defendant's duty to investigate the aggravating sentencing circumstances in the case. "When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor." U.S.S.G. § 6A1.3(a) (policy statement).

The evidence in question has been preserved for 24 years and is available for independent scientific testing. Counsel has an affirmative duty to investigate all potential aggravating evidence to be presented in the upcoming sentencing hearing.  Trial counsel's failure to

5

investigate and discover readily available sentencing evidence can amount to constitutionally deficient performance. *Anderson v. Sirmons*, 476 F.3d 1131 (10th Cir. 2007). Evidence bearing on the full circumstances of the offense must be independently investigated by the undersigned.

**B. The Ballistics Evidence is Material.**

The Federal Rules of Criminal Procedure provide a right to such testing and require the government to cooperate with defense efforts to independently test evidence. Rule 16 provides that the government "must permit the defendant to inspect" an item if the item is "within the government's possession, custody, or control" and "(i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; *or* (iii) the item was obtained from or belongs to the defendant." Fed.R.Crim.P. 16(a)(1)(E) (emphasis added). Evidence is material under Rule 16 if "there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, … or *assisting impeachment or rebuttal*." *United States v. DeLeon*, 428 F.Supp.3d 716, 774 (D.N.M. 2019) (emphasis added) (quoting *United States v. Graham*, 83 F.3d 1466, 1474 (D.C. Cir. 1996)).

The defense request for independent inspection "must be permitted if any of the three circumstances exist." *United States v. Giardina*, No. 04-cr-29J, 2005 WL 3088441, at *7 (W.D. Pa. 2005). The three items of physical evidence at issue all fall squarely within Fed.R.Crim.P., Rule16(a)(1)(E), subparts (i) and (ii). With respect to Items 1 and 2 above, the Colt AR-15 .223 semiautomatic rifle, and Item P5, those items belonged to Mr. Barrett at the time they were seized by the government. With regard to Item 3, the fragments recovered at autopsy, these items remain central to the government's case in aggravation at sentencing. Rule 16(a)(1)(E)(i) and (ii). The government contends that Mr. Barrett intentionally fired the fatal shot which took the life of the victim, and the claim rests upon an examination of Mr. Barrett's Colt AR-15 .223

semiautomatic rifle and comparison of fired projectiles with the projectile fragments recovered at the autopsy.

The defense requests a reasonable opportunity to investigate the strength and accuracy of that scientific evidence through independent inspection of the evidence in possession of the DEA. This examination is material and relevant to testing the aggravation evidence at Mr. Barrett's upcoming non-capital sentencing hearing.

### C. The Government's opposition is unavailing.

The Government's opposition to Mr. Barrett's Rule 16(a)(1)(E) motion to test the firearm and projectile evidence relies exclusively on the false premise that Rule 16 does not apply to non-capital sentencings. The Government cites the Sixth Circuit decision in *United States v. Robinson*, 503 F.3d 522 (6th Cir. 2007), which relied on *United States v. Armstrong*, 517 U.S. 456 (1996), to conclude that Rule 16(a)(1)(E) "provides discovery in anticipation of trial, not sentencing." DN 503 at 3. However, this is not the holding in either *Armstrong* or *Robinson*. The Court in *Armstrong*, when considering a *pre-trial* discovery request, held very narrowly that Rule 16(a)(1)(C), the predecessor to Rule 16(a)(1)(E), did not apply to a request for documents relating to a claim of selective prosecution. The Court reasoned that a claim of selective prosecution was a "sword" challenging the government's conduct, and not a "shield" from the prosecution's case-in-chief, the former falling outside the intended scope of the rule. *Armstrong*, at 462. The narrow scope of the *Armstrong* decision was nonetheless compelling to the Sixth Circuit Court in *Robinson* where the defendant sought to discover the presentence reports of his co-defendants, materials that were clearly unrelated to the government's case against the accused. The court, following the reasoning in *Armstrong* that the discovery rule was limited to

7

claims designed to "shield" the accused against the government's attack, found that the request for a co-defendant's presentence report fell outside the scope of the rule.

The discovery request in *Armstrong* was made pre-trial, in contrast to the *Robinson* discovery request made post-trial, however, in neither case was the timing of the request material to the court's decision. Both *Armstrong* and *Robinson* were decided based on the nature of the discovery request, i.e., whether the inspection was sought to act as a "shield" to refute the government's case against the accused, and not the timing of the request.

The Government argues that since the notice of intent to seek the death penalty has been withdrawn, "there remains nothing for the defense to contest or any need for Defendant to obtain discovery in service of such a dispute." The Government ignores the fact that Mr. Barrett has a right to contest the term of years that he receives at sentencing.  Mr. Barrett faces sentencing on Count Three, with a sentencing range from 20 years to life in prison without release. The Government, presumably, will argue in support of its sentencing recommendation evidence presented in its case-in-chief that Mr. Barrett shot the victim, and directly caused his death. The defense seeks, for the first time, to test evidence in the possession of the government for the purpose of refuting this contention, as a shield against its use as a sentencing factor. The right to do so is found not only in the rules of discovery, but in 18 U.S.C. § 3553, which requires this court to consider the nature and circumstances of the offense. See *United States v. Frias*, 521 F.3d 229, 236 (2d Cir. 2008) (applying §3553 factors to a defendant sentenced for a 21 U.S.C. §848(e) conviction).

The Government relies on two cases, *United States v. Johnson*, 900 F.Supp.2d 949 (N.D. Iowa 2012), and *United States v. Mikaelian*, 168 F.3d 380 (9th Cir. 1999), that are both distinguishable and unhelpful.  The decision in *Johnson* is not relevant given that Johnson's

8

discovery request was unrelated to the government's evidence, nor was the court's decision based on the scope of the rule. In *Mikaelian* the court upheld the denial of the discovery request because the defendant failed to show that establishing the purity of the seized heroin would impact the sentence, therefore he suffered no prejudice in the denial. *Mikaelian*,168 F.3d at 389. Neither case is relevant to the issues before the court now.

There is a lack of authority in the 10th Circuit Court of Appeals specifically addressing the application of Rule 16(a)(1)(E) to sentencing issues, however, as discussed above, courts have made the distinction between requests for discovery for the purpose of refuting evidence presented in the government's case-in-chief, and requests for materials *not* related to the government's case. In *United States v. Kratzberg*, No. 18-262, 2021 WL 4147313 (E.D. Cal Sept. 13, 2021), the district court affirmed the magistrate judge's grant of a request for drug re-testing, for the sole purpose of sentencing. The magistrate explained:

> I can find [no] Ninth Circuit authority, or frankly any authority that says the court does not have the authority to issue a discovery order under this section. But under Item 1, the item has to be material to preparing the defense, *which I think arguably would include sentencing*.

*Id.* at *2 (emphasis added).  Mr. Barrett's request is directly related to the defense of evidence presented in the Government's case-in-chief, and facts that the defense anticipates will be argued by the Government at sentencing. The request falls squarely within the scope of Rule 16(a)(1)(E) and should be granted.

<u>Conclusion</u>

For the foregoing reasons, the defense asks the Court to direct the DEA to coordinate with defense counsel for delivery of the firearms and projectile evidence specifically identified above, or for the parties to continue to work out a mutually agreeable method – as they had

already nearly done -- of delivering this evidence to an independent firearms and toolmarks examiner employed by counsel for the defendant.

DATED this 26th day of February, 2024.

Respectfully submitted,

*/s/ Kimberly C. Stevens*
Kimberly C. Stevens
NC State Bar # 20156
Senior Capital Resource Counsel
1070-1 Tunnel Road, Ste 10-215
Asheville, NC 28805
Telephone: (336) 575-4337
E-mail: Kim_Stevens@fd.org

*/s/ Laura E. Udall*
Laura Elisabeth Udall
AZ Bar # 010501
Laura E. Udall, PLLC
P.O. Box 40294
Tucson, AZ 85717-0294
Telephone: (520) 770-1414
E-mail: Laura@udall.me

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served on the United States by e-filing same to its counsel of record, Jeffrey B. Kahan, United States Department of Justice; Christopher J. Wilson, Assistant United States Attorney, United States Department of Justice, Eastern District of Oklahoma, this 26th day of February, 2024.

*/s/ Kimberly C. Stevens*